Pamela M. Egan, WSBA No. 54736
POTOMAC LAW GROUP PLLC
1905 7th Ave. W.
Seattle, WA 98119
Telephone: (415) 297-0132
Email: pegan@potomaclaw.com
  *Attorneys for Mark D. Waldron as Chapter 7 Trustee, Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| In re: | Case No. 18-03197 FPC 11 |
| GIGA WATT, Inc., a Washington corporation, | The Honorable Frederick P. Corbit |
| Debtor. | Chapter 7 |
| MARK D. WALDRON, as Chapter 7 Trustee, | Adv. Case No. 20-80031 |
| Plaintiff, | **TRUSTEE'S SECOND RULE 26(f) REPORT** |
| vs. | |
| PERKINS COIE LLP, a Washington limited liability partnership, *et al.*, | |
| Defendants. | |
| -and- | |
| THE GIGA WATT PROJECT, a partnership, | |
| Nominal Defendant. | |

On January 12, 2021, the Court issued a text order pursuant to LBR 9013-1, ordering the parties to meet and confer regarding: (1) consolidated discovery, (2) jury trial, and (3) removal or referral of the putative class action pending in the District Court and (4) other matters. ECF 27. The text order further states that the

RULE 26(f) REPORT – Page 1

transmittal of the withdrawal documents will occur a reasonable time after the Scheduling Conference.

At the status conference held on January 12, 2021 – and before Perkins Coie had filed an answer which had been due on January 7, 2021 – the Court asked Trustee's counsel for the Trustee's position regarding a jury trial. Counsel said the Trustee would be prepared to discuss the issue at the next status conference, which is scheduled for Friday, January 29, 2021.

On January 13, 2021, at the close of business, Perkins Coie filed its answer, which included affirmative defenses, including setoff. This was the evening before the Trustee's response to Perkins Coie's motion to withdraw the reference was due.

Counsel for Perkins Coie and the Trustee conferred on January 21, 2021 and January 22, 2021. Counsel for Andrey Kuzenny attended. Counsel for the purported class of token holders ("TH") in the pending District Court action (the "TH Action") also attended.

With respect to the jury trial issue and the related issue of withdrawal, Perkins Coie expressed disagreement. No substantive discussion occurred. The Trustee, through counsel, stated that the Trustee would provide a writing both to Perkins Coie and the Court on the issue. On January 27, 2020 at approximately 2:30 p.m., the Trustee sent to Perkins Coie a brief on the jury trial issue which is substantively identical to the brief set forth below. The Trustee proposed that the parties agree to a schedule for Perkins Coie to respond if it wished. Perkins Coie

RULE 26(f) REPORT – Page 2

responded that any further briefing would be inappropriate unless the *District Court* allowed it. Perkins Coie added that it may move to compel arbitration.

This report now presents the three issues raised in the text order: (1) consolidated discovery, (2) jury trial, and (3) removal/referral of the District Court class action.

### 1. Consolidated Discovery

Counsel in the TH Action and for Perkins Coie have indicated a willingness to coordinate discovery on an informal basis with the right to end the coordination at any time. This issue is further addressed in section 3 below.

### 2. Jury Trial.

The Trustee sent the foregoing to Perkins Coie on January 27, 2021 for review and comment, with an invitation to discuss. Perkins Coie declined the Trustee's request to set up a supplemental briefing schedule.

#### A. Substantive Analysis

Invoking the Seventh Amendment, Perkins Coie would have the Court squeeze the Trustee's claims into a boxed set of breach of contract claims, in which they do not fit, as if the Complaint were a paradigmatic, if also completely defective, action at law. For good measure, Perkins Coie has also stated that it may demand that this case be heard as far away from a Spokane jury as possible – before an international arbitration panel in Singapore.[1]

---

[1] Perkins Coie's Answer and Affirmative Defenses [AP Doc No. 28, ¶ 19, p. 19:22-25, p. 20:1-4.

