# EXHIBIT 1

| From: | Pamela M. Egan <pegan@potomaclaw.com> |
| Sent: | Wednesday, September 9, 2020 12:54 PM |
| To: | Ralph Cromwell |
| Subject: | GW/AA/Perkins Coie |
| Attachments: | Exhibit E  - WTT Sales Contract.pdf |

FYI, see attached.

**Pamela M. Egan** | Partner | Potomac Law Group, PLLC
Tel: (415) 297-0132 | Fax: (202) 318-7707
pegan@potomaclaw.com | www.potomaclaw.com



*This e-mail and any attachments may contain information that is private, confidential, and/or privileged. If you are not the intended recipient, please notify us immediately and destroy all copies of this message and any attachments.*

20-80031-FPC     Doc 43-1     Filed 02/26/21     Entered 02/26/21 16:12:41     Pg 2 of 9

DocuSign Envelope ID: DFE6F5FE-BCD5-486F-B823-0C618E0BB042

# WTT TOKEN PURCHASE AGREEMENT

PLEASE READ THIS WTT TOKEN PURCHASE AGREEMENT CAREFULLY. NOTE THAT SECTION 15 CONTAINS A BINDING ARBITRATION CLAUSE AND REPRESENTATIVE ACTION WAIVER, WHICH AFFECT YOUR LEGAL RIGHTS. IF YOU DO NOT AGREE TO THE TERMS OF THIS WTT TOKEN PURCHASE AGREEMENT, DO NOT PURCHASE TOKENS.

This WTT Purchase Agreement (this "Agreement") is made by and between GigaWatt Pte. Ltd., a Singapore company (the "Company"), an issuer of the WTT Tokens, and you, a user of the email address sg_personal@live.com ("Purchaser") on May 31, 2017.

1.     **Sale of WTT.** Subject to the terms and conditions of this Agreement, simultaneously with the acceptance of this Agreement by Purchaser (the "Purchase Date"), the Company is hereby selling to Purchaser, and Purchaser is purchasing from the Company, 85,000 (eighty five thousand) of Giga Watt Project tokens ("WTT Tokens") at a purchase price of $85,000.00 (eighty five thousand US Dollars) per WTT Tokens ("Aggregate Purchase Price"). The Aggregate Purchase Price shall be paid in full by the Purchaser on the Purchase Date.

2.     **Scope of Terms.**

(a)     Unless otherwise stated herein, this Agreement governs only purchase of WTT Tokens from Company during pre-sale period from May 19, 2017 to June 2, 2017 (12 PM PDT).

(b)     Any use of Tokens in connection with providing or receiving services through the Giga Watt project will be governed primarily by other applicable terms and policies, [which will be available at www.giga-watt.com upon the distribution of the first batch of WTT Tokens] (collectively, "Giga Watt Terms and Policies"). The Giga Watt Terms and Policies may change from time to time at the provider's sole discretion with the amended Giga Watt Terms and Policies posted instead of the previous version.

(c)     To the extent of any conflict with this Agreement, the Giga Watt Terms and Policies shall control with respect to any issues relating to the use of WTT Tokens.

3.     **Purchase Procedure.** Sale of the WTT Tokens is conducted only through the platform Cryptonomos ("Cryptonomos"), where the Purchaser would be able to see the purchased tokens in its personal account ("Cryptonomos Account"). Before June 2, 2017, Purchaser shall visit www.cryptonomos.com and create Cryptonomos Account with the same email provided by Purchaser in this Agreement above. Purchaser would have to verify the email address through the email correspondence, which would be sent by Cryptonomos team to the Purchaser. The purchased WTT Tokens would be placed into the Purchaser's Cryptonomos Account on June 2, 2017. The email addresses on the Cryptonomos Account must match the email account provided by Purchaser in this Agreement above, in order for the Purchaser to see the purchased WTT Tokens in the Cryptonomos Account. If Purchaser participating in pre-sale creates Cryptonomos Account on or after June 2, 2017, Purchaser would have to contact the Cryptonomos team at sales@cryptomonos.com to have the purchased WTT Tokens placed to the Cryptonomos Account.

DocuSign Envelope ID: DFE6F5FE-BCD5-486F-B823-0C618E0BB042

4.      **Date of Issue.** The WTT Tokens will be issued in step with the construction of the facilities on a first come first serve basis. Upon completion of the token launch ("Token Launch"), on August 7, 2017, Cryptonomos will distribute the purchased WTT Tokens to the Cryptonomos Account of the Purchaser provided that such tokens are in the first batch of WTT Tokens for the capacity of the facilities built by the date of issue. Subsequent batches of WTT Tokens will be issued upon completion of the new facilities. If a cap of 30,000,000 WTT tokens sold is reached before the scheduled end of the Token Launch, Cryptonomos at its own discretion may issue WTT Tokens ahead of the date set forth above to provide access to the facilities built by that time.

