# EXHIBIT 6

Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
POTOMAC LAW GROUP PLLC
1905 7th Ave. W
Seattle, WA 98119
Telephone: (415) 297-0132
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>Debtor. | Case No. 18-03197 FPC 11<br><br>The Honorable Frederick P. Corbit<br><br>Chapter 11<br><br>**TRUSTEE'S INTERIM REPORT RE INVESTIGATION OF PUBLIC OFFERING** |

Mark D. Waldron, in his official capacity as the Chapter 11 Trustee (the "**Trustee**"), hereby submits an interim report regarding certain aspects of the public offering, also called an Initial Coin Offering, that Giga Watt, Inc. ("**Giga Watt**") conducted in 2017. More than $70 million in claims have been asserted against the estate relating to the public offering.

This report does not attempt to disclose all the facts gleaned to date and is subject to further discovery. After further discovery, subsequent reports will be filed.

TRUSTEE'S INTERIM REPORT -- **1** | P a g e

From May 27, 2017 to July 31, 2017, Giga Watt publicly offered to sell digital assets and tangible assets, in the form of tokens and miners, respectively. As owners of tokens and miners, investors would have the right to distributions from crypto-currency mining pools. In its promotional materials, Giga Watt referred to Giga Watt Pte. Ltd. ("**GW Singapore**") as its "Partner." GW Singapore was organized in Singapore. Dave Carlson has testified that he and his colleagues formed GW Singapore in order to distance their contemplated public offering from the U.S. securities laws, on the advice of counsel. Giga Watt and GW Singapore told the public in their promotional materials that GW Singapore owned Giga Watt's hosting capacity and was now making it available for $1.00 to $1.20 per watt (or token) depending on how early in the offering the purchaser participated. A third company, Cryptonomos Pte. Ltd. ("**Cryptonomos**"), a Singapore company, ran an internet platform from which investors could buy tokens. Daria Generalova a/k/a Dasha Generalova of Cryptonomos helped lead the marketing of the Giga Watt offering.

The promotional materials averred that each token represented the right to access one watt of computer processing power at Giga Watt for fifty years. Token holders were also urged to buy miners from GW Singapore for delivery and set up at Giga Watt. The promotional materials represented that if the watts consumed by purchased miner(s) matched the number of purchased tokens, then the miner and token holder would not to have pay a monthly "rental" fee in order to "mine" at Giga Watt. Only the monthly cost of electricity and maintenance would be due in order to "mine" at Giga Watt. The promotional materials stated that tokens could

also be "rented out" to others who could then use them to mine at Giga Watt.[1] Only token holders could buy miners. As Giga Watt and GW Singapore stated, "[I]t could be compared to membership in an elite private mining club."

Giga Watt, GW Singapore and Cryptonomos have overlapping sets of directors, including David Carlson, Leonid Markin, Eduard Khaptakhaev and Andrey Kuzenny. Andrey Kuzenny, who signed the petition initiating this case, as Giga Watt's Secretary, is also Cryptonomos' Director of Investor Relations. GW Singapore and Cryptonomos shared an address, which the Trustee has been told is fictitious. Mail sent to this address has been returned without a forwarding address. In March 2017, Cryptonomos retained the law firm, Perkins Coie LLP ("**Perkins Coie**"). In May 2017, just days before the launch of the public offering, GW Singapore retained Perkins Coie. Another attorney, Katrina Arden, also represented GW Singapore.[2] Giga Watt apparently conducted the public offering without legal counsel.[3]

---

[1] In August 2018, Giga Watt reported to the SEC that the tokens also traded on various exchanges.

[2] Katrina Arden is also known as Katrina Grant and Ekaterina Kovalyova.

