1   Pamela M. Egan, WSBA No. 54736
    POTOMAC LAW GROUP PLLC
2   1905 7th Ave. W
    Seattle, WA 98119
3   Telephone: (415) 297-0132
    Email: pegan@potomaclaw.com
4     *Attorneys for Mark D. Waldron, Chapter 7 Trustee*

5

6                **UNITED STATES BANKRUPTCY COURT**
                  **EASTERN DISTRICT OF WASHINGTON**
7

8   In re:                              | Case No. 2:18-bk-3197

9   GIGA WATT, Inc., a Washington       | The Honorable Frederick P. Corbit
    corporation,
10                     Debtor.           | Chapter 7

11  MARK D. WALDRON, as Chapter 7       | Case No. 2:20-ap-80031
    Trustee,
12                                       | **CHAPTER 7 TRUSTEE'S**
                    Plaintiff,           | **OBJECTION TO PERKINS COIE**
13         vs.                           | **AND NESS' MOTION TO**
                                         | **COMPEL ARBITRATION AND**
14  PERKINS COIE LLP, a Washington       | **STAY**
    limited liability partnership, *et al.*,
15
                    Defendants,
16
                    - and -
17
    THE GIGA WATT PROJECT, a
18  partnership,
19                  Nominal Defendant.

20

21

22

23  Chapter 7 Trustee's Objection to
    Perkins' and Ness' Motion to
24  Compel Arbitration and Stay

25

# TABLE OF CONTENTS

I.   ARGUMENT SUMMARY ............................................................1

II.  ARGUMENT ....................................................................6

    A.   THE ARBITRATION CLAUSE HAS A FATAL CONTRACT FORMATION DEFECT .6

    B.   THE GLASSCOCK TPA IS AN UNENFORCEABLE INFINITE ARBITRATION CLAUSE ......................................................................8

    C.   EQUITABLE ESTOPPEL DOES NOT APPLY ........................................9

    D.   THE MOTION DOES NOT MEET THE FOURTH ELEMENT OF THE FAA – RELATION TO SINGAPORE ................................................... 11

    E.   THE BANKRUPTCY COURT HAS DISCRETION TO DENY THE MOTION .......... 12

        1.   The Adversary Proceeding Is Statutorily Core ...................................... 16

        2.   An Inherent Conflict Exists Between Arbitration of this Adversary Proceeding and the Purposes of the Bankruptcy Code................................ 19

III. RESERVATIONS OF RIGHT ................................................. 20

IV.  CONCLUSION................................................................. 20

Chapter 7 Trustee's Objection to
Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page i

C<small>ASES</small>

*A*ckerman v. Eber (In re Eber), 687 F.3d 1123 (9th Cir. 2012)....... 5, 12, 13, 14, 15

Cal. Canners and Growers v. Military Distributors of Va., Inc. (In re Cal. Canners and Growers), 62 B.R. 18 (BAP 9th Cir. 1986) ................................................. 18

Commercial Financial Services, Inc. v. Jones (In re Commercial Financial Services), Inc., 251 B.R. 397 (Bankr. N.D. Okla. 2000).................................. 17

Executive Benefits Insurance Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553 (9th Cir. 2012), aff'd sub nom. Exec. Benefits Ins. Agency v. Arkison, 573 U.S. 25, 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014)................................................................................. 15

Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847 (2010) ............... 1, 7

In re Madigan, 270 B.R. 749 (B.A.P. 9th Cir. 2001) ........................................... 18

In re Thorpe Insulation Co., 671 F.3d 1011 (9th Cir. 2012) ..................... 14, 15, 16

In re White Mountain Mining Co., L.L.C., 403 F.3d 164 (4th Cir. 2005)...... 16, 17

Kindred Nursing Centers Ltd. P'ship v. Clark, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017)................................................................................9

Kirkland v. Rund (In re EPD Inv. Co., LLC), 821 F.3d 1146 (9th Cir. 2016) .................................................... 15, 16

McFarlane v. Altice USA, Inc. , No. 20-CV-1297 (JMF), 2021 WL 860584 (S.D.N.Y. Mar. 8, 2021) ..................................................................6

Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze), 434 F.3d 222 (3d Cir. 2006) ........................................................... 14

Chapter 7 Trustee's Objection to
Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page ii

20-80031-FPC    Doc 44    Filed 03/12/21    Entered 03/12/21 21:53:28    Pg 3 of 25

Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392 (9th Cir. 1996)........... 18

Prima Paint v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18
   L.Ed.2d 1270 (1967) ..................................................................................6

Revitch v. DIRECTV, LLC, 977 F.3d 713 (9th Cir. 2020)................................ 2, 9

Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220,
   107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)......................................... 12

Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In re Iridium
   Operating LLC), 285 B.R. 822 (Bankr. S.D.N.Y. 2002)................................. 17

