Bradley S. Keller, WSBA #10665
Ralph E. Cromwell, Jr., WSBA #11784
Jofrey M. McWilliam, WSBA #28441
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
(206) 622-2000
Facsimile No.: (206) 622-2522

Attorneys for Perkins Coie LLP

The Honorable Frederick P. Corbit
Chapter: 7

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re:<br><br>GIGA WATT, INC., a Washington corporation,<br>　　　　　　　　　　　　Debtor. | No. 18-03197-FPC11<br><br>The Honorable Frederick P. Corbit |
| MARK D. WALDRON, as Chapter 7 Trustee,<br>　　　　　　　　　　　　Plaintiff,<br>vs.<br>PERKINS COIE, LLP, a Washington limited liability partnership; LOWELL NESS, individual and California resident; GIGA WATT PTE., LTD. a Singapore corporation; and ANDREY KUZENNY, a citizen of the Russian Federation;<br>　　　　　　　　　　　　Defendants<br>and<br>THE GIGA WATT PROJECT, a partnership,<br>　　　　　　　　　　　　Nominal defendant. | **CHAPTER 7**<br><br>Adv. Case No. 20-80031<br><br>**PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY** |

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 46    Filed 03/19/21    Entered 03/19/21 15:34:17    Pg 1 of 13

A. **The Trustee Cannot Defeat Arbitration by Disputing His Own Allegations.**

The Trustee contends that the Court cannot order arbitration because there is no proof that anyone signed the Token Purchase Agreements which contain arbitration clauses. However, the Trustee's Amended Complaint ("Complaint") itself specifically alleges there are Token Purchase Agreements which token purchasers signed:

> GW Singapore and the token holders entered into the WTT Token Sales Agreements. . . .

Complaint 19:16-17. The Complaint also alleges that the Token Purchase Agreements contain escrow provisions which were incorporated from a marketing document:

> According to the White Paper . . . whose provisions were incorporated by reference into the token purchase agreements, all token sale proceeds would be held in escrow until Giga Watt met certain milestones in constructing new facilities.

Complaint 7:8-12. Finally, the Complaint specifically alleges Perkins damaged the Debtor by causing a breach of the escrow terms *of the Token Purchase Agreements*:

> Perkins Coie's breach of fiduciary duty immediately put Giga Watt in breach of the Token Purchase agreements which incorporated the terms of the White Paper, including, in particular, the Escrow requirements.

Complaint 10:8-10.

The Trustee is bound by his own Complaint. If, as the Trustee now argues, the Token Purchase Agreements were not signed, then none of the allegations in the Complaint has any basis in fact. Specifically, if the Token Purchase Agreements were

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY- 1

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 46    Filed 03/19/21    Entered 03/19/21 15:34:17    Pg 2 of 13

not signed, there is no link between the Trustee's alleged damages and any breach of the Token Purchase Agreements which was caused by Perkins' conduct. The Trustee's claims against Perkins inextricably depend upon validly executed Token Purchase Agreements containing escrow provisions that Perkins allegedly breached.

It is the essence of equitable estoppel that the Trustee cannot use and exploit the Token Purchase Agreements, or bring claims explicitly dependent on the provisions of the Token Purchase Agreements, yet simultaneously question their very existence just to avoid the arbitration. *Townsend v. Quadrant Corp.*, 173 Wn.2d 451, 461, 268 P.3d 917 (2012) ("if that person . . . 'knowingly exploits' the contract"); *David Terry Invs., LLC-PRC v. Headwaters Dev. Group LLC*, 13 Wn. App. 2d 159, 171, 463 P.3d 117 (2020) ("whether the claims . . . were intimately founded in and intertwined with the underlying contract obligations"). Accordingly, the Court should enforce the arbitration provisions in the Token Purchase Agreements on which the Trustee's claims depend.

To escape the consequences of his own allegations, much of the Trustee's Opposition suggests he will abandon his current Complaint and pursue a new theory based on a separate, oral escrow agreement between Perkins and GW Singapore. This rush to abandon his pleadings is a poorly disguised admission that, as currently pled, the Trustee is bound to arbitrate the claims in his Complaint. However, the Trustee cannot simply abandon his Complaint, which has been answered and is the subject of this extensive motion practice pursuant to order of the Court. The Court must decide

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY- 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 46    Filed 03/19/21    Entered 03/19/21 15:34:17    Pg 3 of 13

this motion based on the Complaint as filed, not some unpled and unjustified Complaint the Trustee may seek to file if this motion does not turn out to his liking.

