**So Ordered.**

**Dated: April 22nd, 2021**



Frederick P. Corbit
Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, INC., a Washington corporation,<br><br>_____ Debtor. | Case No. 18-03197-FPC7 |
| MARK D. WALDRON, as Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>PERKINS COIE, LLP, a Washington limited liability partnership; LOWELL NESS, an individual and California resident; GIGA WATT SINGAPORE, a Singapore corporation; and ANDREY KUZENNY, a citizen of the Russian Federation;<br><br>Defendants,<br><br>and<br><br>THE GIGA WATT PROJECT, a partnership,<br><br>Nominal Defendant. | Adversary No. 20-80031<br><br>**ORDER GRANTING MOTION TO STRIKE JURY DEMAND** |

The Giga Watt, Inc. bankruptcy case has a complicated history. This adversary proceeding was filed by the Chapter 7 Trustee of the bankruptcy estate of Giga Watt, Inc. and is based on the Trustee's allegations that the bankruptcy estate was harmed when the law firm of Perkins Coie, LLP, Lowell Ness, a partner

ORDER STRIKING JURY DEMAND - 1

at the law firm, and Andrey Kuzenny, the CEO of Giga Watt PTE. Ltd., breached fiduciary duties when they caused the premature release of funds that were held, pursuant to an unwritten escrow agreement, in the law firm's trust account.

On February 5, 2021, the Chapter 7 Trustee filed two motions: Motion to Strike Jury Demand (Adv. ECF No. 36) and Motion for Determination that Proceeding is Core (Adv. ECF No. 38). Perkins opposed both motions. (Adv. ECF Nos. 41, 42). Perkins also filed a Motion to Compel Arbitration and Stay the case (Adv. ECF No. 40), and the Trustee objected. (Adv. ECF No. 44) The Court addresses each motion in a separate opinion; this opinion grants the Trustee's Motion to Strike Jury Demand.

## A.    PROCEDURAL BACKGROUND

The Debtor, Giga Watt, Inc. ("Giga Watt") filed a petition for relief under Chapter 11 of the Bankruptcy Code (Title 11 U.S.C.) on November 19, 2018. Upon a motion from the Unsecured Creditors Committee, the Court appointed a Chapter 11 Trustee on January 18, 2019. (ECF No. 121) Twenty months later, on September 30, 2020, the Court granted the United States Trustee's motion to convert the main bankruptcy case to Chapter 7. (ECF No. 744)

On November 18, 2020, the Chapter 7 Trustee commenced this adversary proceeding. (Adv ECF No. 1) On November 19, 2020, the Trustee filed an Amended Verified Complaint against (i) Perkins Coie ("Perkins"), a law firm; (ii) Lowell Ness,[1] a partner in the Perkins firm; (iii) Giga Watt PTE, Ltd., ("Giga Watt Singapore") a Singapore corporation; and (iv) Andrey Kuzenny, a Russian Federation citizen who served as CEO of Giga Watt Singapore. (Adv. ECF No. 6) The Chapter 7 Trustee listed four causes of action, all related to allegations of breach of fiduciary duty, specifically: (1) Perkins breached a fiduciary duty to Giga Watt; (2) Giga Watt Singapore breached a fiduciary duty to Giga Watt; (3) Perkins aided and abetted Giga Watt Singapore's breach of fiduciary duty to Giga Watt; and (4) Andrey Kuzenny aided and abetted Giga Watt Singapore's breach of fiduciary duty to Giga Watt.

Perkins filed an answer and affirmative defenses, in which it admitted that it held proceeds from sales of digital tokens in an IOLTA,[2] and that it disbursed

---

[1] "Perkins" will refer to Perkins Coie and Mr. Ness for brevity and will be used as if singular.
[2] "IOLTA" is an acronym for Interest On Lawyer Trust Accounts.

20-80031-FPC    Doc 49    Filed 04/22/21    Entered 04/22/21 12:36:06    Pg 2 of 13

approximately $10.8 million to Giga Watt Singapore and approximately $10.8 million to the Debtor Giga Watt. (Adv. ECF No. 28 at 5) Perkins' affirmative defenses include a claim for offset, estoppel, *in pari delicto*,[3] account stated, failure to mitigate, and unclean hands.

