1
Bradley S. Keller, WSBA #10665
Ralph E. Cromwell, Jr., WSBA #11784
2
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
3
Seattle, WA 98104
(206) 622-2000
4
Facsimile No.: (206) 622-2522
Attorneys for Perkins Coie LLP
5

6

The Honorable Frederick P. Corbit
Chapter: 7

7
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON
8

9
In Re:

GIGA WATT, INC., a Washington
10
corporation,
                                    Debtor.

11
MARK D. WALDRON, as Chapter 7
Trustee,

12
                                    Plaintiff,
        vs.
13

PERKINS COIE, LLP, a Washington
14
limited liability partnership; LOWELL
NESS, individual and California resident;
15
GIGA WATT PTE., LTD. a Singapore
corporation; and ANDREY KUZENNY, a
16
citizen of the Russian Federation;

                                    Defendants
17
        and
18
THE GIGA WATT PROJECT, a
partnership,
19
                            Nominal Defendant.

NO. 18-03197-FPC11

The Honorable Frederick P. Corbit

**CHAPTER 7**

Adv. Case No. 2:20-ap-80031

**PERKINS' AND NESS' OPPOSITION TO TRUSTEE'S MOTION TO AMEND COMPLAINT**

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

# I. **INTRODUCTION AND RELIEF REQUESTED**

This Court lacks jurisdiction to grant the Trustee's Motion to Amend (Dkt. 115). Specifically, "the filing of a notice of interlocutory appeal divests the district court of jurisdiction over the particular issues involved in that appeal." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001). The rule divests the lower court "of its control over those aspects of the case involved in the appeal." *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n. Local 200, AFL-CIO*, 611 F.3d 483, 495 (9th Cir. 2010). During the pendency of appeal, an amended pleading that alters the basis of the lawsuit is inoperative because "suit[s] c[annot] be altered through operation of the Civil Rules during the pendency of [an] appeal." *In re Mercedes-Benz Emissions Litig.*, 797 F. App'x 695, 698–99 (3d Cir. 2020) (rejecting attempt to alter basis of plaintiff's claims by the filing of an amended complaint while appeal of order denying arbitration was pending).

Here, the proposed Amended Complaint seeks to alter fundamental aspects of the case that are directly and substantially at issue in Perkins' pending appeal of this Court's Order Denying Perkins' and Ness' Motion to Compel Arbitration and Stay. As such, the Trustee's Motion to Amend runs afoul of the "divestment rule" and must be denied. *See id.*

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 2 of 23

As is discussed in more detail below, the supposed "newly discovered" evidence on which the Motion to Amend is premised is neither "newly discovered" nor material to the basis of the Trustee's escrow claims against Perkins. The "Lighthouse Documents" on which the Trustee relies are the debtor's own documents. They were in the debtor's possession before bankruptcy was filed, were collected by the debtor's own counsel, Wilson Sonsini, and have been held by its document vendor, Lighthouse, ever since. As such, the documents were within the possession and control of the debtor all along and have been available to the Trustee from the start of this bankruptcy four years ago, had the Trustee simply been diligent and requested them. The documents provide no new information regarding the sale of tokens or terms of the escrow on which the Trustee's claims against Perkins are premised.

The sole "new" information that the Trustee alleges the documents reveal is that Perkins supposedly provided certain, limited legal services to the debtor, in addition to providing services to Giga Watt Pte., Ltd. ("GW Singapore") and Cryptonomos Pte., Ltd. ("Cryptonomos"). While Perkins disputes the Trustee's conclusions about what the documents show, it would be one thing if all the Trustee proposed was to *add* allegations regarding this supposed "newly discovered" representation, however doubtful or immaterial such a claim might be. But what is glaring about the Trustee's proposed Amended Complaint, and ultimately improper in the current procedural stance

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 3 of 23

of this case, are not the allegations that are added, but those that are *deleted*. In his proposed Amended Complaint, the Trustee has completely *deleted* the premise of his case to date.

