Bradley S. Keller, WSBA #10665
Ralph E. Cromwell, Jr., WSBA #11784
Jofrey M. McWilliam, WSBA #28441
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
(206) 622-2000
Facsimile No.: (206) 622-2522

Attorneys for Perkins Coie LLP

The Honorable Frederick P. Corbit
Chapter: 7

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

In Re:

GIGA WATT, INC., a Washington
corporation,

                              Debtor.

MARK D. WALDRON, as Chapter 7
Trustee,

                              Plaintiff,

vs.

PERKINS COIE, LLP, a Washington
limited liability partnership; LOWELL
NESS, individual and California resident;
GIGA WATT PTE., LTD. a Singapore
corporation; and ANDREY KUZENNY, a
citizen of the Russian Federation;

                              Defendants

        and

THE GIGA WATT PROJECT, a
partnership,

                    Nominal defendant.

No. 18-03197-FPC11

The Honorable Frederick P. Corbit

**CHAPTER 7**

Adv. Case No. 20-80031

**AFFIDAVIT OF RALPH E.
CROMWELL, JR. REGARDING
TRUSTEE'S MOTION TO
AMEND COMPLAINT**

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Ralph E. Cromwell, Jr., states as follows:

1.    I am an attorney with Byrnes Keller Cromwell LLP, counsel to defendant Perkins Coie LLP and Lowell Ness ("Perkins") in this matter. I have personal knowledge of the matters and statements set forth below, which are based on my representation of Perkins in this matter, including my understanding of the content of Perkins' files, my review of tens of thousands of pages documents collected and/or produced in this matter by the parties, the pleadings that have been served and/or filed, and my discussions with counsel for the Trustee. The exhibits attached hereto are true and correct copies of, or excerpts of, various documents produced and/or reviewed relating to this matter.

2.    One of the sets of documents produced by the Trustee in this matter originated with the law firm Wilson Sonsini Goodrich & Rosati ("Wilson Sonsini"). It appears from other documents produced that the debtor was sued by StormsMedia LLC in early 2018 on a claim that the WTT tokens ("tokens") sold by Giga Watt Pte., Ltd., ("GW Singapore") were unregistered securities. The debtor interviewed Perkins Coie LLP as possible defense counsel but instead chose to hire Barry Kaplan of Wilson Sonsini. I know Mr. Kaplan from many contexts and, in early 2018, he was regarded as perhaps the leading securities defense lawyer in the Pacific Northwest.

3.    In the Spring of 2018, the Securities Exchange Commission began an investigation of the cryptocurrency industry and included the debtor as one of the subjects of the investigation. In addition, multiple other civil actions were filed in which

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 2

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120-1    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 2 of 21

not only was the debtor a defendant, but GW Singapore, Cryptonomos Pte., Ltd. ("Cryptonomos"), and David Carlson, the then CEO of the debtor, were named as defendants. In all of these matters, the debtor again hired Barry Kaplan of Wilson Sonsini as counsel. From the Wilson Sonsini documents produced by the Trustee, it appears that, in May of 2018, Wilson Sonsini made a concerted effort to have the debtor circulate a document retention memo.

4. On May 2, 2018, the SEC issued broad document requests to the debtor. *See* **Exhibit 1.** As a result, Wilson Sonsini organized an on-site document collection of electronic and hard copy documents from the debtor on May 21-24, 2018. *See* **Exhibit 2**. This included in-person meetings with a variety of the debtor's officers and management. *See* **Exhibit 3**. As explained by a Wilson Sonsini attorney in an email dated May 25, 2019, Wilson Sonsini's practice was to "preserve and collect far more than we actually review or produce." *See* **Exhibit 4**. The vendor that Wilson Sonsini used to store and process the documents collected was Lighthouse. *E.g.,* **Exhibit 5.** Lighthouse was actually on-site at the debtor's offices with Wilson Sonsini for the document collection. *See* **Exhibit 6**.

