# EXHIBIT 1

| **From:** | Watts, Gregory |
|---|---|
| **To:** | "Dave Carlson" |
| **Subject:** | FW: Giga Watt, Inc. Document Request |
| **Date:** | Wednesday, May 2, 2018 3:18:10 PM |
| **Attachments:** | 2018.05.02 Document Request to Giga Watt Inc..pdf |
| | 3bclean-control.bin |

**From:** Mathie, BeLinda [mailto:mathieb@SEC.GOV]
**Sent:** Wednesday, May 02, 2018 2:59 PM
**To:** Watts, Gregory; Kaplan, Barry; Jensen, Stephanie
**Cc:** Hartman, Amy Flaherty
**Subject:** Giga Watt, Inc. Document Request

Greg, Barry, and Stephanie,

Thank you for speaking with us by phone today. Per our conversation, attached are document requests directed to your client, Giga Watt, Inc. We look forward to hearing from you soon with some proposed dates for a meeting here in Chicago to discuss the topics in the request. Please do not hesitate to contact me to discuss the requests or the meeting. Thank you.

Best regards,
BeLinda I. Mathie
Senior Attorney, Division of Enforcement
U.S. Securities and Exchange Commission
175 West Jackson Boulevard, Suite 1450
Chicago, Illinois 60604
Phone: (312) 596-6048
Email: mathieb@sec.gov

BeLinda I. Mathie
Senior Attorney
Division of Enforcement

Telephone: (312) 596-6048
Email: mathieb@sec.gov

May 2, 2018

**VIA EMAIL (GWatts@wsgr.com)**

Giga Watt, Inc.
c/o Gregory L. Watts, Esq.
Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036

Re:     In the Matter of Giga Watt, Inc. (MC-08502)

Dear Mr. Watts:

Following up on our recent discussion, the staff of the Securities and Exchange Commission would like to obtain certain documents and information from Giga Watt, Inc. ("Giga Watt"). Based on Giga Watt's interest in engaging in a voluntary process to produce a limited set of documents on an expedited basis and participate in a substantive meeting/ presentation with the staff prior to June 1, 2018, the staff has agreed at this time not to seek authority to issue Giga Watt a formal subpoena for testimony and the production of documents.

Specifically, and as we discussed during our May 2, 2018 teleconference, we would like to obtain information about the following subjects (as further defined in Attachment A below):

- Giga Watt's business ownership, operations, governance and structure;
- Giga Watt's technology, tokens and facilities (pre-ICO and now);
- Giga Watt's pre-sale process (including marketing and promotion);
- Giga Watt's ICO (including marketing and promotion); and
- Giga Watt's use of the proceeds of the pre-sale and ICO and issuance of WTT tokens.

To the extent possible, Giga Watt should provide all, or most, of the documents described on Attachment A in advance of our meeting and provide the information requested at our meeting.

Please deliver the materials to:

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov with a copy to mathieb@sec.gov. Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. Please also provide a duplicate copy of any document production cover letters to BeLinda Mathie at mathieb@sec.gov. All correspondence, including password information, should reference case number, case name, and requesting SEC staff member. In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send.

Please carefully read Attachment A, which contains, among other things, important instructions related to the manner of producing documents. In particular, if Giga Watt prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the document request, including all metadata, should also be produced in their native software format**. If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents. For security reasons, we strongly encourage the encryption of sensitive documents before production.

Please be prepared to discuss at our meeting what was done to identify and collect documents responsive to the document request, including:

- who searched for documents;
- who reviewed documents found to determine whether they were responsive;
- which custodians were searched;
- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, storage facilities, home offices, work offices, voice mails, home email, webmail, work email, backup tapes or other media);
- what search terms, if any, were employed to identify responsive documents;
- what firms and/or persons, if any, assisted in analyzing the data collected;
- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and
- where the original electronic and hardcopy documents are maintained and by whom.

In addition, for any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please have the appropriate representative(s) of Giga Watt complete a business records certification (a sample of which is enclosed) and return it with the document production. Execution of this certification may allow the Commission to introduce the documents provided by Giga Watt in any subsequent judicial proceeding, without requiring the testimony of a records custodian.

