# EXHIBIT 24

**From:** "Nikolay Evdokimov" <neo@giga-watt.com>
**Sent:** Thu, 15 Dec 2016 23:35:33 +0000
**To:** "dave@megabigpower.com" <dave@megabigpower.com>
**Subject:** Documents
**Attachments:** Minutes-GigaWatt.doc, , Purchase Agreement-Giga Watt.docx, , SHA-GigaWatt.doc,

Hi, Dave.

Sorry for delay. Here are the documents with the updated concept as discussed with you over the phone yesterday. We are currently working on your employment agreement as a CEO of Giga Watt, Inc. We will send it to you shortly.

Lighthouse 0087888

## Minutes of the Special Meeting of the Board of Directors
### of
### GIGA WATT, INC.

The special meeting of the Board of Directors of GIGA WATT, INC., a Washington corporation, was held on December _____, 2016, in Wenatchee, Washington, for the purpose of completing the organization of the corporation.

There were present at the meeting the following directors, being the only directors so appointed and constituting a quorum of the Board:

NIKOLAY EVDOKIMOV
LEONID MARKIN
ANDREY KUZENNY
EDUARD KHAPTAKHAEV
DAVID M. CARLSON
ADAM TOLSHYKH
KATRINA KOVALEVA

LEONID MARKIN served as Chairman and ADAM TOLSTYKH served as Secretary of the meeting.

On motion duly made, seconded and unanimously carried, it was resolved that by signature of these minutes, notice of time and place of meeting would be waived and the minutes approved.

The Chairman stated that the original Articles of Incorporation of the Corporation had been filed in the office of the Washington Secretary of State on December 15, 2016, and that a certified copy of such Articles would be entered in the minute book of the Corporation by the Secretary of the Corporation.

The first order of business was to elect the officers of the corporation and it was:

**RESOLVED**, that the following persons be and they hereby are elected to the officer positions indicated:

| | |
|---|---|
| Chief Executive Officer: | DAVID M. CARLSON |
| President: | NIKOLAY EVDOKIMOV |
| Chief Financial Officer: | LEONID MARKIN |
| Secretary: | ADAM TOLSTYKH |

The location of the new entity was fixed pursuant to the following resolution unanimously adopted:

**RESOLVED**, that 1250 N Wenatchee Ave, H147, Wenatchee, Washington be and hereby designated and fixed as the principal office and mailing address for the transaction of the business of new entity.

1

Lighthouse 0087892

The matter of adoption of Bylaws for the regulation of the Corporation was next discussed. The Secretary presented to the meeting a set of Bylaws for adoption, and on motion duly made, seconded and unanimously carried, the following resolution was adopted:

**RESOLVED**, that the Secretary of the Corporation be, and he hereby is, authorized and directed to execute a certificate of the adoption of the Bylaws and to insert said Bylaws as so certified in the minute book of this Corporation.

The next order of business was the issuance of stock. The proposed shareholders offered to transfer the assets set forth in Exhibit A in exchange for the indicated number of shares of common stock of the Corporation to be issued in the proportions listed below. Thereafter, upon motion duly made, seconded and unanimously approved, the following resolution was adopted:

**RESOLVED**, that this Corporation issue shares of its common stock to the persons and in the amounts listed opposite their names in exchange for the assets and liabilities set forth in Exhibit A attached hereto as of the date stated in Exhibit A.

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the meeting was adjourned.


_____
ADAM TOLSTYKH
Secretary of the Meeting

NOTICE OF MEETING WAIVED
AND MINUTES APPROVED:


_____
NIKOLAY EVDOKIMOV, Director



_____
LEONID MARKIN, Director



_____
ANDREY KUZENNY, Director

2

Lighthouse 0087893

_____
EDUARD KHAPTAKHAEV, Director


_____
DAVID M. CARLSON, Director


_____
ADAM TOLSHYKH, Director


_____
KATRINA KOVALEVA, Director

3

Lighthouse 0087894

EXHIBIT "A"

Issuance of Stock
(effective December _____, 2016)

| Shareholder | Number of Shares | % of Ownership | Amount |
|---|---|---|---|
| Nikolay Evdokimov | 3360 | 33.6% | $336 |
| Leonid Markin | 1680 | 16.8% | $168 |
| Andrey Kuzenny | 1680 | 16.8% | $168 |
| Eduard Khaptakhaev | 1680 | 16.8% | $168 |
| David M. Carson | 1000 | 10% | $100 |
| Adam Tolstykh | 500 | 5% | $50 |
| Katrina Kovaleva | 100 | 1% | $10 |
| **Total shares** | **10,000** | **100%** | **$1,000** |

