Pamela M. Egan, WSBA No. 54736
POTOMAC LAW GROUP PLLC
1905 7th Ave. W.
Seattle, WA 98119
Telephone: (415) 297-0132
Email: pegan@potomaclaw.com
 *Attorneys for Mark D. Waldron, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>        Debtor. | Case No. 18-03197 FPC 11<br><br>The Honorable Frederick P. Corbit<br><br>Chapter 7 |
| MARK D. WALDRON, as Chapter 7 Trustee,<br><br>        Plaintiff,<br>    vs.<br><br>PERKINS COIE LLP, a Washington limited liability partnership, LOWELL NESS, individual and California resident, GIGA WATT PTE., LTD., a Singapore corporation, and ANDREY KUZENNY, individual and Russian citizen,<br><br>        Defendants,<br><br>        - and -<br><br>THE GIGA WATT PROJECT, a partnership,<br><br>        Nominal Defendant. | Adv. Case No. 20-80031<br><br>**TRUSTEE'S REPLY TO PERKINS' AND NESS' OPPOSITION TO TRUSTEE'S MOTION TO AMEND COMPLAINT** |

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  BACKGROUND .........................................................................................4

III. ARGUMENT ..............................................................................................8

    A.   The Divestment Rule Does Not Strip This Court of Subject Matter
           Jurisdiction to Grant the Motion ...........................................................8

    B.   Substantial and Convincing Evidence Underpins the Amended
           Complaint ....................................................................................... 15

    C.   Perkins Should Be Estopped From Objecting to the Motion................. 18

    D.   The Motion Meets and Exceeds the Rule 15 Standard for Amendment.19

        1. The Trustee Is Acting in Good Faith ................................................ 20

        2. Amending the Complaint Will Not Cause Undue Delay................. 20

        3. Perkins Is Not Prejudiced.................................................................. 21

        4. Amendment Is Not Futile.................................................................. 21

        5. There Are No Previous Amendments ............................................... 22

    E.   The Court May Issue an Indicative Ruling ........................................... 22

IV.  CONCLUSION .................................................................................... 23

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Britton v. Co–op Banking Group*,
   916 F.2d 1405 (9th Cir. 1990) ....................................................... 11, 12, 13

*California Department of Toxic Substances Control v. Commercial Realty Projects, Inc.*,
   309 F.3d 1113 (9th Cir. 2002) ...................................................................9

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001) ................................................................ 12

*Cowen v. Bank United of Texas, FSB*,
   70 F.3d 937 (7th Cir.1995) .................................................................. 15

*Desertrain v. City of Los Angeles*,
   754 F.3d 1147 (9th Cir. 2014) .......................................................... 20, 22

*Dowe v. Leeds Brown Law, P.C.*,
   419 F. Supp. 3d 748 (S.D.N.Y. 2019) ................................................. 17

*Griggs v. Provident Consumer Disc. Co.*,
   459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) .............................9

*Hamer v. Neighborhood Housing Services of Chicago*,
   —— U.S. ——, 138 S.Ct. 13, 199 L.Ed.2d 249 (2017) .........................9

*Hook v. Ariona Department of Corrections*,
   107 F.3d 1397 (9th Cir. 1997) ............................................................ 19

*In re Jackson*,
   105 B.R. 542 (B.A.P. 9th Cir. 1989) ....................................................3

*In re Kashani*,
   190 B.R. 875 (B.A.P. 9th Cir. 1995) ....................................................3

*In re Mercedes-Benz Emissions Litig.*,
   797 Fed. Appx. 695 (3d Cir. 2020) ................................................ 14, 15

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT     Page | ii

*In re Williams Sports Rentals, Inc.*,
    217CV00653JAMEFBm, 2017 WL 4923337 (E.D. Cal.,
    October 31, 2017) ........................................................................ 11

*Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730 (9th Cir. 1988) ........ 10

*Kontrick v. Ryan*, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) ..............9

*Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009) ................. 16, 17

*National Wildlife Federation and Oregon v. National Marine Fisheries Service, et al*, 2008 WL 11513100 (D. Or. 2008) ........................................ 10, 11

*Pipe Trades Council of Northern California, U.A. Loc. 159 v. Underground Contractors Association of Northern California*, 835 F.2d 1275 (9th Cir. 1987), *opinion amended on denial of reh'g,* (9th Cir. Dec. 12, 1988) ......................... 13

*PowerAgent Inc. v. Electronic Data Systems Corp.*, 358 F.3d 1187 (9th Cir. 2004) ............................................................................................ 14

*Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) .............. 8, 9, 10

*Small v. Operative Plasterers' and Cement Masons' International Association Local 200, AFL-CIO*, 611 F.3d 483 (9th Cir. 2010) ........................................ 15

*Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2nd Cir. 2008) ............. 17

*United States v. Phelps*, 283 F.3d 1176 (9th Cir. 2002) ..............................9

