# EXHIBIT B



**Potomac Law Group, PLLC**
1300 Pennsylvania Avenue N.W., Suite 700 | Washington, D.C. 20004
T 415.297.0132 | F 202.318.7707 | www.potomaclaw.com

<b>BY EMAIL: tim.usmanoff@gmail.com</b>

August 4, 2022

Mr. Timur Usmanov
7415 West 18th Street
Los Angeles, California 90045

Re:     *In re Giga Watt, Inc.*, Case No. 18-03197-FPC
        U.S. Bankruptcy Court, Eastern District of Washington (Spokane Division)
        (the "<u>Bankruptcy Case</u>")

Dear Mr. Usmanov:

As you know the Potomac Law Group PLLC ("<u>PLG</u>") represents Mark D. Waldron in his official capacity as the Chapter 7 Trustee in the above-referenced Bankruptcy Case. I am a partner in PLG.

We are writing in regard to the matters described below. The Trustee has broad-ranging discovery powers, coupled with an obligation to investigate the affairs of Giga Watt, Inc. ("<u>Giga Watt</u>"), which is the debtor in the Bankruptcy Case. The areas of inquiry involve:

1. The premature releases from the escrow that Perkins Coie LLP ("<u>Perkins</u>") held pursuant to Giga Watt's Initial Coin Offering ("<u>GW ICO</u>");

2. The diversion of Giga Watt's revenues by Andrey Kuzenny ("<u>Kuzenny</u>"), Leonid Markin ("<u>Markin</u>"), Eduard Khaptakhaev ("<u>Khaptakhaev</u>"), Olesya

Exhibit B, Page 1 of 30

Egozina ("Egozina"), GigaWatt Pte. Ltd. ("GW Sg.") and/or Cryptonomos Pte. Ltd. ("Cryptonomos");

3. Kuzenny's work visa; and

4. Certain tax matters.

This letter outlines in detail the facts that we have discovered to date based on information that we recently obtained despite the lack of cooperation and outright obstruction by Giga Watt's shareholders and others, including you. We are putting these facts in this letter to give you an opportunity to respond and prepare for our examination of you regarding these matters. After your examination, we may commence a lawsuit against parties, including potentially you.

## OUTLINE OF THE FACTS

On January 2017, Giga Watt, a newly formed Washington corporation, began publicizing that it was building a massive cryptocurrency facility and that it was raising capital to do so through the GW ICO. The securities sold were (i) digital assets referred to as WTT Tokens and (ii) computers used for "mining" cryptocurrency ("Miners"). The main people behind the GW ICO were Kuzenny, Markin, Khaptakhaev, and Dave Carlson ("Carlson"). Effective January 1, 2017, Rob Taves, Jeffrey Field, and Carlson sold their company, Enterprise Focus, Inc., d/b/a MegaBigPower, to the newly formed Giga Watt. The purchase price was $3 million payable in installments. **Exhibit 1**, LIGHTHOUSE 0685147. In March 2017, the parties amended the asset sale agreement to tie the installments to escrow releases. Under the modified agreement, the first $1 million would be paid once $1 million was withdrawn from escrow. The second $1 million would be paid six months after that. The third $1 million six months after that. **Exhibit 2**, LIGHTHOUSE 0526738-39. LIGHTHOUSE 0657634-35, LIGHTHOUSE 0657639-40.

You appear to have started working at Giga Watt on or about May 3, 2018. **Exhibit 3**, LIGHTHOUSE 0783513. On July 24, 2017, you wrote to Carlson:

> *Last time we spoke (June 30, 2017) in Wenatchee you said that you would pass the info on all existing wallets over to me. Please let me*

> *know if there is anything I can help you with to facilitate the process.[1]*

**Exhibit 4**, GWSEC00022159. On July 25, 2017, you wrote to Kuzenny, Markin, and Khaptakhaev that Carlson and Michael Olmstead ("Olmstead") were not cooperating with you and that the only inference to draw was that Carlson "has something to hide." **Exhibit 5**, LIGHTHOUSE 0300248.[2] Olmstead was Giga Watt's sole accountant.

On July 25, 2017, the SEC issued its *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO* in which it indicated its belief that cryptocurrency tokens were securities subject to the U.S. securities laws.

That same week, on July 27, 2017, Carlson was set to meet with Martha Sandoval ("Sandoval") a corporate attorney in the Seattle office of Perkins. **Exhibit 6**, LIGHTHOUSE 0960100. In anticipation of this meeting, Olmstead sent a list to Sandoval of the items that Carlson wanted to discuss, among them, "Giga Watt, Inc. – ***Hosting revenue***; what is the best method of reporting (internally and for tax purposes)? Corporate structure?" **Exhibit 7**, LIGHTHOUSE 0307861 (emphasis added). Aware of tension that this meeting was creating, on July 26, 2017, Carlson wrote to you, with a copy to Markin and Kuzenny, "FYI the agenda for the meeting tomorrow in Seattle is only about a reorg structure with respect to Giga US & Giga.SG, and how our employees will be divided up between the entities." **Exhibit 8**, LIGHTHOUSE 0308011.

You wrote several different letters for Kuzenny, Markin, or Khaptakhaev to send to Carlson criticizing him for cutting you out of the Perkins meeting. **Exhibit 9**, LIGHTHOUSE 0303891; **Exhibit 10**, LIGHTHOUSE 303984.

In the final draft, which Markin sent to Carlson on July 28, 2017, Markin refers to you as "our permanent CFO." However, you testified in your deposition that you did

---

[1] In this letter, typographical errors in quoted emails are <u>not</u> corrected. Typos are in the original.