RULE 26(f) REPORT – Page 3

However, an escrow, which forms the basis of the Complaint, is in actuality "an account held on trust." ESCROW, Black's Law Dictionary (11th ed. 2019). *See Estate of Jordan by Jordan v. Hartford Acc. and Indem. Co.*, 844 P.2d 403, 410, 120 Wash.2d 490, 501–02 (Wash.,1993):

> We emphasize that our holding is based on the special trust relationship that exists between an escrow company and its trust beneficiaries. [The escrow agent] held the escrow funds in trust for the benefit of its clients. A trustee owes undivided loyalty to the beneficiary of the trust. *In re Estate of Johnson,* 187 Wash. 552, 554, 60 P.2d 271, 106 A.L.R. 217 (1936); *see also* G. Bogert, *Trusts and Trustees* § 543, at 56 (2d rev. ed. Supp.1992) (duty of loyalty applies to most fiduciaries, including agents).

*Id.,* 844 P.2d at 410, 120 Wash. 2d at 501-02. In *Jordan*, the Washington Supreme Court held that the concept of an escrow as a trust is fundamental to the Washington Escrow Registration Act.[2] *Id. Accord Commonwealth Land Title Ins. Co. of Philadelphia v. Gulf Underwriters Ins. Co.*, 1998 WL 283510, at *2 (Wash.App. Div. 1,1998). *See also Radach v. Prior,* 297 P.2d 605, 608, 48 Wash.2d 901, 905–06 (Wash. 1956) (referring to an escrow agent as "a trustee for the parties, charged with the performance of an express trust governed by the escrow agreement, with duties to perform for each party which neither alone can forbid") (citing 30 C.J.S., Escrows, § 8, p. 1203); *Lechner v. Halling,* 216 P.2d 179, 35 Wash.2d 903, 912 (Wash. 1950) ("An escrow is a trust, Restatement (Second) of Trusts s 32, Comment d (1959).").

Perkins Coie held the funds at issue in its "IOLTA *trust* account." Billy Gajdos, whose title is "Trust Accountant," appears to have managed the day to

---

[2] RCW Chapter 18.44.

RULE 26(f) REPORT – Page 4

day of the Escrow. And in its Answer, Perkins Coie acknowledges the trust allegation by denying that Giga Watt was a beneficiary of the Escrow.[3]

Furthermore, the term, "privity," means "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property). . . ." PRIVITY, Black's Law Dictionary (11th ed. 2019). "Privity of contract" is only one type of privity. *Id.*

The First Claim for Relief alleges damages against Perkins Coie for its breach of the Escrow. In 1791 England – the relevant time period – the First Claim for Relief would not have stated a cause of action at law because the Common Law only recognized escrows relating to land transactions. CJS Escrows § 3 ("The term 'escrow' was originally, and under the common law, applied to instruments for the conveyance of land . . . .").[4] Furthermore, in 1791 England, trusts were the exclusive province of the Chancery Court. *See* Story, Commentaries on Equity Jurisprudence, Vol. II, Ch. XXIV.

---

[3] *See* PC Answer and Affirmative Defenses at AP Doc. 28, ¶ 3, p. 15:15-18, stating, "The Plaintiff is neither a party to, nor the intended *beneficiary* of, any such 'escrow' . . . ." (Emphasis added.)

[4] The word "escrow" comes from scroll. Merriam-Webster Dictionary. The "escrow" was the scroll or deed that a seller of property entrusted to a third party until the occurrence of a specified event. *Id.*

RULE 26(f) REPORT – Page 5

In 1791 England, the Trustee would not have had an adequate remedy at law for the additional reason that Giga Watt and GW Singapore were partners in the Giga Watt Project. Perkins Coie denies that a partnership existed.[5] It also seeks an accounting of the partnership funds, hoping to find that Giga Watt benefitted from the embezzlement that Perkins Coie enabled.