5.      **Receipt of WTT Tokens.** Upon distribution of the WTT Tokens by Cryptonomos, Purchaser will have options to use WTT Tokens through Giga Watt Project by transferring WTT Tokens to the Purchaser's account at www.giga-watt.com ("Giga Watt Account") or to transfer WTT Tokens outside of the Giga Watt Project. Purchaser shall be responsible for implementing reasonable measures for securing the wallet, vault or other storage mechanism Purchaser decides to use to receive and hold Tokens outside of the Giga Watt Project, including any requisite private key(s) or other credentials necessary to access such storage mechanism(s).   If Purchaser's private key(s) or other access credentials are lost, Purchaser may lose access to the purchased WTT Tokens.  Company shall not be responsible for any such losses.

6.      **Terms and Conditions of WTT Tokens.**   The WTT Tokens terms and conditions are as set forth in the White Paper attached as Exhibit A to this Agreement.

7.      **Cancellation; Refusal of Purchase Requests.**  The purchase of WTT Tokens from Company is final, and there will be no refunds or cancellations except as provided in the White Paper. Company reserves the right to refuse or cancel WTT Token purchase requests at any time at the Company's sole discretion.

8.      **Acknowledgment and Assumption of Risks.**  Purchaser shall acknowledge and agree that there are risks associated with purchasing WTT Tokens, holding WTT Tokens, and using WTT Tokens, as disclosed in the White Paper.  For questions regarding these risks, Purchaser shall contact the sales team at sales@cryptonomos.com.  BY PURCHASING WTT TOKENS, PURCHSER EXPRESSLY ACKNOWLEDGES AND ASSUMES THESE RISKS.

9.      **Representations and Warranties.**  In connection with the purchase of the WTT Tokens, Purchaser represents to the Company the following:

(a)     Purchaser is aware of the terms and conditions of the WTT Tokens and has acquired sufficient information about the WTT Tokens to reach an informed and knowledgeable decision to acquire the WTT Tokens.

(b)     Purchaser has sufficient understanding of cryptographic tokens, token storage mechanisms (such as token wallets), and blockchain technology to understand this Agreement and to appreciate the risks and implications of purchasing the WTT Tokens.

(c)     Purchaser understands that the WTT Tokens confer only the right to access the facilities to host mining equipment at the lower hosting rate as described in the White

- 2 -

DocuSign Envelope ID: DFE6F5FE-BCD5-486F-B823-0C618E0BB042

Paper, and confer no other rights of any form with respect to Giga Watt Project or the Company, including, but not limited to, any ownership, distribution, redemption, liquidation, proprietary (including all forms of intellectual property), or other financial or legal rights.

(d)    Purchaser shall not purchase WTT Tokens for any uses or purposes other than to use WTT Tokens as provided in the White Paper, including, but not limited to, any investment, speculative or other financial purposes.

(e)    Purchaser understands that the WTT Tokens are not digital currency, security, commodity or any other kind of financial instrument and have not been registered under the Securities Act, the securities laws of any state of the United States or the securities laws of any other country, including the securities laws of any jurisdiction in which Purchaser is resident.

(f)    Purchaser has satisfied itself as to the full observance of the laws of his/her/its jurisdiction in connection with any invitation to subscribe for the WTT Tokens or any use of this Agreement, including (i) the legal requirements within its jurisdiction for the purchase of the WTT Tokens, (ii) any foreign exchange restrictions applicable to such purchase, and (iii) any governmental or other consents that may need to be obtained.

(g)    Purchaser's subscription and payment for and continued beneficial ownership of the WTT Tokens will not violate any applicable laws of Purchaser's jurisdiction.

(h)    Purchaser shall comply with any applicable tax obligations in all relevant jurisdiction arising from the purchase of WTT Tokens.

(i)    If Purchaser is purchasing Tokens on behalf of any entity, he/she is authorized to accept the terms and conditions of this Agreement on such entity's behalf and that such entity will be responsible for breach of this Agreement by Purchaser or any other employee or agent of such entity (references to "Purchaser" in this Agreement refer to individual Purchaser and such entity, jointly).

10.    **Indemnification.**

(a)    To the fullest extent permitted by applicable law, Purchaser shall indemnify, defend and hold harmless the Company and the Company's respective past, present and future employees, officers, directors, contractors, consultants, equity holders, suppliers, vendors, service providers, parent companies, subsidiaries, affiliates, agents, representatives, predecessors, successors and assigns (the "Company Parties") from and against all claims, demands, actions, damages, losses, costs and expenses (including attorneys' fees) that arise from or relate to: (i) purchase or use of WTT Tokens, (ii) Purchaser's responsibilities or obligations under this Agreement, (iii) Purchaser's violation of this Agreement, or (iv) Purchaser's violation of any rights of any other person or entity.