[3] Shortly after the Giga Watt public offering ended, Cryptonomos' CEO, Nikolay Evdokimov, and Generalova moved on to another public offering, under the name of ICOBox, Inc. It bore many of the same hallmarks as the Giga Watt offering. The SEC sued Evdokimov for securities violations relating to the ICOBox offering. On March 5, 2020, the SEC obtained a $16 million default judgment against Evdokimov. *See SEC v. ICOBox and Nikolay Evdokimov*, Case No. 2:19-cv-08066, U.S. District Court, C.D. CA, Judgment [Doc 17]. The ICOBox offering, which allegedly raised $650 million, triggered two other cases: *Anaykin et al v. Evdokimov, Generalova et al.*, Case No. 2:19-cv-08165, filed in the U.S. District Court, Central District of California; and *Morozov v. Evdokimov, Generalova, et al.*, Case No. 1:18-cv-03421, filed in the U.S. District Court, Southern District of New York.

TRUSTEE'S INTERIM REPORT -- **3** | P a g e

The Trustee is informed that as of August 4, 2017, four days after Giga Watt's public offering ended, Perkins Coie held in escrow $22,351,937.58 in token sale proceeds, representing 20,154,783 tokens sold to the public. According to the promotional materials, token sale proceeds would not be released from escrow until Giga Watt could provide the power that the purchased token (one watt of power per token) was supposed to represent. Based on records available to the Trustee, Giga Watt never had sufficient power to "back" these escrow releases, as set forth in the following chart.



In the above chart, the blue bars represent Giga Watt's power capacity as reported to the SEC in 2018 and based on the Trustee's knowledge of Giga Watt's

TRUSTEE'S INTERIM REPORT -- **4** | P a g e

operations.[4] The orange line represents disbursements from the escrow based on information indirectly obtained from Katrina Arden.[5] As the chart shows, as of the public offering's close, which was July 31, 2017, Giga Watt had 2.25 MW of power capacity. Therefore, $2.25 million could be released from escrow, according to the promotional materials.[6] Yet, on August 7, 2017, according to the records provided by Katrina Arden, the law firm transferred $6.3 million from the escrow to GW Singapore. As the chart further shows, not one disbursement from the escrow complied with the public offering representations. The Trustee is initiating formal discovery in order to understand this discrepancy.

By the Fall of 2017, at least one significant investor, StormsMedia, LLC, demanded the return of approximately $950,000 that it had paid for WTT tokens. StormsMedia further demanded that the escrow funds be frozen until the dispute

---

[4] This chart does not include power generated from two pods at the Moses Lake facility: Pod 1, which Allrise Financial Group operated for its own benefit; and Pod 8, which Eco Diversified Holdings, Inc. operated for its own benefit. This chart also omits power generated at the facilities in George, Washington and in Ephrata, Washington. The George and Ephrata facilities were only temporarily operated for a period of time in 2018. Upon information and belief, Pod 1 was set up in November 2017 and ran 1.5 MW and Pod 8 was set up in April 2018 and ran 1.5 MW. The George and Ephrata facilities ran from 1.0 MW to 2 MW, in the aggregate.

[5] The Trustee wishes to verify the escrow disbursement numbers.

[6] The first 9,130,677 tokens were sold for $1.00, based on representations made to the SEC. Therefore, Giga Watt would need 9,130,677 MW of power in order for Perkins Coie to release $9,1310,677. Thereafter, the ratio was 1 token/$1.05, 1 token/$1.10 and 1 token/$1.20.

TRUSTEE'S INTERIM REPORT -- **5** | P a g e

was resolved.[7] After the dispute was resolved, with GW Singapore agreeing to rescind the token purchase, Giga Watt paid the $950,000 in settlement proceeds. It does not appear, based on currently available information, that this settlement was paid from the escrow. Instead, Giga Watt paid it directly. An additional $849,920.75 in token sale refunds may also have been refunded from escrow.

On March 19, 2018, plaintiff Mark Moss filed a securities action against Giga Watt and GW Singapore under the caption, *Moss v. Giga Watt, Inc. et al.*, No. 2:18-cv-00100-SMJ (E.D. Wash.), alleging individual claims of an unregistered offering of securities under the Securities Act of 1933 and the Washington Securities Act and a claim for rescission of contract. Counsel for Mark Moss demanded that the escrow be frozen pending resolution of the dispute. However, by then, the escrow proceeds had been distributed.