Stern v. Marshall, 564 U.S. 462, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011)....... 15

The Whiting–Turner Contracting Co. v. Elec. Mach. Enter., Inc. (In re Elec.
   Mach. Enter., Inc.), 479 F.3d 791 (11th Cir. 2007) ........................................... 14

Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,
   489 U.S. 468 (1989)...................................................................................7

<u>STATUTES</u>

11 U.S.C. § 553................................................................................ 16

28 U.S.C. § 157................................................................................ 18

<u>SECONDARY AUTHORITIES</u>

Collier on Bankruptcy,¶ 3.02[2] (15th ed. rev.2005) ........................................... 16

David Horton, Infinite Arbitration Clauses,
   168 U. Pa. L. Rev. 633, 688 (2020) .............................................. 1, 9

Chapter 7 Trustee's Objection to
Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page iii

1      Mark D. Waldron, in his capacity as the duly-appointed Chapter 7 Trustee,

2  by and through his attorneys, hereby submits the *Chapter 7 Trustee's Objection to*

3  *Perkins' and Ness' Motion to Compel Arbitration and Stay* (the "Objection").

4                      **I.**        **ARGUMENT SUMMARY**

5      The arbitration clause (the "Email Token Purchase Agreement" or "Email

6  TPA") on which Perkins Coie LLP and Lowell Ness (collectively, "Perkins Coie")

7  rely is not enforceable because there is insufficient evidence that anyone entered

8  into it. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2858

9  (2010) (holding that arbitration not mandatory when there is a defect in contract

10 formation). The Email TPA is not included in the four pre-petition lawsuits filed

11 against Giga Watt, Inc. ("Giga Watt") and Giga Watt Pte. Ltd. ("GW Singapore").

12 It is not included in the proofs of claim filed with this Court. It is not signed. And

13 the email cover sheet does not say it is final.

14     The one executed token purchase agreement (the "Glasscock TPA") has an

15 arbitration clause that scholars have dubbed an "infinite arbitration clause."[1] *See*

16 David Horton, Infinite Arbitration Clauses, 168 U. Pa. L. Rev. 633, 688 (2020).

17 An infinite arbitration clause purports to cover any dispute between parties to a

18 contract, without subject or temporal limitation. In the Ninth Circuit, provisions

19 that lead to "hypothetically absurd results" are unenforceable and courts will not

20 compel arbitration based on them – even if the arbitration clause would not

21       _____

22 [1] *See* Cromwell Declaration, Exh. 1, AP ECF No. 43-1.

23 Chapter 7 Trustee's Objection to
   Perkins' and Ness' Motion to

24 Compel Arbitration and Stay – Page 1

25

necessarily be absurd under the actual facts of the case. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 718 (9th Cir. 2020). Under the infinite arbitration clause in the Glasscock TPA, if GW Singapore ran over Glasscock with a truck six decades after he had bought some tokens, Glasscock would have to arbitrate the personal injury claim. This is absurd and, therefore, the clause is unenforceable.

Regarding Perkins Coie's defense of equitable estoppel, equitable estoppel prevents one party from cherry picking a contract. If one has a dispute under a contract, one has to take all the contract's terms. However, the Trustee is not enforcing the Email TPA against Perkins Coie. He is enforcing the escrow against Perkins Coie.

Perkins Coie chose not to put the terms of the Escrow in writing. Therefore, the Trustee is relying on an array of evidence showing that Perkins Coie agreed to hold the money in trust until Giga Watt built its facilities. For example, Giga Watt

*[Continues on next page.]*

Chapter 7 Trustee's Objection to
Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page 2

1  produced to the Securities and Exchange Commission the following picture from

2  Cryptonomos[2] Pte. Ltd.'s website:

3

4

**MAJOR PARTNERS, ADVISORS AND ESCROW**




PERKINS COIE
COUNSEL TO GREAT COMPANIES

**TRANSFORM GROUP**

NEW ALCHEMY

Legal consulting and Escrow
Internationally acclaimed law firm with vast experience in the field of blockchain and cryptocurrencies.

Public communications
The most prominent blockchain PR firm. Conducted campaigns for more than 20 successful ICOs and token launches.

Smart contract audit
One of the most experienced companies on the market specializing in smart contract development and audit.


Lowell D. Ness
Partner

Michael Terpin
CEO

Paige Freeman
CMO/Director of Sales

All funds raised through the WTT Token Launch are put in fiat escrow (funds received in cryptocurrencies are first converted into USD) Funds are released from escrow in batches only after the underlying capacities are built and relevant tokens are issued and distributed.


STABLE by iCORating

16

17       The Trustee is also relying on (i) statements by David Carlson to the

18  Trustee, (ii) written legal analyses of Katrina Arden, who was counsel to the Giga

19  Watt Project, (iii) statements by token holders as to their understanding, (iv) the

20  _____

21  [2] Cryptonomos structured the GW ICO and ran its sophisticated marketing

22  campaign. Andrey Kuzenny and Nikolay Evdokimov founded Cryptonomos.