In addition, even if the Trustee were given leave to replead, there are several things that would not change. As the Complaint alleges, there are Token Purchase Agreements which explicitly govern the rights of the token purchasers:

> 1. <u>Sale of WTT.</u> *Subject to the terms and conditions of this Agreement*, simultaneously with the acceptance of this Agreement by the Purchaser . . . , the Company is hereby selling to the Purchaser [Number of Tokens] of Giga Watt tokens . . . .

Cromwell Decl., ECF 43-2 at PC004527 (emphasis added). There is also an integration clause at paragraph 16(a) and a restriction, in paragraph 16(b), that any amendment of the Token Purchase Agreement had to be in a writing mutually executed by GW Singapore and the purchasers. ECF 43-1 at pg. 8 of 9. Accordingly, the Trustee cannot simply wish away the Token Purchase Agreements. If the Trustee wants to recover from Perkins, funds that should have been returned to purchasers under any duty or theory arising out of their token purchases, then the Trustee cannot avoid the Token Purchase Agreements, the documents which create and govern those rights. That is why the current Complaint alleges that "Perkins Coie's breach of fiduciary duty immediately put Giga Watt in breach of the token purchase agreements." Complaint 10:8-9. It is also why the Complaint repeatedly alleges that the escrow arrangement described in the White Paper was incorporated into the Token Purchase Agreements. *Id.* at 4:10-11, 7:10, 10:9. Thus, even under the new oral escrow theory, the Trustee's claims against Perkins will have to utilize and depend on

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY- 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 46    Filed 03/19/21    Entered 03/19/21 15:34:17    Pg 4 of 13

the existence of Token Purchase Agreements such that equitable estoppel still will apply.

Finally, if, notwithstanding the Trustee's allegations about the existence of Token Purchase Agreements, the Court believes an issue exists as to whether the Token Purchase Agreements were signed, or as to whether they contain an arbitration clause, then the Court may proceed to resolve those issues through limited discovery on those topics, but may not allow the rest of the litigation to proceed until the issue of arbitrability is resolved. *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991). It should not be difficult to obtain evidence showing that the Token Purchase Agreements were signed and that they contain arbitration clauses. The signed Token Purchase Agreement filed as *In re Giga Watt* ECF 548 contains an arbitration clause. *See* ECF 43-1. The Token Purchase Agreement provided to Perkins by Cryptonomos as "final" contains an arbitration clause. ECF 43-3. The Trustee has not submitted any Token Purchase Agreement that does not contain an arbitration clause and offers no evidence that any such version even exists.

**B.** **The Arbitration Provision Is Not Absurdly Overbroad.**

Next, the Trustee argues that the arbitration clause is so broad that its application would lead to absurd results, making it unenforceable. This argument is contrary to the language of the arbitration clause. Specifically, while "Disputes" is broadly defined, the waiver for having "Disputes" resolved by a court, which is tied to

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY- 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 46    Filed 03/19/21    Entered 03/19/21 15:34:17    Pg 5 of 13

the agreement to arbitrate, is expressly limited to "Disputes arising from or related to this Agreement." *See* Cromwell Decl., ECF 43-1 ¶ 15(a). Moreover, defendants are not seeking to apply the arbitration provision in an absurd or overly broad fashion. They seek to arbitrate claims which arise from alleged escrow provisions in the same Token Purchase Agreements which contain the arbitration clause. In addition, the cases cited by Trustee apply California law governing arbitrability rather than cases interpreting the Federal Arbitration Act. Under the Federal Arbitration Act, the United States Supreme Court has preempted the use of state law principles which interfere with the enforcement of arbitration clauses. *E.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (FAA's liberal policy favoring arbitration preempts California rule invalidating class action waivers requiring individual arbitration of class action claims). Finally, under the Federal Arbitration Act, in construing the scope of an arbitration clause, all doubts are to be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

**C.** **There Is a Sufficient Connection to Singapore.**

The Trustee's argument that there is an insufficient connection with Singapore to support application of the New York Convention ignores his own allegations. The Complaint alleges that Giga Watt Pte. Ltd. was the "partner" of the Debtor, Complaint at 7:17-20; the entity that sold the tokens, *id.* at 7:3-5; the entity which established the alleged escrow, *id.* at 7:8; and the entity which wrongfully instructed Perkins to disburse funds from the escrow, *id.* at 6:21-22. The Complaint then alleges that Giga Watt Pte. Ltd. was incorporated in Singapore, *id.* at 3:14; that the "White Paper" states