Andrey Kuzenny filed an answer in which he invoked "his privilege against self-incrimination as guaranteed by the Fifth Amendment" of the U.S. Constitution. (Adv. ECF No. 21) He raised several equitable affirmative defenses, including the doctrine of acquiescence, waiver, laches and estoppel. Mr. Kuzenny also argued that if found to act as alleged, his conduct was justified, excused and/or privileged.

On December 31, 2020, Perkins moved to withdraw the reference from the bankruptcy court. Perkins argued that cause exists under 28 U.S.C. §157(d) to remove the case because: (1) the claims are not "core;" (2) the defendants do not consent to bankruptcy court jurisdiction, including entry of final orders or judgments, and a jury trial in bankruptcy court; and (3) a related class action is presently pending in District Court before the Honorable Stanley A. Bastian "that arises from the same facts and circumstances, asserts the same claims, and seeks the same damages from Defendants." (Adv. ECF No. 17)

Subsequently, the parties agreed to fully brief three issues—right to a jury, "core" versus "non-core," and arbitration—and to allow the Bankruptcy Court time to rule on the motions before transmitting the withdrawal of the reference motion to the District Court pursuant to 28 U.S.C. § 157(d), Federal Rules of Bankruptcy Procedure 5011 and Local Bankruptcy Rule 5011-1. (Adv. ECF Nos. 26, 35, 47 and 48)

## B. FACTUAL BACKGROUND

The Giga Watt Project was a partnership between Giga Watt and Giga Watt Singapore to build and run a large-scale cryptocurrency mining operation, with

---

[3] *In pari delicto* is an equitable common-law defense that derives from the Latin, *in pari delicto potior est conditio defendentis*: "In a case of equal or mutual fault ... the position of the [defending] party ... is the better one." *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 306, 105 S. Ct. 2622, 2626, 86 L. Ed. 2d 215 (1985).

ORDER STRIKING JURY DEMAND - 3

investors who, after buying a "WTT Token,"[4] could install mining machines ("miners") in the building to generate cryptocurrency.

The Giga Watt entities published a "White Paper" for the purpose of presenting "the Giga Watt Project to potential token holders in connection with the proposed Token Launch." (Adv. ECF No. 6 Ex. A) Generally, the White Paper explained that Giga Watt would offer "mining hosting services" that consisted of buildings designed to house the miners along with the electrical power to run the machines, and Giga Watt Singapore would offer "turnkey mining services," such as selling miners and providing maintenance of the miners in the buildings. The project included an initial offering of WTT Tokens, similar to an initial public offering, called an Initial Coin Offering ("ICO") that was scheduled to begin August 7, 2017.

As part of the process of buying a WTT Token, each purchaser signed a Token Purchase Agreement that indicated it was an agreement with Giga Watt Singapore. The terms of the Token Purchase Agreement are disputed by the parties; the Trustee alleges that Perkins agreed to hold the funds from the ICO in escrow until Giga Watt met certain milestones in construction of the Giga Watt facilities.

Four days after the ICO closed, Perkins held over $22 million in token sale proceeds in an Interest on Lawyers Trust Account. Subsequent to the sale, Perkins made refunds to various token holders, and then made four disbursements to Giga Watt Singapore that totaled $10.8 million and four disbursements to Giga Watt that totaled a little over $10.8 million. By February 22, 2108, the escrow account was depleted.

The Trustee's Amended Complaint includes allegations of a partnership agreement between Giga Watt and Giga Watt Singapore, and Giga Watt Singapore misappropriated $10.8 million of funds that Perkins was holding in escrow for the partnership. The Trustee, on behalf of Giga Watt, is suing its partner Giga Watt Singapore, Perkins and Andrey Kuzenny for violation of their respective fiduciary duties related to disbursement of the escrow funds.