The Trustee's claims to date have been premised on the core assertion that the debtor was in a "partnership" with GW Singapore, of which the WTT token sale was a central aspect. In his original Complaint, the Trustee asserted that, as the "partner" of GW Singapore, the debtor was liable for GW Singapore's wrongs and entitled to assert GW Singapore's contractual rights. The partnership allegation was also the basis for the Trustee's claim that GW Singapore owed fiduciary duties to the debtor giving rise to the Trustee's breach of fiduciary duty claims. Another core assertion has been that an escrow provision was incorporated from marketing materials into the WTT Token Purchase Agreements ("TPA") whereby GW Singapore sold tokens to purchasers. From these two core factual and legal premises, the Trustee alleged that (1) the debtor was entitled to "stand in the shoes" of GW Singapore to enforce alleged terms of escrow "incorporated" into the TPAs; (2) Perkins, as escrow agent, was bound to perform those terms, but failed to do so by prematurely releasing token purchase proceeds to GW Singapore; and (3) as GW Singapore's "partner" the debtor was liable for the breach of the TPAs and thereby became liable to token purchasers due to Perkins' alleged failure to perform its escrow duties. Thus, the Trustee alleges, the debtor is now entitled to

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 4 of 23

recover from Perkins the damages resulting from the breach of the escrow provision in the TPAs. In other words, the entire factual and legal premise of the Trustee's case hinged on the alleged "partnership" between the debtor and GW Singapore, and on the alleged incorporation of an escrow provision into the TPAs which Perkins was bound to perform. For nearly two years this litigation has been focused on these allegations.

Now, after nearly four years of bankruptcy and two years of litigation, at the eleventh hour, just before a fully briefed Ninth Circuit appeal is to be argued, the Trustee proposes to completely rewrite his claims and erase the work of the parties and multiple courts spanning two years of litigation. *See* Dkt. 116 (Mem. in Supp.) at 4:17–19. Specifically, the proposed Amended Complaint (1) *deletes* all reference to a partnership between GW Wenatchee and GW Singapore; (2) *deletes* all reference to the debtor being entitled to assert GW Singapore's rights; (3) *deletes* all reference to the debtor being liable for GW Singapore's wrongs; (4) *deletes* all reference to the terms of escrow having been "incorporated by reference" into the TPAs which contain arbitration clauses; (5) *deletes* all reference to the debtor being entitled to enforce the terms of the TPAs; (6) *deletes* all reference to the debtor being put into breach of the TPAs; and (7) *deletes* all reference to the debtor having liability to token purchasers under the TPAs. In fact, the proposed Amended Complaint does not once mention the TPAs—the transaction that is at the heart of this litigation, regarding which Perkins allegedly acted

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 5

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 5 of 23

as escrow agent, and the proceeds of which the Trustee seeks as damages. Under the original Complaint, the Trustee's claims were intertwined with a contract containing an arbitration clause. Under the proposed Amended Complaint, the Trustee attempts to untangle the two by deleting all reference to the TPAs, all reference to standing to enforce the TPAs, and all reference to liability for a breach of the TPAs.

By proposing to now delete his original allegations, the Trustee is seeking to alter, and thereby moot, issues that go to the merits of Perkins' pending appeal regarding a denial of arbitration. From the moment Perkins moved to compel arbitration, the Trustee has been running from the allegations of his original Complaint. The Trustee is now attempting to abandon them entirely through the device of supposed newly discovered evidence and an Amended Complaint. However, while appeal is pending, the Trustee cannot alter "those aspects of the case" or the "particular issues" involved in the appeal. *City of Los Angeles*, 254 F.3d at 886; *Small*, 611 F.3d at 495.