5. In February of 2022, I learned from the Trustee's counsel that Lighthouse still had the documents that Wilson Sonsini had collected from the debtor in 2018. On March 3, 2022, the Trustee's counsel sent a turnover letter to Lighthouse. *See* **Exhibit 7**. In that letter, the Trustee recounts that 1) the documents held by Lighthouse are the debtor's documents and therefore belong to the Trustee, and 2) that in June of 2019, the

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC     Doc 120-1     Filed 10/17/22     Entered 10/17/22 17:48:49     Pg 3 of 21

Trustee had already contacted Lighthouse to obtain a more limited group of documents. The earlier request—a letter dated June 11, 2019—was attached to the turn-over letter dated March 1, 2022, and is attached hereto as **Exhibit 8**. In the June 2019 letter, the Trustee recounts that Wilson Sonsini had informed the Trustee that Lighthouse had copies of the debtor's documents. *Id.* In the June 2019 letter, the Trustee asks Lighthouse to make a partial production of specified documents, and then goes on to say:

> On a longer-term, but reasonable basis, the Trustee would like to obtain a copy of all documents and records, defined in the broadest sense, in Lighthouse's possession, custody or control that belongs to the Debtor.

*Id.* at 2, 3.

6.    For the next three years, the Trustee did nothing that I am aware of to follow-through on obtaining and reviewing the remaining documents of the debtor that Lighthouse continued to hold, until the March 3, 2022, turn-over letter was sent to Lighthouse. These remaining Lighthouse documents are the documents the Trustee now describes as "newly-discovered" despite having known of their existence and location since at least June of 2019.

7.    In March and April of 2022, I had discussions with Trustee's counsel about sharing the cost of having the Lighthouse documents prepared and produced. In brief, Perkins agreed to share the cost, and discussions went back and forth with the Trustee's counsel about the most efficient way to proceed.

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

8.      During efforts to get the documents held by Lighthouse produced, the Trustee continued to take the position that the Lighthouse documents belonged to the debtor and were subject to the control of the Trustee.  For example, on April 21, 2022, when my paralegal attempted to arrange for production by Lighthouse, the Trustee's counsel responded:

> Hold on, please.
>
> Lighthouse, you do not have authority to send the info.  It belongs to the bankruptcy estate.
>
> Ralph, let's talk in a bit.

*See* **Exhibit 9.**

9.      Once documents were finally obtained from Lighthouse, it was clear that they included considerable materials which had not previously been produced to Perkins.  In this regard, on July 20, 2021, Perkins had served broad discovery requests on counsel for the Trustee/debtor.  *See* **Exhibit 10**.  Among the Lighthouse documents are numerous documents that are clearly responsive to Perkins' July 2021 discovery requests.  For example, as described in paragraphs 23 and 24 below, there are documents showing that the debtor's CFO was actively involved in directing distributions by Perkins of the funds held in escrow to allow the debtor to pay construction bills.  Nevertheless, the Trustee apparently did nothing to obtain or review the Lighthouse documents and, to my knowledge, the Trustee did not inform Perkins of their existence until approximately February of 2022.

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 5

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC     Doc 120-1     Filed 10/17/22     Entered 10/17/22 17:48:49     Pg 5 of 21

10. Starting in mid-July of 2022, the Trustee's counsel emailed to me two documents with Lighthouse production numbers asking for an explanation of why Perkins had not previously produced them. *See* **Exhibits 11, 12.** One of the documents is a subpoena directed to "GigaWatt" and addressed to Perkins Coie. It asks that "Giga Watt/Cryptonomos" documents be produced to the government:

> any and all records concerning Giga Watt/Cryptonomos users or accountholders associated with the following identifiers:
> Romanian phone number….

**Exhibit 11 at 2.** From the documents produced by Lighthouse, it appears that an individual in Eastern Europe had briefly visited the website created by Cryptonomos to sell tokens and had created an identity for himself. *See* **Exhibit 13.** That person's phone was apparently later somehow involved in a grand jury proceeding and the government wanted to know what information existed regarding this individual. The government apparently initially attempted to contact Cryptonomos through its "support@cryptonomos" email address, and that request was then eventually passed on to Perkins. **Exhibit 14.** Perkins was asked to contact the issuer of the subpoena and, ultimately, to coordinate the necessary production. Timur Usmanov, the CFO of the debtor, assisted in collecting responsive documents from Cryptonomos (with which he was also involved), and provided them to Perkins. Zeev Kirsh then directed Dave Carlson, the then CEO of the debtor, to certify the production as complete. **Exhibit 15**. Kirsh was a newly hired in-house lawyer for Cryptonomos. **Exhibit 16.** I understand

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 6

Byrnes ♦ Keller ♦ Cromwell LLP
38th Floor
1000 Second Avenue
Seattle, Washington 98104
(206) 622-2000

that Perkins billed the work associated with this subpoena to GW Singapore and maintains that work in a file that identifies GW Singapore as the client.