     **In any event, we hereby remind Giga Watt of its obligation as set forth in our letters dated April 11, 2018 to reasonably preserve and retain documents relevant to this investigation until further notice. Giga Watt has a duty to reasonably preserve and retain such evidence. Failure to do so could give rise to civil and criminal liability.**

     Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

     Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." This form explains how we may use the information that Giga Watt provides to the Commission and has other important information.

     This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security.

     Please contact us if you have any questions or would like to discuss this matter.

                Sincerely,

                BeLinda I. Mathie
                Senior Attorney, Division of Enforcement

Enclosures:    Attachment A
            Business Records Certification
            SEC Data Delivery Standards
            SEC Form 1662

# ATTACHMENT A FOR GIGA WATT, INC.
## May 2, 2018

**A.**  **<u>Definitions</u>**

As used in this document request, the words and phrases listed below shall have the following meanings:

1.  "Giga Watt" means the entity doing business under the name Giga Watt, Inc., including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.  "GigaWatt" means the entity doing business under the name GigaWatt Pte. Ltd., including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

3.  "Cryptonomos" means the entity doing business under the name Cryptonomos Pte. Ltd., including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

4.  "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

5.  A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

6.  "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained,

manipulated, or translated.

7. "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

8. "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

9. An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

10. The terms "Reviewed" means examined, assessed, considered, analyzed or evaluated.

11. The term "you" and "your" means the Person or entity to whom this request was issued.

12. To the extent necessary to bring within the scope of this request any information or Documents that might otherwise be construed to be outside its scope:

    a. the word "or" means "and/or";
    b. the word "and" means "and/or";
    c. the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
    d. the masculine gender includes the female gender and the female gender includes the masculine gender; and
    e. the singular includes the plural and the plural includes the singular.

**B.  Instructions**

1. Unless otherwise specified, the Document request calls for production of the

2

original Documents and all copies and drafts of same. Documents responsive to this request may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached document entitled SEC Data Delivery Standards. All electronic Documents responsive to the Document request, including all metadata, should also be produced in their native software format.

2.  For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.  Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.  In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.  Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the Document boundaries.

6.  You must produce all Documents created during, or concerning, the period **December 1, 2016 to the present**, unless otherwise specified.

7.  The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

8.  You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff **in connection with this matter**. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

3

GWTEE092078

9. This request covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what it is not producing. The list should describe each item separately, noting:

   a. its author(s);
   b. its date;
   c. its subject matter;
   d. the name of the Person who has the item now, or the last Person known to have it;
   e. the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
   f. the basis upon which you are not producing the responsive Document;
   g. the specific request in the request to which the Document relates;
   h. the attorney(s) and the client(s) involved; and
   i. in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

10. If Documents responsive to this request no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## C. **Information and Documents to be Produced**

1. A description of the corporate structure and management of Giga Watt, including without limitation, the date and place of establishment, organization, and, if applicable, incorporation or formation.

2. A list of all officers, directors, principals, owners, shareholders, employees, and all others acting on behalf of Giga Watt, including each person's title/role.

3. A list of all domestic and foreign bank, brokerage, cryptocurrency, or other financial accounts held by or on behalf of or controlled by Giga Watt, including its owners, officers, employees and agents.

4. To the extent not covered by Request #3 above, a list of all cryptocurrency digital wallet addresses that were used to send assets to Giga Watt, including any virtual currency, or other token or coin, in connection with any digital token or coin, or any membership interest or asset, sold or contemplated to be sold by Giga Watt.

5. To the extent not covered by Requests #3 and #4 above, a list of all cryptocurrency digital wallet addresses that were used to send assets to a third

party to be transmitted to Giga Watt, including any virtual currency, or other token or coin, in connection with any digital token or coin, or any membership interest or asset, sold or contemplated to be sold by Giga Watt.

6. A description of Giga Watt's operations, including without limitation any actual or contemplated products and services to be provided by Giga Watt.

7. A description of the purpose and utility (both actual and intended) of the Giga Watt token, including the rights and privileges held or contemplated to be held by purchasers or holders of Giga Watt tokens.