# EXHIBIT 25

**So Ordered.**

**Dated: July 6th, 2020**

Frederick P. Corbit
Bankruptcy Judge

1

2

3

4

5

6

7

8  **UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

9

10  In re:

11  GIGA WATT, Inc., a Washington
corporation,

12

13            Debtor.

14

15

Case No. 18-03197 FPC 11

The Honorable Frederick P. Corbit

Chapter 11

**EX PARTE ORDER FOR RULE 2004
EXAMINATION OF PERKINS
COIE LLP**

16         THIS MATTER having come before the Court on the motion of Mark D.

17  Waldron, in his official capacity as the Chapter 11 Trustee (the "**Trustee**"), who

18  desires to examine Perkins Coie LLP and for cause having been shown, NOW

19  THEREFORE, it is hereby

20         ORDERED that Perkins Coie LLP shall produce to the Trustee and his

21  designated counsel at the offices of Potomac Law Group PLLC, 1905 7th Ave. W,

22  Seattle, Washington 98119 any and all documents in its possession, custody or

23  control described in **Exhibit A** attached hereto on or before Tuesday, July 14,

24  EX PARTE ORDER FOR 2004 EXAMINATION
OF PERKINS COIE LLP - Page 1

25

1   2020 at 12:00 p.m. This order may be served upon Perkins Coie LLP by email

2   through its general counsel, Matt Gehringer at MGehringer@perkinscoie.com .

3                                    ///END OF ORDER///

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18  PRESENTED BY:
    POTOMAC LAW GROUP PLLC

19

    By   /s/ Pamela M. Egan
20          Pamela M. Egan, WSBA #54736
            (admitted *pro hac vice*)
21  1905 7th Avenue West
    Seattle, Washington 98119
22  Phone: (415) 297-0132
    Email: pegan@potomaclaw.com
23

24  EX PARTE ORDER FOR 2004 EXAMINATION
    OF PERKINS COIE LLP - Page 2
25

**EXHIBIT A**

**DEFINITIONS AND INSTRUCTIONS**

"You" means Perkins Coie, LLP.

"Documents" means, without limiting its generality, the original (or a copy when the original is not available) and each non-identical copy (including those which are non-identical by reason of notations and markings) of papers, writings and records of any nature whatsoever, including, but not limited to, contracts, agreements, correspondence, letters, e-mails, telegrams, wires, cables, reports, schedules, diaries, statements, photographs, reproductions, maps, surveys, plats, drawings, blueprints, sketches, charts, models, invoices, purchase orders, ledgers, journals, checks, check stubs, notes, estimates, summaries, desk calendars, work papers, studies, appointment books, time sheets, logs, inventories, printouts, computer tapes, computer files, tape recordings, minutes of meetings, memoranda, including intercorporate, intra-corporate, interoffice and intraoffice memoranda, memoranda regarding conferences, notes of conversations or telephone conversations and any and all written, printed, typed, punched, or recorded matter of whatsoever kind of description, including drafts of any of the foregoing.

"Escrow" means the account that you maintained on behalf of Giga Watt Pte. Ltd. with respect to the proceeds of the sale by Giga Watt Pte. Ltd. of tokens. The sale took place from on or about May 27, 2017 to on or about July 31, 2017.

"Information" shall include individual documents and records (including associated metadata) whether on paper, film, or other media, as discrete files stored electronically, optically, or magnetically, or as a record within a database,

EXHIBIT A -- EX PARTE ORDER FOR 2004
EXAMINATION OF PERKINS COIE LLP -
Page 1

archive, or container file, including emails, messages, word processed documents,

recordings of videoconferences or conference calls, digital presentations,

spreadsheets, database content, text messages, data recorded by Internet of Things

(IoT) devices, and messages in workplace collaboration tools (including, without

limitation, Slack, Microsoft Teams, and Google Hangouts) or ephemeral

messaging applications.

Electronically stored information (ESI) must be produced in its original

native format including its accompanying metadata. For example: (a) documents

created using Microsoft Word must be produced as .DOC or .DOCX files; and (b)

emails must be produced in a form that readily supports import into standard

email client programs.

These requests call for the production of all responsive documents in your

possession, custody or control. If any document was, but no longer is, in your

possession, subject to your control, or in existence, include a statement: (a)

identifying the document; (b) describing where the document is now; (c)

identifying who has control of the document; (d) describing how the document

became lost or destroyed or was transferred; and (e) identifying each of those

persons responsible for or having knowledge of the loss, destruction, or transfer of

the document from your possession, custody, or control.