*Woods v. JK Harris Financial Recovery Systems, LLC,* 2005 WL 8172267 (W.D. Wash. 2005) ......................................................................... 19

S<small>TATUTES</small>

11 U.S.C. § 542 ................................................................................ 3, 4

18 U.S.C. § 152 ....................................................................................3

O<small>THER</small> A<small>UTHORITIES</small>

Fed. Ct. App. Manual § 26:2 (6th ed.) ....................................................9

<u>Rules</u>

Fed.R.App.P. 12.1 .................................................................. 22, 23

Fed.R.App.P. 32.1 .................................................................. 14

Circuit Rule 36-3(c) ............................................................... 14

Fed.R.Civ.P. 15 ....................................................................... 4

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT        Page | iv

Mark D. Waldron, in his capacity as the duly appointed Chapter 7 Trustee, by and through his attorneys, the Potomac Law Group PLLC, hereby submits his reply ("Reply") to Perkins' and Ness' Opposition ("Opposition") to the *Trustee's Motion to Amend Complaint* ("Motion").[1] This Reply is supported by the Declaration of Pamela M. Egan ("Egan Decl.") and the Request for Judicial Notice ("RJN"), filed herewith. In conjunction with this Reply, the Trustee is also filing the *Trustee's Motion to Strike Affidavit of Ralph E. Cromwell Jr. Regarding Trustee's Motion to Amend Complaint.*

## I.    INTRODUCTION

The divestment rule is not jurisdictional, but is instead a judge-made rule that intends to promote justice and judicial efficiency. It is never applied to prevent a case from being tried on the merits while an arbitrability appeal is pending. The clarity of the evidence obtained during discovery rebuts Perkins' argument that the Trustee is manipulating the pleadings in a bad faith effort to evade Perkins' pending appeal. This Court retains the jurisdiction to allow the Trustee's complaint to be amended. The fact that the amendment would moot the appeal does not speak to this Court's power, or as Perkins' would put it, the lack of the Court's power. Instead, it speaks to the power of the facts, which are

---

[1] Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Motion.

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT          Page | 1

specifically alleged in the First Amended Complaint. In addition, the Trustee has matched the amended allegations with the evidence supporting those allegations.

The Lighthouse Documents show that Perkins' served as Giga Watt's attorneys, even telling the USSS that it represented Giga Watt on the very day that it issued the first premature release from the GW ICO escrow in the amount of $5.4 million. Further, Timur Usmanov as Giga Watt's Chief Financial Officer treated his main goal as fleecing Giga Watt of the WTT Token sales proceeds – with Perkins' willing assistance – and fleecing Giga Watt of its revenues.

There is no trial date. Mediation is set for December 16, 2022. Perkins can conduct additional discovery. The District Court gave Perkins the option to renew its motion to compel arbitration after conducting discovery. RJN No. 1, Exh. 1 at 21:8-10. Further, interlocutory appeals do not have to be brought immediately, but merge with final judgment. Despite that, Perkins chose to forge ahead forward with its arbitration appeal before discovery was complete. The failure of Perkins' gambit is not a reason to prevent this Court – a court of equity – from deciding the case based on the merits.

Perkins speculates that the Court of Appeals would move forward with the appeal if this Court granted this Motion. That is a problematical assumption given that the First Amended Complaint would supersede and replace the Verified Complaint, thus mooting the appeal. Further, without a writ of mandamus, the

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT        Page | 2

1  Court of Appeals would not have the power to tell the Bankruptcy Court to

2  disregard the First Amended Complaint and reinstate the Verified Complaint.

3      Early in this case, Perkins mischaracterized the law for which the District

4  Court chastised Perkins. RJN No 1, Exh. 1 at 10:21-28, 11-12, 13:1-5. It also

5  mischaracterized the facts in response to the Trustee's turnover request

6  ("Turnover Request") that the Trustee served upon Perkins in April 2019 pursuant

7  to 11 U.S.C. § 542(e), applicable to lawyers of the debtor. Lying to a trustee is the

8  same as lying to this Court because a trustee is an officer of the Court. *In re*

9  *Jackson*, 105 B.R. 542, 545 (B.A.P. 9th Cir. 1989) (trustee appointed by

10  bankruptcy judge "is performing an integral part of the judicial process"); *In re*

11  *Kashani*, 190 B.R. 875, 883 (Bankr. App. 9th Cir. 1995) ("It has long been

12  established that a bankruptcy trustee is an officer of the appointing court."). Thus,

13  Perkin's attempt to mislead the Trustee is an attempt to mislead the Court.

14      A trustee walks into a bankruptcy case without knowledge of the facts. He

15  has to rely on the debtor and the debtor's professionals to learn what happened.