[2] Translation from Russian to English of the relevant portion of the email is attached to the referenced document.

not start working for Giga Watt until November 2017. Before that, you claimed, you were simply gathering information. Markin's email to Carlson in July 2017 states:

> *Dave, I want to make it clear. You are our CEO, and Tim is our CFO.*
>
> *I'm sure that Tim is doing everything in the best interest of the company, Among other things, this is up to CFO to decide how to run financial affairs. Finally, it was the shareholders who put him in charge of clearing up the financials,[3] and I don't really understand why you don't want to collaborate. Neither do I understand why Mike and Sinden remain silent and don't respond to Tim's emails. Guys, you didn't even email him back on his request to provide the precise time and location for the meeting with Perkins Coie, I'm really upset about that. Tim should have been there.*
>
> *Dave, I hope that you reconsider your attitude and talk to Mike and Sinden and whoever else you think might be useful and supportive with regard to disclosing and providing the requested information/documentation.*

**Exhibit 11**, LIGHTHOUSE 0317427. In referring to the "requested information/documentation" Markin was referring to the wallet address so that they would take control of Giga Watt's revenue stream. Carlson mollified Markin:

> *First, thanks Leo for your honest thoughts - its very important to me that you can express dissatisfaction with me when you feel it!*
>
> *I understand now, why Tim had this reaction with me. When you and I met in my office, I specifically remembered it this way:*
>
> *>Tim had already accepted another offer, but would try to help GigaWatt in the interim.*
>
> *I did not know he had agreed to be **Giga's perm CFO** — of course in that case, I would have had no reason to suggest that he would be moving on. I had concerns that once he moved on, a new CFO would want to change everything around again, so therefore I wanted to*

---

[3] This is another example of not following corporate formalities. Under the rules, the shareholders pick the directors and the directors pick the officers. Shareholders do not pick officers.

*understand better why he wanted to re-do the books from the ground up (remember, we did this already once for Alexander).*

*I did communicate to Tim that the scope of the meeting turned out to have nothing to do with finance and would only be addressing the structural changes that Katrina was proposing. In that case, I didn't feel he needed to fly up[4] for that meeting, but once we hear back from Perkins, there will most definitely be a project there for Tim! I didn't intend to block him out of the meeting in any way.*

*Again, I want to reiterate that I simply thought Tim \*was\* just temporarily helping us out. I will communicate this to Sinden and Mike also, because I've told them incorrectly as well.*

*My apologies for the miscommunication — I don't know how it happened. I'll reach out to Tim and smooth it out, but in the meantime if you remember anything about our conversation, maybe you can help explain to him how this happened?*

*Best Regards*

*Dave*

**Exhibit 12**, LIGHTHOUSE 0318476 (emphasis added).

In summary, Markin told Carlson that you were not really going to stay long or even take the job. You testified in your deposition that in the summer of 2017, you were only gathering information and only considering whether to take the job. In fact, though, you were already the CFO. You further testified in your deposition that Markin and Kuzenny gave you the title, CFO, just to lend you credibility. But the emails paint a different picture. You pushed back when Carlson resisted your efforts to wrest control of Giga Watt's revenues and hand them over to Cryptonomos and others. Markin reinforced your authority by telling Carlson that you were the "perm CFO."

On July 31, 2017, you sent Kuzenny wire transfer instructions for your bank account in Latvia. **Exhibit 13**, LIGHTHOUSE 0319832. In your deposition, you

---

[4] You operated from Los Angeles. You were not present in Wenatchee day-to-day (or often). After the first escrow release, Markin and Kuzenny started leasing an office in Beverly Hills, California.

testified that Cryptonomos sent you money by wire transfers, along with cash payments by Kuzenny until November 2017. At that point, you put yourself and Kuzenny on Giga Watt's payroll after GW Sg. lost its banking privileges at the Overseas Chinese Banking Corporation ("OCBC"). You did not report this off-the-books income of cash and offshore wire transfers to the U.S. Internal Revenue Service.

On August 4, 2017, after Carlson capitulated, his administrative assistant, Sinden Harem, introduced you to Sandoval. **Exhibit 14**, LIGHTHOUSE 0337060. You then took over the Perkins relationship. On August 7, 2017, Sandoval wrote to Olmstead:

> *Mike, I'd requested, but did not receive, the corporate documents for Giga Watt, Inc. from Katrina. Perkins did not work on that entity's incorporation, and [I] don't have any familiarity with that entity at this point. I have looked through our data management system and did not find any records of our involvement with respect to a power of attorney being granted by GW Inc.*

**Exhibit 15**, LIGHTHOUSE 337833. You appear to have diverted the focus of the advice away from GW Sg. and Cryptonomos' taking control over Giga Watt's revenues and focused Perkins' attention on Giga Watt's lack of corporate documents.

On August 7, 2017, Marina Mikhaylyuta ("Mikhaylyuta"), GW Sg.'s director, sent an email to Perkins:

> *Now that we've launched the first batch of tokens I would like to ask you to release the equivalent amount of USD 5 400 000*

**Exhibit 16**, WSGR-GW 7233. Perkins released the funds on August 8, 2017. *Id.*, WSGR-GW 7234.

During this period in early August 2017, you and Kuzenny were asking a person named Al Mafia to invest in Giga Watt. You told Al Mafia that Giga Watt's financial statements "in no way reflects the economic picture." **Exhibit 17**, TU_11.

On August 9, 2017, the day after Perkins made the first premature escrow release to GW Sg., Al Mafia wrote to Perkins' accounting department asking for the

"general ledger regarding the GigaWatt Pte. Ltd. escrow." **Exhibit 18**, GWSEC 00022203. That same day, August 9, 2017, Kuzenny wrote to Al Mafia:

> *Hello Sasha,[5]*
>
> *Our lawyers are in a panic at your letter that you addressed. Honestly.*
>
> *You know how they relate to the word mafia here in America ((*
>
> *Let me better send you dox from them.*

**Exhibit 19**, LIGHTHOUSE 0343738.

On August 9, 2017, Carlson wrote to Sandoval regarding the "project orientation checkup." He copied Khaptakhaev, Markin, Kuzenny, and you:

> *Thanks for the clarity[,] Martha.*
>
> *Ed - we met with Perkins week before last and did a project orientation checkup with Martha. I wasn't clear what Perkins had been involved with versus the guidance given by Katrina.*
>
> *Its clear that at this point that the corp structure (Giga.sg and Giga.us) and their relationship were defined by Katrina with perhaps some input by Perkins, but not at their specific direction.*
>
> *I think we need to determine if we are comfortable with our current arrangement, or do we want Perkins to dig into how we are doing business and what the entity structure consists of. Further, we may need Perkins to evaluate whether the legal protection and tax/revenue strategies implied by this corp structure are effective and achieve our goals.*
>
> *We've built a lot of business based on the structure Katrina defined, and perhaps you guys are familiar and comfortable with it - I'm asking you for your feedback on whether to engage Perkins to audit our structure and build us a robust plan going forward. At this point I think its fair to say that Perkins knows *very little* about our*

---

[5] Sasha is the nickname for Alexander. Kuzenny is treating Al Mafia's first name as Alexander and then referring to him by his nickname. Sasha is to Alexander as Bill is to William.