A court of law in 1791 did not offer an adequate remedy at law with respect to partnership disputes. Justice Story writes, "Now, a controversy may arise in regard to the existence of the partnership between the partners themselves, or between them and third persons." Story, Commentaries on Equity Jurisprudence, Vol. I, Ch. XV, § 660, p. 612. Where no written articles exist or where "they may be suppressed or concealed," *id.*, at p. 613, a court of law would not have the power "to bring out all the facts." *Id.* In contrast, a Court of Equity could obtain and analyze the facts "by means of a bill of discovery." *Id.* Justice Story emphasizes how resolution of disputes regarding partners "may mainly depend upon the discovery to be obtained through the instrumentality of a Court of Equity." Story, Commentaries on Equity Jurisprudence, Vol. I, Ch. XV, § 660, p. 612.

Furthermore, the Trustee is both suing Giga Watt's partner, GW Singapore, and alleging that Perkins Coie aided GW Singapore's breach of its fiduciary as a partner to Giga Watt. However, under the Common Law, partners could not sue

---

[5] Perkins Coie's Answer and Affirmative Defenses. [AP Doc. 28, ¶ 10, p. 3:11-13.]

RULE 26(f) REPORT – Page 6

each other at law "since he cannot sue [his partners] without suing himself also, as one of the partnership." Story, Commentaries on Equity Jurisprudence, Vol. I, Ch. XV, § 681, p. 631. As Justice Story wrote:

> This review of some of the more important cases, in which Courts of Equity interfere in regard to Partnerships, does, (unless my judgment greatly misleads me,) establish, in the most conclusive manner, the *utter inadequacy of Courts of Law to administer justice in most cases growing out of partnerships, and the indispensable necessity of resorting to Courts of Equity, for plain, complete, and adequate redress*. Where a discovery, account, contribution, injunction, or dissolution, *or even a due enforcement of partnership rights and duties*, and credits, is required, it is impossible not to perceive, that in many cases a resort to Courts of Law would be little more than a solemn mockery of justice. Hence, it can excite no surprise, that Courts of Equity now exercise a full concurrent jurisdiction with Courts of Law, in all matters of partnership ; [sic] and, indeed, it may be said, that, practically speaking, they exercise an exclusive jurisdiction over the subject.

Story, Commentaries on Equity Jurisprudence, Vol. I, Ch. XV, § 683, pp. 632-33. Therefore, it is clear that this suit is equitable.

Although the Trustee's action to recover losses resulting from Perkins Coie's breach of duty superficially resembles an action at law for damages, this make-whole relief was traditionally obtained exclusively in courts of equity. *See Lessee of Smith v. McCann,* 24 How. 398, 407, 16 L.Ed. 714 (1861):

> If these trusts are fraudulent, the lessors of the plaintiff have a plain and ample remedy in the court of chancery, *which has the exclusive jurisdiction of trusts and trust estates*. In that forum all of the parties

RULE 26(f) REPORT – Page 7

> interested in the controversy can be brought before the court, and heard in defence [sic] of their respective claims.

*Id.,* 24 How. at 407. (Emphasis added.) Money damages were also available in the equity courts against a trustee. *See United States v. Mitchell,* 463 U.S. 206, 226, 103 S.Ct. 2961, 2972, 77 L.Ed.2d 580 (1983):

> Given the existence of a trust relationship, it naturally follows that [the trustee] should be liable in damages for the breach of its fiduciary duties. It is well established that a trustee is accountable in damages for breaches of trust.

*U.S. v. Mitchell,* 103 S.Ct. 2961, 2972–73, 463 U.S. 206, 226 (U.S.,1983). *See also* Bogert's The Law of Trusts and Trustees § 862 (2020)

> For a breach of trust the trustee may be directed by the court to pay damages to the beneficiary out of the trustee's own funds, either in a suit brought for that purpose or on an accounting where the trustee is surcharged beyond the amount of his admitted liability.
>
> Thus the making of unauthorized payments to other beneficiaries [or] the conversion of the trust property, may give rise to a right in favor of beneficiaries *to recover money damages from the trustee.* Where the trustee is financially responsible this affords a remedy that is usually complete and satisfactory.