(b)    The Company reserves the right to exercise sole control over the defense, at Purchaser's expense, of any claim subject to indemnification under Section 10(a). This indemnity is in addition to, and not in lieu of, any other indemnities set forth in a written agreement between Purchaser and the Company.

- 3 -

DocuSign Envelope ID: DFE6F5FE-BCD5-486F-B823-0C618E0BB042

11.   **Disclaimers.**

(a)   TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW AND EXCEPT AS OTHERWISE SPECIFIED IN A WRITING BY COMPANY, (A) THE WTT TOKENS ARE SOLD ON AN "AS IS" AND "AS AVAILABLE" BASIS WITHOUT WARRANTIES OF ANY KIND, AND COMPANY EXPRESSLY DISCLAIMS ALL IMPLIED WARRANTIES AS TO THE WTT TOKENS, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT; (B) COMPANY DOES NOT REPRESENT OR WARRANT THAT THE WTT TOKENS ARE RELIABLE, CURRENT OR ERROR-FREE, MEET PURCHASER'S REQUIREMENTS, OR THAT DEFECTS IN THE WTT TOKENS WILL BE CORRECTED; AND (C) COMPANY CANNOT AND DOES NOT REPRESENT OR WARRANT THAT THE WTT TOKENS OR THE DELIVERY MECHANISM FOR WTT TOKENS ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

(b)   Some jurisdictions do not allow the exclusion of certain warranties or disclaimer of implied terms in contracts with consumers, so some or all of the exclusions of warranties and disclaimers in this Section may not apply to some Purchasers.

12.   **Limitation of Liability.**

(a)   TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW: (i) IN NO EVENT WILL THE COMPANY OR ANY OF THE COMPANY PARTIES BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, OR EXEMPLARY DAMAGES OF ANY KIND (INCLUDING, BUT NOT LIMITED TO, WHERE RELATED TO LOSS OF REVENUE, INCOME OR PROFITS, LOSS OF USE OR DATA, OR DAMAGES FOR BUSINESS INTERRUPTION) ARISING OUT OF OR IN ANY WAY RELATED TO THE SALE OR USE OF THE WTT TOKENS OR OTHERWISE RELATED TO THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION, WHETHER BASED IN CONTRACT, TORT (INCLUDING, BUT NOT LIMITED TO, SIMPLE NEGLIGENCE, WHETHER ACTIVE, PASSIVE OR IMPUTED), OR ANY OTHER LEGAL OR EQUITABLE THEORY (EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE); AND (ii) IN NO EVENT WILL THE AGGREGATE LIABILITY OF THE COMPANY AND THE COMPANY PARTIES (JOINTLY), WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE, WHETHER ACTIVE, PASSIVE OR IMPUTED), OR OTHER THEORY, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE USE OF OR INABILITY TO USE THE WTT TOKENS, EXCEED THE AMOUNT PURCHASER PAYS TO COMPANY FOR THE WTT TOKENS.

(b)   THE LIMITATIONS SET FORTH IN SECTION 12(a) WILL NOT LIMIT OR EXCLUDE LIABILITY FOR THE GROSS NEGLIGENCE, FRAUD OR INTENTIONAL, WILLFUL OR RECKLESS MISCONDUCT OF THE COMPANY.

(c)   Some jurisdictions do not allow the limitation or exclusion of liability for incidental or consequential damages.  Accordingly, some of the limitations of this Section may not apply to some Purchasers.

- 4 -

DocuSign Envelope ID: DFE6F5FE-BCD5-486F-B823-0C618E0BB042

13.     **Release.**  To the fullest extent permitted by applicable law, Purchaser releases the Company and the other Company Parties from responsibility, liability, claims, demands and/or damages (actual and consequential) of every kind and nature, known and unknown (including, but not limited to, claims of negligence), arising out of or related to disputes between users and the acts or omissions of third parties.  Purchaser expressly waive any rights he/she/it may have under statute or common law principles that would otherwise limit the coverage of this release to include only those claims which Purchaser may know or suspect to exist in his/her/its favor at the time of agreeing to this release.

14.     **Governing Law.**  The validity, interpretation, construction and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of Singapore, without giving effect to principles of conflicts of law.

15.     **Dispute Resolution; Arbitration.**

PLEASE READ THE FOLLOWING SECTION CAREFULLY BECAUSE IT REQUIRES PURCHASER TO ARBITRATE CERTAIN DISPUTES AND CLAIMS WITH THE COMPANY AND LIMITS THE MANNER IN WHICH PURCHASER CAN SEEK RELIEF FROM COMPANY.