On March 20, 2018, plaintiff Raymond Balestra filed a securities class action against Giga Watt, GW Singapore, Cryptonomos, and then Giga Watt CEO Dave Carlson under the caption *Balestra v. Giga Watt, Inc., et al.,* No. 2:18-cv-00103-SMJ (E.D. Wash). The complaint alleges a claim of an unregistered offering of securities against all defendants under section 12(a)(1) and a control person claim against Dave Carlson under section 15(a) of the Securities Act of 1933 on behalf of a putative class of plaintiffs who purchased Giga Watt tokens

---

[7] After failed pre-litigation negotiations, StormsMedia filed a suit under the caption *StormsMedia, LLC v. Giga Watt, Inc. et al.*, No. 2:17-cv-00438-SMJ (E.D. Wash.).The complaint alleged claims of an unregistered offering of securities under sections 5(a) and (c) of the Securities Act of 1933 and of rescission of contract. Pursuant to the settlement, the court dismissed the action on January 19, 2018.

TRUSTEE'S INTERIM REPORT -- **6** | P a g e

during the Giga Watt public offering. On June 28, 2018, the court appointed Alex McVicker as lead plaintiff. By stipulation of the parties, on July 3, 2018, the court consolidated this case with the action titled *Moss v. Giga Watt, Inc. et al.* described above. The plaintiffs in these two cases have filed a $30 million claim against Giga Watt.[8] The Trustee understands that by the time this complaint was filed, there was no money left in escrow.

On or before April 2018, the Securities and Exchange Commission opened a formal investigation against Giga Watt.[9] On October 2, 2018, plaintiff Refael Sofair filed a class action against Giga Watt, GW Singapore and Dave Carlson under the caption *Refael Sofair v. Giga Watt, Inc., et al.*, No. 2:18-cv-000308-SMJ (E.D. Wash.). The complaint alleges a series of claims against all defendants arising from the public offering, including a claim under sections 1962(c)-(d) of the Racketeer Influenced and Corrupt Organizations Act and under the Washington Consumer Protection Act. The complaint also alleged breach of the implied covenant of good faith and fair dealing against Giga Watt and GW Singapore. Sefair has filed a claim against the estate in an unliquidated amount.[10]

Claims filed against the estate arising from the public offering are not less than $71 million. The Trustee has requested additional information from Perkins Coie regarding the disbursements from the escrow. That request has been declined

---

[8] *See* Claim No. 351, filed in this case. The litigation has been stayed pursuant to 11 U.S.C. § 362.

[9] In April 2019, the SEC closed the investigation, without taking action, but without exonerating Giga Watt.

[10] *See* Claim No. 298. The litigation has been stayed pursuant to 11 U.S.C. § 362.

TRUSTEE'S INTERIM REPORT -- 7 | Page

18-03197-FPC11    Doc 631    Filed 07/03/20    Entered 07/03/20 17:33:05    Pg 7 of 8

20-80031-FPC    Doc 43-6    Filed 02/26/21    Entered 02/26/21 16:12:41    Pg 8 of 9

and the Trustee is preparing a Rule 2004 motion with respect to the escrow and related agreements. The Trustee will supplement this report when appropriate.

Dated this 3rd day of July 2020.

POTOMAC LAW GROUP PLLC

/s/ Pamela M. Egan
Pamela M. Egan
Attorneys for Mark D. Waldron, as Chapter 11 Trustee

TRUSTEE'S INTERIM REPORT -- **8** | P a g e

18-03197-FPC11    Doc 631    Filed 07/03/20    Entered 07/03/20 17:33:05    Pg 8 of 8

20-80031-FPC    Doc 43-6    Filed 02/26/21    Entered 02/26/21 16:12:41    Pg 9 of 9