23  Chapter 7 Trustee's Objection to
    Perkins' and Ness' Motion to
24  Compel Arbitration and Stay – Page 3

25

White Paper, which is not a contract, but is evidence of the parties' intent, (v) the Glasscock TPA, which is executed, and which incorporates the terms of the White Paper, and (vi) emails to token holders copied to Perkins Coie in which the trust account is referred to as the escrow and Perkins Coie as the trustee. In summary, despite Ness' efforts to hide the escrow's terms, multiple pieces of evidence support the Trustee's allegation that Perkins Coie had a fiduciary duty to keep GW Singapore from accessing the escrow until Giga Watt reached construction milestones. An agreement that sheds light on that issue is not colorably invoked as the case anchor, pulling the entire proceeding into arbitration in Singapore.

Further, the motion does not meet the fourth element of the FAA, which is that a Singapore citizen be a party to the dispute or that there be a relation to Singapore. GW Singapore's formation is suspicious. In its registration papers, a Russian auto mechanic living in rural Russia is listed as the sole director, officer, and member of GW Singapore. But his name, Sergey Pashentsev, appears nowhere in this case. Instead, Marina Mikhaylyuta (email xxx@*moon-mist.ru*) and Andrey Kuzenny acted for GW Singapore. They in turn are not listed in the registration papers.

In addition, GW Singapore has ignored this adversary proceeding and this case, despite notice and requests to cooperate. Andrey Kuzenny has invoked the Fifth Amendment privilege against self-incrimination. The Court is familiar with his post-petition conduct, including his effort to obtain a $500,000 loan on usurious terms on an emergency basis on a day when (1) he knew the Hon. F.P.

Chapter 7 Trustee's Objection to
Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page 4

1 Corbit would be out of the country and (2) the Debtor's attorney had been in

2 Court the very day before and had not said a word about the imminent emergency

3 motion to obtain credit. Andrey Kuzenny also promised that if a Chapter 11

4 Trustee were appointed, he would not cooperate with him or her, despite the fact

5 that Kuzenny signed the petition commencing this case and was, therefore,

6 obligated to cooperate. Based on the foregoing, GW Singapore's status as a

7 Singapore company is not *prima facie* valid.

8      Finally, arbitration is not mandatory in bankruptcy if it would inherently

9 conflict with the Bankruptcy Code. *Ackerman v. Eber (In re Eber)*, 687 F.3d 1123,

10 1129 (9th Cir. 2012). The Court first looks to see if there is an inherent conflict. If

11 so, then the Court has discretion on whether to compel arbitration. *Id.*

12      A key purpose of bankruptcy is the centralization of disputes in one court.

13 In this case, hundreds of token holders have filed proofs of claim arising from the

14 GW ICO. Four class action lawsuits were commenced against the Debtor pre-

15 petition. Token holders have commenced a class action case in the District Court

16 that copies in large part this Adversary Proceeding and that is related to this case

17 because it would adjust their claims in this case.

18      Arbitration would keep the Bankruptcy Court from serving its intended

19 purpose of resolving claims against the Debtor in one centralized proceeding. It

20 would reduce the Court to administrative hold, while private arbitrators in

21 Singapore decided how much Giga Watt owed Perkins Coie as a result of Ness'

22 fraud allegations. Meanwhile, the token holders may also be compelled to

23 Chapter 7 Trustee's Objection to
24 Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page 5

25

1    arbitrate, in which event, their claims could be fractured by a class action waiver

2    that Perkins Coie will likely assert.

3         The bankruptcy process of centralized proceedings would be splintered and

4    the Bankruptcy Court would not serve its purpose under the Code. The Trustee

5    asks that the Court exercise its discretion and deny the Motion.

6         In final summary, arbitration cannot be compelled because (1) the

7    arbitration agreement has a fatal contract formation defect and (2) the Court's

8    discretion is available to keep Perkins Coie from causing the parties to lose one of

9    the key features of bankruptcy: centralization and streamlining claims against and

10   related to the Debtor.

11                              **II.    ARGUMENT**

12        As a preliminary matter, the Court is permitted to consider materials beyond

13   the four corners of the pleadings in deciding Perkins Coie's motion to compel

14   arbitration. *See, e.g., McFarlane v. Altice USA, Inc.*, No. 20-CV-1297 (JMF),

15   2021 WL 860584, at *1 (S.D.N.Y. Mar. 8, 2021) (citation omitted). To the extent

16   that the evidence is in dispute, the Trustee would request an evidentiary hearing.