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY- 5

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 46    Filed 03/19/21    Entered 03/19/21 15:34:17    Pg 6 of 13

it was a Singapore entity, *id.* at 4:14; quotes an email informing Perkins that it is a Singapore entity, *id.* at 16:22; references the Singapore Partnership Act as governing the "Giga Watt Project" partnership, *id.* at 10:6; and contains a hyperlink to an email giving Perkins a Singapore street address for Giga Watt Pte. Ltd. and wiring instructions to a Singapore bank for funds being disbursed from the alleged escrow, *id.* at 9:11. In fact, the Complaint refers to Giga Watt Pte. Ltd. as "GW Singapore," *id.* at 4:9. The Complaint also alleges that Cryptonomos was incorporated in Singapore and that it structured and managed the sale of tokens and collected the sale proceeds, *id.* at 6:5-11. By count of the undersigned counsel, the word "Singapore" appears 82 times in the Complaint. Thus, for the Trustee to now argue there is no relationship to Singapore is, again, to simply quarrel with his own allegations as well as reality.

### D. There Is No Discretion to Deny Arbitration.

Finally, the Trustee argues that this Court has "discretion" to deny arbitration because (a) the claims are "statutorily core" *and* (b) arbitration would "conflict" with the Bankruptcy Code. The Trustee's argument fails if *either* premise of this argument is incorrect; however, *both* of these premises are incorrect.

#### 1. This Matter Is Not Core.

In non-core proceedings, a bankruptcy court "does not have discretion to deny enforcement of a valid prepetition arbitration agreement." *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1021 (9th Cir. 2012). Accordingly, because this adversary

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY- 6

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC   Doc 46   Filed 03/19/21   Entered 03/19/21 15:34:17   Pg 7 of 13

proceeding is not a core proceeding, there is no discretion to deny enforcement of the arbitration provisions at issue here.

That this matter is not a core proceeding has already been separately briefed. *See* ECF 42. For the reasons discussed at length in that prior briefing, because the Trustee's claims are based on prepetition conduct and arise under state law, the Trustee's claims are quintessentially "non-core." *See id; Sec. Farms v. Int'l Bhd. of Teamsters, etc.*, 124 F.3d 999, 1008 (9th Cir. 1997) (actions "that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'"). In continuing to assert that the proceeding is "statutorily core" the Trustee's sole argument focuses on the assertion that Perkins' affirmative defenses of "set off" and "failure to mitigate" somehow invoked equitable bankruptcy jurisdiction, and thereby transformed the matter into a core proceeding. As also separately briefed, this argument fails under controlling Ninth Circuit precedent. *See* ECF 30 at 6-10; ECF 41 at 16-20; ECF 42 at 1-10; *Newbery Corp. v. Fireman's Fund Ins. Co.,* 95 F.3d 1392, 1398-1400 (9th Cir. 1996) (defense that merely seeks to extinguish or reduce the damages claimed by a trustee does not implicates the ratable distribution of assets among creditors of the estate).

Nevertheless, to assert that Perkins' defenses convert this matter into a core proceeding, the Trustee, again, mischaracterizes Perkins' defenses to suit the Trustee's argument. For example, the Trustee describes Perkins' defenses as alleging that either GW Singapore "misled Perkins Coie or the Trustee is misleading the Court." ECF 44

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY- 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 46    Filed 03/19/21    Entered 03/19/21 15:34:17    Pg 8 of 13

at 16:12. From this, the Trustee conjures a "fraud" claim that he contends is "core." *Id*. at 17:1-6. This is nonsense. Perkins has merely observed that *if* the Trustee is correct that GW Singapore wrongfully instructed Perkins to disburse funds, *then* the Trustee has also alleged that Debtor is liable for the wrongful conduct of GW Singapore under partnership principles. Said differently, Perkins is not asserting there was fraud. Perkins is asserting that the *Trustee's* allegations are circular and self-defeating. Moreover, the purpose of these observations is to emphasize that the Trustee cannot recover from Perkins damages caused by conduct imputed to the Debtor (under the Trustee's theory) or for proceeds of sale that the Debtor received or is deemed to have received (directly or by imputation). *See* ECF 42 (discussing Perkins' defenses). The attempt to distinguish *Newberry*, by fancifully recasting Perkins' defenses into something that they are not, should be rejected out of hand.