---

[4] The Giga Watt entities defined a WTT Token as: "an Ethereum token representing the right to use the Giga Watt processing center's capacity, rent-free for 50 years, to accommodate 1 Watt's worth of mining equipment power consumption." (Adv. ECF No. 6 at Ex. A)

ORDER STRIKING JURY DEMAND - 4

The Trustee alleges that Perkins agreed to hold funds raised by the partnership in the ICO, pursuant to certain terms that were not reduced to a single formal document. The Trustee asserts that Perkins disregarded the parties' agreement about when the funds could be released, and the premature payouts guaranteed Giga Watt's collapse. The Trustee requests a judgment against defendants for joint and several liability in an amount to be proved at trial, plus prejudgment and post-judgment interest, costs and fees, and "for such other and further relief as the Court deems necessary and just." (Adv. ECF No. 11 at 31)

Perkins' answer generally denies liability and asserts legal and equitable affirmative defenses, including *in pari delicto*, equitable offset, equitable estoppel and unclean hands. Similarly, Andrew Kuzenny denied liability, and he, too, asserted equitable affirmative defenses, including the doctrine of acquiescence, waiver, laches and estoppel. Mr. Kuzenny also argues that if found to act as alleged, his conduct was justified, excused and/or privileged.

## C.    ANALYSIS

Generally, "the bankruptcy court is an appropriate tribunal for determining whether there is a right to a trial by jury of issues for which a jury trial is demanded." *In re Oakwood Homes Corp.*, 378 B.R. 59, 64 (Bankr. D. Del. 2007) (citing *Official Comm. Of Unsecured Creditors v. TSG Equity Fund L.P. (In re Envisionet Computer Servs.),* 276 B.R. 1, 6–7 (D. Me. 2002).[5]

Additionally, a bankruptcy court is a court of equity in that it applies the principles and rules of equity. *Pepper v. Litton*, 308 U.S. 295, 304, 60 S. Ct. 238, 84 L.Ed. 281 (1939)(bankruptcy court exercises equitable jurisdiction to ensure that injustice or unfairness does not occur in the administration of a bankruptcy estate). Bankruptcy courts exercise these equitable powers that often extend to:

> a wide range of problems arising out of the administration of bankrupt estates. [These equitable powers] have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.

*Id.* at 304-05. It is against this backdrop that the Court analyzes Perkins' Motion.

---

[5] Also, in this case the parties agreed to submit this issue to the Bankruptcy Court for determination. (See Adv. ECF Nos. 26, 35)

The Seventh Amendment grants the right of jury trial to "suits at common law," which the United States Supreme Court has interpreted to include only cases involving legal rights. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989). "No jury right attaches to equitable claims." *Billing v. Ravin, Greenberg & Zackin*, 22 F.3d 1242, 1245 (3rd Cir. 1994). Whether a claim is accorded the right to jury trial under the Seventh Amendment depends on the nature of the issue to be tried, not the character of the overall action. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 569, 110 S. Ct. 1339, 108 L. Ed. 2d 519 (1990).

To determine whether a claim "is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the court must examine both the nature of the action and of the remedy sought." *Tull v. United States*, 481 U.S. 412, 417, 107 S. Ct. 1831, 95 L. Ed. 2d 365 (1987). *Granfinanciera* sets forth a three-part test to determine when a Seventh Amendment right to a jury trial exists:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. If, on the balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

*Granfinanciera,* 492 U.S. at 42 (citing *Tull v. United States*, 481 U.S. 412, 417–18, 421 (1987))(internal quotations and citations omitted); *accord Hale v. U.S. Trustee,* 509 F.3d 1139 (9th Cir. 2007)(*Granfinanciera* established a 3-part test to determine Seventh Amendment right to a jury trial.)

1. *Nature of the claim.*

Courts have struggled with the analysis required to determine the nature of a claim. Over thirty years ago, United States Supreme Court Justice Brennan articulated the difficulty as: "we have long acknowledged that, of the factors relevant to the jury trial right, comparison of the claim to ancient forms of action,

ORDER STRIKING JURY DEMAND - 6

'requiring extensive and possibly abstruse historical inquiry, is obviously the most difficult to apply.'" *Terry,* 494 U.S. at 574 (Brennan, J., concurring in part and in judgment)(*quoting Ross v. Bernhard*, 396 U.S. 531, 538, n.10, 90 S. Ct. 733 (1970)).