Moreover, the Trustee offers no explanation of how the alleged "revelation" that Perkins supposedly provided legal services to the debtor justifies erasing the prior "partnership" allegations, the prior allegations that the terms of escrow were incorporated by reference into the TPAs, or any mention whatsoever of the TPAs. Whether Perkins provided limited legal advice to the debtor has nothing to do with whether the debtor and GW Singapore agreed to be partners, whether an escrow

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 6

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 6 of 23

provision was incorporated into the TPAs, whether GW Singapore owed fiduciary duties to the debtor, or whether the debtor has standing to enforce any escrow provision in the TPAs. The link between the supposed newly discovered evidence and the deletion of the Trustee's original allegations is unexplained and inexplicable. The only conclusion is that the proposed Amended Complaint is a last-minute attempt to alter and moot the basis of a pending appeal in which oral argument is but weeks away. Indeed, the Trustee plainly states that, if this Court allows the proposed amendment, the Trustee will promptly go to the Ninth Circuit and argue that the pending appeal is rendered "moot." Mem. in Supp. (Dkt. 116) at 7:15–16; Decl. of Egan (Dkt. 117) ¶ 9. In fact, the Trustee has now done exactly that – filing a motion with the Ninth Circuit to remand or dismiss the pending appeal on the grounds that the supposed "newly discovered" evidence alleged in the proposed Amended Complaint moots the issues on appeal.

Because the proposed Amended Complaint would materially alter fundamental aspects of Perkins' pending appeal and indeed, according to the Trustee, would moot the appeal, under the "divestment rule," respectfully, this Court lacks the authority to grant the Trustee's Motion to Amend. If the Ninth Circuit affirms this Court's order denying arbitration, then this Court will again have jurisdiction to consider the Motion

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 7 of 23

to Amend; if the Ninth Circuit reverses and remands with instructions to compel arbitration, then any amendment in this action would be futile.

For these reasons, and as discussed further below, Perkins Coie LLP and Lowell Ness (collectively "Perkins") object to the Trustee's Motion to Amend and request that it be (a) denied or (b) stayed until the Ninth Circuit decides the pending appeal.

## II.   PROCEDURAL POSTURE AND RELEVANT FACTS

### A.   The Trustee's Original Complaint.

The bankruptcy petition in this matter was filed on November 19, 2018. Two years later, a "Verified Complaint" commencing this adversary proceeding was filed on November 18, 2020. Dkt. 1. An "Amended Verified Complaint" was filed the next day, November 19, 2020. Dkt. 6. Four days later, on November 24, 2020, an unredacted "Verified Complaint" was filed under seal. Dkt. 11. The Trustee then served on Perkins an unredacted copy of the Complaint, with hyperlinks to many of the documents that the Trustee contended supported the allegations. The substance of these original Complaints are substantially the same, if not identical.[1]

According to the allegations in the Complaint, a key term by which GW Singapore sold tokens was that the sale proceeds would be escrowed with Perkins Coie

---

[1] The Trustee asserts that they are the same and that the "Amended" Complaint at Dkt. 6 was a misnomer. Mem. in Supp. at 5 n.1.

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

until GW Wenatchee built additional facilities sufficient to accommodate the use (equivalent computing power) of the tokens sold.  Because there is no mention of an escrow in the TPAs by which the tokens were sold, the Trustee alleges that an escrow provision was incorporated into the TPAs from a "White Paper" used to market the tokens.  As a result, the Trustee alleges that the TPAs were breached when Perkins allowed GW Singapore to withdraw sale proceeds from escrow prematurely before sufficient additional facilities were completed.  The Trustee seeks to recover from Perkins the damages allegedly caused by this breach of the TPAs.