11.    The second document was an email dated September 11, 2017, from Martha Sandoval, a partner in Perkins' Seattle office, to Timur Usmanov, the CFO of the debtor, and to Zeev Kirsh, an in-house attorney for Cryptonomos. **Exhibit 12**. This email pertains to a request initially made to Perkins by Katrina Grant, an attorney for Cryptonomos, in an email dated May 11, 2017. **Exhibit 17**. By a retention letter dated March 3, 2017, Grant had previously retained Perkins to advise Cryptonomos regarding structuring and conducting a sale of digital tokens by GW Singapore. **Exhibit 18**. In her May 11, 2017, email, Grant tells Perkins, "we were advised by the accounting firm that we had too much exposure for tax and liability reasons." **Exhibit 17**. Attached to Grant's email is a complicated chart showing the debtor and a number of proposed, yet-to-be-formed entities to hold specific assets. *Id*. Eventually, Grant was connected to Martha Sandoval, a Perkins' attorney in its Seattle office with experience in structuring corporate entities.

12.    On July 26, 2017, Sandoval met with Dave Carlson, the then CEO of the debtor, in Perkins' Seattle office to get background information and to discuss what she was being asked to undertake. On August 8, 2017, Dave Carlson emailed other owners of the debtor to say he had met with Martha Sandoval and to ask whether he should retain Perkins "to audit our structure and to build us a robust structure going forward":

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120-1    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 7 of 21

I'm asking you for your feedback on whether to engage Perkins to audit our structure and to build us a robust structure going forward. At this point I think it is fair to say that Perkins knows "very little" about our business, with the exception of two entities and a proposed third entity (Hosting)."

**Exhibit 19 at 413614**. In response, Timur Usmanov, the then-CFO of the debtor, states that he agrees they should consider retaining Perkins. *Id.* at 413613. In late August/early September 2017, it appears Perkins anticipated that it would be retained by the debtor to address corporate structuring issues. However, I am unaware of any response by Carlson's co-owners to his inquiry about whether to retain Perkins, and I am unaware of any further communication by the debtor to Perkins saying that the debtor definitely wanted to retain Perkins.

13. As a result, matters drifted along until late September of 2017 with Perkins trying to obtain additional background information. By that point, both Usmanov and Kirsh were communicating with Perkins. On September 12, 2017, Kirsh emailed Usmanov to suggest that he, Kirsh, could do some of the work Perkins is being asked to do and thereby save the expense of having Perkins involved. In response, Usmanov says that Perkins can gather documents and see if they were properly filed and "[m]aybe" draft an "SHA" (Shareholders Agreement) but then Hirsh can "take over." **Exhibit 19**. On September 28, 2017, Zeev Kirsh, in-house counsel for Cryptonomos, told a paralegal at Perkins, in a telephone call, that he did not understand anything that Perkins was doing and that it was a waste of time and money for Perkins to continue. *See* **Exhibit 20**. I understand this communication came as a surprise and

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120-1    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 8 of 21

was somewhat baffling to Perkins. But coupled with Perkins' inability to get background information, Kirsh's call effectively ended Perkins' potential involvement in efforts to devise a comprehensive corporate structure plan. Although additional discovery would be helpful, it appears that Usmanov and Kirsh may have decided that the work being discussed with Perkins could be done internally by Cryptonomos' in-house lawyers at lower cost. There are Lighthouse documents showing that Kirsh then began work on defining the relationship between the debtor and GW Singapore, and on creating a Shareholders Agreement for each of these entities—matters which had previously been discussed with Perkins. *See* **Exhibits 21, 22.**

14. I understand that Perkins' work pertaining to a possible restructuring was viewed as a continuation of earlier discussions between Perkins and Grant and, like that earlier work, was billed to Cryptonomos. I also understand that information related to that work is held by Perkins in a file which identifies Cryptonomos as the client.