8. A list of all Persons that purchased any membership interest, token, or coin, offered by Giga Watt, including names and contact information (addresses, email addresses and telephone numbers).

9. Giga Watt's policies and procedures to verify the Accredited Investor status of purchasers of any Giga Watt token. Include a description of any such procedures actually followed during Giga Watt's presale and Giga Watt Initial Coin Offering ("ICO"), or other sales or grants of Giga Watt tokens.

10. Giga Watt's Know Your Customer ("KYC") policies and procedures.

11. A list of platforms, exchanges and/or secondary markets for actual or intended trading of Giga Watt digital tokens or coins.

12. A description of any analysis by Giga Watt (or on its behalf) to determine whether any ICO or token sale or grant is a securities offering within the meaning of the U.S. federal securities laws, or regarding the application of the securities laws to Giga Watt's actual or contemplated ICOs, token sales, or grants.

13. All promotional and/or marketing materials presented or provided by Giga Watt to any actual or potential purchaser of any digital token or coin, any membership interest, or any asset sold or contemplated to be sold by Giga Watt, including without limitation any white paper, due diligence materials, sales presentation, script, proposal, summary, highlights or talking points, and any marketing Documents (including all pitch-books and pitch-decks), including all drafts or prior version, and any copies bearing notations or marks not found in the original.

14. All public statements by Giga Watt concerning Giga Watt, including without limitation official statements, press releases, forum discussions, question and answers, and videos, issued by Giga Watt including but not limited to Documents sufficient to identify the date and medium of dissemination of any such statement.

15. A description of any referral programs, incentive programs or promotional programs related to the actual or potential purchase of any digital token or coin,

GWTEE092080
20-80031-FPC    Doc 120-2    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 10 of 41

any membership interest, or any asset sold or contemplated to be sold by Giga Watt.

16.    Identify any threatened, pending, and settled litigation or arbitration concerning Giga Watt.

17.    All compensation Agreements between Giga Watt and any of its officers, directors, principals, owners, shareholders, employees, agents, general partners, or limited partners.

18.    Documents sufficient to show the amount, whether in fiat currency or cryptocurrency, raised in connection with the Giga Watt pre-sale and ICO.

19.    Documents sufficient to identify any escrow Agreement or arrangement Concerning the proceeds of the Giga Watt pre-sale and ICO.

20.    Documents sufficient to show the use of the proceeds of the Giga Watt pre-sale and ICO.

21.    Documents sufficient to show the actual and planned issuance of Giga Watt tokens, including the number of tokens and dates of issuance.

22.    Communications between Giga Watt and any of its affiliates, including but not limited to Cryptonomos and GigaWatt, Concerning the Giga Watt pre-sale and ICO.

20-80031-FPC    Doc 120-2    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 11 of 41

**DECLARATION OF [*Insert Name*] CERTIFYING RECORDS**
**OF REGULARLY CONDUCTED BUSINESS ACTIVITY**

I, the undersigned, [*insert name*], pursuant to 28 U.S.C. § 1746, declare that:

1. I am employed by [*company*]as [*insert position*] and by reason of my position am authorized and qualified to make this declaration. [*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.*]

2. I further certify that the documents [*attached hereto or submitted herewith*] and stamped [*insert bates range*] are true copies of records that were:

      (a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

      (b) kept in the course of regularly conducted business activity; and

      (c) made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on [*date*].

_____

[*Name*]



**U.S. Securities and Exchange Commission**

**Data Delivery Standards**

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC). ***Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.***

General Instructions .................................................................................................................. 1

Delivery Formats ..................................................................................................................... 2

  I. ......................................................................................................................................... I

  maged Productions ................................................................................................................. 2

   1. Images .......................................................................................................................... 2

   2. Image Cross-Reference File .......................................................................................... 3

   3. Data File ....................................................................................................................... 3

   4. Text .............................................................................................................................. 3

   5. Linked Native Files ...................................................................................................... 3

  II. Native File Productions without Load Files .................................................................... 3

  III. Adobe PDF File Productions ......................................................................................... 3

  IV. Audio Files ................................................................................................................... 4

  V. Video Files .................................................................................................................... 4