If any document is withheld in whole or in part for any reason including,

without limitation, a claim of privilege or other protection from disclosure such as

1 the work product doctrine or other business confidentiality or trade secret

2 protection, set out separately with respect to each withheld document:

3     (a)    the ground of privilege or protection claimed;

4     (b)    every basis for the privilege or protection claimed;

5     (c)    the type of document;

6     (d)    its general subject matter;

7     (e)    the document's date; and

8     (f)    other information sufficient to enable a full assessment of the

9 applicability of the privilege or protection claims.

10     To the extent you assert that a document contains information that should

11 be protected from disclosure (based on the attorney-client privilege, work product

12 doctrine, or another protection) and non-privileged information, the non-

13 privileged portions of the document must be produced. For each such document,

14 indicate the portion of the document withheld by stamping the words

15 "MATERIAL REDACTED [AS [BASIS FOR PROTECTION]]" on the document

16 in an appropriate location that does not obscure the remaining text.

17 **DOCUMENT REQUESTS**

18     1.    All Information, including Documents, regarding the Escrow,

19 including, but not limited to, deposits and withdrawals, and any agreements with

20 respect to the Escrow.

21     2.    Any agreement between Giga Watt, Inc. and Giga Watt Pte. Ltd.

22     3.    Any agreement between Giga Watt, Inc. and Cryptonomos Pte

Ltd.

23

24 EXHIBIT A -- EX PARTE ORDER FOR 2004
EXAMINATION OF PERKINS COIE LLP -

25 Page 3

# EXHIBIT 26

**Formal Opinion 473**                                        **February 17, 2016**

## Obligations Upon Receiving a Subpoena or Other Compulsory Process for Client Documents or Information

*A lawyer receiving a subpoena or other compulsory process for documents or information relating to the representation of a client has several obligations. If the client is available, the lawyer must consult the client. If instructed by the client or if the client is unavailable, the lawyer must assert all reasonable claims against disclosure and seek to limit the subpoena or other initial demand on any reasonable ground. If ordered to disclose confidential or privileged information and the client is available, a lawyer must consult with the client about whether to produce the information or appeal. If the client and the lawyer disagree about how to respond to the initial demand or to an order requiring disclosure, the lawyer should consider withdrawing from the representation pursuant to Model Rule 1.16. If disclosure is ordered and the client is unavailable for consultation, the lawyer is not ethically required to appeal. When disclosing documents and information—whether in response to an initial demand or to an order, and whether or not the client is available—the lawyer may reveal information only to the extent reasonably necessary. The lawyer should seek appropriate protective orders or other protective arrangements so that access to the information is limited to the court or other tribunal ordering its disclosure and to persons having a need to know.*

## I. Introduction

Recently the Committee was asked to revisit Formal Opinion 94-385 (July 5, 1994) regarding subpoena of a lawyer's files because Model Rule 1.6(b)(6) was adopted in 2002, more than a decade ago (at that time as 1.6(b)(4)). Model Rule 1.6(b)(6) provides: "A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to comply with *other law or court order*."[1]

When Formal Opinion 94-385 was issued, Model Rule 1.6(b) permitted a lawyer to disclose confidential information *in only two circumstances*: (i) to prevent certain crimes,

---

1. ABA MODEL RULE 1.6(b)(6) (2015) (emphasis added). The phrase "other law" refers, generally, to statutory or regulatory requirements. *See, e.g.*, State Bar of Michigan Advisory Op. RI-311 (1999) (regulation requiring lawyer to report the names and addresses of clients to the Legal Services Corporation); State Bar of Michigan Advisory Op. RI-54 (1990) (Internal Revenue Code requirement that cash transactions exceeding $10,000.00 be reported to the Internal Revenue Service). Although there is overlap in the two phrases, this opinion addresses principally the obligations of a lawyer who receives a subpoena or other initial demand that is or may be enforced by a court or other tribunal. Throughout this opinion, "subpoena," "demand," "compulsory process," and similar terms are used interchangeably to refer to any initial demand by an entity or person or government agency seeking information protected by Model Rule 1.6(a) that is or may be enforced by compulsory process. "Court" or "tribunal" refers to a court, an arbitrator in a binding arbitration proceeding or a legislative body, and an administrative agency or other body acting in an adjudicative capacity and includes any other "tribunal" within the meaning of Model Rule 1.0(m).