16  Accordingly, the Trustee has a statutory power to require the debtor's

17  professionals to turn over documents relating to the debtor's affairs. As Giga

18  Watt's attorney Perkins was obligated to provide the emails described in this

19  Motion. 11 U.S.C. § 542(e). Truthfulness to a bankruptcy trustee is so important

20  that lying to a trustee is prohibited by statute. *See* 18 U.S.C. § 152(9) (prohibiting

21  the knowing and fraudulent withholding from a trustee of any recorded

22

23  TRUSTEE'S REPLY TO PERKINS'
   AND NESS' OPPOSITION TO TRUSTEE'S

24  MOTION TO AMEND COMPLAINT     Page | 3

25

information to which the trustee is entitled relating to the property or financial affairs of a debtor). Perkins has violated the norms and rules of bankruptcy.

The Motion meets and exceeds the extremely liberal standards of Fed.R.Civ.P. 15. The Trustee obtained and produced the Lighthouse Documents within the Discovery Cut-Off. He also fulfilled his supplemental disclosure requirements by sending detailed analyses to Perkins. The Trustee unearthed the truth after all the major players in this case dissembled, including David Carlson, Giga Watt's Chief Executive Officer, Andrey Kuzenny, its ostensible Chief Operating Officer, Timur Usmanov, its Chief Financial Officer, and Perkins, its attorneys.

The Trustee respectfully requests that the Court grant the Motion.

## II.    BACKGROUND

On April 9, 2019, the Trustee sent the Turnover Request to Perkins pursuant to 11 U.S.C. § 542(e). A copy of the Turnover Request is attached hereto as **Exhibit A**. Perkins responded stating that it did not represent Giga Watt and that it had no responsive documents. Egan Decl. at ¶ 4, 1:14-18.

The Trustee commenced the adversary proceeding ("Adversary Proceeding") on November 18, 2020 alleging that Perkins prematurely released $22.3 million in WTT Token sales proceeds from its IOLTA trust account. Perkins has conducted no depositions in the Adversary Proceeding. The Trustee has begun but not finished one deposition of Timur Usmanov.

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT          Page | 4

1    On May 3, 2022, the Court entered its *Order Granting Trustee's Motion for*

2    *Authority to Incur and Pay Expenses Incident to Discovery in Perkins Adversary*

3    authorizing the Trustee to incur up to $9,600 in processing and obtaining the

4    Lighthouse Documents. RJN No. 2, ECF No. 958 (main case)

5    On June 24, 2022, the Court entered its *Stipulated Amended Scheduling*

6    *Order which set the Discovery Cut-Off in the Adversary Proceeding* as August 31,

7    2022. It also set the deadline to amend the pleadings as August 1, 2022. RJN No.

8    3, ECF No. 95 (adversary).

9    In mid to late July 2022, the Trustee and Perkins simultaneously obtained

10   access to the Lighthouse Documents. Egan Decl. at ¶ 5, 1:19-20. Within days of

11   gaining access to the Lighthouse Documents, the Trustee informed Perkins that

12   the Lighthouse Documents contradicted Perkins' representations that it had not

13   represented Giga Watt and that they created a "paradigmatic shift" in the Trustee's

14   case. Id. at ¶ 5, 1:20-21, 2:1-3.

15   Perkins agreed to take the current Scheduling Order deadlines off the table.

16   Egan Decl. at ¶ 6, 2:4-9. It also stated that it would not object to the Trustee

17   amending the Verified Complaint. It specifically stated that it did not need to see

18   the amended pleading before making this commitment not to object. Perkins

19   stated that it would only need to see the amended pleading before agreeing to a

20   new discovery schedule. Egan Decl. at ¶ 6.

21

22

23   TRUSTEE'S REPLY TO PERKINS'
     AND NESS' OPPOSITION TO TRUSTEE'S
24   MOTION TO AMEND COMPLAINT          Page | 5

25

On August 4, 2022, the Trustee supplemented his discovery disclosures to Perkins by sending Perkins a copy of a letter ("Usmanov Letter") that the Trustee had sent to Timur Usmanov, Giga Watt's former Chief Financial Officer ("CFO"), outlining Mr. Usmanov's improprieties as CFO, including immigration fraud, bank fraud, and serving as Andrey Kuzenny's enforcer in stripping Giga Watt of both the WTT Token sales proceeds and revenues. A copy of the Usmanov Letter is attached hereto as **Exhibit B**. An index of exhibits that accompanied the Usmanov Letter is also included with **Exhibit B**. The exhibits themselves are not included to conserve judicial resources. However, the exhibits were sent to Usmanov with a copy to Perkins. Egan Decl. at ¶ 7.

That same day, August 4, 2022, Perkins made a supplemental discovery disclosure to the Trustee. This supplemental discovery omitted emails from Perkins telling the United States Secret Service ("USSS") on the day that Perkins improperly released $5.4 million from the GW ICO escrow that Perkins represented Giga Watt. Egan Decl. at ¶ 8. This email should have been produced in response to the Turnover Request.