> *business, with the exception of the two entities and a proposed third entity (Hosting).*
>
> *Your thoughts?*
>
> *Thanks! Dave*

**Exhibit 20**, LIGHTHOUSE 0338758. On August 9, 2017, you wrote to Sandoval:

> *I totally agree with Dave. We would need to ask Perkins Coie to audit our structure and provide advice and assistance.*
>
> *Martha didn't mention GW One LLC as a company that is also under our umbrella.[6]  Apparently, we would have to set up a call and talk through the entire group and bring Martha up to speed on our M&A plans. We definitely need a legal advice on the upcoming merger with Hashplex as there are few things I'm not clear about.*
>
> *As for the constitutional dox requested by Martha - please find attached some of the documents on Giga Watt, Inc that I've got as of today. As you can see the Articles of Incorp doesn't contain articles per se, but only a title page. In view of the above, I suggest that Perkins Coie also reach out to Washington Secretary of State to check with them whether or not the initial filing was complete. Same goes for our Singapore entities. Someone would probably need to request the full batch of documents via the registered agent. As far as SHA [Shareholder Agreement] is concerned - I believe this is still being drafted and discussed amongst the shareholders.*

**Exhibit 21**, LIGHTHOUSE 0344286. Thereafter, Carlson turned over the cryptocurrency wallets.

On August 11, 2017, GW Sg.'s bank, the Overseas Chinese Banking Corporation ("OCBC") inquired about the deposit of $5.4 million from Perkins as well as a

---

[6] No such company has ever been registered with the Washington Secretary of State.

transfer from the OCBC account to Perkins in the amount of $1.95 million. **Exhibit 22**, LIGHTHOUSE 04354463.[7] The transfer of $1.95 million to Perkins and the transfer of $5.4 million from Perkins occurred in a matter of three days. Transferring large sums in and out of an account is a badge of money laundering and it raised a red flag at OCBC.

On August 15, 2017, Mikhaylyuta asked to withdraw $900,000 from the Escrow:

> *We ve released the second batch of tokens I would like to ask you to release the equivalent amount of USD 900 000 nine hundred thousand in favor of GIGAWATT PTE LTD.*

**Exhibit 23**, WSGR-GW 7235. Perkins complied.

On August 18, 2017, GW Sg. transferred to Carlson 270.3534 bitcoin. **Exhibit 24**, Amended Statement of Financial Affairs ("Amended SOFA"). On August 21, 2017, GW Sg. transferred to Carlson 50 bitcoin. *Id.,* Amended SOFA. The combined value as of the transfer dates was $1.1 million. The modified asset sale agreement provided that Giga Watt would pay Carlson in U.S. dollars as soon as funds were released from escrow. The only aspect of these payments that align with the asset sale agreement, as modified, was that it occurred shortly after releases from the escrow. In all other ways it diverged from the agreement. First, the payments were made in bitcoin, while the modified agreement provided for payments in dollars and the escrow held dollars. Second, GW Sg. made the payment, while the modified agreement provided that Giga Watt would make the payment. However, as we learned from the documents described below, Giga Watt did not control its own finances. Kuzenny, Markin and Khaptakhaev collected Giga Watt's revenues after Carlson turned over the crypto wallet.

On August 22, 2017, Sandoval wrote to you that Giga Watt lacked signed bylaws and that she needed more information regarding "the Singapore entity." **Exhibit 25**, LIGHTHOUSE 0377506.  You responded, "I'll try to find that out later on [re the Singapore entity]. Meanwhile, let's focus on our U.S. entities." *Id.*, LIGHTHOUSE 0377507.

With respect to the grand jury subpoena requesting information from Cryptonomos, you arranged for Carlson to sign the waiver and certification, even though he had

---

[7] The transactions are the $5.4 million deposit from the escrow and GW Sg.'s transfer to Perkins in the amount of $1.95 million.

not collected the information. Instead, you and Anton Orlov collected it. However, you stated to Carlson:

> *Actually Olesya has already retrieved all the information requested by PerkinsCoie. You, as the CEO, just need ot sign the waiver and the certification.*

**Exhibit 27**, LIGHTHOUSE 0402900.[8] Olesya refers to Egozina. She had not appeared on any of the emails relating to the grand jury subpoena. According to the email trail, Orlov gathered the information from Cryptonomos. *Id.* You omitted his involvement.

On September 5, 2017, Olmstead, the sole accountant at Giga Watt, learned that Carlson had relinquished control of the crypto wallet.

> *I have to admit, I was not aware Dave had passed off the crypto wallet until 9/5 at 2pm until he said:*

>> *Mike are you coordinating with Tim on your cash needs? Dave*

> *I initially emailed him our cash needs back on Monday 9/4. Usually, when I requested funds, Dave was able to make the deposit within 24 hours, but I think he may have had a special relationship with the broker.[9]*

**Exhibit 28**, LIGHTHOUSE 0407114.

On September 6, 2017, you shared with Markin, Kuzenny, and Khaptakhaev the suspicion that Carlson, Olmstead, and Heather Mulhall ("Mulhall") were padding the payroll with "dead souls," i.e., fake employees. **Exhibit 29**, LIGHTHOUSE 0404209. A few days later you discussed establishing policies and procedures for Giga Watt. On September 12, 2017, you wrote to Anzhey Barantsevich, who helped you with accounting:

> *You know who I have to deal with – stupid people. It should be a mixture of Holly Bible and a manual for a coffee machine, so that it*

---

[8] Exhibit 26 is intentionally omitted.

[9] This letter breaks up the paragraph for clarity's sake.

*could be both strict and straightforward, no room for creativity, like in the army."*

**Exhibit 30**, LIGHTHOUSE 0414002. You referred to another Giga Watt employee as "Anton khokhol." **Exhibit 31**, LIGHTHOUSE 0574001. As of course you know, "khokhol" is a Russian slur for Ukrainians, like calling a Jew the k-word or an African American the n-word. In another foul-mouthed email, you referred to Giga Watt's CEO as a "peacock" and expressed anger that he had sent an email to Olmstead, the company's accountant. **Exhibit 32**, LIGHTHOUSE 574536.