*Id.* (Emphasis added). *See* Scott, Participation in a Breach of Trust, 34 Harv. L. Rev. 454 (1921):

> ANYONE who participates with a trustee in a breach of trust may be held liable in a court of equity to the cestui que trust. If he . . . no longer holds the trust property or its proceeds, he may be held liable *in equity for damages*.

*Id.* (Capitalization in original; italics added for emphasis.) As summarized by the Ninth Circuit Court of Appeals:

> "Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." [*CIGNA Corp. v. Amara,* 131 S.Ct. 1866, 1880, 563 U.S. 421, 441 (U.S.,2011)

RULE 26(f) REPORT – Page 8

(quoting Restatement (Third) of Trusts § 95, and Comment *a* (Tent. Draft No. 5, Mar. 2, 2009) (hereinafter Third Restatement)). "Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable.'" *Id.* (quoting *Princess Lida of Thurn & Taxis v. Thompson,* 305 U.S. 456, 464, 59 S.Ct. 275, 83 L.Ed. 285 (1939)).

This remedy "extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Id.*

*Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (C.A.9 (Alaska),2014).

With respect to the defenses of set-off and recoupment that Perkins Coie asserts, set-off is governed by 11 U.S.C. § 553 and is core.[6] It is also equitable. *See In re Buckenmaier,* 127 B.R. 233, 237 (9th Cir.BAP (Ariz.),1991):

> The doctrine of setoff dates back to Roman law and was recognized by the equity courts in England. . . . It was made a part of the English bankruptcy law in 1705, and became a part of American bankruptcy law in 1800.

*Id.* at 237. (Citations omitted). *Accord In re De Laurentiis Entertainment Group Inc.*, 963 F.2d 1269, 1277 (C.A.9 (Cal.),1992). By seeking setoff, Perkins Coie has waived the right to trial. *See In re Commercial Financial Services, Inc.,* 251 B.R. 397, 408 (Bkrtcy.N.D.Okla.,2000) (by asserting affirmative defense of setoff, the defendant "waived his right to jury trial on the breach of contract claim."). *See also In re Iridium Operating LLC,* 285 B.R. 822, 832 (S.D.N.Y.,2002).

> Traditionally non-core claims against a creditor in an adversary proceeding will be considered core if: (1) the claim arises out of the same transaction as the creditor's proofs of claim *or setoff claim,* or (2) the adjudication of the adversary proceeding claim would require

---

[6] It also implicates the automatic stay pursuant to 11 U.S.C. § 362.

RULE 26(f) REPORT – Page 9

> consideration of issues raised by the proofs of claim *or setoff claim* such that the two claims are logically connected.

*Id.* at 832.

Recoupment is also an equitable doctrine. *See Matter of U.S. Abatement Corp.,* 79 F.3d 393 (5th Cir. 1996) ("Recoupment is equitable doctrine designed to determine just liability on claim."). *See also In re Davidovich*, 901 F.2d 1533, 1537 (C.A.10 (Colo.),1990):

> The common law doctrine of recoupment, while frequently merged with the doctrine of setoff in other contexts, is a distinct doctrine in bankruptcy cases. *This distinction arises from recoupment's origin as an equitable rule of joinder that permitted adjudication in one suit of two claims, both arising out of the same transaction, that otherwise had to be brought separately under the common law forms of actions.*

*Id*. at 1537. (Citations omitted; emphasis added.) Therefore, Perkins Coie is not entitled to a jury trial on its recoupment defense.

Finally, Perkins Coie emphasizes the language in *Granfinancieria*[7] to the effect that the requested remedy weighs more heavily in the right-to-jury-trial analysis than the subject matter of the action. This is true when the Court is reviewing a statutory claim – such as a fraudulent transfer claim brought pursuant to 11 U.S.C. § 548 – and is retracing how such a claim would have been treated in 1791 England.[8] If there is a tie (i.e., the subject matter indicates equity and the remedy indicates legal), the remedy will break the tie.

---

[7] *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (U.S.Fla.,1989).

[8] As the Court is no doubt aware, fraudulent transfer actions have been actions at law since at least 1571 when Parliament enacted the Statute of Elizabeth (1571).