(a)     **Binding Arbitration.**  Except for any disputes, claims, suits, actions, causes of action, demands or proceedings (collectively, "Disputes") in which either Party seeks to bring an individual action in small claims tribunals or seeks injunctive or other equitable relief for the alleged unlawful use of intellectual property, including, without limitation, copyrights, trademarks, trade names, logos, trade secrets or patents, Purchase and the Company (i) waive Purchaser's and the Company's respective rights to have any and all Disputes arising from or related to this Agreement resolved in a court, and (ii) waive Purchaser's and the Company's respective rights to a jury trial. Instead, Purchaser and the Company will arbitrate Disputes through binding arbitration (which is the referral of a Dispute to one or more persons charged with reviewing the Dispute and making a final and binding determination to resolve it instead of having the Dispute decided by a judge or jury in court).

(b)     **No Class Arbitrations, Class Actions or Representative Actions.**  Any Dispute arising out of or related to this Agreement is personal to Purchaser and the Company and will be resolved solely through individual arbitration and will not be brought as a class arbitration, class action or any other type of representative proceeding.  There will be no class arbitration or arbitration in which an individual attempts to resolve a Dispute as a representative of another individual or group of individuals.  Further, a Dispute cannot be brought as a class or other type of representative action, whether within or outside of arbitration, or on behalf of any other individual or group of individuals.

(c)     **Notice; Informal Dispute Resolution.**  Each Party will notify the other Party in writing of any arbitrable or small claims Dispute within thirty (30) days of the date it arises, so that the Parties can attempt in good faith to resolve the Dispute informally.  Notice to the Company shall be sent by e-mail to the support team at support@cryptonomos.com.  Notice to Purchaser shall be sent to the email address provided by Purchaser in this Agreement.  Purchaser's notice must include (i) Purchaser's name, postal address, email address and

DocuSign Envelope ID: DFE6F5FE-BCD5-486F-B823-0C618E0BB042

telephone number, (ii) a description in reasonable detail of the nature or basis of the Dispute, and (iii) the specific relief that Purchaser is seeking.  If Purchaser and the Company cannot agree how to resolve the Dispute within thirty (30) days after the date notice is received by the applicable Party, then either Purchaser or the Company may, as appropriate and in accordance with this Section 15, commence an arbitration proceeding or, to the extent specifically provided for in Section 15(a), file a claim in court.

(d) **Process.** Any Dispute shall be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre ("SIAC") in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("SIAC Rules") for the time being in force, which rules are deemed to be incorporated by reference in this clause. The seat of the arbitration shall be Singapore. The Tribunal shall consist of three (3) arbitrator(s). The language of the arbitration shall be English.

16. **Miscellaneous.**

(a) **Entire Agreement.**  This Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter herein and supersedes all prior or contemporaneous discussions, understandings and agreements, whether oral or written, between them relating to the subject matter hereof.

(b) **Amendments.**  This Agreement may not be modified, amended, assigned, supplemented, or rescinded, or any provisions hereof waived, except by a new written agreement executed by both Company and Purchaser.

(c) **Binding Agreement.** This Agreement provides the legally binding terms and conditions for the sale and purchase of the WTT Tokens. By purchasing the WTT Tokens, the Purchaser acknowledges its understanding of and acceptance of the terms and conditions of this Agreement. Purchaser making a purchase on behalf of the legal entity understands and accept this Agreement on behalf of that entity (to which refers to "Purchaser" shall also apply) and warrant that he/she is duly authorized to act on behalf of that legal entity.

(d) **Successors and Assigns.**  Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.  The Company may assign any of its rights and obligations under this Agreement.  No other party to this Agreement may assign, whether voluntarily or by operation of law, any of its rights and obligations under this Agreement, except with the prior written consent of the Company.

(e) **Severability.** In the event any provision of this Agreement is found to be invalid, illegal, or unenforceable the remaining provisions of this Agreement shall nevertheless be binding upon Company and Purchaser with the same effect as thought the void and unenforceable part had been severed and deleted.

(f) **Headings.** The article headings of this Agreement are included for the convenience only and shall not affect the construction or interpretation of this Agreement.

- 6 -

DocuSign Envelope ID: DFE6F5FE-BCD5-486F-B823-0C618E0BB042

about:bla

17. **Execution of Agreement.**

    (a)   **Execution in Counterparts.** This Agreement may be executed in several counterparts, each of which shall be deems an original, and all of which taken together shall constitute one and the same instrument.

    (b)   **Electronic Signature.** This Agreement may be signed electronically via DocuSigned. An electronic signature placed on this Agreement by Purchaser shall be deemed original and valid.

Purchaser

Name: Scott Glasscock

Signature: _Scott Glasscock_
          1E414F5DD4DE4CB...
6/1/2017

Company

By: Michael Savuskan, CEO

Signature: _Michael Savuskan_
          AEA99F1E6370447...
6/1/2017

- 7 -