17        **A.    The Arbitration Clause Has a Fatal Contract Formation Defect**

18        Under the separability doctrine, federal courts treat an arbitration clause as

19   if it were an agreement contained within an agreement. Attacks on the container

20   agreement are not sufficient to defeat the arbitration clause. These attacks on the

21   container agreement have to be arbitrated. *See Prima Paint v. Flood & Conklin*

22   *Mfg. C*o., 388 U.S. 395, 402, 87 S.Ct. 1801, 1805, 18 L.Ed.2d 1270 (1967)

23   Chapter 7 Trustee's Objection to
24   Perkins' and Ness' Motion to
     Compel Arbitration and Stay – Page 6

25

1  ("[A]rbitration clauses as a matter of federal law are 'separable' from the contracts

2  in which they are embedded, and ... where no claim is made that fraud was

3  directed to the arbitration clause itself, a broad arbitration clause will be held to

4  encompass arbitration of the claim that the contract itself was induced by fraud.").

5       However, the separability doctrine does not preclude the federal courts from

6  deciding whether an arbitration agreement was actually formed because the FAA

7  "make[s] arbitration agreements as enforceable as other contracts, *but not more*

8  *so*." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S.

9  468, 478 (1989) (emphasis added) (internal quotation marks omitted). Further,

10  "the FAA does not require parties to arbitrate when they have not agreed to do

11  so." *Id. Accord Granite Rock, supra,* 130 S. Ct. at 2858 (opining that judges must

12  decide issues that pertain to the "formation of the parties' arbitration agreement").

13       Perkins Coie provides no evidence of an express or implied agreement to

14  arbitrate. The email cited by Perkins Coie did not say that the letter was final. It

15  said, attached is "the *final version of the White Paper* and *a* Token Purchase

16  Agreement that *would be*" placed on the website." Motion, 5:18-20, AP ECF No.

17  40. (Emphasis added.) A Token Purchase Agreement is not the same as the final

18  version of the Token Purchase Agreement. And "would be" is conditional.

19  Further, there is no evidence that any token holder bought tokens pursuant to this

20  email agreement. No one attached such an agreement to any of the four

21

22

23  Chapter 7 Trustee's Objection to
24  Perkins' and Ness' Motion to
    Compel Arbitration and Stay – Page 7

25

complaints filed against Giga Watt and GW Singapore arising from the ICO.[3] It is not attached to any proofs of claims. It is not signed.

Therefore, the Motion does not meet the first mandatory element of arbitration, an enforceable arbitration agreement, and the Motion should be denied on this ground alone.

### B. The Glasscock TPA Is An Unenforceable Infinite Arbitration Clause

The parties are aware of the Glasscock TPA that is fully executed. However, its arbitration clause is an infinite arbitration clause that is clearly unenforceable. Specifically, it provides, "Purchase and the Company will arbitrate Disputes through binding arbitration." Cromwell Decl., Exh. 1, para. 15(a), AP ECF No. 43-1 (p. 7 of 9). The word Disputes is defined as "any disputes, claims, suits, actions, causes of action, demands or proceedings (collectively, 'Disputes')." *Id.* The only exception is for small claims and IP injunctive or equitable relief. *Id.*

_____

[3] *See StormsMedia, LLC v. Giga Watt, Inc.*, No. 2:17-cv-00438-SMJ, E.D. Wash., filed December 28, 2017; *Moss v. Giga Watt, Inc.,* No. 2:18-cv-0010-SMJ, E.D. Wash, filed March 19, 2018; *Balestra v. Giga Watt, Inc.*, No. 2:18-cv-00103-SMJ, E.D. Wash, filed March 20, 2018; *Sofair v. Giga Watt*, No. 2:18-cv-00308-SMJ, E.D. Wash., filed October 2, 2018.

Chapter 7 Trustee's Objection to
Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page 8

1   Courts have found that infinity arbitration clauses such as the one in the

2   Glasscock TPA lead to absurd results and are unenforceable. *See e.g., McFarlane*

3   *v. Altice USA, Inc.*, No. 20-CV-1297 (JMF), 2021 WL 860584, at *8 (S.D.N.Y.

4   Mar. 8, 2021) (discussing cases and authorities); *Revitch v. DIRECTV, LLC*, 977

5   F.3d 713, 718 (9th Cir. 2020) (finding that clause requiring arbitration of *any*

6   dispute would lead to absurd results and could not have been agreed to; arbitration

7   declined). Further, applying this analysis to an infinity clause does not "single[ ]

8   out" arbitration for "disfavored treatment." *Kindred Nursing Centers Ltd. P'ship v.*

9   *Clark*, 137 S. Ct. 1421, 1425, 197 L. Ed. 2d 806 (2017). To the contrary, it would

10  apply equally to an "infinite forum selection clause" or an "infinite liability

11  limitation clause." *McFarlane, supra,* 2021 WL 860584, at *8. *See also* David

12  Horton, Infinite Arbitration Clauses, 168 U. Pa. L. Rev. 633, 688 (2020).

13      The "any dispute" arbitration clause in the Glasscock TPA would lead to an

14  absurd result. If a GW Singapore truck ran over Glasscock, Glasscock would have

15  to arbitrate the personal injury claim, regardless of time (decades) and regardless

16  of whether Glasscock's tokens had expired. (They were 50-year tokens.)