### 2. Even If This Proceeding Were Core, There Is No Conflict with the Code.

Even a determination that a proceeding is core "will not automatically give the bankruptcy court discretion to stay arbitration." *In re U.S. Lines, Inc.*, 197 F.3d 631, 640 (2d Cir. 1999). Even in a core proceeding, a bankruptcy court has discretion to deny enforcement of an agreement to arbitrate "only if arbitration would conflict with the underlying purposes of the Bankruptcy Code." *In re Thorpe*, 671 F.3d at 1021. "[N]ot all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." *Id.* (citing

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY- 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 46    Filed 03/19/21    Entered 03/19/21 15:34:17    Pg 9 of 13

*In re U.S. Lines*, 197 F.3d at 640). Thus, unless the party opposing arbitration establishes congressional intent to preclude arbitration of statutory rights, even in a core proceeding, "a bankruptcy court lacks the authority and discretion to deny its enforcement." *In re Mintze*, 434 F.3d 222, 231 (3rd Cir. 2006). Only where a core proceeding "derives exclusively from the provisions of the Bankruptcy Code" *and* where arbitration would conflict with the Code, does a bankruptcy court have discretion to deny arbitration. *Id*. Where the claims at issue do not arise under the Bankruptcy Code, and there is "no bankruptcy issue to be decided by the Bankruptcy Court," there can be no conflict with the Code, and therefore no discretion to deny arbitration. *Id.*

The Ninth Circuit's decision in *In re Thorpe* is instructive. There, the plaintiff filed a proof of claim in bankruptcy alleging that the debtor's petition for reorganization under Section 524(g) of the Bankruptcy Code violated the parties' prepetition settlement. *See* 671 F.3d at 1016-17. The bankruptcy court denied a motion to compel arbitration of these claims because the reorganization plan itself was among the alleged breaches of the prepetition settlement agreement. *Id*. at 1017. The Ninth Circuit affirmed, concluding that the proof of claim raised questions "going to the heart of § 524(g) and the management of an asbestos-related bankruptcy estate, that should be resolved by a bankruptcy judge and not an arbitrator." *Id*. at 1022 (internal quotation marks omitted).

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO
COMPEL ARBITRATION AND STAY- 9

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC   Doc 46   Filed 03/19/21   Entered 03/19/21 15:34:17   Pg 10 of 13

Here, in contrast, the proceeding does *not* involve claims arising under the Bankruptcy Code, and will not require any issue of bankruptcy law to be decided by the arbitrator. Accordingly, there is, and can be, no conflict. Indeed, the types of claims as those alleged here, involving state law issues with regard to which a bankruptcy court would ordinarily lift the automatic stay and permit to be determined in a different court, are precisely the kinds of proceedings in which arbitration must permitted. *See In re Touchstone Home Health LLC*, 572 B.R. 255, 277-78 (D. Colo. 2017) (discussing cases). For all of these reasons, Perkins' and Ness' Motion to Compel Arbitration and Stay must be granted.

DATED this 19th day of March, 2021.

BYRNES KELLER CROMWELL LLP

By /s/ Bradley S. Keller
   Bradley S. Keller, WSBA #10665
By /s/ Ralph E. Cromwell, Jr.
   Ralph E. Cromwell, Jr., WSBA #11784
By /s/ Jofrey M. McWilliam
   Jofrey M. McWilliam, WSBA #28441
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
206-622-2000
Fax: 206-622-2522
Email: bkeller@byrneskeller.com
       rcromwell@byrneskeller.com
       jmcwilliam@byrneskeller.com

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY- 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC   Doc 46   Filed 03/19/21   Entered 03/19/21 15:34:17   Pg 11 of 13

1    MUNDING, P.S.

2    By /s/ John Munding
3        John Munding, WSBA #21734
    9425 N. Nevada St. Suite 212
4    Spokane, Washington 99218
5    509-624-6464
    Fax: (509) 624-6155
6    Email: john@mundinglaw.com
7    *Attorneys for Perkins Coie LLP and Lowell Ness*

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY- 11

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 46    Filed 03/19/21    Entered 03/19/21 15:34:17    Pg 12 of 13

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

By /s/ Ralph E. Cromwell, Jr.
Ralph E. Cromwell, Jr.
*Attorneys for Plaintiffs*
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
206-622-2000
Fax: 206-622-2522
Email: rcromwell@byrneskeller.com

PERKINS' AND NESS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY- 12

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC   Doc 46   Filed 03/19/21   Entered 03/19/21 15:34:17   Pg 13 of 13