In this case, the Trustee argues the claims in the Amended Complaint are equitable because Perkins held the funds in escrow, which is a trust. In 1791 England, disputes about trusts not involving land were equitable claims. Additionally, because the agreement was not reduced to writing, discovery is required, and in 1791, only a court of equity could order discovery. Finally, because the Amended Complaint involves claims of a partner against a partner, 1791 English law would have required a court of equity to resolve the dispute between the partners.

Perkins argues that the Trustee's claims are not equitable because an escrow relationship is based on contract, and breach of contract is a legal claim. Perkins also argues that even when an equitable claim is asserted, where the underlying conduct is actionable at law, the claim must be submitted to a jury. Perkins relies on *DePinto v. Provident Sec. Life Ins. Co.,* 323 F.2d 826, 837 (9th Cir. 1963) (breach of fiduciary duty was predicated upon gross negligence and therefore Seventh Amendment right to a jury existed).

When faced with analyzing the nature of the claim, United States Supreme Court Justice Stewart expressed doubt that issues are inherently legal or inherently equitable, and the Justice emphasized the importance of the context in which the claims arise: "[t]he fact is that there are, for the most part, no such things as inherently 'legal issues' or inherently 'equitable issues.' There are only factual issues, and, 'like chameleons [they] take their color from the surrounding circumstances.'" *Ross v. Bernhard*, 396 U.S. at 550 (Stewart, J. dissent)(defendants entitled to jury trial in shareholder derivative suit)(quoting James, Right to a Jury Trial in Civil Actions, 72 Yale L.J. 655 (1963)).

Nevertheless, an action by a trust beneficiary against a trustee for breach of fiduciary duty was traditionally an action "within the exclusive jurisdiction of courts of equity." *Terry,* 494 U.S. at 567 (citing 2 J. Story, Commentaries on

ORDER STRIKING JURY DEMAND - 7

Equity Jurisprudence § 960, at 266 (13th ed. 1886); and Restatement (Second) of Trusts § 199(c)(1959)).[6]

In this case, Perkins argues that the Trustee's claims are legal, not equitable, because the claims arise out of an escrow relationship that is a contract. In essence, Perkins argues that a breach of a fiduciary duty claim is properly characterized as breach of contract claim. For support, Perkins relies heavily on *DePinto,* but this reliance is misplaced. *DePinto* was a shareholder derivative suit with a complex procedural history. On appeal, the Ninth Circuit found that because the trial court had "expressly found that none of the appellants was guilty of fraud, the conclusion seems inescapable that the finding that [director defendants] breached fiduciary duties owed … actually rests upon a finding of gross negligence." *DePinto*, 323 F.2d at 837. The *DePinto* court concluded that "where a claim of breach of fiduciary duty is predicated upon underlying conduct, such as negligence, which is actionable in a direct suit at common law, the issue of whether there has been such a breach is … a jury question." *Id.*

Perkins urges the Court to adopt an expansive view of *DePinto.* Under Perkins' argument, every breach of fiduciary duty claim could be "recast as an action at law such that parties seemingly would be entitled to a jury trial on any and all breach of fiduciary duty claims." *Pereira v. Cogan*, 2002 WL 989460, at *4 (S.D.N.Y. 2002)("breach of fiduciary duty has not historically been divided into its equitable and legal parts but treated as a single equitable cause of action"), *rev'd and remanded sub nom. Pereira v. Farace,* 413 F.3d