However, a fundamental problem for the Trustee is that the debtor was neither a party to the TPAs between GW Singapore and the token purchasers, nor a party to the alleged escrow agreement between GW Singapore and Perkins Coie.  To overcome these obstacles, the Trustee alleges that the "Giga Watt Project" (i.e., the WTT token sale, or what the Trustee refers to as the "tokenization" of Giga Watt cryptomining), was a "partnership" between the debtor, Giga Watt, Inc. ("GW Wenatchee") and GW Singapore.  *See, e.g.,* Dkt. 6 ¶¶ 10, 11, 17, 19, 20, 25, 26, 28, 29, 30, 31, 68, 72, 77.  By virtue of this partnership, the Trustee alleges the debtor stands in the shoes of GW Singapore and thus can enforce both the escrow agreement and the TPAs and goes so far as to allege the debtor is thereby in "privity" with Perkins.  *See, e.g., id.* ¶¶ 19, 20, 25, 68, 72, 77.  The Trustee also alleges that, by virtue of the partnership, the debtor is

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 9

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

vicariously liable for GW Singapore's breach of the TPAs and thus can recover from Perkins Coie the damages caused by Perkins' premature distribution of escrowed funds. Finally, the partnership allegation is the source of GW Singapore's alleged fiduciary duty to the debtor, which Perkins allegedly helped GW Singapore breach by allowing a premature distribution of escrowed sales proceeds. In short, the "partnership" allegation is the hook by which the Trustee, asserting the debtor's rights, has standing to sue, and which allegedly created duty, breach, causation, and damages—every element of the Trustee's claims. *See, e.g., id.*

For almost two years these allegations have formed the basis of the Trustee's claims and have been the focus of the litigation. Perkins estimates that, combined, the parties have expended well over one thousand hours of attorney time on this case to date, resulting in hundreds of thousands of dollars in attorneys' fees. In addition, this Court, the District Court, and now the Ninth Circuit have expended substantial time and effort in managing litigation over the existing claims.

**B.** **Perkins' Motion to Compel Arbitration, and Appeals of the Denial of that Motion, Are Based on the Allegations of the Trustee's Original Complaint.**

Shortly after service of the Trustee's original Complaint, Perkins' Motion to Compel Arbitration and Stay was filed on February 26, 2021. Dkt. 40. The basis of the Motion was simple: The Trustee claims to stand in the shoes of GW Singapore to enforce an escrow provision allegedly incorporated into the TPAs and seeks to hold

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Perkins liable for a breach of the TPAs.  However, the TPAs also contain a broad arbitration clause.  If the debtor is a party to the TPAs, is seeking to enforce a provision incorporated into the TPAs, and is seeking to collect damages from Perkins caused by an alleged breach of the TPAs, then the Trustee's claims are "intertwined" with the terms, conditions, and performance of the TPAs.  Under such circumstances, the doctrine of equitable estoppel allows Perkins to avail itself of the arbitration provision in the TPAs.  *E.g.*, *Setty v. Shrinivas Sugandhalaya LLP,* 3 F.4th 1166, 1169 (9th Cir. 2021); *David Terry Invs., LLC-PRC v. Headwaters Dev. Group LLC.*, 463 P.3d 117, 123-24 (Wash. Ct. App. 2020).

Perkins' appeal to the District Court of this Court's Order Denying the Motion to Compel Arbitration was filed on May 6, 2021. Dkt. 61.  Perkins' appeal of the District Court's Order Affirming Denial of the Motion to Compel Arbitration was filed February 3, 2022.  The denial of Perkins' Motion to Compel Arbitration is now before the Ninth Circuit pursuant to 9 U.S.C. § 16. The appeal is fully briefed, and oral argument has been scheduled for December 6, 2022, just a few weeks from now.  *See* Dkt. 114.

## C.   "Newly Discovered" Evidence.

In approximately February of 2022, three and a half years into the debtor's bankruptcy and 15 months into this adversary proceeding, counsel for the Trustee indicated that she had "discovered" new documents belonging to the debtor.  These are