15. It is my understanding that Perkins has no record that any retention letter was ever sent to or entered into with the debtor, no record of a conflict check in any matter to be opened for the debtor, and no record of any bill ever being sent to the debtor. In short, in its internal records, Perkins does not have the normal indicia of having represented the debtor.

16. With regard to any arguable subjective belief that an attorney-client relationship did commence, it is the reasonable belief, based on objective evidence, of the purported client—i.e., the entity in this case—that is at issue. In this regard, it is my

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 9

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120-1    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 9 of 21

understanding that Perkins entered into retention letters only with Cryptonomos and, later, GW Singapore. **Exhibits 18, 23**. Both of those retention letters expressly state that Perkins does not represent any related or affiliated entity unless separately and clearly undertaken and agreed to. **Exhibit 18 at 2**; **Exhibit 23 at 2**. Moreover, the Cryptonomos retention letter was signed by the CEO of Cryptonomos, Nikolay Evdokimov, **Exhibit 18 at 5**, who was also the President of the debtor. **Exhibit 24 at 2**. As such, the debtor knew or should have known that Perkins was not its counsel unless and until such representation was separately and clearly agreed to. My understanding is that no separate retention letter with the debtor was ever entered into.

17. With this background, in July of 2022, when counsel for the Trustee asked why Perkins had not produced documents related to the grand jury subpoena and the restructuring issues, I first pointed out that I was not aware of any discovery request to Perkins from the Trustee other than the Rule 2004 subpoena issued by the Trustee to Perkins in the summer of 2020. *See* **Dkt. 637 (Exhibit 25).** That subpoena, by its terms, is limited to non-privileged documents related to an escrow of token sale proceeds, or to agreements between the debtor and GW Singapore and/or Cryptonomos. *Id.* I do not believe (a) a grand jury subpoena regarding an Eastern European individual who briefly visited a website maintained by Cryptonomos without ever buying a token, or (b) questions regarding possible corporate structuring that never went anywhere, to be related to an escrow, or to constitute an agreement between the debtor and other entities. In other words, with one exception described below, I do not believe the

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

documents that counsel for the Trustee was asking about were responsive to any discovery issued to Perkins. The possible exception is that there is a brief reference to the existence of an escrow in Martha Sandoval's notes of her discussion with Dave Carlson on July 26, 2017. I believe Ms. Sandoval's notes are privileged as described below.

18.     In addition, given my understanding that Perkins has none of the normal indicia of having represented the debtor, but has only retention letters, files, and billing records that reflect a representation of GW Singapore and Cryptonomos, there are privilege and client confidence issues regarding Perkins' ability to produce to the Trustee from these files, even if served with an appropriate discovery request. Under Rule of Professional Conduct 1.6, Perkins has a broad duty to preserve in confidence "information relating to the representation of a client unless the client gives informed consent." Comment 21 to RPC 1.6 explains that this clause is to be read broadly and is not limited to privileged information or secrets. *See also* ABA Formal Opinion 16-473 Obligations Upon Receiving a Subpoena or Other Compulsory Process for Client Documents or Information. **Exhibit 26**. Moreover, GW Singapore is a defendant in this matter and thus is directly adverse to the Trustee. Although Cryptonomos is not a defendant, the Trustee routinely talks about the wrongs supposedly perpetrated by "Russian fraudsters" or the "Russian Team," which in part appear to refer to persons associated with Cryptonomos. Given that the Trustee is directly adverse or potentially adverse to both GW Singapore and Cryptonomos, I believe the ethical restrictions of

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 11

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC     Doc 120-1     Filed 10/17/22     Entered 10/17/22 17:48:49     Pg 11 of 21

the RPCs are especially relevant, creating clear ethical obstacles to Perkins' ability to provide or discuss with the Trustee information from files held for GW Singapore or Cryptonomos, absent their informed consent. The Washington Supreme Court rigorously enforces these ethical obligations. *See, e.g., In re Cross* 198 Wn. 806, 500 P.3d 958 Wash. (2021) (nine-month suspension from the practice of law for lawyer who revealed confidences of a client to an adversary of the client without the client's consent).