  VI. Electronic Trade and Bank Records .............................................................................. 4

  VII. Electronic Phone Records ............................................................................................ 4

  VIII. Audit Workpapers ...................................................................................................... 4

**General Instructions**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note: An Adobe PDF file is **not** considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter should be included with each production and should include the following information:
    a. Case number, case name and requesting SEC staff member name
    b. A list of each piece of media included in the production with its unique production volume number
    c. A list of custodians, identifying the Bates range for each custodian
    d. The time zone in which the emails were standardized during conversion
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
    a. Case number
    b. Production date
    c. Producing party
    d. Bates range
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate text files.
7. All load-ready collections should account for custodians in the custodian field.
8. Audio files should be separated from data files if both are included in the production.
9. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
10. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
11. Electronic productions may be submitted via Secure File Transfer. The SEC **cannot** accept productions made using file sharing sites.
12. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
13. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
14. All electronic productions should be produced free of computer viruses.
15. Additional technical descriptions can be found in the addendum to this document.

   \*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\*

## Delivery Formats

### I. Imaged Productions
The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable text files.

#### 1. Images
   a. Black and white images must be 300 DPI Group IV single-page TIFF files
   b. Color images must be produced in JPEG format
   c. File names cannot contain embedded spaces or special characters (including the comma)
   d. Folder names cannot contain embedded spaces or special characters (including the comma)
   e. All image files must have a unique file name, i.e. Bates number
   f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image
   g. The number of image files per folder should not exceed 500 files
   h. Excel spreadsheets should have a placeholder image named by the Bates number of the file

i. AUTOCAD/photograph files should be produced as a single page JPEG file

**2. Image Cross-Reference File**

The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

**3. Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the database.

a. The first line of the .DAT file must be a header row identifying the field names
b. The .DAT file must use the following *Concordance*® default delimiters:
  Comma ¶ ASCII character (020)
  Quote þ ASCII character (254)
c. Date fields should be provided in the format: mm/dd/yyyy
d. Date and time fields must be two separate fields
e. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
f. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
g. For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
h. BEGATTACH and ENDATTACH fields must be two separate fields
i. A complete list of metadata fields is available in **Addendum A** to this document

**4. Text**

Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. We require document level ANSI text files, named per the FIRSTBATES/Image Key. Please note in the cover letter if any non-ANSI text files are included in the production. Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names). For redacted documents, provide the full text for the redacted version.

**5. Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.
a. Native file documents must be named per the FIRSTBATES number
b. The full path of the native file must be provided in the .DAT file for the LINK field
c. The number of native files per folder should not exceed 1,000 files

**II. Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format. A separate folder should be provided for each custodian.

**III. Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.
1. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
2. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

#### IV. Audio Files

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | Caller Name: | Caller's name or account/identification number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Called Party Name: | Called party's name |
| 4) | Terminating Number: | Called party's phone number |
| 5) | Date: | Date of call |
| 6) | Time: | Time of call |
| 7) | Filename: | Filename of audio file |

#### V. Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

#### VI. Electronic Trade and Bank Records

When producing electronic trade and bank records, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

#### VII. Electronic Phone Records

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

#### VIII. Audit Workpapers

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. When possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

| LINK | D:\001\EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
|---|---|---|
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c2fcab58712467eab4004583eb8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:
For Calls:
1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:
1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:
1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--
>
> > (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
> >
> > (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5. *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance or testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6. *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for

disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state

20-80031-FPC    Doc 120-2    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 22 of 41

securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

Rev 02/2018

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21.  To a trustee in bankruptcy.

22.  To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

# EXHIBIT 2

| | |
|---|---|
| **From:** | Jensen, Stephanie |
| **To:** | Dave Carlson |
| **Cc:** | Watts, Gregory; Jensen, Stephanie; Petroni, Chris |
| **Subject:** | RE: Giga Watt (SEC): Documents Requested by SEC_Privileged & Confidential |
| **Date:** | Thursday, May 17, 2018 3:45:00 PM |

Dave,

Will next week, May 21-24, work to have Chris and I on-site to conduct the collection of electronic data and hard copy documents? Our team is ready and can be there first thing Monday morning. The only decision that needs to be made is who the custodians will be, which we'd like to discuss with you.