20-80031-FPC    Doc 120-5    Filed 10/17/22    Entered 10/17/22 17:48:49    Pg 14 of 22

and (ii) to establish certain claims or defenses on behalf of the lawyer.[2]  Relying in part on then Comment [20], Formal Opinion 94-385 advised that the lawyer "must comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about a client."[3]  The Opinion explained that this "does not mean that the lawyer should be a passive bystander to attempts by a governmental agency—or by any other person or entity for that matter—to examine her files or records."[4]  Rather,

> [W]here a government agency serves on the lawyer a subpoena or court order directing the lawyer to turn over to the agency the lawyer's files relating to her representation of the client—the lawyer has a professional responsibility to seek to limit the subpoena, or court order, on any legitimate available ground (such as the attorney-client privilege, work product immunity, relevance or burden), so as to protect documents as to which the lawyer's obligation under Rule 1.6 apply.  Only if the lawyer's efforts [at limiting the subpoena or order] are unsuccessful, either in the trial court or in the appellate court (in those jurisdictions where an interlocutory appeal on this issue is permitted), and she is specifically ordered by the court to turn over to the governmental agency documents which, in the lawyer's opinion, are privileged, may the lawyer do so.[5]

In the twenty-one years since publication of Formal Opinion 94-385 and the fourteen years since the Ethics 2000 amendments, additional questions have arisen regarding how a lawyer should respond to subpoenas, demands, or other compulsory process for client information and documents.  These questions include: If disclosure is to be made, how extensive should it be?  What, if any, protective measures should or must the lawyer seek?  Are the obligations different when the client is not available for consultation?  When the client is available for consultation but responding to the demand is outside the scope of a current representation, how should the lawyer handle retention and fee arrangements?  If the client and the lawyer disagree about how to respond—either to the initial demand or after disclosure is ordered—what are the lawyer's obligations?  Must the lawyer appeal an adverse decision for a client who is unavailable?  Should or may the lawyer provide for these contingencies in retainer letters?  This opinion provides guidance on these and related questions.  The advice offered here updates and extends the advice offered in Formal Opinion 94-385.

## II.  Discussion

Rule 1.6(b) permits but does not require a lawyer to disclose information relating to the representation of a client ("[a] lawyer may reveal information") that the lawyer would

---

2. *Compare* ABA Model Rule 1.6(b) (1994), *with* ABA Model Rule 1.6(b) (2015).
3. ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 94-385 (1994), at 2.
4. *Id.*
5. *Id.* at 3 (footnotes omitted).

otherwise be barred from disclosure under Rule 1.6(a).[6] Each of the seven 1.6(b) provisions specifies an exception to the 1.6(a) prohibition, and under each provision disclosure is permitted.[7]

For example, Rule 1.6(b)(6) makes clear that a lawyer cannot argue 1.6(a) bars compliance with a court order. Rule 1.6(a) permits disclosure of information relating to the representation, "if such disclosure is permitted by paragraph (b)," and subparagraph (b)(6) permits the lawyer to disclose information "to comply with other law or court order." A lawyer must obey a court order, subject to any right to move the court to withdraw or modify the order or to appeal the order.[8] But a lawyer facing a court order requiring the disclosure of client confidential information still is faced with complex, critical and fact-intensive questions on how to respond—e.g., what challenges should be considered, what specific information should be disclosed, and what protective measures should be sought. In making these judgments the lawyer must balance obligations inherent in the lawyer's dual role as an advocate for the client and an officer of the court.[9] In doing so, the lawyer should disclose client confidential information only to the extent "the lawyer reasonably believes necessary" to comply with the order.[10] Provision (b)(6) enables—indeed calls upon—the lawyer to make these delicate judgments.

## A. Notice and Consultation

The lawyer's obligations of notice and consultation upon receiving a demand for client files and information are essentially the same for current and former clients. First,

---

6. ABA MODEL RULE 1.6(a) (2015) provides: "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)."

7. *See, e.g.*, ABA MODEL RULE 1.6(b)(1) (2015) (a lawyer *may* reveal confidential information "to prevent reasonably certain death or substantial bodily harm") (emphasis added); ABA MODEL RULE 1.6(b)(2) (2015) (a lawyer *may* reveal confidential information "to prevent the client from committing a crime or fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services") (emphasis added). ABA MODEL RULE 1.6(b)(6) is, by its terms, and consistent with (b)(1) through (b)(5), also permissive. *See* ABA MODEL RULE 1.6(b)(6) (2015) ("[a] lawyer *may* reveal information . . . to comply with . . . a court order") (emphasis added). *See also* A LEGISLATIVE HISTORY: THE DEVELOPMENT OF THE ABA MODEL RULES OF PROFESSIONAL CONDUCT, 1982-2013 130 (Art Garwin ed., 2013); Margaret Love, *The Revised ABA Model Rules of Professional Conduct: Summary of the Work of Ethics 2000*, 15 GEO. J. LEGAL ETHICS 441, 451 (2002).