The supplemental disclosure also omitted emails from Timur Usmanov to Ness introducing himself as the CFO of Giga Watt, Inc. and stating that Usmanov considered Lowell Ness to be Giga Watt's "main contact person on all out legal matters." Egan Decl. at ¶ 9. These emails also should been produced in response to the Turnover Request.

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT          Page | 6

On August 8, 2022, the Trustee further supplemented his discovery disclosures to Perkins by sending Perkins a letter ("<u>Perkins Letter</u>") outlining the new evidence that Perkins represented Giga Watt. A copy of this letter is attached hereto as **Exhibit C**. The index of exhibits that accompanied the Perkins Letter is included with **Exhibit C**. However, to conserve resources, the actual exhibits that the Trustee included with the Perkins Letter are not included with **Exhibit C**. Egan Decl. at ¶ 10.

On August 11, 2022, the Trustee informed the Court that he was going to amend the complaint, that Perkins did not object, and that the parties had agreed to work out a new discovery schedule. RJN No. 4, ECF No. 106. At that conference, counsel referred to showing the amended pleading to Perkins in the context of Perkins' statement that it needed to see the amended pleading before conferring on the new discovery schedule.

On September 8, 2022, the Trustee filed an amended complaint. The Trustee did not file a written consent or a motion with the amended complaint because Perkins had stated that it did not need to see the amended before agreeing to its filing. The timing of the filing related to certain discussions made during mediation. Egan Decl. at ¶ 11.

After reading the September 8, 2022 complaint, Perkins changed its mind and stated that it would object. Egan Decl. at ¶ 12. It now claims that it had no idea that the Lighthouse Documents created a paradigmatic shift in the case. And

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT          Page | 7

1  it claims that, in any event, the Trustee should have known that Perkins was lying

2  when it said that it had not represented Giga Watt and that Giga Watt was "a

3  stranger."

4  After further discussion with Perkins, the Trustee drafted the proposed

5  Amended Complaint and filed it with the accompanying Motion on September 26,

6  2022. That same day, he also withdrew the amendment that he had filed earlier on

7  September 8, 2022. RJN No. 6, ECF No. 118.

8  On October 13, 2022, the Trustee moved for the Court of Appeals to

9  remand the appeal or dismiss it as moot ("Remand Motion"). RJN No. 7, Exhibit

10  2 attached thereto. The motion to remand contains an Index to the New Evidence,

11  which cross-references the amended allegations in the proposed First Amended

12  Complaint to representative samplings of the Lighthouse Documents supporting

13  those amendments. That index is included with Exhibit 2 to the RJN.

14  **III.   ARGUMENT**

15  **A.   The Divestment Rule Does Not Strip This Court of Subject Matter**

16  **Jurisdiction to Grant the Motion**

17  Although courts have referred to a District Court losing "jurisdiction" once

18  a notice of appeal is filed, the divestment rule is not jurisdictional. *See Rodriguez*

19  *v. County of Los Angeles*, 891 F.3d 776, 790 (9th Cir. 2018) ("Though

20

21

22

23  TRUSTEE'S REPLY TO PERKINS'
   AND NESS' OPPOSITION TO TRUSTEE'S
24  MOTION TO AMEND COMPLAINT        Page | 8

25

*Griggs*[2] referred to the 'divestiture rule' as jurisdictional, the Supreme Court has since made clear that '[o]nly Congress may determine a lower federal court's subject-matter jurisdiction.'") (*citing Hamer v. Neighborhood Housing Services of Chicago*, —— U.S. ——, 138 S.Ct. 13, 17, 199 L.Ed.2d 249 (2017) (*quoting Kontrick v. Ryan*, 540 U.S. 443, 452, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)). "Jurisdictional" rules derived from sources other than Congress are more accurately characterized as "mandatory claim-processing rules" that may be applied in a "less stern" manner than true jurisdictional rules. *Rodriquez*, 891 F.3d at 790-91. *See also California Department of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1121 (9th Cir. 2002) ("The divestment rule, therefore, is a rule of judicial economy and not one that strips the district court of subject matter jurisdiction.").

The divestment rule intends to promote justice and judicial economy by avoiding the confusion of having the same issue before two courts simultaneously. *United States v. Phelps*, 283 F.3d 1176, 1181 (9th Cir. 2002). *See also* Fed. Ct. App. Manual § 26:2 (6th ed.) ("The question is really one of comity, i.e., based on the type of appeal and the issue presented, would district court action pending appeal serve the interests of justice and judicial efficiency"). The Ninth Circuit has "decline[d] to apply the divestiture rule in a slavish manner that ignores the

---

[2] *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982).

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT          Page | 9

1  reality of what happened in the trial court." *Rodriguez,* 891 F.3d at 790-91.

2  Rather, the court adopts a "pragmatic approach." *Id. See also Kern Oil & Refining*

3  *Co. v. Tenneco Oil Co.*, 840 F.2d 730, 734 (9th Cir. 1988) ("It should not be

4  employed to defeat its purposes nor to induce needless paper shuffling.").