On the same day that you were describing Giga Watt's employees as "stupid people," September 12, 2017, Sandoval wrote to you pointing out a series of inadequacies in Giga Watt's incorporation:

> o *Bylaws and other Incorporation Steps*
>
> > ♣ *You passed along an action by the incorporator dated 12/16/16.*
> >
> > *In this action, the incorporator:*
> >
> > > • *adopted the bylaws;*
> > >
> > > • *stated that the company would have 1 director; and*
> > >
> > > • *appointed Nikolay Evdokimov as the sole director* •
> >
> > *Of these 3 acts taken by the incorporator, the incorporator only has statutory authority to adopt the bylaws and set the number of directors.*
> >
> > ♣ *Inconsistent with the 12/16/16 incorporator action, in the 1/1/2017 Minutes of the Special Meeting of the Board of Directors, Adam West is identified as (and acted as) the sole director.*
> >
> > *In this meeting, the following officers were appointed:*
> >
> > > • *CEO: David M. Carlson*
> > >
> > > • *President: Nikolay Evdokimov*
> > >
> > > • *CFO: Leonid Markin*
> > >
> > > • *Secretary: Adam West*

> *o Steps to be taken are*
>
> > • *Client: Provide the identity (identities) of the company's board of directors*
> >
> > • *Client: Provide the identity of the company's officer [are those listed above correct?; are there other officers?]*
> >
> > • *Client: Provide capitalization table (or breakdown of share ownership)*
> >
> > • *Client: Provide input on desired number of authorized shares (post stock split)*
> >
> > • *Perkins: Prepare a shareholder action in which the director(s) are appointed (and other incorporator actions)*
> >
> > • *Perkins: Prepare the organizational actions to be approved by a company's board of directors*
> >
> > • *Perkins: Order governing documents from WA Secretary of State's Office and amend and restate articles of incorporation*

**Exhibit 33**, LIGHTHOUSE 413434-5. These problems were not rectified.

On September 21, 2017, you appear to have promoted the falsehood that the $5.4 million escrow withdrawal "was for completed construction." **Exhibit 34**, LIGHTHOUSE 0441306. However, no construction had been completed by this time. You also told AA1 Solutions, a corporate services firm in Singapore referred to herein as the Fixers, that as soon as GW Sg. released the WTT Tokens, Perkins became obligated to release the money. *Id.,* LIGHTHOUSE 0441306. This information appears intended for OCBC through the Fixers. This information was false. Perkins was not obligated to release the money whenever GW Sg. chose to release the WTT tokens. Perkins was obligated to keep the money until Giga Watt had built the requisite power capacity. You included in your correspondence to the Fixers a letter that you stated GW Sg. had sent to Perkins. **Exhibit 35**, Purported Instructions to Release Escrow Funds. However, Perkins has confirmed that it received only an email request to release the $5.4 million. It has no record of the formal letter. **Exhibit 36**, Email from Cromwell to Egan, 7/27/22.

On September 22, 2017, you told the Fixers that the money in the OCBC account and in the escrow account both belonged to GW Sg. Therefore, the $1.95 million transfer from OCBC to Perkins that OCBC flagged should be treated as an "inter-

company transfer." **Exhibit 37**, LIGHTHOUSE 0436192 (relevant section translated at end of document). The White Paper provided that Cryptonomos – not GW Sg. – would collect the WTT Token sales proceeds and send them to Perkins. OCBC was inquiring about the source of these funds. You did not answer that question.

That same day, September 22, 2017, Mikhaylyuta (or Kuzenny using her name) asked Perkins to release $1.2 million from the escrow. **Exhibit 38**, WSGR-GW 007215. As of September 22, 2017, no new construction had been finished. Perkins complied.

That same day, September 22, 2017, Mikhaylyuta, identifying herself as the director and sole shareholder of GW Sg., sent a letter to OCBC regarding the first escrow release, stating:

> *Gigawatt : The company has completed the presale of IT-related services and facilities, which include hosting, maintenance, repair and private blockchain servicing for customers. In order to ensure AML-compliance solutions and establishment of the legal framework for the group companies' activities, Gigawatt Pte. Ltd. has engaged the international law firm Perkins Coie LLP to act as their legal advisor (letter of engagement attached). Perkins Coie LLP collected the funds received from the presales on their account in USD on the behalf of Gigawatt Pte. Ltd. All funds collected through the presale were deposited in escrow. The Balance confirmation of the funds is attached hereto. Please find the Account Balance supporting document – Doc 3b_USD 5,400,000.00 and 3b_125903 Account Balance.*

**Exhibit 39**, LIGHTHOUSE 0444398. This is not the whole truth. Perkins held _all_ the WTT Token sale proceeds and it received funds from Circle, Cryptonomos, GW Sg., and token holders. Further, the White Paper provided that pre-sale WTT Token sales would be held in escrow along with all other WTT Token sales pending the completion of construction. You were copied on this letter and did not correct it.

On October 5, 2017, Zeev Kirsh ("Kirsh"), an attorney for Giga Watt, GW Sg. and Cryptonomos wrote an email with you copied:

> *Dear Shareholders, I spoke with Ed today. . . . . The board is comprised as below:*
>
> *1 Director shall be appointed by Founder 1 Faraversum Corporation*

*1 Directors shall be appointed by Founder 2; Silaren Limited*

*1 Director shall be appointed by Founder 3; Dave Carlson*

**Exhibit 40**, LIGHTHOUSE 0469927. We have not located documents formalizing these appointments. On October 6, 2017, you wrote to Perkins:

*Hi Stephanie,*

*Sorry for the delay. Our colleagues has been traveling a lot lately, so it was hard to get all together.*

*Regarding GW Management, LLC, Giga Pod 1-100, LLC, and Mine Building, LLC - actually*

*I've never heard these entities were duly established. Let me ask you where you heard of them .*

*Anyways, like I mentioned earlier in our previous correspondences, let's focus first on Giga Watt, Inc. as this is our main operating vehicle.*

*Regarding the cap table - the ball is still on our shareholders' court. So let me please revert to it a bit later.*

*Officers of Giga Watt, Inc:*

*Dave Carlson - CEO/President*

*Timur Usmanov - CFO and Secretary.*

*As far as the composition of Board of Directors is concerned:*

*1. Andrey Kuzenny*

*2. Dave Carlson*

*3. Eduard Khaptakhaev*

*4. Leonid Markin.*

Exhibit B, Page 14 of 30

> *Please proceed with the issuance of the company's constitutional documents. Our attorney Zeev [Kirsh] will follow up on any further questions that might arise on your side.*

**Exhibit 41**, LIGHTHOUSE 0472220. No documents were finalized. On October 16, 2017, Kirsh wrote to the whole group:

> *Also, It is not my business , and you do not need to tell me but just to remind you all that Dave* asked *and you may want to respond to him personally regarding share ownership before everyone signs. "I assume Faraversum is Nick and Silaren is Leo, Ed & Andrey?"*

**Exhibit 42**, LIGHTHOUSE 488643 (quotations in the original). In other words, the CEO of Giga Watt did not even know who the shareholders were.