RULE 26(f) REPORT – Page 10

In this case, no tie-breaking analysis of the subject matter (trust) and the remedy (damages) is necessary because escrows are trusts, trusts were subject to the exclusive jurisdiction of the Chancery Court in 1791 England, and the Chancery Court had the power to make plaintiff-beneficiaries whole through the award of damages.

### B. Further Briefing Is Warranted

A minority of cases under different facts has held that a jury trial is not waived by the defense of setoff in certain situations. *See e.g., Container Recycling Alliance v. Lassman,* 359 B.R. 358 (D. Mass. 2007) (landlord's counterclaim which was limited to recoupment or setoff did not constitute waiver of the right to jury trial in trustee's action for rent); *In re M & L Business Machine Co., Inc.,* 178 B.R. 270, 26 Bankr. Ct. Dec. (CRR) 965 (Bankr. D. Colo. 1995) (setoff when asserted as a defense is not a claim).

The Trustee believes that Perkins Coie should be allowed to brief the jury trial issue. The Trustee would request the right to reply to Perkins Coie's brief on the issue.

The Trustee further believes that both parties should be allowed to brief the issue of whether Perkins Coie's late-filed defenses render the entire adversary proceeding core. *See Iridium Operating LLC,* 285 B.R. at 832 (S.D.N.Y.,2002) (setoff makes adversary proceeding of originally non-core claims into a core proceeding).

As set forth above, Perkins Coie did not raise the setoff defense until the close of business on the eve of the deadline to response to the withdrawal motion.

RULE 26(f) REPORT – Page 11

Further, the defense was not on record during the last status conference held on January 12, 2021.

The core/noncore issue is distinct from the jury trial issue, as it is jurisdictional. It relates to this Court's power to render final decisions and thus affects the withdrawal analysis. *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties* ), 781 F.2d 159, 161 (9th Cir.1986) (noting differences in bankruptcy judge's powers in core and noncore matters); *In re LLS America, LLC,* 2011 WL 4005447, at *3 (Bkrtcy.E.D.Wash.,2011) ("Bankruptcy courts have jurisdiction to make final determinations in all 'core matters,' i.e., those 'arising under' Title 11 or those 'arising in' cases under Title 11.").

Bankruptcy courts make the initial determination on whether a proceeding is core. *In re Vylene Enterprises, Inc.,* 968 F.2d 887, 889 (C.A.9 (Cal.),1992) ("The bankruptcy court makes the initial determination whether a case is a core or otherwise related proceeding. 28 U.S.C. § 157(b)(3).").

    3.    <u>Removal/Referral of the District Court Action</u>

After further discussion, the TH will not agree to remove/refer the TH Class Action to the Bankruptcy Court.

The Trustee believes that the TH Class Action violates the automatic stay because the claim of the named plaintiff, Jun Dam, is derivative of the estate's claims against Perkins Coie. Based on the Trustee's investigation, which is ongoing, Jun Dam bought half his tokens on the secondary public market and received another percentage of his tokens as a bonus for having referred other investors.. As for the less than half his tokens purchased in the ICO, those tokens

RULE 26(f) REPORT – Page 12

"worked great," as he testified at a hearing. Therefore, when his sale proceeds were released from the Escrow, there was requisite power to service his tokens and he was not directly affected by the premature disbursement of other purchasers' proceeds.

With that said, the Trustee believes that there are TH who do have direct claims. However, despite encouragement and assistance from the Trustee, no such TH has stepped forward. The Trustee has repeatedly stated to counsel for the TH that he will enforce the automatic stay. He is actively considering moving to enforce the stay in the TH Action until a new named plaintiff appears.

Dated: January 28, 2021         POTOMAC LAW GROUP PLLC

                                By:     /s/ Pamela M. Egan
                                        Pamela M. Egan (WSBA No. 54736)
                                        *Attorneys for Mark D. Waldron as Chapter 7 Trustee, Plaintiff*

RULE 26(f) REPORT – Page 13