17      Therefore, the signed Glasscock TPA does not include an enforceable

18  arbitration clause.

19  ## C.    Equitable Estoppel Does Not Apply

20      Perkins Coie argues that the robust equitable estoppel doctrine under the

21  FAA (1) allows even non-signatories to enforce an arbitration provision in an

22  agreement that is being enforced against them and (2) prevents parties from cherry

23  Chapter 7 Trustee's Objection to
24  Perkins' and Ness' Motion to
    Compel Arbitration and Stay – Page 9

25

1    picking an agreement, asking judges to enforce some terms of an agreement while

2    seeking to avoid its arbitration provision. However, in this case, there are no

3    signatories to the Email TPA and the Trustee is not asking the Court to enforce the

4    token purchase agreements. He is asking the Court to enforce Giga Watt's

5    beneficial rights under the escrow agreement – which is different.

6          The unsigned Email TPA would have been between GW Singapore and a

7    token holder. In contrast, the escrow agreement was between GW Singapore and

8    Perkins Coie. Giga Watt is a beneficiary of the trust through its partnership with

9    GW Singapore in the Giga Watt Project. All the evidence points to an intent to

10   protect Giga Watt from liability in the event that it fell behind its construction

11   schedule, including:

12          (1) the website, set forth *infra* in the Argument Summary;

13          (2) the White Paper which was the key promotional material for the ICO;

14   the SEC uses white papers to analyze the structure and stated terms of public

15   offerings;

16          (3) token purchase agreements which incorporated the White Paper's terms;

17          (4) Mr. Carlson's statements to the Trustee that Perkins Coie held the token

18   proceeds pending construction;

19          (5) the assertions and testimony of multiple token holders;

20          (6)  statements by Giga Watt and Katrina Arden to the SEC that the release

21   of token sale proceeds from the ICO escrow was conditioned on Giga Watt's

22   construction progress; and

23

Chapter 7 Trustee's Objection to
24 Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page 10

25

1    (7) emails between Andrey Kuzenny and token holders on which Perkins

2  Coie was copied in which he referred to the IOLTA Trust account as the "escrow"

3  and to Perkins Coie as "the trustee."

4    The foregoing establishes that the Trustee is not suing on the Email TPA.

5  But, the Email TPA is relevant to the terms of the trust, obviously. Including the

6  term in a token purchase agreement is a sign that the parties all agreed that the

7  money would be held pending construction.

8    In light of the foregoing, equitable estoppel cannot compel arbitration of the

9  Verified Complaint.

10   **D.    The Motion Does Not Meet the Fourth Element of the FAA –**

11         **Relation to Singapore**

12   GW Singapore's registration in Singapore is not *prima facie* valid. Giga

13  Watt sent registration papers regarding GW Singapore to the SEC. Those papers

14  list a Russian auto mechanic living in rural Russia as GW Singapore's sole

15  director, member and officer. His name is Sergey Pashentsev. His name appears

16  nowhere in this case other than in those papers. Further, Marina Mikhaylyuta, who

17  said she was a director of GW Singapore, refuses to respond to email sent to her

18  address, xxxx@***moon-mist.ru***, and the address for GW Singapore is fake. It risks

19  insulting the Court's intelligence to accept this registration at face value.

20   Based on these facts, this Court is not compelled to recognize GW

21  Singapore's citizenship in Singapore and the Motion does not meet the fourth

22  element of the FAA test.

23  Chapter 7 Trustee's Objection to
    Perkins' and Ness' Motion to
24  Compel Arbitration and Stay – Page 11

25

**E. The Bankruptcy Court Has Discretion to Deny the Motion**

When the Court is asked to arbitrate a set of statutorily core issues, then it has discretion to deny a request to compel arbitration if it finds an inherent conflict between arbitration and the purposes of the Bankruptcy Code. The Court's identification of an inherent conflict is review de novo. Its decision on whether to compel arbitration based on the inherent conflict is reviewed for abuse of discretion. *Eber*, *supra*, 687 F.3d at 1129 (quoting *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)).