---

[6] *See also* Austin W. Scott & William F. Fratcher, THE LAW OF TRUSTS § 197, at 188 (4th ed. 1988)("Trusts are, and have been since they were first enforced, within the peculiar province of courts of equity."); *In re Hutchinson*, 5 F.3d 750, 757 (4th Cir. 1993)("The basis for holding bankruptcy trustees liable is the equitable power of courts to enforce fiduciary duties."); *In re Jensen*, 946 F.2d 369, 371 (5th Cir. 1991)("Claims for breach of fiduciary duty have always been within the exclusive jurisdiction of the courts of equity."); *In re Evangelist,* 760 F.2d 27, 29 (1st Cir. 1985)("Actions for breach of fiduciary duty, historically speaking, are almost uniformly actions 'in equity,' carrying with them no right to trial by jury."); *In re Elegant Equine*, 155 B.R. 189, 192-93 (Bkrtcy. N.D. Ill. 1993)("Historically, breach of fiduciary duty actions have been considered to be equitable."); *In re Sunshine Trading & Transportation Company,* 193 B.R. 752 (Bkrtcy. E.D. Va. 1995)(no right to jury trial where adversary suit sought to hold bankruptcy trustee liable for acts derivative of his fiduciary duties); *cf. In re Combined Metals Reduction Company,* 557 F.2d 179, 197 (9th Cir. 1977)("when a trustee has breached his trust, an equity court may hold him liable for any loss…"); *contra, Anderson v. United States*, 520 F.2d 1027 (5th Cir. 1975) (stating in dictum that action against bankruptcy trustee for negligent failure to obtain discharge of corporate liability was an action at law).

ORDER STRIKING JURY DEMAND - 8

330 (2d Cir. 2005)(requested relief of legal damages outweighed equitable nature of claims).[7]

This Court declines the invitation to recast the Trustee's breach of fiduciary duty claims as breach of contract claims. Instead, the Court recognizes that the Trustee's claims are for breach of fiduciary duty and aiding and abetting that breach, and the underlying facts and circumstances surrounding the claims have not yet been established. As a result, the Court must consider the Amended Complaint allegations at face value: the Trustee claims the defendants breached, or aided a breach, of a fiduciary duty, based on facts and circumstances yet to be proven, related to an agreement by certain Defendants to hold money in trust. In this case, the Trustee's claims asserted are equitable in nature.

### 2. *Nature of Remedy Requested.*

The second factor the court examines to determine whether a statutory action is more similar to cases that were tried in courts of law than to cases tried in courts of equity is the nature of the remedy requested. *Tull*, 481 U.S. at 417.

The Trustee argues that while the action resembles an action at law for damages, this make-whole relief was traditionally obtained in a court of equity, which had exclusive jurisdiction over trusts and trust estates. Equity courts could and did provide relief in the form of money damages. Perkins' asserted defenses of setoff and recoupment are equitable, and the act of asserting these defenses waives any right to a jury trial.

Perkins argues that consistent with 18th century England, before a claim in equity could proceed the plaintiff had to show it lacked an adequate remedy at law. Here the remedy is money damages which is a legal remedy. Perkins argues that even where both equitable and legal relief is requested, defendants retain a right to

---

[7] In a pointed dissent, Supreme Court Justice Stewart offer sharp criticism of *DePinto* in a similar case, *Ross v. Bernhard*, 396 U.S. at 546 (Stewart, J., dissent). Justice Stewart disagreed with the majority's conclusion that the *Ross* defendants had a right to a jury in a breach of fiduciary duty claim on the basis that the underlying action included breach of contract and negligence. Justice Stewart noted that a breach of fiduciary duty claim "has in practice always been treated as a single cause tried exclusively in equity. This has been not simply the "general" or "prevailing" view in the federal courts … but the unanimous view with the single exception of the Ninth Circuit's 1963 decision in *DePinto v. Provident Security Life Ins. Co.*, 323 F.2d 826, a decision that has since been followed by no court until the present case." *Id.*

20-80031-FPC    Doc 49    Filed 04/22/21    Entered 04/22/21 12:36:06    Pg 9 of 13

jury trial under *Dairy Queen v. Wood,* 369 U.S. 469, 82 S. Ct. 894, 8 L. Ed. 2d 44 (1962).

Prior to the adoption of the Rules of Civil Procedure, and for years after, it was generally held that if a claim was equitable in character, no right to a jury trial existed on an issue of damages incidental to the equitable relief that the plaintiff sought. *See* 5 Federal Practice P 38.19(2) at 169 (1977); *Camp v. Boyd*, 229 U.S. 530, 552, 33 S.Ct. 785, 57 L.Ed. 1317 (1913)(equitable court has authority to resolve legal claims that are presented in equitable matter). Moreover, courts of equity have the authority to award monetary remedies:

> while injunctions were the exclusive business of equity, it was never true that money claims were totally excluded from its jurisdiction. Actions against a trustee for breach of trust ... are a classic example of the power of an equity judge to require a defendant to pay money.