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 11

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

the "Lighthouse Documents" that the Trustee refers to as "newly discovered evidence."
*See* Affidavit of Ralph Cromwell in Opp. to Mot. to Amend ("Cromwell Decl.") ¶¶ 4-6
and Exs. 7, 8.  The Lighthouse Documents were collected from the debtor by its former
counsel, Wilson Sonsini, in May of 2018, and have been held by its vendor, Lighthouse,
ever since.  In other words, they are the debtor's own documents and have been in the
control of the debtor (through its former counsel and vendors) for years.  *See id.  See*
*also, e.g., Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) (party has "control"
of documents they have the legal right to obtain and has affirmative duty to obtain in
response to discovery "information reasonably available to him from his employees,
agents, or others subject to his control").  Not only were the Lighthouse Documents in
the control of the debtor all along, the Trustee knew they existed and were being held
by Lighthouse more than three years ago, no later than June 11, 2019, when counsel for
the Trustee wrote to Lighthouse about "an efficient method for transferring to the
Trustee" "all of the Debtor's documents and records, defined in the broadest sense, that
are in your possession, custody, or control."  Cromwell Decl. ¶ 5, Ex. 8 at 2-3.  That the
Trustee failed to actually obtain and review the documents until three years later, in the
summer of 2022, does not make the documents "newly discovered."  This is particularly
true since, in July of 2021, more than a year before the Lighthouse Documents were

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 12

Byrnes ♦ Keller ♦ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington  98104
(206) 622-2000

20-80031-FPC    Doc 120    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 12 of 23

finally obtained, Perkins served broad discovery requests on the Trustee seeking documents relevant to the Trustee's claims. *Id.* ¶ 9 and Ex. 10.

Among other things, the Lighthouse Documents show that, in the summer of 2017, Perkins was asked to provide advice regarding corporate structuring for various entities, and proposed entities, related to the Giga Watt/Cryptonomos enterprise. The initial inquiry came from Katrina Grant at Cryptonomos. The work, however, was cut short by Perkins' inability to get needed background information, and by instruction from Zeev Hirsh, the new in-house attorney for "Cryptonomos" who went on to personally undertake the restructuring work. Cromwell Decl. ¶¶ 11-13 and Exs. 19, 20.

The documents also show that Perkins was requested to assist in responding to a grand jury subpoena for information relating to a foreign national who had apparently gone onto a website maintained by Cryptonomos and had created an identity for himself. The initial inquiries were made by the U.S. government to Cryptonomos, and were forwarded by email to Perkins. *Id.* ¶ 10 and Exs. 13, 14. Perkins then accepted a subpoena addressed to "Giga Watt," although it appears that Cryptonomos collected responsive information which GW Wenatchee then produced and certified as complete, at the direction of Cryptonomos' counsel, Zeev Hirsh. *Id.* ¶ 10, and Ex. 15. In both instances, Perkins sent no retention letter to the debtor, did not perform a conflict check for the debtor, and sent no bills to the debtor. *Id.* ¶¶ 14-15. In the case of the

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 13

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 13 of 23

restructuring work, a bill was sent to and paid by Cryptonomos. *Id.* ¶ 14. In the case of the subpoena work, a bill was sent to and paid by GW Singapore. *Id.* ¶ 10.

**D.      The Proposed Amended Complaint.**

Nevertheless, starting in mid-July of 2022, counsel for the Trustee expressed concern that these documents showed that Perkins had provided legal services to GW Wenatchee and had hidden from the Trustee the documents that disclosed the existence of the alleged attorney-client relationship. Counsel for Perkins disagreed on both points and, after further discussion, the parties agreed to disagree. *See* Cromwell Decl. ¶¶ 17-21. By early August, counsel for the Trustee began expressing an interest in amending the Complaint to add a claim that Perkins was counsel to GW Wenatchee. Counsel for Perkins responded that, if all the Trustee wanted to do was add a claim that Perkins was counsel to GW Wenatchee based on the two matters described above, that Perkins would likely consent and would not require a motion. *See id.* ¶ 22.