19. In response, the Trustee's counsel explained that she believes that the existence of an attorney-client relationship is not determined from how an attorney holds files or who pays for the legal work, but rather can be created by a reasonable, subjective understanding that the attorney is representing you. In other words, if you read through the files, which Perkins created and maintains for GW Singapore and Cryptonomos, there are documents from which the Trustee could argue that the debtor might have subjectively believed that Perkins was also representing the debtor regarding the grand jury subpoena and the potential corporate structuring. At the same time, however, what someone could reasonably believe is a factual question that GW Singapore and/or Cryptonomos might dispute. For example, Dave Carlson's, August 7, 2017, email to the co-owners asking if he should hire Perkins seems to reflect a belief that, as of August 7, 2017, the debtor had not yet retained Perkins and was uncertain of whether it should do so. *See,* **Exhibit 19 at 413614.** In addition, since there are two Giga Watt entities, one of which was a specifically retained client and of which was

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 12

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120-1    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 12 of 21

not, and because the term seems to have been used generically to describe one, or all three of the related entities, references to "GigaWatt" are ambiguous and unclear. Accordingly, that the Trustee may now claim that the debtor subjectively believed it was a client of Perkins does not, in my opinion, eliminate the requirement of RPC 1.6 that Perkins maintain the confidentiality of files that it identifies as belonging to Cryptonomos and GW Singapore absent their informed consent.

20.     I have had multiple conversations with the Trustee's counsel wherein I explained that Perkins maintains files that Perkins believes belong to GW Singapore and Cryptonomos and which it cannot produce absent informed consent from them, which it has not been able to obtain.  For example, I was first retained by Perkins in the Summer of 2020 in connection with the Rule 2004 subpoena which the Trustee issued to Perkins.  My recollection is that in my earliest discussions with the Trustee's counsel, I explained that all of Perkins' files were maintained in the name of GW Singapore and Cryptonomos, that I understood Perkins' internal records did not reflect it having represented the debtor and, accordingly, that Perkins' ethical obligations under RPC 1.6 required they preserve the confidentiality of these files  The result of my discussions with the Trustee's counsel was the Order entered by this Court at **Dkt. 673** (**Exhibit 27)**.  That order provides:

> 1.     For purposes of Rule of Professional Conduct 1.6(b)(6), Perkins is hereby directed to produce to the Trustee, in a reasonably prompt fashion, those non-privileged documents which are responsive to the Rule 2004 Order which this Court entered on July 6, 2020.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*See* **Dkt. 673** (**Exhibit 27**). It is my recollection that this order reflected the arrangement that I negotiated with Trustee's counsel that Perkins would produce 1) non-privileged documents that were 2) responsive to the Rule 2004 Subpoena, and that, to facilitate this production 3) the court would order production pursuant to RPC 1.6(b)(6). The Order permits Perkins to designate the documents produced as confidential in order to satisfy Perkins' ethical obligations to maintain the confidentiality, to the extent possible, of even those documents which it is allowed or forced to produce under any of the exceptions stated in RPC 1.6(b). Perkins has complied with this carefully negotiated order in producing documents to the Trustee. However, Perkins otherwise cannot produce or disclose information in its files absent consent or a further court order.

21.    The limitations on Perkins' ability to produce additional documents has led to multiple discussions wherein the Trustee's counsel suggested that the Trustee would bring a Motion to Compel production of the information withheld by Perkins, perhaps under the crime-fraud exception to the attorney-client privilege, on the Trustee's theory that GW Singapore's sale of tokens constituted a crime or fraud in which Cryptonomos and Perkins participated—wittingly or unwittingly. In short, that Perkins has additional files, which it cannot ethically produce, has been an issue on the table in discussion with the Trustee's counsel from the start of my involvement in this matter.