The meeting with the SEC is tentatively scheduled for June 20, leaving just under five weeks to get the documents collected, processed, reviewed, produced to the SEC, and digested by our team, so we'd like to get the collection completed as soon as possible.

Thank you,

Stephanie

Stephanie L. Jensen

**Wilson Sonsini Goodrich & Rosati, P.C.**

701 Fifth Ave, Suite 5100

Seattle, WA 98104

Phone: (206) 883-2500 ext. 2556

Fax: (206) 883-2699

---

**From:** Jensen, Stephanie
**Sent:** Tuesday, May 15, 2018 3:10 PM
**To:** 'Dave Carlson'
**Cc:** Watts, Gregory; Jensen, Stephanie; Petroni, Chris
**Subject:** RE: Giga Watt (SEC): Documents Requested by SEC_Privileged & Confidential

Dave,

Following up on the email below, we are prepared to conduct the on-site document collection next week, May 21-24. Will these dates work for you and your team? This will allow us one week to get the data processed and ready for review by the first week of June.

The most important piece of information we need before moving forward is a list(s) of the employees (and their titles) who were with the Company at the beginning and end of the ICO. The SEC has also specifically requested this information.

I would be happy to speak with you regarding the collection process and potential custodians at any time that is convenient for you.

Thank you,

Stephanie

Stephanie L. Jensen

**Wilson Sonsini Goodrich & Rosati, P.C.**

701 Fifth Ave, Suite 5100

Seattle, WA 98104

Phone: (206) 883-2500 ext. 2556

Fax: (206) 883-2699

---

**From:** Jensen, Stephanie
**Sent:** Monday, May 14, 2018 3:00 PM
**To:** 'Dave Carlson'
**Cc:** Watts, Gregory; Jensen, Stephanie; Petroni, Chris

**Subject:** Giga Watt (SEC): Documents Requested by SEC_Privileged & Confidential

Dave,

Following up on our call last week, have you been able to locate the documents listed below?

- Giga Watt, GigaWatt Pte. Ltd., Cryptonomos Pte. Ltd. formation documents (No. 1)
- List of officers, employees, directors, principals (No. 2)
- List of Giga Watt's open bank accounts (No. 3)
- List of digital wallet addresses used to send assets to Giga Watt (No. 4)
- Records of WTT purchasers (No. 8)
- Compensation agreements, including agreements with Dave Carlson regarding sale of MegaBigPower's assets (No. 17)

Doug has set up a Google Drive folder that we have access to. This will be a good way for us to collect the documents below on an expedited basis. To the extent the SEC needs metadata for these documents, we can produce supplemental versions from later electronic collections.

Additionally, the SEC has requested organizational charts for the time of the pre-sale and ICO, and current. We have the April 25, 2018 org chart Paige provided, but do not have any historical org charts.

Finally, we are currently negotiating potential custodians with the SEC, but would like to move forward with the document collection efforts as soon as possible. Are you available at any time tomorrow to discuss who the potential custodians should be? We have a proposed list, but it would be very helpful to go over it with you to ensure we are including the most appropriate individuals. Chris and I can do a call at any time that is convenient for you.

Thank you,

Stephanie

Stephanie L. Jensen

**Wilson Sonsini Goodrich & Rosati, P.C.**

701 Fifth Ave, Suite 5100
Seattle, WA 98104
Phone: (206) 883-2500 ext. 2556
Fax: (206) 883-2699

# EXHIBIT 3

Paige,

Dave suggested we work with you to schedule meetings with the following individuals:

1. Doug Black
2. Anton Orlov
3. Renee Hartman
4. Timur Usmanov
5. Drew Behrens
6. Heather Mulhall
7. George Turner
8. Cory Delozier
9. Susie Ramaker
10. Alicia Walters-Russ
11. You

We are available at any time that is convenient for each person.

Please let us know if you need any additional information.