8. *See, e.g.*, ABA MODEL RULE 3.4(c) (2015) ("A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal"); ABA MODEL RULE 8.4(d) (2015) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice"); ABA MODEL RULE 8.4(a) (2015) ("It is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct"). *See also* RESTATEMENT OF THE LAW GOVERNING LAWYERS (3d) § 105 (2000) ("In representing a client in a matter before a tribunal, a lawyer must comply with applicable law, including rules of procedure and evidence and specific tribunal rulings.").

9. *See* Dike v. Dike, 448 P.2d 490, 493 (Wash. 1968) (discussing whether a lawyer should be ordered to disclose confidential information the court said, "[I]t is important to recognize that an attorney has a dual role [in this context] — he is both an advocate for his client and an officer of the court . . . . Neither duty can be meaningfully considered independent from the other.").

10. ABA MODEL RULE 1.6 cmt. [16] (2015).

the lawyer must notify—or attempt to notify—the client.[11]  For former clients, the lawyer must make reasonable efforts to reach the client by, for example, internet search, phone call, fax, email or other electronic communications, and letter to the client's last known address. The specific efforts required to reach particular clients will depend on the circumstances existing when the lawyer receives the demand.  But these efforts must be reasonable within the meaning of Model Rule 1.0(h), and should be documented in the lawyer's files.

The lawyer's obligations to the client will differ depending on whether the client is available for consultation.  Where the client is available, the lawyer must consult the client about how to respond to the demand.[12]  Model Rule 1.4 should guide this consultation.

Rule 1.4 directs the lawyer to "promptly inform the client of any decision or circumstance with respect to which the client's informed consent" is required and to "explain [the] matter to the extent reasonably necessary to permit the client to make informed decisions."[13]  Rule 1.6(a) allows the lawyer to disclose information relating to the representation with the client's informed consent.[14]  "'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated

---

11. *See, e.g.*, State Bar of Michigan Advisory Op. CI-925 (1983) (lawyer must notify client upon receipt of a subpoena for documents relating to the lawyer's representation of the client) (citations omitted); Alaska Bar Ass'n Op. 96-3 (1996) (upon receiving a demand for confidential information or documents, the lawyer should attempt to contact the client concerning the request).  *See also* Linda G. Bauer, *Subpoena Savvy: What To Do When Your Client's File is Subpoenaed* (Nov. 2002), www.mass.gov/obcbbo/subpoena.htm (". . . [T]he lawyer should first attempt to contact the former client to determine whether the client consents to the disclosure.");  D.C. Bar Op. 14 (1976), at 2 ("an attorney should promptly notify his former client when he receives a subpoena asking for documents that came into his possession during the course of the representation of that former client or documents that affect or may affect that former client"); Pennsylvania Legal Ethics & Prof'l Responsibility Comm. Op. 2002-106 (2003) ("a lawyer may comply with an order issued in a private arbitration to reveal confidential client information, but must first raise the confidentiality issue with the arbitration panel and notify any clients whose confidences are implicated.  The lawyer should try to limit the scope and impact of the disclosure.").

12. *See* ABA MODEL RULE 1.6 cmt. [15] (2015) (client consultation is required by Rule 1.4 before responding to an order or demand for information relating to a representation by "a court or by another tribunal or governmental entity").  The protection of 1.6 is provided to former clients through Model Rule 1.9(c)(1) and (2), which provide: "A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:  (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client . . . or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client."  *See also* Swidler & Berlin v. U.S., 524 U.S. 399 (1998) (obligations of confidentiality continue even after the death of a client); Jamaica Pub. Serv. Co. v AIU Ins. Co., 684 N.Y.S.2d 459, 462 (N.Y. 1998) (an attorney owes a "continuing duty" to a former client not to reveal confidences learned in the course of a professional relationship).  *See also* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 10-456 fn8 ("[t]he lawyer's obligation to protect the attorney-client privilege ordinarily applies when the lawyer is called to testify or provide documents regarding a former client no less than a current client"); Rhode Island Supreme Ct. Ethics Advisory Panel Op. 2013-05, at 3 (2013) (obligations under 1.6 continue even after death of client; even then a "lawyer has a professional responsibility to seek to limit [a] subpoena or court order on any legitimate grounds such as attorney-client privilege, work product immunity, burden or relevance, to protect information to which obligations under Rule 1.6 apply") (citing ABA Formal Opinion 94-385).