5     The District Court's decision in *National Wildlife Federation and Oregon v.*

6  *National Marine Fisheries Service, et al*, 2008 WL 11513100 (D. Or. 2008) is

7  instructive. In that case, the District Court granted a motion to file a fourth

8  supplemental complaint although that mooted a pending appeal. The District

9  Court reiterated that the jurisdictional-divestment rule is one of judicial economy,

10 "designed to avoid the confusion and waste of time that might flow from putting

11 the same issue before two courts at the same time. It should not be employed to

12 defeat its purposes nor to induce needless paper shuffling." *Id.* at *1 (quoting *Kern*

13 *Oil*, 840 F.2d at 734). The District Court found that the supplemental complaint

14 did not "put any of the 'same issues before two courts at the same time.'" *National*

15 *Wildlife Federation* at *1 (quoting *Kern Oil*, 840 F.2d at 734). Therefore, the court

16 found that requiring a mandate from the court of appeals or staying the case

17 pending resolution of the appeal "would result in a needless waste of time and

18 resources." *Id.* "A better example of 'needless paper shuffling' and 'waste of time'

19 would be hard to imagine." *Id.,* (quoting *Kern Oil*, 840 F.2d at 734). The same is

20 true here. Preventing the Adversary Proceeding from proceeding on the merits

21 would not serve justice or judicial economy. It would instead undermine both.

22

23 TRUSTEE'S REPLY TO PERKINS'
   AND NESS' OPPOSITION TO TRUSTEE'S
24 MOTION TO AMEND COMPLAINT          Page | 10

25

The District Court's decision in *In re Williams Sports Rentals, Inc.*, 217CV00653JAMEFBm, 2017 WL 4923337, at *2 (E.D. Cal., October 31, 2017) is also instructive. In *Williams Sports Rentals,* a party appealed the denial of an abstention motion. The appellant moved to stay the District Court action pending her appeal arguing that her appeal divested the District Court of jurisdiction. The District Court denied the motion holding that whether the Court should abstain from deciding a dispute raises a different issue than deciding the merits of the dispute. The District Court stated:

> [Appellant] has not shown that the divestment rule extends to situations where the matter on appeal could prevent the Court from adjudicating the merits of the action or delay adjudication until a later date. The cases cited by the parties indicate that the contrary is correct. In *Britton*, the Ninth Circuit found that the defendant's appeal of the district court's order denying his motion to compel arbitration did not divest the district court of jurisdiction to proceed with the case on the merits. [*Britton v. Co–op Banking Group,*] 916 F.2d [1405] at 1412 [9th Cir. 1990].

*Id.* The same is true here. Perkins would employ the divestment rule to prevent this Court from adjudicating the merits of the action while its arbitrability appeal is pending. That is not a proper application of the rule.

In *Britton*, the Ninth Circuit Court of Appeals found that the defendant's appeal of the District Court's order denying his motion to compel arbitration did not divest the District Court of jurisdiction to proceed with the case on the merits. *Britton v. Co–op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990). The District Court entered a default judgment against the defendant while his

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT          Page | 11

1  arbitration argument was on appeal. *Britton* held that where arbitrability is the

2  only substantive issue on appeal, the underlying case can proceed on the merits

3  because the merits, on the one hand, and arbitrability, on the other, are not the

4  same issue. *Id.*

5  The same is true here. Whether the Court should have compelled arbitration

6  is a different issue than whether the Trustee can amend the complaint to reflect the

7  fact that Perkins was Giga Watt's attorney when it was prematurely releasing

8  WTT Token sales proceeds and Usmanov was fleecing Giga Watt of both the

9  WTT Token sales proceeds and revenues, at Andrey Kuzenny's direction.

10  Perkins' cases do not change the analysis or the result. For example, in *City

11  of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th

12  Cir. 2001), cited by Perkins, the appellant failed to obtain certification of its

13  interlocutory appeal. Therefore, the Court of Appeals held that it lacked

14  jurisdiction over the appeal. Here, Perkins challenges this Court's jurisdiction over

15  the merits, not the Court of Appeals' jurisdiction over the appeal. Therefore, *Santa

16  Monica Baykeeper* does not apply.

17  Another case cited by Perkins, *Commercial Realty Projects, Inc.*, 309 F.3d

18  1113, helps the Trustee's case. In *Commercial Realty Projects*, the Court of

19  Appeals held that the District Court was not stripped of jurisdiction to allow the

20  amendment of a complaint and approval of a settlement, despite a pending appeal

21  and in spite of the fact that amending the complaint and approving the settlement

22

23  TRUSTEE'S REPLY TO PERKINS'
    AND NESS' OPPOSITION TO TRUSTEE'S

24  MOTION TO AMEND COMPLAINT          Page | 12

25

mooted the pending appeal. The District Court had jurisdiction, even though the exercise of that jurisdiction mooted the appeal. Therefore, the fact that the Trustee's proposed First Amended Complaint may moot Perkins' arbitration appeal is not relevant to whether the District Court has the jurisdiction to grant the request in the first place. Under *Britton*, this Court has jurisdiction to grant the Motion.