On November 2, 2017, you wrote to Kristine Foreman, Giga Watt's HR director:

> *Dear Kristine,*
>
> *As you probably know, Andrey Kuzenny (one of our major shareholders) has to be legally employed with Giga Watt, Inc - our company that signed the petition when he was applying for a working visa.[10] According to this petition, Andrey is supposed to be employed as the COO. Although Anton Orlov was recently introduced as the COO of GW, **we understand that Adrey's appointment is a mere formality, rather than implication of actual duties**. It should be the earliest possible date.*
>
> *@Anton, please remind what Andrey's gross salary should be. I guess you also have his photo ID, or whatever document might be required*

---

[10] *See* **Exhibit 43**, LIGHTHOUSE 0394321 (August 2017 email from Orlov to Carlson asking for help getting Kuzenny a visa:

> *I have a request for help from Andrey Kuzenny on his immigration matters. We need few forms to be signed by you ASAP and send over to his lawyers. This is simple support form that is saying that company is supporting him as a specialist with extraordinary abilities and considered as a petitioner for him. There is no obligations for the company in any matter apart of being a supporter.*

> *to get Andrey enrolled. Kindly let me know when Andrey is put on payroll at GW.*
>
> *Thank you[.]*

**Exhibit 44**, LIGHTHOUSE 0508131 (emphasis added).

On November 7, 2017, at GW Sg's request, Perkins released $3.3 million from the escrow. OCBC immediately asked for an explanation. **Exhibit 45**, LIGHTHOUSE 0515050-0515051. On November 8, 2017, Mikhaylyuta wrote to OCBC repeating that Perkins had advised on "the legal framework for the group companies' activities" and that it had collected the presale proceeds for the GW ICO. **Exhibit 46**, LIGHTHOUSE 0515050. (attachments not included)

On November 16, 2017, the Fixers wrote to you:

> *Bank Closure*
>
> *I would like to inform you that we were able to extend OCBC bank closure for another 2 weeks till 4th of December 2017.*
>
> *The only condition [is] that from 20th November onwards only outgoing transaction will be allowed. The bank [OCBC] won't accept the Incoming Funds. We are expecting for the approval for the bank accounting opening in Europe. We will update as soon as we get information.*

**Exhibit 47**, LIGHTHOUSE 0526200.

On November 21, 2017, Olmstead wrote to Mulhall:

> **Hosting Revenue:** *Not sure I understand why we are not booking some sort of monthly revenue. I'm afraid the DOR will ask the same question at some point  - although not so nicely. Does GW [have its own miners that generate revenue?"*

**Exhibit 48**, LIGHTHOUSE 0530992. Your accounting department[11] did not even know whether Giga Watt generated its own revenue. Indeed, even you, "the perm

---

[11] You lack accounting training having studied architecture and taken economics night classes in Kazakhstan.

CFO," lacked access to any records that would confirm revenues from operations as shown later in this letter. The 2017 Tax return for Giga Watt reported revenue, however suspect that number is. No one at Giga Watt had any transparency or access to those numbers. The CFO had an obligation to rectify that situation. However, it appears the CFO created it.

On November 22, 2017, you wrote to the Fixers:

> *Ladies, as discussed over the phone last time, please find below a brief description of what ICO looked like and how different entities interact with one another.*
>
> *Would you also please update me on where we stand with account opening. Any word from your European partners?*
>
> *In June 2017 Gigawatt PTE. Ltd, partnering with Giga Watt, Inc (USA), announced a launch of ICO via a 3rd party platform Cryptonomos PTE. Ltd.*
>
> *Upon completion of the ICO, August 7, 2017, Gigawatt PTE. LTD raised $22.3M and placed the funds in escrow with a reputable law firm Perkins Coie. Immediately following the completion, Gigawatt PTE. Ltd issued and distributed the first batch of WTT tokens (5,400,000). According to the White Paper, each WTT token represents the right to use Giga Watt, Inc's processing center capacity, rent-free for 50 years, to accommodate 1-Watt worth of mining equipment power consumption.*
>
> *All subsequent releases WTT tokens are made in batches, aligned with the completion of power facility construction.*
>
> *Thus, the funds collected during the ICO and held in escrow in the name of Gigawatt PTE LTD, are released by Perkins Coie in proportion to each power facility (Pod) built and placed in service.*
>
> *Here is an example for illustration purposes:*
>
> *Once the construction of 3 (three) Pods with power capacity 1.5MW each is completed, Perkins Coie releases $4.5M (3 x 1,500,000).*

> *All construction works are made by Giga Watt, Inc (USA) according
> to the development agreement concluded with Gigawatt PTD. Ltd.*

**Exhibit 49**, LIGHTHOUSE 0531271. As we know, funds were not released from the escrow in step with construction. Further, although you drafted, or had someone draft, a development agreement, none was ever signed.

On December 4, 2017, GW Sg. lost its OCBC banking privileges. **Exhibit 50**, LIGHTHOUSE 0526200.

On December 5, 2017, you continued struggling to open a new bank account, writing to the Fixers:

> *Would you please advise if you've got any update on the Macedonian
> bank account? Most probably we will have to release some funds from
> escrow later this week. So we'd definitely need a USD account to
> land the money.*

**Exhibit 51**, LIGHTHOUSE 0546368. On December 5, 2017, Carlson sent an email to WTT Token holders stating that Batch 4 would be delayed and that the WTT Token recipients of the email had been identified as Batch 4 token holders. He offered them refunds. In fact, though the escrow was already severely depleted, a fact that you knew.

On December 15, 2017, Olmstead wrote to you that the due date to pay Talos Construction's invoice in the amount of $536,458.85 was due that day. **Exhibit 52**, LIGHTHOUSE 0561281. On December 18, 2017, you wrote to Kuzenny:

> *I'm trying to have Perkins release $2M from the escrow. So, if
> everything goes smoothly we'll get $2 MM on Tuesday.*

*Id.,* LIGHTHOUSE 0561281. On December 18, 2017, you drafted what would become the text of Mikhaylyuta's email to Perkins to release $2 million from the escrow to Giga Watt. **Exhibit 54**, LIGHTHOUSE 0561452.[12] Perkins released the funds on December 19, 2017.

---

[12] Exhibit 53 is intentionally omitted.