The Supreme Court in *McMahon* created the framework for reconciling the FAA's mandate that courts defer to valid arbitration agreements with the arbitrability of claims arising from other federal statutes – like the Bankruptcy Code. *McMahon*, *supra,* 482 U.S. 220. The questions specifically addressed in *McMahon* were whether the 1934 Act and the Racketeer Influenced Corrupt Organization Act (RICO) superseded the FAA's direct command to enforce the parties' arbitration agreements. The Supreme Court, examining the arbitrability of the McMahons' federal statutory claims, first noted that the FAA "standing alone" mandated enforcement of an agreement to arbitrate federal statutory claims. *McMahon*, supra, 482 U.S. at 226, 107 S. Ct. at 2337. But this mandate "may be overridden by a contrary congressional command." *Id.* The Court discerned three ways a contrary congressional command might be shown: (1) the text of the non-FAA statute; (2) the legislative history of the non-FAA statute; or (3) an "inherent conflict" between the purpose of the non-FAA statute and arbitration. That is, "an

Chapter 7 Trustee's Objection to
Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page 12

1  intention discernable from the text, history, or purpose of the statute." *Id.*, 482

2  U.S. at 227, 107 S. Ct. at 2337–38. "The party that is opposing arbitration has the

3  burden of proving 'that Congress intended to preclude a waiver of judicial

4  remedies for [the particular claim] at issue.'" *Ackerman v. Eber (In re Eber)*, 687

5  F.3d 1123, 1129 (9th Cir. 2012) (quoting *McMahon*, 482 U.S. at 227).

6       Courts applying the *McMahon* factors to the Bankruptcy Code have found

7  no evidence in the text of the Bankruptcy Code or in the legislative history that

8  Congress intended to create an exception to the FAA in the Bankruptcy Code. *See*

9  *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1020 (9th Cir. 2012) ("Neither the

10  text nor the legislative history of the Bankruptcy Code reflects a congressional

11  intent to preclude arbitration in the bankruptcy setting."); *The Whiting–Turner*

12  *Contracting Co. v. Elec. Mach. Enter., Inc. (In re Elec. Mach. Enter., Inc.),* 479

13  F.3d 791, 796 (11th Cir. 2007) (same); *Mintze v. Am. Gen. Fin. Servs., Inc. (In re*

14  *Mintze),* 434 F.3d 222, 231 (3d Cir. 2006) (same). Therefore, the relevant inquiry

15  becomes "whether there is an inherent conflict between arbitration and the

16  underlying purposes of the Bankruptcy Code." *Thorpe Insulation, supra,* 671 F.3d

17  at 1020. *See also Eber, supra,* 687 F.3d at 1129 (holding that arbitration is not

18  mandatory in bankruptcy if it would inherently conflict with the Bankruptcy

19  Code).

20       The *Thorpe Insulation* Court also held that the core versus non-core

21  distinction made by other circuit courts "though relevant, is not alone

22  dispositive," and explained that it would "join our sister circuits in holding that,

23  Chapter 7 Trustee's Objection to
24  Perkins' and Ness' Motion to
   Compel Arbitration and Stay – Page 13
25

1    even in a core proceeding, the *McMahon* standard must be met—that is, a

2    bankruptcy court has discretion to decline to enforce an otherwise applicable

3    arbitration provision only if arbitration would conflict with the underlying

4    purposes of the Bankruptcy Code." *Thorpe Insulation, supra,* 671 F.3d. at 1021

5    (citations omitted). The *Thorpe Insulation* Court went on to adopt the bankruptcy

6    court's rationale that the resolution of the insurance company's claim was a core

7    proceeding, regardless of the fact that the insurance company was attempting to

8    characterize it as a "state law breach of contract claim," because ultimately the

9    insurance company had filed a claim, the allowance or disallowance of that claim

10   was a core proceeding. *Thorpe Insulation, supra,* 671 F.3d. at 1021.

11        The bankruptcy court has discretion to deny a motion to compel when the

12   nature of the allegations are such their adjudication in any forum other than a

13   bankruptcy court would conflict with fundamental bankruptcy policy. *Thorpe*

14   *Insulation, supra,* 671 F.3d at 1022. "When a bankruptcy court considers

15   conflicting policies . . ., we acknowledge its exercise of discretion and defer to its

16   determinations that arbitration will jeopardize a core bankruptcy proceeding."

17   *Kirkland v. Rund* (*In re EPD Inv. Co., LLC*), 821 F.3d 1146, 1150 (9th Cir. 2016)

18   (quoting *Eber, supra,,* 687 F.3d at 1131).