*Sec. & Exch. Comm'n v. Commonwealth Chem. Sec., Inc*., 574 F.2d 90, 95 (2d Cir. 1978)(internal citations omitted); *see also Bessette v. Avco Financial Services, Inc*., 230 F.3d 439, 446 (1st Cir. 2000)(holding that a bankruptcy court, as court of equity, may award money damages to give complete remedial relief for contempt); *contra*, *Pereira,* 413 F.3d at 340 (finding a right to a jury trial in breach of fiduciary case because requested relief was not restitution but "compensatory damages – a legal claim.").

Perkins argues that *Dairy Queen* dictates that Defendants have a right to a jury trial. The Court disagrees. The *Dairy Queen* court held that where the plaintiff alleged breach of contract, a legal claim, the defendants' equitable counterclaims did not defeat the right to a jury trial. The *Dairy Queen* opinion emphasized that the plaintiff requested damages for the contract breach: "we think it plain that their claim for a money judgment is a claim wholly legal in its nature…." *Id.* at 477. In determining a right to a jury trial existed, the *Dairy Queen* court concluded, "[a]s an action on a debt allegedly due *under a contract*, it would be difficult to conceive of an action of a more traditionally legal character." *Id.* (emphasis added).

In this case, unlike *Dairy Queen,* the Court is not presented with a legal claim and an equitable counterclaim. Instead, this Court is presented with equitable claims and equitable affirmative defenses. The Trustee's claims are not based upon a contract breach, but instead on breach of fiduciary duty. Here, unlike the *Dairy Queen* claims*,* the Trustee's claims are based upon an apparently unwritten trust agreement and the Defendants are alleged to have breached, aided and abetted a

fiduciary duty related to keeping the funds in trust. Simply put, *Dairy Queen* does not apply.

The Court recognizes that the Trustee's Amended Complaint requests monetary damages, but monetary damages are not always characterized as legal relief. In *Terry,* the Supreme Court ruled that where damages sought were incidental to or intertwined with equitable relief, the damages should be characterized as equitable. *Terry,* 494 U.S. at 571 n. 8; *see also Elegant Equine, Inc.*, 155 B.R. at 192. Moreover, "[i]t is the historic purpose of equity to secure complete justice. The courts will be alert to adjust their remedies so as to grant the necessary relief." *United States v. Martinson*, 809 F.2d 1364, 1367–68 (9th Cir. 1987); *see EEOC v. General Telephone Co.*, 599 F.2d 322, 334 (9th Cir.1979), aff'd 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Courts of equity "must 'look to the practical realities . . . involved in reconciling competing interests' in determining the "special blend of what is necessary, what is fair, and what is workable." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 375, 97 S. Ct. 1843, 1875, 52 L. Ed. 2d 396 (1977)(quoting *Lemon v. Kurtzman*, 411 U.S. 192, 200-201, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973)).

Additionally, the single fact that the Trustee requested monetary damages is not enough to require a jury trial. The Trustee requests a judgment against Defendants for joint and several liability in an amount to be proven at trial, plus prejudgment and post-judgment interest, costs and fees, and "for such other and further relief as the Court deems necessary and just." (Adv. ECF No. 11 at 31) While the *Granfinanciera* test requires the court to weigh this factor more heavily than the nature of the issue, this factor is not considered in isolation, above all else. Indeed, the *Terry* court declined Justice Brennan's invitation to eliminate the three-part test and instead, decided the issue solely on the form of relief requested. *See Terry*, 494 U.S. at 575 (Brennan, J. concurring in the result).[8]

It is significant to the Court's analysis that Perkins and Kuzenny requested equitable relief in the form of multiple equitable affirmative defenses. In order to determine if the equitable affirmative defenses reduce or eliminate liability, the court must apply the principles and rules of equity. For example, Perkins alleges

---

[8] "Since the existence of a right to jury trial therefore turns on the nature of the remedy, absent congressional delegation to a specialized decisionmaker, there remains little purpose to our rattling through dusty attics of ancient writs. The time has come to borrow William of Occam's razor and sever this portion of our analysis." *See Terry*, 494 U.S. at 575 (Brennan, J. concurring in the result).