Counsel for the Trustee also expressed an interest in adding a new party, Timur Usmanov, the former Chief Financial Officer for GW Wenatchee. *See id.* ¶ 23. In this regard, GW Wenatchee's banking records show that, as soon as Perkins began making allegedly premature distributions to GW Singapore from the escrow, GW Singapore began wire transferring millions of dollars to GW Wenatchee to fund construction costs. *See id.* ¶ 23. The Trustee had deposed Mr. Usmanov on March 22, 2022. At his

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 14

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

deposition, Usmanov testified that he understood that the source of the funds being wired to the debtor by GW Singapore, was the funds disbursed by Perkins to GW Singapore from escrow:

> Q.: When Giga Watt Singapore deposited money into Giga Watt Wenatchee's bank accounts, what transparency did you have into the source of that money?
>
> A.: I was told the money was from escrow, released from escrow.

*Id.* ¶ 24 and Ex. 29 (Usmanov Dep. at 110:23-111:2). In the Lighthouse Documents, it appears that Usmanov not only believed that the money arriving at GW Wenatchee was coming from escrow but was actively involved in getting Perkins to release the money, to the point of drafting disbursement requests which GW Singapore would then send to Perkins asking for further disbursements from escrow. *See id.* ¶¶ 23-24. In response to the Trustee's stated desire to add a claim that Usmanov's participation in engineering premature releases from escrow constituted a breach of duties he owed to the debtor, counsel for Perkins again expressed that Perkins would likely consent to such an amendment. *See id.* ¶ 25.

As understood by counsel for Perkins, the original plan was for the Trustee to provide Perkins counsel with a draft of an Amended Complaint which would show exactly what changes the Trustee proposed. This would serve as a springboard to go to Perkins to obtain consent for filing the amendment. The hope was that such a draft

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 15

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

could be provided by late August, 2022. That did not happen, however. *See id.* ¶¶ 27-28.

Instead, on August 26, 2022, Perkins filed with the Ninth Circuit, its Reply Brief in support of the appeal from the denial of arbitration. In its Reply, Perkins' principal point was that the theory argued by the Trustee on appeal to avoid arbitration, depended on factual allegations that were not in, and in fact were contrary to, the allegations in the Complaint. In its Reply, Perkins emphasized that the allegations in the Complaint are admissions, which are binding on the Trustee, and went through the Complaint, paragraph by paragraph, quoting the allegations which Perkins believes entitles it to arbitration. These same allegations were the basis of Perkins' Motion to Compel Arbitration and its appeal in the Ninth Circuit. On the same day that Perkins filed its Reply in the Ninth Circuit, August 26, 2022, Counsel for the Trustee stated that a proposed Amended Complaint would not be completed until September 8, 2022. *See id.* ¶¶ 29-30.

On September 8, 2022, the Trustee filed his proposed Amended Complaint without providing a previous draft to Perkins' counsel for review. On September 12, 2022, the Trustee provided Perkins with a proposed consent to the on-file Amended Complaint. Perkins did not consent because, as is explained above, every single paragraph quoted by Perkins in its Reply to the Ninth Circuit is deleted in the proposed

Byrnes ♦ Keller ♦ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington 98104
(206) 622-2000

Amended Complaint. As noted above, the proposed Amended Complaint does not merely *add* allegations that Perkins represented the debtor, or *add* new parties, as Perkins understood that counsel for the Trustee originally suggested. Instead, the proposed Amended Complaint completely rewrites the original allegations to delete every single allegation relating to partnership, to the terms of escrow being incorporated by reference into the TPAs, and to the Trustee's standing in the shoes of GW Singapore to enforce the TPAs. Accordingly, counsel for Perkins expressed concern that, if Perkins consented to the proposed Amended Complaint, the Trustee would argue that Perkins had consented to the deletion of the factual basis for its demand for arbitration. *See id.* ¶¶ 31-32. The Trustee's counsel responded that the amendment would moot the appeal but that the Trustee had a right to amend. Counsel for Perkins then reiterated that Perkins would likely consent to the addition of a legal theory, or a party, but strongly doubted that Perkins would consent to the deletion of the factual basis for a fully briefed appeal to the Ninth Circuit which was weeks away from oral argument. *See id.* ¶¶ 33-34.