22.    At some point in July or August of 2022, counsel for the Trustee began stating that she was interested in amending the Complaint to assert a claim that Perkins

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 14

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120-1    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 14 of 21

had represented the debtor regarding the subpoena and corporate structuring matters described above. Ultimately, I told the Trustee's counsel that if she wanted to add a claim that Perkins represented the debtor regarding the subpoena and corporate structuring matters described above, I thought it likely that Perkins would consent and that a motion would not be necessary.

23. Counsel for the Trustee also indicated that she was interested in adding Timur Usmanov, the former CFO of the debtor, as a defendant. In this regard, the banking records of the debtor show that, as soon as Perkins began disbursing money to GW Singapore from the "escrow" on August 8, 2017, GW Singapore began wire-transferring millions of dollars to the debtor from the bank account which had just received the distributions from Perkins. In the SEC investigation described above, the debtor—through Wilson Sonsini—represented to the SEC that all proceeds of token sales were used to fund the construction of new facilities by the debtor. *See* **Exhibit 28 at 11.** Accordingly, Perkins, in its Answer in this matter, alleged that, even if it had "prematurely" released funds to GW Singapore from an "escrow" (which it denied doing), the debtor was not damaged because GW Singapore then wire-transferred the funds to the debtor.

24. On this point, at Timur Usmanov's (former CFO of the debtor) deposition, on March 7, 2022, counsel for the Trustee asked Usmanov for his understanding regarding the source of the funds which GW Singapore wire transferred to the debtor. His answer was that those funds came from the escrow:

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 15

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC    Doc 120-1    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 15 of 21

Q.: When Giga Watt Singapore deposited money into Giga Watt Wenatchee's bank accounts, what transparency did you have into the source of that money?

A.: I was told the money was from escrow, released from escrow.

**Exhibit 29 at 110:23-111:2.** In the Lighthouse Documents, it appears that Usmanov not only believed that the money arriving at GW Wenatchee (the debtor) was coming from escrow, but that he tracked the escrow balance, and had direct access, and the authority and ability, to wire transfer funds from GW Singapore's bank account to the debtor, did so on multiple occasions, and was actively involved in obtaining, on behalf of the debtor, the release of funds from escrow, to the point of drafting the disbursement requests which GW Singapore would then send to Perkins in its own name. In my discussions with the Trustee's counsel, I understood her to say that she wanted to add a new claim that Usmanov's conduct in this regard constituted a breach of the duties he owed the debtor.

25. Based on this understanding, I again told counsel for the Trustee that if she wanted to add a claim that Usmanov breached duties to the debtor based on the conduct described above, Perkins would likely consent without the need for motion practice.

26. However, I do not recall ever discussing with the Trustee's counsel any other amendments to the existing Complaint. I do recall asking at one point if the Trustee's counsel intended to delete any claims. I understood the Trustee's counsel to say that she did not intend to delete claims, but rather to add claims and parties. Based

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

on that understanding, I told the Trustee's counsel that I thought Perkins would likely consent to the amendments described above.

27.    I also understood and believed that Trustee's counsel would provide a draft Amended Complaint to us that would show the Trustee's proposed amendments and that this would serve as a springboard to obtain Perkins' consent.  I believe that the Trustee's counsel, in a hearing on August 11, 2022, audio at **Dkt. 106**, references that understanding ("I think I can have it [Amended Complaint] done sooner than that, show it to Mr. Cromwell, and then negotiate with him….").  *See* **Dkt. 106 at 3:11**.

28.    My original understanding was that the Trustee's counsel hoped to complete a draft Amended Complaint by late August and show it to us.  However, on August 26, 2022, Trustee's counsel indicated she would not have an Amended Complaint until September 8, 2022.

29.    On August 26, 2022, Perkins filed its Reply Brief in its Ninth Circuit appeal of the denial of its request to compel arbitration of the Trustee's claims.  *See* **Exhibit 30.**  In its Reply, Perkins reiterated from its prior briefing to the courts below that the theory the Trustee was arguing to defeat arbitration was not supported by the allegations of the Trustee's original Complaint but was contrary to those allegations.  In Perkins' view, the allegations of the Trustee's original Complaint establish that the debtor's claims are intertwined with the WTT Token Purchase Agreements which GW Singapore used to sell tokens and which contain a broad arbitration clause.  To reiterate this point, Perkins, in its Reply Brief, quoted verbatim four of the paragraphs from the

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 17

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

20-80031-FPC    Doc 120-1    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 17 of 21

Trustee's Complaint and argued that the allegations of the Trustee's Complaint are admissions which bind the debtor.