Thank you,

Stephanie

Stephanie L. Jensen
**Wilson Sonsini Goodrich & Rosati, P.C.**
701 Fifth Ave, Suite 5100
Seattle, WA 98104
Phone:  (206) 883-2500 ext. 2556
Fax:  (206) 883-2699

# EXHIBIT 4

| | |
|---|---|
| **From:** | Watts, Gregory |
| **To:** | Dave Carlson |
| **Cc:** | Jensen, Stephanie |
| **Subject:** | Privileged & Confidential -- Insurance Coverage |
| **Date:** | Friday, May 25, 2018 10:24:30 AM |

Hi Dave,

We really appreciate you and your team's patience with our document collection this week. As I'm sure Stephanie explained, we preserve and collect far more than we actually review or produce. This best practice of collecting/preserving once is actually meant to lessen the distraction and costs associated with multiple collections. Barry and I will reach out to you, your partners, and Katrina to schedule a call for next week to make sure we are all on the same page.

Based upon our discussions with you, we understood that Giga Watt did not have any applicable insurance. While this may be the case, during our collection this week, we discovered that Giga Watt has a CyberFirst Liability Policy. While I have only skimmed this policy at this point (just got it moments ago), the policy might provide coverage for the Moss and Balestra actions and, although far less likely, the SEC inquiry. Although it may turn out that there is no coverage, we believe it prudent to notify the insurer of these claims. With your permission, we will reach out to Travelers. Please let us know ASAP if we this permission and if you are aware of any other insurance policies that might provide coverage.

Best regards,

Greg

Gregory L. Watts
Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
(206) 883-2617
gwatts@wsgr.com

# EXHIBIT 5

| | |
|---|---|
| **From:** | Eric Olson |
| **To:** | Doug Black |
| **Cc:** | Jensen, Stephanie; Petroni, Chris |
| **Subject:** | RE: email list |
| **Date:** | Tuesday, May 29, 2018 1:19:58 PM |

Perfect, thanks Doug!

**Eric Olson**

Forensic Analyst



415.321.8253 | Office
408.532.3746 | Mobile
51 University Street, #400 | Seattle, WA 98101
Web • LinkedIn • Blog • Twitter

**From:** Doug Black [mailto:doug@giga-watt.com]
**Sent:** Tuesday, May 29, 2018 1:15 PM
**To:** Eric Olson
**Cc:** Jensen, Stephanie ; Petroni, Chris
**Subject:** Re: email list

Done Eric


Doug Black
System Administrator
1.509.683.3323
Giga-Watt, Inc.

On Tue, May 29, 2018 at 1:08 PM, Eric Olson <EOlson@lighthouseglobal.com> wrote:

> Thanks, Doug. Would you mind sharing the link with me? I'll start downloading them on my end.
>
> **Eric Olson**
>
> Forensic Analyst
>
> 
>
> 415.321.8253 | Office
> 408.532.3746 | Mobile
> 51 University Street, #400 | Seattle, WA 98101
> Web • LinkedIn • Blog • Twitter
>
> **From:** Doug Black [mailto:doug@giga-watt.com]
> **Sent:** Tuesday, May 29, 2018 1:04 PM
> **To:** Jensen, Stephanie <sjensen@wsgr.com>
> **Cc:** Petroni, Chris <cpetroni@wsgr.com>; Eric Olson <EOlson@lighthouseglobal.com>
> **Subject:** Re: email list
>
> Should all be available now.
>
> Doug
>
>
> Doug Black
> System Administrator