13. ABA MODEL RULE 1.4 (2015).

14. *See* ABA MODEL RULE 1.6(a) (2015) (prohibiting a lawyer from revealing confidential information unless the client gives "informed consent").

adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."[15]

The content of the consultation will depend on the circumstances. It should include, at a minimum, (i) a description of the protections afforded by Rule 1.6(a) and (b), (ii) whether and to what extent the attorney-client privilege or work product doctrine or other protections or immunities apply, and (iii) any other relevant matter. Other relevant matters include, for example, "to the extent that the disclosure of confidential client information in a civil proceeding may raise potential criminal liability for the client, the consequences should be explained to the client during the consultation process."[16] The lawyer also may need to discuss whether the subpoena or other demand is valid and whether the requested document contains self-incriminatory information that might form the basis of a Fifth Amendment privilege claim against disclosure.

If, after consultation, the client wishes to challenge the demand, the lawyer should, as appropriate and consistent with the client's instructions, challenge the demand on any reasonable ground. If, after making the challenge, the court or other tribunal rules against the motion to withdraw or modify the order or demand for production, "the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4."[17] If the client decides not to appeal and gives informed consent to disclosure, the lawyer must produce the documents and information consistent with the client's instructions and as described in Part IIC of this opinion.

The lawyer has several options and some obligations if the lawyer and client disagree about how to respond to the initial demand or to an adverse ruling, or if the client wishes to retain new counsel. For a current client, where the initial demand or the appeal is within the scope of the retention, for example, the lawyer may seek to withdraw in compliance with Model Rule 1.16.[18] Where the initial demand or the appeal constitutes a new matter for a current client or relates to a former client and the client wishes to seek other counsel, the lawyer should take reasonable steps to protect the client's interest during the client's search for other counsel.[19]

**B. Fee Arrangements**

When responding to a demand that is outside the scope of a current retention, or when the demand relates to information and documents of a former client, the lawyer may need to discuss fee and retention arrangements during the consultation. In doing so, however, the lawyer must comply with the relevant rules. For example, under Model Rule 1.5(b) "[t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in

---

15. ABA MODEL RULE 1.0(e) (2015).
16. *See* Bauer, *supra* note 11.
17. ABA MODEL RULE 1.6 cmt. [15] (2015).
18. *See* ABA MODEL RULE 1.16(b)(1), (4), (7) & 1.16(c) (2015).
19. *See* ABA MODEL RULE 1.16(d) (2015).

writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate."[20]

Lawyers also may consider providing for these situations in initial retainer letters by including provisions that (i) the client will keep the lawyer informed on how to reach the client, even after the representation has ended, (ii) in the event the lawyer receives a subpoena or other demand for information protected by Model Rule 1.6, the client will promptly respond to the lawyer's request for instructions, and (iii) the client agrees to pay all reasonable fees and costs associated with any production or judicial proceedings in response to a subpoena or other demand. Even if no fee agreement is reached—either in the initial retainer letter or during a consultation following the lawyer's receipt of the demand—the lawyer nevertheless may be required to challenge the initial demand, as discussed below.[21]

## C. Where the Client is Unavailable for Consultation

Where the client is unavailable for consultation after the lawyer has made reasonable efforts to notify the client, the lawyer "*should* assert on behalf of the client all non-frivolous claims that . . . the information sought is protected against disclosure by the attorney-client privilege or other applicable law."[22] The lawyer has this obligation to assert all reasonable objections and claims when the lawyer receives the initial demand.[23] During

---

20. ABA MODEL RULE 1.5(b) (2015).

21. *See, e.g.*, D.C. Bar Op. 288 fn4 (1999) (" . . . [even] if no agreement on fees and expenses is reached regarding the efforts to protect the confidential information [demanded by a subpoena], the lawyer must nevertheless take all ethically required steps to protect the privilege even if not compensated for the services by the client."). A later suit in *quantum meruit* for the services rendered may be available to the lawyer but that is an issue of law beyond the jurisdiction of this Committee. Alternatively, a lawyer may seek to withdraw as appropriate under Rule 1.16.