Another case cited by Perkins, *Pipe Trades,* is distinguishable. *Pipe Trades Council of Northern California, U.A. Loc. 159 v. Underground Contractors Association of Northern California*, 835 F.2d 1275 (9th Cir. 1987), *opinion amended on denial of reh'g,* (9th Cir. Dec. 12, 1988). In *Pipe Trades*, a party appealed a judgment after losing on the merits. While the appeal was pending, the party brought another action pretending that it was different from the first action. But in fact, the second action raised the same issue as the one pending on appeal, which was the validity of the agreement between the parties. Because the same issue would be pending in both courts at the same time, the District Court applied the divestment rule and declined to consider the second action. The Court of Appeals affirmed. Unlike in *Pipe Trades*, the merits of the dispute between the Trustee and Perkins is not on appeal. A separate issue, the arbitrability of the first complaint, is on appeal. Therefore, *Pipe Trades* does not prevent this Court from granting the Motion.

1    Perkins' other case, *PowerAgent,* is similarly not determinative.

2    *PowerAgent Inc. v. Electronic Data Systems Corp*., 358 F.3d 1187, 1192 (9th Cir.

3    2004). Solely to provide background, the Court of Appeals in *PowerAgent* quoted

4    an earlier unpublished holding that it had made in the case. *Id*. at 1190. Perkins

5    cherry picks this quote to incorrectly suggest a binding rule against amending a

6    complaint while an arbitration appeal is pending. Objection at 21:6-12. However,

7    the Court of Appeals expressly stated in *PowerAgent* that it was <u>not</u> deciding

8    whether the District Court had jurisdiction to allow an amendment. *See Power

9    Agent*, 358 F.3d at 1191 ("We nonetheless conclude, without reaching the

10   question whether the district court should have allowed the filing of the Amended

11   Complaint in the first instance . . ."). Instead, it applied a standard estoppel

12   argument preventing the party from arguing on the one hand that the arbitrators

13   had the power to decide arbitrability and then later arguing that the arbitrators

14   lacked the power to decide arbitrability. *Id*. Perkins' use of the background quote

15   as if it were binding authority violates the rules against citing unpublished

16   decisions published before 2007. *See* Fed.R.App.P. 32.1; Circuit Rule 36-3(c)

17   ("Unpublished dispositions and orders of this Court issued before January 1, 2007

18   may not be cited to the courts of this circuit" except in certain exceptions that do

19   not apply here).

20       *Mercedes Benz,* an unpublished out of circuit case, is distinguishable. *In re

21   Mercedes-Benz Emissions Litig.*, 797 Fed. Appx. 695 (3d Cir. 2020). In *Mercedes-

22

23   TRUSTEE'S REPLY TO PERKINS'
     AND NESS' OPPOSITION TO TRUSTEE'S
24   MOTION TO AMEND COMPLAINT          Page | 14

25

*Benz*, class action plaintiffs lawyers attempted to drop two named plaintiffs from the complaint while appeals regarding the arbitrability of their claims were pending. *Mercedes Benz* held that the plaintiffs were not allowed to evade possible arbitration by manipulating the class membership. In contrast, this case does not raise any inference of manipulation. Instead, as set forth below, substantial and convincing facts require an amendment to the pleadings.

Finally, in *Small v. Operative Plasterers' and Cement Masons' International Association Local 200, AFL-CIO*, 611 F.3d 483 (9th Cir. 2010), cited by Perkins, the Court of Appeals held that the District Court could not modify a preliminary injunction while it was on appeal. Here, the Trustee is not asking the court to modify the arbitration order while it is on appeal. Therefore, *Small* is distinguishable.

**B.      Substantial and Convincing Evidence Underpins the Amended Complaint**

The clarity of the evidence underpinning the proposed First Amended Complaint defeats Perkins' argument that the Trustee is acting in bad faith. *Cf., Cowen v. Bank United of Texas, FSB,* 70 F.3d 937, 944 (7th Cir.1995) (observing that a trial judge may require a showing of substantial and convincing evidence supporting the proposed amendment before allowing leave to amend, because a court may be concerned that a plaintiff may simply be maneuvering to stave off termination of the lawsuit).

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT          Page | 15

The Trustee has identified the amended allegations and matched them to representative samples of the new evidence. RJN No. 7, Exh. 2 (index included as *Exh. D*). As an example, the new evidence includes emails from Timur Usmanov introducing himself to Lowell Ness as "CFO of Giga Watt, Inc." and stating his understanding that Ness was Giga Watt's point person "for all our legal matters." RJN No. 7, Exh. 2, D33-D34, D-56. The new evidence further shows that on the day that Perkins prematurely released $5.4 million of WTT Token sales proceeds, Perkins told the United States Secret Service that Perkins represented Giga Watt. RJN No. 7, Exh. 2, D2-D25, D37-D49, D69-D70, D74-D88, D91-D99. The new evidence also shows how Usmanov helped Kuzenny to fleece Giga Watt of both the WTT Token sales proceeds and the revenues. *Id*. They further show that David Carlson tried to get Perkins to help define the relationship between Giga Watt and GW Sg. But his efforts were unsuccessful. The parties never defined their relationship and Andrey Kuzenny looted both the WTT Token sales proceeds via GW Sg. and Giga Watt's revenues via Cryptonomos. *Id*.