On December 22, 2017, you ghost wrote another Mikhaylyuta letter to Perkins, this time requesting $4.5 million. **Exhibit 55**, LIGHTHOUSE 0567262. The money was released on December 26, 2017.

During this November-December 2017 period when you were looking for a place "to land the money," you arranged for both yourself and Kuzenny to start receiving salaries from Giga Watt at $15,000 per week. Your official start date was November 12, 2017. **Exhibit 56**, LIGHTHOUSE 0638320. Kuzenny's start date was December 11, 2017. *Id.*

Before GW Sg. lost its banking privileges, you received your CFO pay in cash and by wire transfer from Cryptonomos to the bank in Latvia. In response to the Trustee's request for your 2017 tax return and bank records, you responded:

> *I did receive compensation from Andrew Kuzenny and Cryptonomos, but those payments would not be reflected in my bank records. As I said in the deposition, I received a salary from GigaWatt, Inc [starting in November 2017] and occasionally received some cash from Kuzenny. All my bank records would show are direct deposits from GigaWatt, Inc (Wenatchee), occasional cash deposits (with no reference to Cryptonomos or Kuzenny) and other unrelated transactions.*
>
> *If it's evidence of who paid my salary you're looking for, I'm happy to turn over my W-2 from GigaWatt, Inc (Wenatchee). Andrey Kuzenny and Cryptonomos did not send me an information return at the end of the year. My bank records and tax returns (aside from the GigaWatt, In. W-2) don't contain the information you are looking for. And I'm hesitant to disclose that information for privacy and confidentiality reasons; I do not want my personal records to end up in the public realm.*

**Exhibit 58**, Email from Usmanov to Egan, dated March 14, 2022.[13]

On December 26, 2017, you reminded Olmstead that "our shareholder expects to get paid," referring to Kuzenny despite having previously told Giga Watt's HR Director that Kuzenny's appointment as a Giga Watt officer was "a mere formality rather than implication of actual duties." **Exhibit 59**, LIGHTHOUSE 0508131; **Exhibit 60**, LIGHTHOUSE 0595975. Furthermore, Giga Watt was not paying its debts on

---

[13] Exhibit 57 is intentionally omitted.

time and it was otherwise insolvent. Therefore, payments to him were fraudulent transfers which you instigated.

On December 27, 2017, Mulhall of Giga Watt's accounting department wrote to you:

> ***You dismissed Dave[14] even having to sign paperwork, at all****. You could've given a temporary "Secretary" position to Mike, to get an account open, **keeping our financials, our banking, and our security within the accounting department.***

**Exhibit 61**, LIGHTHOUSE 0575005 (emphasis added).

On February 7, 2018, Mikhaylyuta (ostensibly) sent an email to Perkins asking Perkins to release $1,148,057.38. **Exhibit 62**, LIGHTHOUSE 0639819.

On February 8, 2017, you wrote to Carlson, Kuzenny, Markin, and Khaptakhaev:

> *> I'd like to draw your attention to the crypto balance (other property), which in USD term amounts to $716K as of December 31, 2017. As you surely know, the only source of receivable crypto is hosting revenue, i.e. the amounts withheld from the customers' rewords.* ***These amounts, reflected in the company's books, are based on the excel spreadsheets I receive from Olesya on a monthly basis, and my concern is that I can't control or otherwise verify the revenue stream in crypto other than just post the numbers in our books as is.*** *We should keep in mind that sooner or later we will have to get all the declared crypto in the company's wallet.*

> *> Another reason why I care about this is that our hosting revenue doesn't correlate with the money we pay for electricity. Of course, it goes without saying that MLDC1 costs us a lot, but we also have to make sure that the amounts shown in Olesya's spreadsheets are true and correct.*

**Exhibit 63**, LIGHTHOUSE 0641375 (emphasis added). Thus, Markin and Kuzenny, operating through either GW Sg. or Cryptonomos, took all Giga Watt's revenues. There was no agreement regarding the diversion of these revenues.

---

[14] Mulhall is referring to Dave Carlson, Giga Watt's CEO.

In this same email, you disclose that there is $5 million left in the escrow. **Exhibit 64**, LIGHTHOUSE 0641375.

On February 9, 2022, Perkins released $1,148,058.00 from the escrow.

On February 20, 2018, you ghost wrote the final request for the last escrow release. **Exhibit 65**, LIGHTHOUSE 0662794. The last amount was released on February 22, 2018 in the amount of $3,217,700.00. Thus, you were instrumental in completely depleting the escrow before construction was completed.

In April 2018, Carlson wrote to Doru Gavril at Wilson Sonsini:

> *To be honest the shareholder agreement needs to be updated and executed. There's really no properly executed SHA at this time.*

**Exhibit 66**, LIGHTHOUSE 0750606. Nonetheless, you continued to answer to what you called the "controlling shareholders." Further, these controlling shareholders, who controlled you, refused to share with you, the CFO, how much revenue Giga Watt was generating.

On April 17, 2018, you wrote to Anton Orlov, Giga Watt's COO:

> *Hi Anton,*
>
> *Unfortunately, I've got no tools to check if we have undistributed crypto or any excess thereof.*
> *Neither have I access to GW wallet.*
> *Do you think Olesya might be of any help? If she can say what crypto and how much we owe this client, we certainly can transfer the amount due. Needless to say that this transaction should be handled by Singapore, i.e. the Washington entity must not be envolved.*

**Exhibit 67**, LIGHTHOUSE 07552189.

In April 2018, you convinced Carlson to rip up the modified Enterprise Focus – Giga Watt asset sale agreement and sign a new agreement which provided that the purchase price was only $1 million. He would backdate the agreement to January 2017. In effect, the $2 million paid in crypto that GW Sg. had already paid to Dave Carlson would vanish. **Exhibit 68**, LIGHTHOUSE 0859686. Kuzenny exposed the tax ploy by disclosing the bitcoin payments in the Amended SOFA.

In August 2018, the SEC asked why the last four escrow payments were made to Giga Watt and not to GW Sg. Kuzenny stated that it was for administrative convenience in light of urgent invoices that needed to be paid. This was misleading because it omitted the fact that GW Sg. had lost its banking privileges after the first premature release from the escrow and had used Giga Watt's account "to land the money."

That same month, August 2018, you told Carlson that Kuzenny was embezzling funds. Carlson confronted Kuzenny, who wrote, "Don't break the balls." Carlson's and your last pay checks from Giga Watt were September 15, 2018.