19        One does not have to establish that the matters at issue are constitutionally

20   core in order to trigger the Court's discretion. It is sufficient if the matter is

21   statutorily core. *See Executive Benefits Insurance Agency v. Arkison* (*In re*

22   *Bellingham Ins. Agency, Inc.*), 702 F.3d 553, 566 (9th Cir. 2012), *aff'd sub nom.*

23   Chapter 7 Trustee's Objection to
24   Perkins' and Ness' Motion to
     Compel Arbitration and Stay – Page 14

25

*Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014) ("Only the power to enter final judgment is abrogated" with respect to a claim that is statutorily core but not constitutionally core, like the debtor's counterclaim in *Stern*).[4] Thus, "*Stern* does not affect the statutory designation of matters as core for the purpose of determining whether the bankruptcy court has discretion to deny arbitration because that decision is not itself a final judgment." *EPD*, 821 F.3d at 1151. In refusing to compel arbitration of a fraudulent transfer claim, which was statutorily but not constitutionally core, the Ninth Circuit stated, "The Trustee's fraudulent conveyance claim retains its statutory core label. As we have explained, when deciding motions to compel arbitration, nothing more is required." *Id.*

In *Thorpe Insulation,* a creditor alleged that the debtor's conduct in an asbestos bankruptcy case gave rise to a claim for breach of contract. *Id.*, 671 F.3d 1011. It moved to compel arbitration based on an arbitration clause in the contract. The Court held that the debtor's conduct in the case was core. Then, it looked to see whether arbitrating would raise an inherent conflict with the Bankruptcy Code's purposes, stating, "the purposes of the Bankruptcy Code include '[c]entralization of disputes concerning a debtor's legal obligations' and 'protect[ing] creditors and reorganizing debtors from piecemeal litigation.'" *Thorpe Insulation Co.*, *supra,* 671 F.3d at 1022-23 (quoting *In re White Mountain*

_____

[4]*Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011).

Chapter 7 Trustee's Objection to
Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page 15

1    *Mining Co.*, L.L.C., 403 F.3d 164, 170 (4th Cir. 2005) and *Matter of Nat'l*

2    *Gypsum Co.,* 118 F.3d 1056, 1069 (5th Cir. 1997)). Other Circuits agree. *See e.g.,*

3    *White Mountain*:

> "[T]he very purpose of bankruptcy is to modify the rights of debtors
> and creditors," 1 *Collier on Bankruptcy,* ¶ 3.02[2] (15th ed. rev.2005)
> (quotation omitted), and Congress intended to centralize disputes
> about a debtor's assets and legal obligations in the bankruptcy courts,
> . . . Arbitration is inconsistent with centralized decision-making
> because permitting an arbitrator to decide a core issue would make
> debtor-creditor rights "contingent upon an arbitrator's ruling" rather
> than the ruling of the bankruptcy judge assigned to hear the debtor's
> case.

9    *Id.,* 403 F.3d at 169.

10              1.    *The Adversary Proceeding Is Statutorily Core*

11    Perkins Coie has alleged in its defense that either Debtor's partner (GW

12    Singapore) misled Perkins Coie or the Trustee is misleading the Court. If the

13    former, then the Debtor is liable to Perkins Coie as GW Singapore's partner and

14    this liability should be deducted from any liability that Perkins Coie might have to

15    the Debtor for, as Perkins Coie might put it, getting tricked. If the latter, then

16    presumably the case needs to be dismissed. Both these defenses are statutorily

17    core. Further, setoff is core because it triggers the claims allowance process. 11

18    U.S.C. § 553; *Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In*

19    *re Iridium Operating LLC),* 285 B.R. 822, 831 (Bankr. S.D.N.Y. 2002);

20    *Commercial Financial Services, Inc. v. Jones (In re Commercial Financial*

21    *Services, Inc.)*, 251 B.R. 397 (Bankr. N.D. Okla. 2000).

22

23    Chapter 7 Trustee's Objection to
      Perkins' and Ness' Motion to
24    Compel Arbitration and Stay – Page 16

25

1    Perkins Coie argues that the fraud allegation is not core because it seeks

2    recoupment not offset. It argues that it does not have a "claim" against the Debtor.

3    It simply wants to set the correct liability by taking into account fraud by Katrina

4    Arden or Andrey Kuzenny, as if GW Singapore and Perkins Coie were buyers and

5    sellers of widgets and at the end of their relationship they had to true up the

6    parties' respective accounts receivable and payable.

7    But fraud by unnamed persons and reliance by Perkins Coie on an email

8    from Katrina Arden that Perkins Coie now claims was misleading (after it *chose*

9    not to put the escrow terms in writing) is a "different set of goods" than Perkins

10   Coie's promise to hold the escrow fund proceeds in trust for the Giga Watt Project

11   until Giga Watt met construction milestones. Therefore, the claim is one of setoff

12   not recoupment. For example, in *Cal. Canners and Growers v. Military*

13   *Distributors of Va., Inc. (In re Cal. Canners and Growers),* 62 B.R. 18 (BAP 9th

14   Cir. 1986), the BAP held that each delivery under a single distributor's agreement

15   was a separate transaction for recoupment purposes. The Court found significant

16   the fact that the creditor's claim, based on prepetition transactions, and the debtor's

17   claim, based on the creditor's nonpayment of the postpetition invoices, involved

18   the purchase and sale of different goods. *Id.*, 62 B.R. at 20. Because they were

19   different, the issue was one of setoff – not recoupment.