20-80031-FPC    Doc 49    Filed 04/22/21    Entered 04/22/21 12:36:06    Pg 11 of 13

they are entitled to an equitable "offset" on the basis that if Giga Watt Singapore wrongly instructed Perkins to disburse funds, then as its partner, Giga Watt is liable to Perkins for damages incurred. *See In re County of Orange*, 183 B.R. 609, 622–23 (Bankr. C.D. Cal. 1995)(offset is an equitable remedy which rests in the discretion of the court). Also, Perkins asserts that Plaintiff is barred from recovery under the equitable doctrine of *in pari delicto*. *See Memorex Corp. v. Int'l Bus. Machines Corp*., 555 F.2d 1379, 1381 (9th Cir. 1977)(*in pari delicto* is traditional equitable defense). Additionally, Perkins asserts that Plaintiff's claims are barred in whole or part under the equitable doctrine of equitable estoppel because Plaintiff knew about the progress of construction and yet chose to keep the wrongly distributed funds. *See Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir.1981)("equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have"). Finally, Perkins and Kuzenny allege the Plaintiff acted inequitably and should be barred from seeking or obtaining any equitable remedies under the equitable doctrine of unclean hands. *See, Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co*., 324 U.S. 806, 814, 65 S. Ct. 993, 89 L. Ed. 1381 (1945)(under the clean hands doctrine, court of equity has wide discretion in refusing to aid the litigant tainted with "inequitableness or bad faith").

In this case, Perkins urges the Court to characterize the relief requested by Plaintiff as purely legal damages, and on that basis conclude Defendants are entitled to a jury trial. This Court does not take such a narrow view of the Amended Complaint. The Amended Complaint requests money damages, but before arriving at a remedy, the Court must apply equitable principles. For example, before finding liability, the Court must determine if an escrow or trust relationship existed, the terms of the agreement and relationship, the agreement or understanding about when the funds could be released and to whom, and whether several equitable affirmative defenses limit or eliminate liability. While not explicitly set forth in the Amended Complaint, it is axiomatic that prior to determining a remedy, the Court must apply equitable rules and principles to determine whether a fiduciary duty existed and was breached and whether equitable principles reduce or eliminate Defendants' liability.

Sound reasons exist for authorizing a court of equity to award monetary damages. "A court of equity ought to do justice completely, and not by halves." *Camp,* 229 U.S. at 551. "One of the duties of such a court is to prevent a multiplicity of suits, and to this end a court of equity, if obliged to take cognizance of a cause for any purpose, will ordinarily retain it for all purposes, even though

ORDER STRIKING JURY DEMAND - 12

this requires it to determine purely legal rights that otherwise would not be within the range of its authority." *Id.*

Moreover, bankruptcy courts, as courts of equity, have broad powers to afford complete relief. *See Pepper, supra*. Also, "[i]n the exercise of its equitable jurisdiction, the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankruptcy estate." *Id.* The bankruptcy court's equitable powers are particularly important where, as is alleged in this case, the dispute involves an insolvent entity and damage done by fiduciaries at the expense of creditors. *See id.; see also Sawyer v. Hoag,* 84 U.S. 610, 622, 21 L. Ed. 731 (1873).

In sum, the Trustee's claims sound in equity. The Court must apply equitable principles to determine if fiduciary duties existed and were breached, and if Defendants' asserted equitable affirmative defenses are supported and thereby reduce or eliminate Defendant's liability. While Plaintiff requested monetary damages that single factor does not require a jury trial. Balancing the above described factors, as required under *Granfinanciera,* this Court concludes that no Seventh Amendment right to a jury trial exists in this case.

The Trustee's Motion to Strike Jury Demand (Adv. ECF No. 36) is **GRANTED.**

/// END OF ORDER ///