Counsel for the Trustee then suggested that Perkins could stipulate to a remand of the present appeal, that the Trustee would file the Amended Complaint, Perkins could again demand arbitration, and then work its way back up to the Ninth Circuit if arbitration was denied. After further back and forth, Perkins responded that its right to

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

arbitration would stand or fall based on the allegations in affect at the time of its initial demand. *See id.* ¶ 35. The Trustee rejected this position. Following these exchanges between counsel, the Trustee withdrew the Amended Complaint that had been filed without consent of Perkins or leave of the Court. The Trustee's Motion to Amend followed. The proposed Amended Complaint filed with the Motion makes further changes. Importantly, it also *deletes* the entire "partnership" premise of the Trustee's claims to date and *deletes* that the terms of escrow were incorporated by reference into the TPAs. The proposed Amended Complaint *deletes* the substance of at least the following paragraphs of the original Complaint relating to partnership and incorporation by reference: ¶¶ 10, 11, 17, 18, 19, 20, 25, 26, 28, 29, 30, 31, 44, 48, 68, 72, 77, 78. *Compare* Dkt. 6 *with* Dkt. 115-2. Nevertheless, the Trustee has continued to suggest that Perkins should agree to vacate the pending appeal so that it can again demand arbitration based on the Trustee's proposed new allegations. Perkins has declined to do so.

### III.   <u>ARGUMENT</u>

**A.   <u>This Court Lacks Jurisdiction to Grant the Motion to Amend.</u>**

"The filing of a notice of appeal is an event of jurisdictional significance–it confers jurisdiction on the court of appeals and divests the district court of its control

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1    over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer*
2    *Discount Co.,* 459 U.S. 56, 58 (1982).

3         Under the "divestment rule," once an appeal has been taken "the lower court loses
4    jurisdiction over the subject matter of the appeal." *Cal. Dep't. of Toxic Substances*
5    *Control v. Comm. Realty Projs., Inc.,* 309 F.3d 1113, 1120–21 (9th Cir. 2002). The
6    divestment rule applies to "those aspects of the case involved in the appeal." *Id*. at
7    1120; *accord e.g.*, *City of Los Angeles*, 254 F.3d at 885–86 (interlocutory appeal divests
8    the district court "of jurisdiction over the particular issues involved in that appeal");
9    *Pipe Trades Council of N. Cal., U.A. Local 159 v. Underground Contractors Ass'n. of*
10   *N. Cal.,* 835 F.2d 1275, 1280 (9th Cir. 1987) (appeal from order denying arbitration
11   "clearly divests" the lower court of jurisdiction over subject matter of appeal).

12        The divestment rule likewise applies to motions to amend the pleadings that alter
13   or affect the basis of a pending appeal. *In re Mercedes-Benz Emissions Litig.*, 797 F.
14   App'x at 698–99. Under the divestment rule, an amended complaint is inoperative
15   because "suit[s] c[annot] be altered through operation of the Civil Rules during the
16   pendency of [an] appeal." *Id.*

17        The Third Circuit's opinion in *Mercedes-Benz* involves nearly identical facts to
18   those presented here. There, a motion to compel arbitration was denied. *See id.* While
19   appeal of the order denying arbitration was pending, the plaintiff filed an Amended

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 19

1  Complaint dropping the parties and claims on which the motion to compel arbitration

2  had been based. *Id.* at 698. The Third Circuit rejected the attempt, holding that the

3  lower court was divested of jurisdiction over "the claims" that formed the basis of the

4  appeal. *Id.* The court held that because the lower court did not retain jurisdiction over

5  those "claims," the suit "could not be altered through operation of the Civil Rules during

6  the pendency of the appeal." *Id.* The same result obtains under the Ninth Circuit

7  authorities discussed above.