30.     Only after Perkins filed its Reply Brief with the Ninth Circuit, such that the briefing on appeal was complete, did the Trustee file an Amended Complaint on September 8, 2022. **Dkt. 110.** I am not aware of receiving a draft of the proposed amended complaint prior to its filing.

31.     On September 12, 2022, counsel for the Trustee sent me a proposed consent by Perkins, pursuant to FRCP 15(a)(2), to the then on-file Amended Complaint.

32.     On September 15, 2022, I spoke with Trustee's counsel by telephone regarding her request that Perkins consent to the now on-file Amended Complaint. In part, I pointed out that the Amended Complaint completely deleted the original factual premise of the Trustee's claims on which Perkins based its demand for arbitration. For example, the Amended Complaint deleted all four of the paragraphs of the original Complaint which Perkins quoted in its Reply Brief to the Ninth Circuit as described above. I expressed concern that, if Perkins consented to such an amendment, the Trustee would then argue that Perkins had consented to abandon its demand for arbitration.

33.     The Trustee's counsel's response to this concern was that the Amended Complaint would "of course" moot the pending arbitration appeal but that the Trustee had a right to amend. To my recollection, this is the first point at which the Trustee's

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 18

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC     Doc 120-1     Filed 10/17/22     Entered 10/17/22 17:48:49     Pg 18 of 21

counsel said anything to me about an Amended Complaint affecting Perkins' demand for arbitration or affecting a fully briefed appeal to the Ninth Circuit.

34.     I reiterated that I thought Perkins would consent to the addition of a claim that it had represented the debtor in the matters described above, that Perkins would consent to a claim against Usmanov as described above, but that I strongly doubted that Perkins would consent to amendments that would be characterized as an abandonment of its demand for arbitration or as mooting a fully briefed appeal. I believe I also suggested, as a possible compromise, that if the Trustee wanted to take the extensive new factual allegations in the Amended Complaint and add them to the existing factual allegations in the original Complaint, so that both the original and new allegations would be in the Trustee's Amended Complaint, that Perkins would perhaps consent to such an approach. I understood the Trustee's counsel to decline that suggestion and to say that the Trustee is entitled to amend his allegations as he sees fit.

35.     In an email dated September 16, 2022, the Trustee's counsel proposed that Perkins consent to a remand of the pending Ninth Circuit appeal, after which the Trustee would file the Amended Complaint, stating that Perkins could then demand arbitration based on the new factual allegations of the Amended Complaint, and then "go from there." *See* **Exhibit 31**. I responded that I believed that Perkins' right to arbitration stood or fell based on the allegations in effect when Perkins first demanded arbitration and that Perkins would not agree to anything inconsistent with that position. *Id.* The

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Trustee's counsel disagreed with that position, *see id.*, and the present Motion to Amend followed.

36.     Thereafter, the Trustee withdrew the Amended Complaint that had been filed and filed a Motion to Amend that included a proposed amended complaint. The proposed amended complaint includes still more edits and amendments to the now withdrawn Amended Complaint. Since the filing of the Trustee's Motion to Amend, counsel for the Trustee has continued to suggest that Perkins should stipulate to a remand of the pending appeal. *See* **Exhibit 32.**

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

DATED this 17th day of October 2022.

BYRNES KELLER CROMWELL LLP

By /s/ Ralph E. Cromwell, Jr.
   Ralph E. Cromwell, Jr.,

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 20

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20-80031-FPC     Doc 120-1     Filed 10/17/22     Entered 10/17/22 17:48:49     Pg 20 of 21

# CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

By /s/ Ralph E. Cromwell, Jr.
Ralph E. Cromwell, Jr.
*Attorneys for Plaintiffs*
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
206-622-2000
Fax: 206-622-2522
Email: rcromwell@byrneskeller.com

AFFIDAVIT OF RALPH E. CROMWELL, JR.
REGARDING TRUSTEE'S MOTION TO AMEND
COMPLAINT - 21

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000