1.509.683.3323
Giga-Watt, Inc.
On Tue, May 29, 2018 at 12:13 PM, Doug Black <doug@giga-watt.com> wrote:

> Stephanie,
> I am uploading all that to the shared for now.
> Doug
>
> Doug Black
> System Administrator
> 1.509.683.3323
> Giga-Watt, Inc.
> On Fri, May 25, 2018 at 12:43 PM, Jensen, Stephanie <sjensen@wsgr.com> wrote:
>
>> Doug,
>> Is it possible to transfer it via Drive or an FTP? If it needs to be on a thumb drive, is it
>> encrypted?
>> I just want to ensure the data is secure.
>> Thank you,
>> Stephanie
>>
>> On May 25, 2018, at 11:01 AM, Doug Black <doug@giga-watt.com> wrote:
>>
>> Stephanie,
>> I have downloaded it and put it on a thumb drive and it is being mailed to Eric.
>> Doug
>>
>> Doug Black
>> System Administrator
>> 1.509.683.3323
>> Giga-Watt, Inc.
>> On Fri, May 25, 2018 at 10:10 AM, Jensen, Stephanie <sjensen@wsgr.com> wrote:
>>
>>> Doug,
>>> Thank you very much, Doug. If we can get a list of which have zero data, we can exclude
>>> them from the task below of determining who has access.
>>> How are the remaining exports going?
>>> Thank you again,
>>> Stephanie
>>> Stephanie L. Jensen
>>> **Wilson Sonsini Goodrich & Rosati, P.C.**
>>> 701 Fifth Ave, Suite 5100
>>> Seattle, WA 98104
>>> Phone: (206) 883-2500 ext. 2556
>>> Fax: (206) 883-2699
>>> **From:** Doug Black [mailto:doug@giga-watt.com]
>>> **Sent:** Friday, May 25, 2018 10:07 AM
>>> **To:** Jensen, Stephanie

**Subject:** Re: email list

Stephanie,

I am working on this list for you but wanted to give you an update.

Accounting@giga-watt.com is Mike and Heather

breakfixgrant1 and breakfixgrant2 are distro groups for all of the breakfix guys in grant county

breakfixdouglas1 and breakfixdouglas2 are also distro groups for all of the douglas county guys

helpdesk@giga-watt.com is an email that generates tickets for me to fix tech equipment

hr@giga-watt.com would be George T

kprinter@giga-watt.com is Cory D

logistics@giga-watt.com is the logistics department - Jessica Langis, James Bullis and Luis Flores

orders@giga-watt.com is Christina Dudder and Heather Mulhall

support@giga-watt.com is Susie Ramamker and Amy Bossen

sysadmin@giga-watt.com is me

The rest of the emails that you asked about I am not positive who has them but I can change passwords and access them to show what is in them, though most of them do not have anything in them at all.

Doug

Doug Black
System Administrator
1.509.683.3323
Giga-Watt, Inc.

On Wed, May 23, 2018 at 4:59 PM, Jensen, Stephanie <sjensen@wsgr.com> wrote:

Doug,

The generic emails that we would like to know who has access to are:

- admin@giga-watt.com

- accounting@giga-watt.com

- breakfixgrant2@giga-watt.com

- breakfixgrant1@giga-watt.com

- breakfixdouglas2@giga-watt.com

- breakfixdouglas1@giga-watt.com

- community@giga-watt.com

- dcim@giga-watt.com

- down@giga-watt.com

- emailabuse@giga-watt.com

- facilitytours@giga-watt.com

- gw-admin@giga-watt.com

- helpdesk@giga-watt.com

- host@giga-watt.com

- hr@giga-watt.com

- infosec@giga-watt.com

- jobs@giga-watt.com

- kprinter@giga-watt.com

- logistics@giga-watt.com

- newsletter@giga-watt.com

- orders@giga-watt.com

- osticket@giga-watt.com

- press@giga-watt.com

- refund@giga-watt.com

- sales@giga-watt.com

- service@giga-watt.com

- shutdown@giga-watt.com

- support@giga-watt.com

- sysadmin@giga-watt.com

- techsupport@giga-watt.com

Thank you,
Stephanie
Stephanie L. Jensen
**Wilson Sonsini Goodrich & Rosati, P.C.**
701 Fifth Ave, Suite 5100
Seattle, WA 98104
Phone: (206) 883-2500 ext. 2556
Fax: (206) 883-2699
**From:** Doug Black [mailto:doug@giga-watt.com]
**Sent:** Wednesday, May 23, 2018 2:27 PM

**To:** Jensen, Stephanie
**Subject:** Re: email list
Stephanie,

Can you give me a list of the specific generic emails you are interested in and I will try to find out the information that you are looking for.

Doug

Doug Black
System Administrator
1.509.683.3323
Giga-Watt, Inc.

On Wed, May 23, 2018 at 11:32 AM, Jensen, Stephanie <sjensen@wsgr.com> wrote:

Thank you, Doug! Can we also get the list of who has access to the "generic" email addresses when you have a chance?