22. ABA MODEL RULE 1.6 cmt. [15] (2015) (emphasis added). *See* RESTATEMENT OF THE LAW, *supra* note 8, § 63 cmt. b ("A lawyer generally is required to raise any reasonably tenable objection to another's attempt to obtain confidential client information . . . from the lawyer if revealing the information would disadvantage the lawyer's client and the client has not consented . . ."); Bd. of Prof'l Responsibility of the Supreme Ct. of Tennessee Formal Op. 2014-F-158 (2014) ("[i]n the absence of informed consent of the client, the lawyer must reveal the information or document if ordered to [do] so by the tribunal, but only after the lawyer has raised all non-frivolous objections that the information sought is protected against disclosure by the attorney-client privilege or other applicable law"); D.C. Bar Op. 288 (1999) (" . . . . A lawyer generally is required to raise any reasonably tenable objection to another's attempt to obtain confidential information . . . , unless disclosure would serve the client's interests . . . ." (citations omitted); D.C. Bar Op. 14 (1976) (". . . [W]hen documents are subpoenaed or an effort is otherwise made to compel their disclosure, it is the lawyer's ethical duty to a former client to assert on the former client's behalf every objection or claim of privilege available to him when to fail to do so might be prejudicial to the client"); Kentucky Bar Ass'n Op. E-315 (1987) (upon receiving a grand jury subpoena for client documents a lawyer "must respond by asserting any privilege (i.e., the attorney-client privilege) . . . .") (citations omitted); New Jersey Advisory Comm. on Prof'l Ethics Op. 145 (1969) (". . . if the client fails to respond to the attorney's letter his silence cannot be construed as consent and it would be improper to turn over copies of the [client's documents absent a court order] . . . .").

23. Appropriate objections and claims may vary with the jurisdiction. In some states, e.g., California, a lawyer may be *required* to raise certain claims or objections. *See, e.g.*, CAL. EVIDENCE CODE § 955 (1965) (lawyer who received or made a communication subject to the privilege under this article shall claim the privilege whenever he is present when the communication is sought to be disclosed and is authorized to claim

the proceeding before the court or other tribunal, the lawyer should explain the lawyer's diligent but unsuccessful efforts to reach the client. If the lawyer is ordered to produce the documents and records, paragraph (b)(6) permits the lawyer to comply with the court order, as discussed below.

### D. Complying With the Court Order

As noted, relying in part on then Comment [20], Formal Opinion 94-385 declared that a "lawyer must comply with the *final* orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client."[24] Other authorities also direct a lawyer to comply with "final" orders of a court or other tribunal.[25] Questions have arisen as to whether the reference to "final order" in Formal Opinion 94-385 and elsewhere requires a lawyer to appeal an adverse ruling when the client cannot be located or is unavailable for consultation.

Model Rule 1.6(b)(6) makes no reference to a "final" order. The comments adopted in 2002 make no reference to "final" orders. Comment [15] reads simply, "In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4. Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order."[26] The text thus suggests that omitting the reference to "final" orders was meant to relieve the lawyer from the added burden of pursuing an appeal or other "final" disposition, unless appropriate arrangements are made with an available client. The obligation of the lawyer with regard to an appeal is particularly relevant if the client or former client is unavailable.[27]

Requiring a lawyer to take an appeal when the client is unavailable places significant and undue burdens on the lawyer. An appeal costs money and takes time away from other clients. Taking an appeal on behalf of an unavailable client forces the lawyer to act without consultation and direction. While such clients need and deserve protection in

---

the privilege under subdivision (c) of § 954). In other states, by contrast, a lawyer may be *forbidden* from raising certain objections or claims.

24. ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 94-385, at 2 (emphasis added). Prior to the adoption of the amendments in 2002, Comment [20] to Model Rule 1.6 also said, a "lawyer must comply with the *final* orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client." *See* A LEGISLATIVE HISTORY, *supra* note 7, at 129 (emphasis added).