That these facts may moot the appeal is not a sign of bad faith. It is a necessary result of the facts. For example, in light of the Lighthouse Documents, the Court of Appeals' decision in *Mundi* has newfound relevance. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009). *Mundi* holds that when a plaintiff's claims stand on their own without reliance on an arbitration agreement, then equitable estoppel does not apply. The attorney-client relationship supports

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT          Page | 16

just such a stand-alone claim against Perkins. The change in the analysis is a necessary result of timely discovery and effective investigation by the Trustee to overcome dissembling by both the Debtor's officers and its counsel, Perkins.

*Mundi* cites a Second Circuit case which also has newfound relevance: *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2nd Cir. 2008). In *Sokol Holdings*, the plaintiff alleged that the defendant had subverted the plaintiff's rights under an agreement which contained an arbitration clause. The defendant alleged that the claims against them had to be arbitrated. The Court called this argument a "mockery" and held that the plaintiff had not agreed to arbitrate the defendant's tortious conduct. *Id.* at 362. The same is true here. Giga Watt did not agree to arbitrate either GW Sg.'s or Perkins' tortious conduct.

In *Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d 748 (S.D.N.Y. 2019), certain lawyers settled a lawsuit that the lawyers had brought on behalf of their clients against their clients' employer. The settlement agreement contained an arbitration clause. Later, the client-employees learned that the lawyers had conspired with the employer to reduce the settlement amount. When the client-employees sued the lawyers, the lawyers moved to compel arbitration under the settlement agreement. The Court found that there was no unfairness in allowing the employees to argue that, while they had agreed to arbitrate claims with their employers, that agreement did not extend to an agreement to arbitrate their claims against their lawyers for having colluded with the employers. The settlement

agreements were instruments of tortious behavior. They were the means by which the lawyers had cheated their clients. Under those circumstances, equity did not compel arbitration.

In this case, the WTT Token sales agreements were the means by which GW Sg. cheated Giga Watt. GW Sg.'s agreement to arbitrate claims with their defrauded WTT Token sales purchasers does not morph into an agreement by Giga Watt to arbitrate claims against Perkins for having helped GW Sg. to cheat Giga Watt.

The foregoing shows that the Trustee is not manipulating the pleadings to moot the appeal. He is following the facts which happen to moot the appeal. Accordingly, this Court has jurisdiction.

## C.    Perkins Should Be Estopped From Objecting to the Motion

Perkins' counsel argues that Professional Rule 1.6 required him to misrepresent Perkins' relationship with Giga Watt. This argument makes a mockery of the ethical rules. Under no reasonable interpretation can a Professional Rule require an attorney to make misrepresentations to a court-appointed bankruptcy trustee.

The evidence also rebuts counsel's suggestion of an honest mistake. The District Court chastised Perkins in the strongest terms for mischaracterizing the law. RJN No. 1, Exh. 1, 10:21-28, 11-12, 13:1-5.  This prior bad conducts shows that its newly discovered misrepresentation of the facts was not a mistake. *See*

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT        Page | 18

1  Fed. R. Evid. 404 (evidence of prior conduct is admissible to show absence of

2  mistake).

3      Further, Perkins had the option of waiting until discovery was completed

4  before proceeding with its appeal. The District Court Order was without prejudice

5  to renew the arbitration motion after completing discovery. RJN No. 1, Exh. 1,

6  21:8-10. *See also Hook v. Ariona Department of Corrections,* 107 F.3d 1397,

7  1401 (9th Cir. 1997) ("A party does not lose the right to appeal an interlocutory

8  order by not immediately appealing and waiting for the final judgment. The

9  interlocutory order merges in the final judgment and may be challenged in an

10  appeal from that judgment." (citation and internal quotation marks omitted)).

11  Further, Perkins could have filed a motion to stay the Adversary Proceeding

12  pending its appeal. *See Woods v. JK Harris Financial Recovery Systems, LLC,*

13  2005 WL 8172267, at *2 (W.D. Wash. 2005) (court granted motion to stay

14  underlying case pending appeal of denial of arbitration order).

15      Rather than take any of these options, Perkins chose to forge ahead with its

16  appeal. It therefore accepted the risk that its dissembling would be exposed during

17  discovery pending the appeal.