## CONCLUSION

We believe that the foregoing shows that you breached your fiduciary duty to Giga Watt, including by: (1) by executing and covering up the improper escrow releases; (2) executing the takeover of the crypto wallets and diverting Giga Watt's revenue flow; and (3) arranging for Giga Watt to pay $15,000 a week to Kuzenny, a shareholder, when the company was insolvent, and Kuzenny had no duties. Your conduct raises other issues, including, without limitation, misleading OCBC about the escrow releases, failing to report to the U.S. Internal Revenue Service the cash and offshore payments that you received as income, and misleading the U.S. Department of State by falsely stating that Kuzenny worked for the company as its COO, when in fact, he did not. You also raised tension between the "controlling shareholders" and the CEO with unsubstantiated allegations that he was hiding something and padding the payroll.

The Trustee wishes to question you under oath regarding these matters. We strongly urge you to retain an attorney if you have not already done so. Mr. Kuzenny, represented by counsel, copied here, has already invoked his privilege against self-incrimination afforded by the Fifth Amendment to the U.S. Constitution.

Since you are now on notice of potential litigation, you are required to take all necessary steps to preserve, and not destroy, conceal, or alter, any and all communications and documents relevant to this matter, including by way of example, and without limitation, emails, texts and self-destructing messages, social media posts, voicemails, records, files, and other data, wherever located and regardless of the format or media. Purposeful destruction of such evidence could result in penalties, including legal sanctions.

Please contact me at your earliest convenience to arrange your examination.

Thank you for your attention to this matter.

Very truly yours,

*Pamela M. Egan*

Pamela M. Egan

cc by email:

Mark D. Waldron, Esq., *Chapter 7 Trustee*
Ralph E. Cromwell, Esq., *Counsel for Perkins Coie LLP*
John Munding, Esq., *Counsel for Perkins Coie LLP*
Timothy Blood, Esq., *Counsel for Jun Dam and proposed WTT Token Class*
Dennis McGlothlin, Esq., *Counsel for Jun Dam and proposed WTT Token Class*
Jason Piskel, Esq., *Counsel for David M. Carlson*
Elon Berk, Esq., *Counsel for Andrey Kuzenny*

**INDEX TO LETTER TO TIMUR USMANOV FROM PAMELA EGAN
DATED AUGUST 4, 2017**

| Exhibit Reference | Bates Stamp No. | Description |
|---|---|---|
| Exhibit 1 | LIGHTHOUSE 0685147 | Bill of Sale and Assignment and Assumption Agreement |
| Exhibit 2 | LIGHTHOUSE 0526738-39, 0657634-35, and 0657639-40 | Modification of Bill of Sale and Assignment and Assumption Agreement |
| Exhibit 3 | LIGHTHOUSE 0783513 | 5.3.18 Email from Drew to TY |
| Exhibit 4 | GWSEC00022159 | 7.24.17 Email from TU to DC |
| Exhibit 5 | LIGHTHOUSE 0300248 | 7.25.17 Email from TY to LM, *et al.* |
| Exhibit 6 | LIGHTHOUSE 0960100 | 7.26.17, Mtg DC & MS |
| Exhibit 7 | LIGHTHOUSE 0307861 | 7.26.17 Email MS to MO |
| Exhibit 8 | LIGHTHOUSE 0308011 | 7.27.17 Email DC to TU |
| Exhibit 9 | LIGHTHOUSE 0303891 | 7.26.17 Email TU to LM |
| Exhibit 10 | LIGHTHOUSE 303984 | 7.27.17 Email TU to LM |

EXHIBIT INDEX – Page 1

*In re Giga Watt, Inc.*, Case No. 18-03197-FPC
U.S. Bankruptcy Court, E.D. of Wash.

# INDEX TO LETTER TO TIMUR USMANOV FROM PAMELA EGAN
## DATED AUGUST 4, 2017

| Exhibit Reference | Bates Stamp No. | Description |
| --- | --- | --- |
| Exhibit 11 | LIGHTHOUSE 0317427 | 7.28.17 Email LM to DC |
| Exhibit 12 | LIGHTHOUSE 0318476 | 7.30.17 Email DC to LM |
| Exhibit 13 | LIGHTHOUSE 0319832 | 7.31.17 Email TU to AK |
| Exhibit 14 | LIGHTHOUSE 0337060 | 8.7.17 Email TU to MS |
| Exhibit 15 | LIGHTHOUSE 0337833 | 8.7.17 Email MS to MO |
| Exhibit 16 | WSGR-GW 7233 | 8.7.17 Email Escrow Release Request |
| Exhibit 17 | TU_11 | 8.9.17 Email TU to Al Mafia |
| Exhibit 18 | GWSEC 00022203 | 8.9.17 Email Al Mafia to Perkins |
| Exhibit 19 | LIGHTHOUSE 0343738 | 8.9.17 Email AK to Al Mafia |
| Exhibit 20 | LIGHTHOUSE 0338758 | 8.8.17 Email DC to MS Email |

EXHIBIT INDEX – Page 2 *In re Giga Watt, Inc.*, Case No. 18-03197-FPC
U.S. Bankruptcy Court, E.D. of Wash.

Exhibit B, Page 25 of 30
20-80031-FPC Doc 121-2 Filed 10/24/22 Entered 10/24/22 22:01:03 Pg 26 of 31

# INDEX TO LETTER TO TIMUR USMANOV FROM PAMELA EGAN
## DATED AUGUST 4, 2017

| Exhibit Reference | Bates Stamp No. | Description |
|---|---|---|
| Exhibit 21 | LIGHTHOUSE 0344286 | 8.9.17 Email TU to DC |
| Exhibit 22 | LIGHTHOUSE 0434463 | 9.21.17 Email Andrey to TU |
| Exhibit 23 | WSGR-GW 7235 | Escrow Release Requests |
| Exhibit 24 | Amended SOFA | Amended SOFA |
| Exhibit 25 | LIGHTHOUSE 0377506 | 8.23.17 Email TU to MS |
| Exhibit 26 | INTENTIONALLY OMITTED | n/a |
| Exhibit 27 | LIGHTHOUSE 0402900 | 9.5.17 Email TU to ZK |
| Exhibit 28 | LIGHTHOUSE 0407114 | 9.7.17 Email MO to TU |
| Exhibit 29 | LIGHTHOUSE 0404209 | 9.6.17 Email TU to LM |
| Exhibit 30 | LIGHTHOUSE 0414002 | 9.12.17 Email TU to Anzhey |
| Exhibit 31 | LIGHTHOUSE 0574001 | 12.29.17 Email TU to AK |

EXHIBIT INDEX – Page 3    *In re Giga Watt, Inc.*, Case No. 18-03197-FPC
U.S. Bankruptcy Court, E.D. of Wash.