20   In contrast, in *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392 (9th

21   Cir. 1996), the debtor's claim against the creditor and the creditor's claim against

22   the debtor were identical. The facts are complicated, but important. The debtor

23
24   Chapter 7 Trustee's Objection to
     Perkins' and Ness' Motion to
     Compel Arbitration and Stay – Page 17
25

owed the creditor for monies that the creditor had expended after the debtor had failed to finish construction projects. The creditor was required to finish the projects pursuant to an indemnity agreement. Part of the creditor's damages under the indemnity agreement was a debt incurred to the lessor of equipment that the creditor had rented to finish the project. The equipment lessor assigned its claim against the creditor to the debtor who then had the chutzpah to try to collect that claim from the creditor. Obviously, recoupment extinguished the debtor's claim because it was the same claim as the creditors. *Compare In re Madigan*, 270 B.R. 749, 760 (B.A.P. 9th Cir. 2001) ("Unlike *Newbery,* the operative facts for the first disability claim were separate and distinct from those for the second claim, and would be so, even if both claims were for the same type of recurring illness.").

In this case, Perkins Coie's fraud claims are based on what Arden and Kuzenny may have told Ness, the reasonableness of Ness' reliance on any such statements in light of the evidence, and any damages that Perkins Coie may have to pay the estate and token holders, who have filed a separate lawsuit. That is hardly *Newbery* recoupment. It is setoff which is core because setoff triggers the claims resolution process. 28 U.S.C. § 157(b)(2)(B). Furthermore, the questioning of the Trustee's judgment and actions in the bankruptcy case is core because it addresses the administration of the estate. 28 U.S.C. § 157(b)(2)(A).

Therefore, the Court has discretion to deny the Motion if it finds an inherent conflict between the purposes of the Bankruptcy Code and arbitration in Singapore.

Chapter 7 Trustee's Objection to
Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page 18

2.   *An Inherent Conflict Exists Between Arbitration of this Adversary Proceeding and the Purposes of the Bankruptcy Code*

Perkins Coie defends itself in part by saying that: either (1) GW Singapore misled Perkins Coie about the escrow or (2) the Trustee is misleading the Court about the escrow. Perkins Coie is alleging that if GW Singapore misled Perkins Coie about the nature of the escrow, and if Perkins Coie suffers damages for its reasonable reliance, then Giga Watt is liable. This is a claim against the Debtor. Misleading the Court is core, of course, too. Sending the adversary proceeding to Singapore would violate the purposes of the Bankruptcy Code by having a private entity decide how much money the Debtor owes Perkins Coie and whether an officer of this Court acted in bad faith. It is an inherent conflict.

The presence of token holders furthers the conflict. The token holders have filed a case in the U.S. District Court for the Eastern District of Washington, against Perkins Coie relating to the escrow. *See Jun Dam v. Perkins Coie LLP*, Case No. 2:20-cv-00464-SAB, (E.D. Wash., filed December 16, 2020). That litigation substantially overlaps with this case, and may even violate the automatic stay, because J. Dam the lead plaintiff may well be asserting only derivate – not direct – damages. Only this Court can resolve that issue. Further, if the Court enforces a waiver of class action arbitration argument, then each token holder would have to bring an individual arbitration against Perkins Coie in Singapore.

Chapter 7 Trustee's Objection to
Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page 19

Meanwhile, those token holder's claims against Perkins Coie will adjust the amount that the Debtor is liable to those token holders. Therefore, this case would have to stay open while individual arbitrations percolate through Singapore. This inherently conflicts with the purpose of bankruptcy, which is to streamline and make efficient claims that are related to this case – as the token holders' litigation clearly is.

For all the foregoing reasons, the Trustee objects to the Motion.

## III.    RESERVATIONS OF RIGHT

In the event this Objection is sustained and the Motion is denied, the Trustee requests the right to file further briefing on the issue of any right of Perkins Coie to an immediate appeal.

The Trustee requests that an evidentiary hearing be set in the event that the parties do not agree on material factual issues.

## IV.    CONCLUSION

Wherefore, the Trustee respectfully requests that the Court deny the Motion, find an inherent conflict between the requested arbitration and the

Chapter 7 Trustee's Objection to
Perkins' and Ness' Motion to
Compel Arbitration and Stay – Page 20

1  purposes of the Bankruptcy Code and grant such other and further relief as it

2  deems appropriate and just.

3  Dated: March 12, 2021            POTOMAC LAW GROUP PLLC

4

5                                   By:      /s/ Pamela M. Egan
                                        Pamela M. Egan (WSBA No. 54736)
6                                       *Attorneys for Mark D. Waldron, Chapter 7
                                        Trustee, Plaintiff*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23  Chapter 7 Trustee's Objection to
    Perkins' and Ness' Motion to
24  Compel Arbitration and Stay – Page 21

25