8        Under the divestment rule, this Court's otherwise broad discretion under Civil

9  Rule 15 is constrained. Specifically, this Court lacks authority to permit the filing of

10  an Amended Complaint that would alter or encroach upon the subject matter of a

11  pending appeal. *See id.; City of Los Angeles*, 254 F.3d at 885–86; *Pipe Trades*, 835

12  F.2d at 1280. Here, however, that is exactly what the Trustee asks this Court to do—

13  permit an Amended Complaint that the Trustee himself asserts would "moot" the

14  pending appeal of this Court's Order Denying Perkins' and Ness' Motion to Compel

15  Arbitration and Stay. *See* Mem. in Supp. (Dkt. 116) at 7:15–16; Decl. of Egan (Dkt.

16  117) ¶ 9; Cromwell Decl. ¶¶ 33, 35, 36 and Exs. 31, 32.

17        Because the proposed Amended Complaint seeks to alter aspects of the suit that

18  are directly at issue in a pending appeal by deleting the allegations and premise of the

19  claims that form the basis of the appeal, respectfully, this Court currently lacks authority

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 20

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

to grant the Trustee's Motion to Amend.  For that reason alone, the Motion must be denied.

**B.**     **Ruling on the Motion to Amend Now Would be Premature and Potentially Futile.**

In addition to the fact that this Court currently lacks the jurisdiction to rule on the Trustee's Motion to Amend, ruling on the Motion now would be premature and potentially futile.  Specifically, the Ninth Circuit has observed that a plaintiff may not amend his complaint to circumvent an order compelling arbitration, as this would allow every order compelling arbitration to become "merely provisional." *PowerAgent, Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1190 (9th Cir. 2004) (citing *PowerAgent, Inc. v. U.S. Dist. Ct. for the N. Dist. of Cal.*, No. 99-70560, 2000 WL 32073 at *2 (9th Cir. Jan. 14, 2000)).  Thus, if the Ninth circuit reverses this Court's Order Denying Perkins' and Ness' Motion to Compel Arbitration and compels arbitration, or remands with instructions to do so, the filing of an amended complaint will not circumvent that order and will be futile.  *See id*.  Any amendment to the Trustee's claims will then need to be presented to the arbitrators.

On the other hand, if the Ninth Circuit affirms this Court's Order Denying Perkins' and Ness' Motion to Compel Arbitration, then this Court will again regain jurisdiction over the claims and other aspects of the suit that are now on appeal.  At that point, this Court's discretion under Rule 15 would no longer be constrained by a

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 21

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

pending appeal, and the Court would be free to exercise its discretion as it sees fit at that time.

Accordingly, both because it currently lacks jurisdiction to grant the Motion to Amend, and because doing so now would be premature and potentially futile, this Court should wait until the Ninth Circuit issues its decision before considering or ruling upon the Trustee's Motion to Amend.

DATED this 17th day of October, 2022.

BYRNES KELLER CROMWELL LLP

By /s/ Bradley S. Keller
    Bradley S. Keller, WSBA #10665
By /s/ Ralph E. Cromwell, Jr.
    Ralph E. Cromwell, Jr., WSBA #11784
By /s/ Jofrey M. McWilliam
    Jofrey M. McWilliam, WSBA #28441
    1000 Second Avenue, 38th Floor
    Seattle, Washington 98104
    Phone:   (206) 622-2000
    Fax:    (206)-622-2522
    Email:   bkeller@byrneskeller.com
           rcromwell@byrneskeller.com
           jmcwilliam@byrneskeller.com

MUNDING, P.S.

By /s/ John Munding
    John Munding, WSBA #21734
    309 E. Farwell Rd., Suite 310
    Spokane, Washington 99218
    Phone:   (509) 590-3849
    Fax:    (509) 624-6155
    Email:   john@mundinglaw.com
*Attorneys for Perkins Coie LLP and Lowell Ness*

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

By /s/ Ralph E. Cromwell, Jr.
Ralph E. Cromwell, Jr.
*Attorneys for Defendants*
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: 206-622-2000
Fax: 206-622-2522
Email: rcromwell@byrneskeller.com

PERKINS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT - 23

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 23 of 23