Thank you again,

Stephanie

Stephanie L. Jensen

**Wilson Sonsini Goodrich & Rosati, P.C.**

701 Fifth Ave, Suite 5100

Seattle, WA 98104

Phone: (206) 883-2500 ext. 2556

Fax: (206) 883-2699

**From:** Doug Black [mailto:doug@giga-watt.com]
**Sent:** Wednesday, May 23, 2018 11:26 AM
**To:** Jensen, Stephanie
**Subject:** email list

Stephanie,

Here is a list of all former and current employees.

Doug Black
System Administrator
1.509.683.3323
Giga-Watt, Inc.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

CONFIDENTIALITY NOTICE: This communication and any attachments may contain privileged or other confidential information, which may be protected by your Company's internal policies, its contractual obligations, and other applicable disclosure laws. If you are not the intended recipient or have received the communication in error, please advise the sender by reply email and immediately destroy the message and any attachments without copying or disclosing the contents. You are hereby notified that any use, dissemination, distribution, copying, or storage of

this communication or its attachments is strictly prohibited.

CONFIDENTIALITY NOTICE: This communication and any attachments may contain privileged or other confidential information, which may be protected by your Company's internal policies, its contractual obligations, and other applicable disclosure laws. If you are not the intended recipient or have received the communication in error, please advise the sender by reply email and immediately destroy the message and any attachments without copying or disclosing the contents. You are hereby notified that any use, dissemination, distribution, copying, or storage of this communication or its attachments is strictly prohibited.

# EXHIBIT 6

| | |
|---|---|
| **From:** | Susie Ramaker |
| **To:** | Eric Olson |
| **Cc:** | Jensen, Stephanie; Petroni, Chris |
| **Subject:** | Re: WSGR | Remote Collection 5/25/2018 |
| **Date:** | Wednesday, May 30, 2018 2:57:34 PM |

Hello Eric,

Pardon me, I just returned today after being off since last Thursday.

Login: susie@giga-watt.com
PW: 06Newera!

-Susie


On Wed, May 30, 2018 at 2:47 PM, Eric Olson <EOlson@lighthouseglobal.com> wrote:

Hi Susie,

Just wanted to check in on this – I'll actually just need your Google Calendar and Zendesk
credentials for the collection – we're able to go a different route with Slack. Please feel free
to respond to this email or give me a call at your convenience.

Thank you,

Eric

**Eric Olson**

Forensic Analyst



415.321.8253 | Office

408.532.3746 | Mobile

51 University Street, #400 | Seattle, WA 98101

Web • LinkedIn • Blog • Twitter

**From:** Eric Olson
**Sent:** Friday, May 25, 2018 1:44 PM
**To:** 'Susie@giga-watt.com' <Susie@giga-watt.com>
**Subject:** WSGR | Remote Collection 5/25/2018

Good afternoon Susie,

I was onsite earlier this week with Stephanie Jensen and Chris Peroni from WSGR for the
document collection. I'm working on the remote portion of the collection today and wanted

to get some information from you when you have a few minutes. I'll be collecting Google Calendar, Slack, and Zendesk today so I'll need your login credentials for those. We'll likely also need to sign in with a 2 factor authentication code (2FA) from your device. The whole process should take about 3-4 minutes. Please give me a call at 415.321.8253 at your convenience.

Best,

Eric

**Eric Olson**

Forensic Analyst



415.321.8253 | Office

408.532.3746 | Mobile

51 University Street, #400 | Seattle, WA 98101

Web • LinkedIn • Blog • Twitter

CONFIDENTIALITY NOTICE: This communication and any attachments may contain privileged or other confidential information, which may be protected by your Company's internal policies, its contractual obligations, and other applicable disclosure laws. If you are not the intended recipient or have received the communication in error, please advise the sender by reply email and immediately destroy the message and any attachments without copying or disclosing the contents. You are hereby notified that any use, dissemination, distribution, copying, or storage of this communication or its attachments is strictly prohibited.

--



**Susie Ramaker**
Customer Support Manager
Giga Watt, Inc.
www.giga-watt.com
support@giga-watt.com