25. *See, e.g.*, Rhode Island Supreme Ct. Ethics Advisory Panel Op. 98-02 (1998) (upon receiving a demand for confidential information a lawyer "has professional responsibility to seek to limit subpoena [sic] or court order on any legitimate ground, such as attorney-client privilege, work product immunity, burden or relevance . . . . The . . . attorney must comply, however, with the *final* orders of a court requiring him/her to produce the documents sought or to give information about the former client" (emphasis added) (citing ABA Formal Opinion 94-385)). *See also* State Bar of Arizona Op. 00-11 (2000) (discussing, *inter alia*, a comment to Arizona RPC 1.6, which says, ""The lawyer must comply with the *final* orders of a court or other tribunal . . . [requiring disclosure]" but noting that "[w]hat constitutes a 'final order' is problematic. Criminal attorneys might well argue that before raising any such confidential information . . . the lawyer must await a final order by the highest court of appellate review and the mandate is spread relative thereto, if the original order of the lower court is appealed") (emphasis added).

26. ABA MODEL RULE 1.6 cmt. [15] (2015).

27. *See* the Reporter's comment in A LEGISLATIVE HISTORY, *supra* note 7, at 132.

response to an initial demand—to avoid improper and unjustified access to information and documents that the rules protect even after the client's death[28]—the balance changes once a court or other tribunal has ruled on the lawyer's initial objection.  In the absence of instructions from the client to appeal, the ethics rules do not require a lawyer to shoulder further burdens.   Accordingly, a lawyer is not ethically required to take an appeal on behalf of a client whom the lawyer cannot locate after due diligence.[29]

Once a lawyer determines disclosure is appropriate—in response to an initial demand or to an order and whether or not the client is available—the lawyer may produce documents and information "only to the extent the lawyer reasonably believes . . . is necessary . . . ."[30]  The lawyer should seek appropriate protective orders and similar arrangements "to the fullest extent practicable."[31]   "[D]isclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it . . . ."[32]

## III.  Conclusion

A lawyer receiving a subpoena or other compulsory process for information or documents relating to the representation of a client has several obligations.  If the client is available, the lawyer must consult the client.  If instructed by the client or if the client is unavailable, the lawyer must assert all reasonable claims against disclosure and seek to limit the subpoena or other demand on any reasonable ground.

If ordered to disclose confidential or privileged information and the client is available, a lawyer must consult with the client about whether to produce the information or to appeal.  If the client and the lawyer disagree about how to respond to the initial demand or to an order requiring disclosure, the lawyer should consider withdrawing pursuant to Model Rule 1.16.  If disclosure is ordered and the client is unavailable for consultation, the lawyer is not ethically required to appeal.

When disclosing documents and information—whether in response to an initial demand or to a court order and whether or not the client is available—the lawyer may reveal information only to the extent reasonably necessary. The lawyer should seek appropriate protective orders or other protective arrangements so that access to the information is limited to the tribunal ordering its disclosure and to persons having a need to know.

---

28. Swidler & Berlin v. U.S., 524 U.S. 399 (1998) (obligations of confidentiality continue even after the death of a client); Jamaica Pub. Serv. Co. v. AIU Ins. Co., 684 N.Y.S.2d 459, 462 (N.Y. 1998) (an attorney owes a "continuing duty" to a former client not to reveal confidences learned in the course of a professional relationship).

29. When challenging the subpoena or other demand in the first instance the lawyer should explain to the court or other tribunal the lawyer's efforts to locate the client and the client's unavailability.

30. ABA MODEL RULE 1.6 cmt. [16] (2015).

31. *Id.*

32. *Id.*

Where the client is available, the lawyer is not required to act without a fee but arrangements regarding the scope of the work and fee arrangements must conform to the relevant rules.[33]  Where the client is unavailable to make retention and fee arrangements, the lawyer is nevertheless required to challenge the demand in the first instance.  Lawyers should consider providing for these situations in retainer agreements.

---

[33] *See, e.g.*, ABA MODEL RULE 1.5 (2015).

**AMERICAN BAR ASSOCIATION STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY**
321 N. Clark Street, Chicago, Illinois 60654-4714 Telephone (312) 988-5328
CHAIR: Myles V. Lynk, Tempe, AZ ∎ Arthur D. Burger, Washington, DC ∎ Wendy Wen Yun Chang, Los Angeles, CA ∎ Robert A. Creamer, Cambridge, MA ∎ Hon. Daniel J. Crothers, Bismarck, ND ∎ Keith R. Fisher, Arlington, VA ∎ Barbara S. Gillers, New York, NY ∎ Amanda Jones, Chicago, IL ∎ Hope Cahill Todd, Washington, DC ∎ Allison L. Wood, Chicago, IL

**CENTER FOR PROFESSIONAL RESPONSIBILITY:** Dennis A. Rendleman, Ethics Counsel, Mary McDermott, Associate Ethics Counsel
**©2016 by the American Bar Association. All rights reserved.**