18  **D.    The Motion Meets and Exceeds the Rule 15 Standard for Amendment.**

19      As set forth in the Motion, in the Ninth Circuit, "[f]ive factors are taken into

20  account to assess the propriety of a motion for leave to amend: bad faith, undue

21  delay, prejudice to the opposing party, futility of amendment, and whether the

22

23  TRUSTEE'S REPLY TO PERKINS'
   AND NESS' OPPOSITION TO TRUSTEE'S
24  MOTION TO AMEND COMPLAINT        Page | 19

25

plaintiff has previously amended the complaint." *Desertrain v. City of Los Angeles,* 754 F.3d 1147, 1154 (9th Cir. 2014).

### 1. The Trustee Is Acting in Good Faith

As set forth above, the facts are driving the amendment. Therefore, they are presented in good faith. Further, the Trustee has been open and responsive at all times during the Adversary Proceeding. The Trustee produced the Lighthouse Documents and provided detailed supplemental disclosures within the Discovery Cut-Off.

### 2. Amending the Complaint Will Not Cause Undue Delay

The parties agreed to table the deadlines set forth in the Scheduling Order and informed the Court of this decision. No trial date is set. Mediation is scheduled for December 16, 2022.

Perkins suggests that if the Trustee had served Perkins with a discovery request, then the Trustee would have exposed Perkins' misrepresentations sooner. However, the Trustee served Perkins with the Turnover Request in April 2019 pursuant to 11 U.S.C. § 542(e) which requires the debtor's attorneys to turn over all documents regarding the debtor's affairs. Perkins replied falsely that it had not represented Giga Watt. It was not necessary to serve a redundant discovery request on top of the Turnover Request.

Perkins argues that the Trustee should have supplemented his discovery responses to Perkins after discovering the Lighthouse Documents. However,

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT          Page | 20

within mere weeks of obtaining the Lighthouse Documents, the Trustee sent both the Usmanov Letter and the Perkins Letter to Perkins thus fulfilling his supplemental disclosure obligations.

The Trustee has acted expeditiously and diligently to cut through the dissembling of the Debtor's Chief Executive Officer, David Carlson, the Debtor's ostensible Chief Operating Officer, Andrey Kuzenny, and most recently, its attorneys, Perkins.

### 3. Perkins Is Not Prejudiced

Perkins suggests that it is unfair if the appeal is mooted, because briefing is complete, and the Court of Appeals has selected the matter for possible oral argument. However, as set forth above, Perkins did not have to move forward with its appeal pending discovery. It chose to do so.

Furthermore, Perkins has not conducted any depositions. Therefore, amending the complaint will not require Perkins to re-depose any parties.

Finally, the Lighthouse Documents damage Perkins' credibility. However, this damage results from Perkins' own conduct in making misrepresentations to the Trustee. That result is not prejudice.

### 4. Amendment Is Not Futile

If the Motion is granted, the First Amended Complaint would supersede the earlier Verified Complaint. Perkins cites no authority for its proposition that if the Court of Appeals chose nonetheless to decide the arbitrability of the Verified

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT        Page | 21

Complaint, and decided that it was arbitrable, then the Verified Complaint would spring back to life. This is not the law, and Perkins cites none to support this position. Instead, if the Motion is granted, the First Amended Complaint would moot the appeal. A Motion for Remand or to Dismiss is currently pending with the Court of Appeals. RJN No. 7.

### 5. There Are No Previous Amendments

Finally, the Trustee has not previously amended the complaint.

In summary, the Trustee is acting in good faith and there is no undue delay or prejudice. Amending the complaint would not be futile and no previous amendments have occurred. Therefore, respectfully the Motion meets the *Desertrain* elements under the extremely liberal standards of Fed.R.Civ. P. 15.

The standards are liberal because American jurisprudence in general, and equity in particular, strive to decide disputes based on the facts.

Accordingly, amendment is appropriate.

## E. The Court May Issue an Indicative Ruling

If the Bankruptcy Court concludes that it lacks authority to grant the Motion because of the appeal, the Court may state in its opinion that it would grant the Motion or that the Motion raises a substantial issue. *See* Federal Rule of Appellate Procedure 12.1:

> If the district court states that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT          Page | 22

further proceedings but retains jurisdiction unless it expressly dismisses the appeal.

*Id.* In the event that the Court accepts Perkins arguments – which, respectfully are incorrect arguments – then the Trustee asks that the Court make an indicative ruling that it would grant the Motion but for the lack of authority or that the Motion raises a substantial one.

### IV.  CONCLUSION

Wherefore, the Plaintiff respectfully requests that the Court grant the Motion, allow the Trustee to file the proposed First Amended Complaint, and grant such other and further relief as the Court deems necessary and just.

Dated: October 24, 2022          POTOMAC LAW GROUP PLLC

By:      s/ Pamela M. Egan
Pamela M. Egan (WSBA No. 54736)
*Attorneys for Mark D. Waldron, Chapter 7 Trustee, Plaintiff*

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO AMEND COMPLAINT          Page | 23