Exhibit B, Page 26 of 30

20-80031-FPC   Doc 121-2   Filed 10/24/22   Entered 10/24/22 22:01:03   Pg 27 of 31

## INDEX TO LETTER TO TIMUR USMANOV FROM PAMELA EGAN
## DATED AUGUST 4, 2017

| Exhibit Reference | Bates Stamp No. | Description |
|---|---|---|
| Exhibit 32 | LIGHTHOUSE 0574536 | 12.29.17 Email TU to AO |
| Exhibit 33 | LIGHTHOUSE 0413434-5 | 9.12.17 Email ZK to TU |
| Exhibit 34 | LIGHTHOUSE 0441306 | 9.22.17 Email TU to Andrey |
| Exhibit 35 | Purported Instructions to Release Escrow Funds | 8.8.17 Instruction to Release Escrow Funds |
| Exhibit 36 | Not Bates Stamped | Email from Cromwell to Egan, 7/27/22 |
| Exhibit 37 | LIGHTHOUSE 0436192 | 9.22.17 Email TU to Andrey |
| Exhibit 38 | WSGR-GW 007215 | 9.22.17 Email MM to LN |
| Exhibit 39 | LIGHTHOUSE 0444398 | 9.25.17 Email MM to KL |
| Exhibit 40 | LIGHTHOUSE 0469927 | 10.5.17 Email ZK to AK |

EXHIBIT INDEX – Page 4     *In re Giga Watt, Inc.*, Case No. 18-03197-FPC
U.S. Bankruptcy Court, E.D. of Wash.

Exhibit B, Page 27 of 30
20-80031-FPC     Doc 121-2     Filed 10/24/22     Entered 10/24/22 22:01:03     Pg 28 of 31

**INDEX TO LETTER TO TIMUR USMANOV FROM PAMELA EGAN**
**DATED AUGUST 4, 2017**

| Exhibit Reference | Bates Stamp No. | Description |
|---|---|---|
| Exhibit 41 | LIGHTHOUSE 0472220 | 10.5.17 Email TU to SS |
| Exhibit 42 | LIGHTHOUSE 0488643 | 10.16.17 Email ZK to AK |
| Exhibit 43 | LIGHTHOUSE 0394321 | 8.3.17 Email AO to DC |
| Exhibit 44 | LIGHTHOUSE 050813 | 11.2.17 Email TU to KF |
| Exhibit 45 | LIGHTHOUSE 0515050-0515051 | 11.8.17 Email MM to AZ |
| Exhibit 46 | LIGHTHOUSE 0515050 | 11.8.17 Email MM to AZ |
| Exhibit 47 | LIGHTHOUSE 0526200 | 11.17.17 Email TU to Andrey |
| Exhibit 48 | LIGHTHOUSE 0530992 | 11.21.17 Email MO to HM |
| Exhibit 49 | LIGHTHOUSE 0531271 | 11.22.17 Email TU to AJ |
| Exhibit 50 | LIGHTHOUSE 0526200 | 12.5.17 Email TU to AJ |
| Exhibit 51 | LIGHTHOUSE 0546368 | 12.5.17 Email TU to EM |

EXHIBIT INDEX – Page 5          *In re Giga Watt, Inc.*, Case No. 18-03197-FPC
U.S. Bankruptcy Court, E.D. of Wash.

# INDEX TO LETTER TO TIMUR USMANOV FROM PAMELA EGAN
## DATED AUGUST 4, 2017

| Exhibit Reference | Bates Stamp No. | Description |
|---|---|---|
| Exhibit 52 | LIGHTHOUSE 0561281 | 12.18.17 Email TU to AO |
| Exhibit 53 | INTENTIONALLY OMITTED | n/a |
| Exhibit 54 | LIGHTHOUSE 0561452 | 12.18.17 Email TU to AK |
| Exhibit 55 | LIGHTHOUSE 0567262 | 12.22.17 Email TU to AK |
| Exhibit 56 | LIGHTHOUSE 0638320 | 2.6.18 Email MO to CF |
| Exhibit 57 | INTENTIONALLY OMITTED | n/a |
| Exhibit 58 | Email from Usmanov to Egan, dated March 14, 2022 | 3.14.22 Email TU to PE |
| Exhibit 59 | LIGHTHOUSE 0508131 | 11.2.17 Email TU to KF |
| Exhibit 60 | LIGHTHOUSE 0595975 | 12.17.17 Email TU to Anzhey |

EXHIBIT INDEX – Page 6    *In re Giga Watt, Inc.*, Case No. 18-03197-FPC
U.S. Bankruptcy Court, E.D. of Wash.

Exhibit B, Page 29 of 30

20-80031-FPC    Doc 121-2    Filed 10/24/22    Entered 10/24/22 22:01:03    Pg 30 of 31

**INDEX TO LETTER TO TIMUR USMANOV FROM PAMELA EGAN**
**DATED AUGUST 4, 2017**

| Exhibit Reference | Bates Stamp No. | Description |
|---|---|---|
| Exhibit 61 | LIGHTHOUSE 0575005 | 12.19.17 Email HM to TU |
| Exhibit 62 | LIGHTHOUSE 0639819 | 2.7.18 Email TU to AK |
| Exhibit 63 | LIGHTHOUSE 0641375 | 2.8.18 Email DC to EK |
| Exhibit 64 | LIGHTHOUSE 0641375 | 2.8.18 Email DC to EK |
| Exhibit 65 | LIGHTHOUSE 0662794 | 2.20.18 Email TU to AK |
| Exhibit 66 | LIGHTHOUSE 0750606 | 4.13.18 Email DC to GD |
| Exhibit 67 | LIGHTHOUSE 0755218 | 4.17.18 Email TU to AO |
| Exhibit 68 | LIGHTHOUSE 0859686 | Addendum to Bill of Sale |

EXHIBIT INDEX – Page 7        *In re Giga Watt, Inc.*, Case No. 18-03197-FPC
U.S. Bankruptcy Court, E.D. of Wash.

Exhibit B, Page 30  of 30

20-80031-FPC    Doc 121-2    Filed 10/24/22    Entered 10/24/22 22:01:03    Pg 31 of 31