EXHIBIT C



**Potomac Law Group, PLLC**
1300 Pennsylvania Avenue N.W., Suite 700  |  Washington, D.C. 20004
T 415.297.0132  |  F 202.318.7707  |  www.potomaclaw.com

**BY EMAIL: rcromwell@byrneskeller.com**

August 8, 2022

Mr. Ralph E. Cromwell
1000 Second Ave., 38th Floor
Seattle, Washington 98104

Re:    *In re Giga Watt, Inc.*, Case No. 18-03197-FPC ("<u>Bankruptcy Case</u>") (" and
       *Waldron v. Perkins*, Adv. Proc. No. 20-80031-FPC ("<u>Adversary Proceeding</u>"),
       pending in the U.S. Bankruptcy Court, Eastern District of Washington
       (Spokane Division) ("<u>Bankruptcy Court</u>")

Dear Ralph:

As you know the Potomac Law Group PLLC ("<u>PLG</u>") represents Mark D. Waldron in
his official capacity as the Chapter 7 Trustee ("<u>Trustee</u>") in the above-referenced
Bankruptcy Case and Adversary Proceeding. I am a partner in PLG.

The Trustee intends to move the Bankruptcy Court to amend the complaint filed in
the Adversary Proceeding based on the matters described in this letter. We would
like to meet and confer with you before filing the motion to amend. In particular,
the Trustee intends to amend the complaint to allege that Perkins Coie LLP
("<u>Perkins</u>"), whom you represent, and Giga Watt, Inc. ("<u>Giga Watt</u>") had an
attorney-client relationship when Perkins prematurely released funds from the
Giga Watt Initial Coin Offering ("<u>GW ICO</u>") escrow.

This memo assumes familiarity with the facts of this case as reported by the
Trustee in previous filings. Furthermore, this letter is intended to be read with my
letter dated, August 4, 2022 ("<u>Usmanov Letter</u>") to Timur Usmanov ("<u>Usmanov</u>").
This letter incorporates by reference as if set forth fully herein all the information
set forth in the Usmanov Letter. It repeats information from the Usmanov Letter as
necessary to clearly relate the facts.

Exhibit C, Page 1 of 26

The Trustee's investigation is ongoing and the foregoing may change.

We are copying counsel for Jun Dam because he is participating in the upcoming mediation before the Honorable Benjamin Hursh of the U.S. Bankruptcy Court, District of Montana (Butte Division). We are also copying counsel for David Carlson ("Carlson") because his deposition is set for August 23 and August 24, 2022 and we want to offer his counsel the opportunity to review this information before that deposition. Finally, we are copying Andrey Kuzenny's ("Kuzenny") attorney, because Kuzenny is a party to the Adversary Proceeding. Kuzenny has invoked his privilege against self-incrimination afforded to him by the U.S. Constitution. He is not a U.S. citizen and has fled.

## OUTLINE OF FACTS

On March 9, 2017, Carlson wrote to Rob Taves ("Taves") and Jeffrey Field ("Field"), co-owners of MegaBigPower, which Carlson, Taves, and Field had sold to Giga Watt in January 2017:

> Guys, we've had some delays getting the token launched, mainly **due to the legal process** required to allow us to sell our tokens to non accredited investors in the US and Europe. In order to avoid the Great Eye of SECron,[1] we have to productize the offer, and this has taken time. Buyer proposes to delay payments[2]

**Exhibit 1**, LIGHTHOUSE 0098273.[3] (Emphasis added.) On March 13, 2017, Carlson followed up with Taves and Field:

> We've *signed a deal with the PUD for 30MW, and another deal with the Port for 8 acres to build the pod farm. Investor feedback on the token is very positive,* **but continue to wait for Perkins Coie to finish their opinion letter** *so that we can launch the PR campaign*

*Id.*, LIGHTHOUSE 0098273 (emphasis added). Giga Watt signed the referenced power contract with the Douglas County Public Utility District No. 1. Therefore, when Carlson said "we . . . continue to wait for Perkins. . . .," he was referring to Giga

---

[1] Carlson is equating the SEC to the Great Eye of Sauron, the embodiment of evil in The Lord of the Rings.

[2] This letter does not correct any typos in the quoted emails. I copied and pasted them verbatim. In some instances, I insert a bracketed clarification.

[3] An exhibit book with index is enclosed with this letter.

Watt waiting for Perkins. During a hearing in the Bankruptcy Case, Carlson testified that Perkins had advised "us" to issue the WTT Tokens from a Singapore corporation to avoid the U.S. securities laws. However, unlike the Singapore corporation, GigaWatt Pte. Ltd. ("GW Sg."), Giga Watt, the American entity, cannot avoid those laws and faces significant exposure from a pending WTT Token class action.[4] Giga Watt has already paid $953,319.55 to settle one securities action brought by Stormsmedia, LLC.

The GW ICO was launched on or about May 1, 2017 with a sophisticated and expensive marketing campaign. Wilson Sonsini,[5] which represented Giga Watt in the ensuing three lawsuits and U.S. Securities and Exchange Commission ("SEC")[6] investigation of the GW ICO, produced thousands of pages of marketing materials to the SEC, including a picture of a billboard on a highway leading to LAX from Los Angeles where Usmanov, Nikolay Evdokimov ("Evdokimov"), Kuzenny and Leonid Markin ("Markin") were based:



---

[4] *McVicker and Moss v. Giga Watt, Balestra v. Giga Watt*, Case No. 2:18-cv-00103-SMF (Consolidated with No. 2:18-cv-00100), U.S. District Court, Eastern District of Washington ("McVicker Action").

[5] In the Bankruptcy Case, Wilson Sonsini has filed a claim in the amount of $477,204.45. Claim No. 35.

[6] After the Bankruptcy Case was filed, the SEC closed the investigation, stating that the notice "must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation." (Quoting Release No. 5310.) **Exhibit 1-A**, DCX_ 001110.

During the campaign, Carlson was carefully scripted by the Russians. Daria Generalova wrote answers to questions sent to him by reporters. The GW ICO raised approximately $50 million in WTT Token and miner sales. It was an offer that was too good to be true. Non-insider claims filed in the Bankruptcy Case are approximately $75 million, comprised of approximately $3.5 million in general unsecured claims and the remainder asserted by GW ICO investors.

Perkins advised the Russians operating behind Singapore corporations on how to avoid liability under the U.S. securities laws. It also held the WTT Token sales proceeds in trust pending construction by Giga Watt of the advertised cryptocurrency facilities. Lowell Ness appeared to advise the Russians through

On June 14, 2017, during the GW ICO, Katrina Grant ("Grant"),[7] a Russian national with a California bar license, who never went to law school, introduced Carlson to Martha Sandoval ("Sandoval"), a corporate lawyer in Perkins' Seattle office, stating, "could you please communicate with Dave and Sinden [Dave's administrative assistant] on how to separate [the][8] two companies and assist them through the process." **Exhibit 2**, LIGHTHOUSE 0157642. By "two companies," Grant is referring to Giga Watt and GigaWatt Pte. Ltd. ("GW Sg."). Over the next month or so, Sandoval and Carlson traded emails, through their assistants, to make an appointment.

On July 25, 2017, the SEC issued its *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO* in which it indicated its belief that cryptocurrency tokens were securities subject to the U.S. securities laws.

That same day, July 25, 2017, Michael Olmstead ("Olmstead"), Giga Watt's in-house accountant, wrote to Sandoval in anticipation of the meeting that a topic for the Sandoval meeting would be "***Giga Watt, Inc. – Hosting revenue; what is the best method of reporting (internally** and for tax purposes)? . . .*" **TU Exhibit 7**,[9] LIGHTHOUSE 0307861. (Emphasis added). As set forth in the Usmanov Letter, Olmstead later in the year wondered why Giga Watt was not booking any revenue.

---

[7] Grant goes by a variety of last names, including, Arden and Kovalyeva. She is based in Puerto Rico.

[8] Russian lacks articles. Therefore, Russians often drop and otherwise misuse "the" and "a" when speaking English.

[9] "TU Exhibit" refers to an exhibit to the Usmanov Letter.

On July 26, 2017, Carlson wrote to Usmanov with a copy to Markin and Kuzenny stating, "FYI the agenda for the meeting tomorrow in Seattle [with Sandoval] is only about a reorg structure with respect to Giga US & Giga.SG, and how our employees will be divided up between the entities." **TU Exhibit 8**, LIGHTHOUSE 0308011.

On July 27, 2017, Carlson met with Sandoval in the Seattle office of Perkins. **TU Exhibit 6**, LIGHTHOUSE 0960100. As set forth in the Usmanov Letter, Carlson's meeting with Sandoval – and, in particular, his failure to invite Usmanov to that meeting, irked Usmanov and the Russian "controlling shareholders," as described in the Usmanov Letter. Acquiescing to pressure, on August 4, 2017, Carlson's administrative assistant, Sinden Harem, introduced Usmanov to Sandoval by email. **TU Exhibit 14**, LIGHTHOUSE 0337060.

On August 7, 2017, there were many emails between Giga Watt and Perkins. On August 7, 2017, Marina Mikhaylyuta ("Mikhaylyuta"), GW Sg.'s nominal director, asked Perkins to release $5.4 million from the escrow.

> *Now that we've launched the first batch of tokens I would like to ask you to release the equivalent amount of USD 5 400 000*

**TU Exhibit 16**, WSGR-GW 007232. That same day, August 7, 2017, Sandoval wrote to Olmstead:

> *Mike, I'd requested, but did not receive, the corporate documents for Giga Watt, Inc. from Katrina. Perkins did not work on that entity's incorporation, and [I] don't have any familiarity with that entity at this point. I have looked through our data management system and did not find any records of our involvement with respect to a power o*

**TU Exhibit 15,** LIGHTHOUSE 0337833. That same day, she also wrote to Carlson and Sinden Harem:

> *It was a pleasure meeting the two of you the week before last. I followed up with my colleagues who have worked on Giga Watt / Cryptonomos matters prior to my involvement and can confirm that we were not involved in the incorporation of Giga Watt, Inc. or [GigaWatt] Pte. Ltd nor in organizational structure conversations/decisions. As I mentioned in our meeting, our*

Page 6 of 23

*involvement began with questions regarding separation of liability
between the entities.*

**Exhibit 3**, LIGHTHOUSE 0337879. Sandoval is referring to Perkins' non-involvement in incorporating Giga Watt and GW Sg. It went without saying that Perkins' involvement with the GW ICO started at least in March 2017 when Carlson wrote to his MegaBigPower shareholders that he and the Russian controlling shareholders of Giga Watt were waiting on Perkins to launch the GW ICO. Perkins signed a retainer letter with Cryptonomos Pte. Ltd. ("Cryptonomos") in early March. **TU Exhibit 16**, WSGR-GW 7233. Cryptonomos is a Singapore entity through which Giga Watt's Russian controlling shareholders also operated. Evdokimov signed the retainer letter on behalf of Cryptonomos. Perkins' client contact ran away when the SEC sued him for another unregistered securities offering involving ICOBox, Inc. resulting in a multi-million-dollar judgment against him.[10] Similarly, Kuzenny has fled. Markin's current location is unknown since getting evicted from his rented house in Beverly Hills. Eduard Khaptakhaev is believed to be in St. Petersburg, Russia.

The same day, August 7, 2017, Usmanov sent an email to Perkins partner Lowell Ness ("Ness") with the subject line, "need your advice." The body of the email stated:

> *Hi Lowell [Ness], My name is Tim, I'm the CFO* **at Giga Watt, Inc.**
> *Katrina referred to you as a main contact person who I could speak
> with on* **all our legal matters.** *Several days ago we received an
> email supposedly sent by the U.S. Secret Service, asking us to share
> some sensitive information. Please find below a copy of this email.*

**Exhibit 4**, LIGHTHOUSE 0337991 (emphasis added). Ness promptly directed Usmanov to Jean-Jacques Cabou ("Cabou"), Ness' partner. That same day Cabou wrote to Usmanov:

> *I share your skepticism but it also bears some indicia of legitimacy to
> me. I'd be happy to return the call if you'd like; otherwise there's no
> harm in returning the call and saying you are trying to confirm the
> legitimacy of the request before consulting with counsel about*

---

[10] On March 5, 2020, the SEC obtained a default judgment against Evdokimov in the amount of $16,059,429.99 and a civil penalty of $192,768 for running another unregistered securities offering. *See ICOBox, Inc. SEC v. ICOBOX*, Case No. 2:19-cv-8066 DSF-E, U.S. District Court, Central District of California, filed March 5, 2020, ECF No. 17.

20-80031-FPC    Doc 121-3    Filed 10/24/22    Entered 10/24/22 22:01:03    Pg 7 of 27

*providing any information. Don't give anything up yet; see what the guy says*

**Exhibit 5**, LIGHTHOUSE 0338115. Usmanov responded that same day:

*Agree with you.* ***Would be great if you gave them a call on our behalf.*** *Your voice will sound more persuasive. At least you will find the right questions to ask.*

*Id.*, LIGHTHOUSE 0338115 (emphasis added.)

On August 8, 2017, Perkins made the first premature escrow release. That same day, August 8, 2017, at 8:19 a.m., Ronan McGee of the USSS wrote to Ness:

*Good morning Lowell,*

*The U.S. Secret Service has an ongoing investigation in which a suspect's phone received a confirmation code from Cryptonomos. We believe the confirmation code to be related to the mining operations of the Cryptonomos / Giga Watt venture. We are interested in obtaining any and all information Cryptonomos / Giga Watt maintains on file for this specific phone number, particularly any bitcoin addresses.*

*We have attempted to contacted Cryptonomos directly multiple times, but they have thus far failed to respond to our inquiries. Our understanding is that you are the legal representative of Giga Watt.*

*As a result, could you please provide the appropriate Grand Jury subpoena contact information (e.g. physical address to include on the subpoena, email to which subpoena can be served, etc) for Cryptonomos / Giga Watt so that we may subpoena the information in question?*

*Thank you.*

*Ronan McGee*

*U.S. Secret Service – CID*

*Cell: 202-794-2515*

**Exhibit 6**, LIGHTHOUSE 0338814.

Less than an hour later, on August 8, 2017, Cabou responded:

> *Ronan and Team,*
>
> *It was a pleasure to speak with Ronan briefly just now regarding this email that was directed to my partner, Lowell Ness, who is also copied here. As I explained to Ronan, **our firm represents Giga Watt** and I can accept service of a subpoena by email on its behalf. Please just send that to me.*
>
> *We understand that the USSS and state authorities have reason to believe Giga Watt may hold certain records relevant to your investigation. Once we get the subpoena, we will work with the client to determine what if any responsive records we have and to produce them to you in a timely and convenient way.*
>
> *Please let me know if you have any questions.*
>
> *We look forward to working with you.*

**Exh 6**, *supra*, LIGHTHOUSE 0338813 (emphasis added). Cabou forwarded the email to Ness and Usmanov adding the following:

> *Lowell and Tim,*
>
> *I spoke just now with Ronan McGee, an intelligence analyst for the USSS. He confirmed this was a legit request and will be sending a subpoena from the US District Court in Kentucky for the records they want. I have asked that the subpoena be directed to me, as you can see below. McGee confirmed that GW is just a holder of information here, not a target or subject of the investigation.*
>
> ***So the play here is for us to be cooperative as long as possible, see what they want, and then get it to them if we have it. One thing I'd like to do is to review whatever agreement(s) or terms we would have with the individual in question to ensure that we have no self-imposed obligation to notify them of the subpoena.***
>
> *Obviously I'd be happy to talk about any of this at your convenience.*
>
> *Best J*

**Exh. 6**, *supra*, LIGHTHOUSE 0338813-4 (emphasis added). Thus, *on the same day that Perkins made the first premature escrow release*, Perkins represented Giga

Watt "on all legal matters," told the USSS that Perkins represented Giga Watt, and advised Giga Watt on how to respond to the subpoena.

During this period in early August 2017, Kuzenny and Usmanov were asking a person using the moniker, Al Mafia, to invest in Giga Watt. They told "Al Mafia" that Giga Watt's financial statements "in no way reflect economic picture." **TU Exhibit 17**, TU_11. Usmanov testified in his deposition that it would make Giga Watt look better if funds received were no longer treated as loans, thereby suggesting that the financial statements were not intended to reflect economic reality, but instead were intended to say whatever was expedient at the time.

On August 9, 2017, the day after Perkins made the first premature escrow release to GW Sg., Al Mafia wrote to Perkins' accounting department asking for the "general ledger regarding the GigaWatt Pte. Ltd. escrow." **TU Exhibit 18**, GWSEC 00022203. That same day, August 9, 2017, Kuzenny wrote to Al Mafia:

> *Hello Sasha,[11]*
>
> ***Our** lawyers are in a panic at your letter that you addressed. Honestly.*
>
> *You know how they relate to the word mafia here in America ((*
>
> *Let me better send you dox from them.*

**TU Exhibit 19,** LIGHTHOUSE 0343738 (emphasis added). Kuzenny stated "our lawyers," in the context of Al Mafia potentially investing in Giga Watt – not GW Sg. or Cryptonomos.

On August 9, 2017, Carlson wrote to Sandoval regarding the "project orientation checkup," which appears to be code for clarifying and formalizing how the revenue

---

[11] Sasha is the Russian nickname for Alexander. Kuzenny is treating Al Mafia's first name as Alexander and then referring to him by his nickname. Sasha is to Alexander as Bill is to William.

stream from Giga Watt's operations would be handled. He copied Khaptakhaev, Markin, Kuzenny, and Usmanov:

> *Thanks for the clarity[,] Martha.*
>
> *Ed - we met with Perkins week before last and did a project orientation checkup with Martha. I wasn't clear what Perkins had been involved with versus the guidance given by Katrina.*
>
> *Its clear that at this point that the corp[.] structure (Giga.sg and Giga.us) and their relationship were defined by Katrina with perhaps some input by Perkins, but not at their specific direction.*
>
> *I think we need to determine if we are comfortable with our current arrangement, or do we want Perkins to dig into how we are doing business and what the entity structure consists of. Further, we may need Perkins to evaluate whether the legal protection and tax/**revenue strategies** implied by this corp structure are effective and achieve our goals.*
>
> *We've built a lot of business based on the structure Katrina defined, and perhaps you guys are familiar and comfortable with it - I'm asking you for your feedback on whether to engage Perkins to audit our structure and build us a robust plan going forward. At this point I think its fair to say that Perkins knows \*very little\* about our business, with the exception of the two entities and a proposed third entity (Hosting).*
>
> *Your thoughts?*
>
> *Thanks! Dave*

**TU Exhibit 20**, LIGHTHOUSE 338758 (emphasis added). On August 9, 2017, Usmanov wrote to Sandoval:

> *I totally agree with Dave. We would need to ask Perkins Coie to audit our structure and provide advice and assistance.*
>
> *Martha didn't mention GW One LLC as a company that is also under our umbrella.[12] Apparently, we would have to set up a call and talk through the entire group and bring Martha up to speed on*

---

[12] No such company has ever been registered with the Washington Secretary of State.

*our M&A plans. We definitely need a legal advice on the upcoming merger with Hashplex as there are few things I'm not clear about.*

*As for the constitutional dox requested by Martha - please find attached some of the documents on Giga Watt, Inc that I've got as of today. As you can see the Articles of Incorp doesn't contain articles per se, but only a title page. In view of the above, I suggest that Perkins Coie also reach out to Washington Secretary of State to check with them whether or not the initial filing was complete. Same goes for our Singapore entities. Someone would probably need to request the full batch of documents via the registered agent. As far as SHA [Shareholder Agreement] is concerned - I believe this is still being drafted and discussed amongst the shareholders.*

**TU Exhibit 21**, LIGHTHOUSE 344286.

On August 14, 2017, Usmanov followed up with Cabou regarding the grand jury subpoena. He included a message that the USSS had sent to Evdokimov previously on August 7, 2017. **Exhibit 7**, LIGHTHOUSE 0363964.[13] Usmanov asked him:

*Could you provide some more information of what you are discussing with them? Would you also share that subpoena with us, please? Any steps from our end required?*

**Exhibit 8**, LIGHTHOUSE 0365554. Cabou responded:

*Tim, Thanks for your note. To be clear, I have an open line of communication with the USSS but I have NOT shared or discussed any substance at all with them. I have simply said we want to assist and will accept service of a subpoena to me by email.*

*They have confirmed they are still obtaining the subpoena and will be in further touch.*

*Nothing to do for now at all. Best*

*J*

*Id.*, LIGHTHOUSE 0365553.

---

[13] By this time, Evdokimov had been pushed out of the Giga Watt Project for reasons that are not yet confirmed.

On August 15, 2017, Mikhaylyuta asked to withdraw $900,000 from the Escrow:

> *We ve released the second batch of tokens I would like to ask you to release the equivalent amount of USD 900 000 nine hundred thousand in favor of GIGAWATT PTE LTD.*

**TU Exhibit 23,** WSGR-GW 7235.

On August 17, 2017, Cabou forwarded the grand jury subpoena to Usmanov with Ness in copy:

> *Tim Attached is the subpoena I just received. We need to have a call to discuss next steps. When can you and/or your team have that call with me.*
>
> *Thanks*
>
> *j*

**Exhibit 9**, LIGHTHOUSE 0365627, **Exhibit 9-A**, 0365632. Usmanov responded, "I'm ready to talk whenever you are." **Exhibit 10**, LIGHTHOUSE 0366076. Shortly thereafter, Cabou wrote to Usmanov with a copy to Ness:

> *Tim, Good to speak with you just now. As we discussed, you and your team will conduct a diligent search for all records responsive to the subpoena and will get any such records to me for review. Once that's done, we will work with you to complete the waiver and declaration forms and we will get those to the USSS for you.*
>
> *Look forward to hearing from you*
>
> *J*

**Exhibit 11**, LIGHTHOUSE 0366096. On August 18, 2017, Usmanov wrote:

> *Hi Jean-Jacques,*
>
> *Please find attached[14] detailed description of the steps the user has made on **crypronimos.com**.[15]*

---

14 There is no attachment.

15 This appears to be a typographical error. The domain was cryptonomos.com.

*It might look a bit sophisticated at first glance. So feel free to ask me any questions.*

*In a few words, the user's behaviour was as follows:*

*1. he went on our website*

*2. decided to create a profile with Cryptonomos.*

*3. Entered his phone number.*

*4. Received SMS confirmation code (to verify the phone number).*

*5. Entered his email address (boby.popescu89@gmail.com)*

*6. Received confirmation link (email verification).*

*7. Clicked on that link and got redirected to the website.*

*After that he was just messing around. Copied our wallets address (apparently to check in on the blockchain), proceeded to the calculation stage to figure out how much he would have earned, if he had chosen to buy 10 WTT and rent the tokens out.*

*As you can see, the guy was on the website twice - Jul 31 and Aug 01. He hasn't made any purchases, neither has he left any traces other than I mentioned above. So basically there is not much to enclose in the envelope for the court.*

*Best,*

*Tim*

**Exhibit 12**, LIGHTHOUSE 0375500.

On August 19, 2017, Perkins released $900,000 to GW Sg. On August 22, 2017, Usmanov wrote to Cabou again:

*Hi J,*

*Here is the name that this guy used when creating a profile on the website.*

*Popescu Bogdan Stefan*

*Id.*, LIGHTHOUSE 03755000.

On August 22, 2017, Sandoval wrote to Usmanov that Giga Watt lacked signed bylaws and that she needed more information regarding "the Singapore entity." **TU Exhibit 25**, LIGHTHOUSE 0377506. Usmanov responded, "I'll try to find that out later on [re the Singapore entity]. Meanwhile, ***let's focus on our U.S. entities***." *Id.*, LIGHTHOUSE 0377507 (emphasis added). Giga Watt is a U.S. entity.

On August 29, 2022, Cabou emailed Usmanov, "Do you have some time today or tomorrow to speak with me about this." **Exhibit 13,** LIGHTHOUSE 0390035. On August 31, 2022, Cabou wrote to Usmanov, "I need to speak with you tomorrow. This is time sensitive. Please let me know some options" **Exhibit 14,** LIGHTHOUSE 0394836. On August 31, 2017, Cabou decided to ask Usmanov the question by email – since they were not otherwise connecting:

> *Where are the records that reflect this name is associated with the profile? You are not required to create records or answer questions, just to produce documents. So, I need the document(s) that reflect this guys name.*
>
> *And I need to speak with you. Please let me know a good time*

**Exhibit 15**, LIGHTHOUSE 0401398. On August 31, 2017, Usmanov wrote to Cabou:

> *Answering you question - I don't think we store those records. I think my colleagues just pulled that info from logs.*

*Id.*, LIGHTHOUSE 0401398. On August 31, 2017, Cabou responded:

> *Those logs are the records I need to produce then. It is imperative that we have done as you and I discussed previously: conducted a diligent search for AND COLLECTED all responsive records.*
>
> *Those should be forwarded to me for review immediately. Then we need to discuss*

*Id.*, LIGHTHOUSE 0401397. On September 1, 2017, Anton Orlov ("Orlov"), Giga Watt's COO, wrote to Cabou:

> *I am trying to take care of your request but I did not quite understand what you might need from the tech side. All the records reflected in log file. Can you please specify what exactly we should provide you with?*

**Exhibit 16**, LIGHTHOUSE 0398483. On September 1, 2017, Cabou wrote to Usmanov and Anton with a copy to Ness:

> *Guys*
>
> *Tim and I spoke this morning and I think we are close to done but we still are missing documents.*
>
> *ANTON: we are required to provide ALL records. At this point, all I have been given is the attached, which is part of the story. BUT, then you guys told me that his email was boby.popescu89@gmail.com and that his name is Popescu Bogdan Stefan. I was also told he created a profile. I need to be provided with copies of the files or documents that you reviewed in order to find his name and email and his profile. We cannot just say we know them, we must provide the actual documents or native files. This is critically important. Please respond here attaching all these documents. Let me know if you have any questions*
>
> *Thanks very much*
>
> *J*

**Exh. 15**, *supra*, LIGHTHOUSE 0401397 (emphasis in original). On September 4, 2017, Cabou wrote to Usmanov and Orlov with a copy to Ness:

> *Guys,*
>
> *This is urgent and frustrating. I have gotten no response to the below. [Referring to the email quoted above in this letter.]*
>
> *Our deadline to provide documents is September 7. I MUST, WITHOUT EXCEPTION, have all documents to be produced by tomorrow. So far, I have only one file to produce. That clearly isn't enough, as explained below.*
>
> *I also need the waiver and certification attached completed and returned to me tomorrow. We are under court order here. We cannot miss this deadline. Please let me know what is happening.*
>
> *Thank you*

**Exhibit 17**, LIGHTHOUSE 0401369.

On September 4, 2017, Orlov responded:

> *Hi J,*
>
> *The best we can get from our system is in attachment. There is no extra files or workflow to reproduce it. Once it is set it is just in the form of such a visualization on user side. And we do not hold access to private data. Thus logs are the only record of interaction process and they keep the data encoded as you can see the phone number is visualized in certain form there. Let me know if I can provide more detailed explanations if needed.*

**Exh. 15**, *supra*, LIGHTHOUSE 0401396 and **Exhibit 18**, LIGHTHOUSE 0401401-403.

On September 5, 2017, Usmanov asked Cabou to confirm that the foregoing "is enough." **Exhibit 19**, LIGHTHOUSE 0402342. Cabou responded, "Yes. Thank you. I will look forward to getting the waiver and certification." **Exhibit 20**, LIGHTHOUSE 0402396. On September 5, 2017, Zeev Kirsh ("Kirsh") wrote to Carlson and Usmanov about the subpoena. **Exhibit 21**, LIGHTHOUSE 0402900. Usmanov responded:

> *sorry for the confusion Dave.*
> *Actually Olesya has already retrieved all the information requested by PerkinsCoie.*
> *You, as the CEO, just need ot sign the waiver and the certification.*

*Id.*, LIGHTHOUSE 0402900. Olesya refers to Olesya Egozina ("Egozina"). In his deposition, Usmanov testified that "a girl" in Ukraine named Olesya collected Giga Watt's hosting revenues. On September 5, 2017, Kirsh wrote to Usmanov with a copy to Carlson regarding the waiver and certification for the grand jury subpoena responses:

> *i filled out the form stuff on pages 5 and 7. Dave, all you need ot do isput down 2 signatures one at the bottom of each page.*
>
> *This needs to be sent out within 2 days by Perkins.*

**Exhibit 22**, LIGHTHOUSE 0403095. Carlson signed the waiver and certification as the CEO of Giga Watt. **Exhibit 23**, LIGHTHOUSE 0403874, 0404178, and 0404180. Neither GW Sg. nor Cryptonomos signed the waiver and certification.

As described in the Usmanov Letter, on the same day that Usmanov was describing Giga Watt's employees as "stupid people," September 12, 2017, Sandoval wrote to Usmanov pointing out a series of inadequacies in Giga Watt's incorporation:

> o *Bylaws and other Incorporation Steps*
>
> > ♣ *You passed along an action by the incorporator dated 12/16/16.*
> >
> > *In this action, the incorporator:*
> >
> > > • *adopted the bylaws;*
> > >
> > > • *stated that the company would have 1 director; and*
> > >
> > > • *appointed Nikolay Evdokimov as the sole director* •
> >
> > *Of these 3 acts taken by the incorporator, the incorporator only has statutory authority to adopt the bylaws and set the number of directors.*
> >
> > ♣ *Inconsistent with the 12/16/16 incorporator action, in the 1/1/2017 Minutes of the Special Meeting of the Board of Directors, Adam West is identified as (and acted as) the sole director.*
> >
> > *In this meeting, the following officers were appointed:*
> >
> > > • *CEO: David M. Carlson*
> > >
> > > • *President: Nikolay Evdokimov*
> > >
> > > • *CFO: Leonid Markin*
> > >
> > > • *Secretary: Adam West*
>
> o *Steps to be taken are*
>
> > • ***Client:*** *Provide the identity (identities) of the company's board of directors*
> >
> > • ***Client:*** *Provide the identity of the company's officer [are those listed above correct?; are there other officers?]*
> >
> > • ***Client:*** *Provide capitalization table (or breakdown of share ownership)*

> • ***Client:*** *Provide input on desired number of authorized shares (post stock split)*
>
> • *Perkins: Prepare a shareholder action in which the director(s) are appointed (and other incorporator actions)*
>
> • *Perkins: Prepare the organizational actions to be approved by a company's board of directors*
>
> • *Perkins: Order governing documents from WA Secretary of State's Office and amend and restate articles of incorporation*

**TU Exhibit 33**, LIGHTHOUSE 413434-5. (Emphasis added.) On a similar topic, on September 22, 2017, Kirsh wrote to Carlson:

> *you are very right[16], we have serious problems in gW inc, gw singapore and even in cryptonomos. all these companies need shareholder agreements.*

**Exhibit 24**, LIGHTHOUSE 0436466. Carlson wrote back to Kirsh:

> *Not surprising honestly.*
> *In any case I don't see why we can't execute a shareholders agreement to at least nail it down legally. It's a lot to ask for us to continue operating as if it is in place, when technically it's never been executed.*
> *We can amend later if needs be...*
>
> *Cheers, and thanks for the copy of the bylaws. I'll get them to the PUD.*
>
> *Dave*

On September 22, 2017, at the same time that Carlson was pushing for at least a shareholder agreement and Usmanov was sending questionable information to the Overseas Chinese Banking Corporation ("OCBC") about the escrow releases and deposits, as set forth in the Usmanov Letter, Mikhaylyuta (or Kuzenny using her name) asked Perkins to release $1.2 million from the escrow. **TU Exhibit 38**, WSGR-GW 007215. As of September 22, 2017, no new construction had been finished. On September 25, 2017, Perkins complied.

---

[16] Kirsh is referring to a prior conversation for which we have not yet located a record.

On September 26, 2017, Cabou confirmed with respect to the grand jury subpoena, "This has been taken care of. ***Please do not contact USSS further***. They will let us know if they have questions." **Exhibit 26,** LIGHTHOUSE 0446420. (Emphasis added.) Again, Cabou was advising Giga Watt.

On September 28, 2017, Kirsh wrote to Carlson in pertinent part:

> *dave , sinden. **Martha Sandoval is our attorney (for now) at perkins coie.** question. 1) who hired her and who would have the retainer/engagement letter we signed? if you have it can you send me a copy.*

**Exhibit 27**, LIGHTHOUSE 0453817. (Emphasis added.) On October 6, 2017, Usmanov wrote to Perkins:

> *Hi Stephanie,[17]*
>
> *Sorry for the delay. Our colleagues has been traveling a lot lately, so it was hard to get all together.*
>
> *Regarding GW Management, LLC, Giga Pod 1-100, LLC, and Mine Building, LLC - actually*
>
> *I've never heard these entities were duly established. Let me ask you where you heard of them .*
>
> *Anyways, like I mentioned earlier in our previous correspondences, **let's focus first on Giga Watt, Inc. as this is our main operating vehicle**.*
>
> *Regarding the cap table - the ball is still on our shareholders' court. So let me please revert to it a bit later.*
>
> *Officers of Giga Watt, Inc:*
>
> *Dave Carlson - CEO/President*
>
> *Timur Usmanov - CFO and Secretary.*
>
> *As far as the composition of Board of Directors is concerned:*
>
> *1. Andrey Kuzenny*

---

[17] Stephanie is or was a Perkins paralegal.

> *2. Dave Carlson*
>
> *3. Eduard Khaptakhaev*
>
> *4. Leonid Markin.*
>
> *Please proceed with the issuance of the company's constitutional documents. Our attorney Zeev [Kirsh]will follow up on any further questions that might arise on your side.*

**TU Exhibit 41**, LIGHTHOUSE 472220 (emphasis added). No documents were ever finalized.

On November 7, 2017, at GW Sg's request, Perkins released $3.3 million from the escrow. OCBC immediately asked for an explanation. **TU Exhibit 46**, LIGHTHOUSE 0515050-0515051. On November 8, 2017, Mikhaylyuta wrote to OCBC repeating that Perkins had advised on "***the legal framework for the group companies' activities.***" *Id.*, LIGHTHOUSE 0515050 (emphasis added). While Mikhaylyuta is a poor source of information standing alone, this statement is corroborated by Carlson's email back in March 2017 that they – meaning Carlson and Giga Watt's Russian controlling shareholders – were waiting on Perkins' advice regarding moving forward with the GW ICO.

On November 16, 2017, Usmanov was informed that GW Sg. would be losing its banking privileges with OCBC on December 4, 2017. **TU Exhibit 47**, LIGHTHOUSE 0526200. He then looked for a place to "land the money," as described in the Usmanov Letter.

On December 18, 2017, Usmanov drafted what would become the text of Mikhaylyuta's email to Perkins to release $2 million from the escrow to Giga Watt. **TU Exhibit 54**, LIGHTHOUSE 0561452. Perkins released the funds to Giga Watt, where they landed the money, on December 19, 2017. On December 22, 2017, Usmanov ghost wrote another Mikhaylyuta letter to Perkins, this time requesting $4.5 million. **TU Exhibit 55**, LIGHTHOUSE 0567262.

In late December 2017, StormsMedia filed its class action lawsuit against Giga Watt and others under section 12 of the Securities Act of 1933, seeking rescission and restitution because the WTT Tokens and Miners had been sold pursuant to an unregistered securities offering. On December 26, 2017, Perkins sent an escrow release to Giga Watt pursuant to Usmanov's request.

In January 2018, Giga Watt settled the StormsMedia suit paying $953,319.55 out of the December 26th escrow release. This settlement released both Giga Watt and GW Sg. of further liability.

However, as you know, there were other shoes to drop. In March 2018, Mark Moss filed an individual suit against Giga Watt and others for rescission and restitution under section 12 of the Securities Act of 1933, and Raymond Balestra filed a class action against Giga Watt and others under the same statute. Those cases are still pending against Giga Watt on a consolidated basis in the McVicker Action.

## ADDITIONAL POINTS

The facts described in this letter are in addition to the facts that we already knew. In particular, Cryptonomos included Perkins on its website as the legal advisor and escrow holder for the GW ICO. Carlson testified during a hearing in the Bankruptcy Case in May 2019 that Perkins represented "us" and advised "us" to issue the WTT Tokens from Singapore to avoid the U.S. securities laws. During the SEC investigation, which ended after Giga Watt filed bankruptcy, without any inference of exoneration, Grant, Kuzenny, and Carlson told the SEC that Perkins represented Giga Watt. And in October 2018 in a memo intended for the SEC that Grant sent to Ness for his review and comment, Grant described Giga Watt as their mutual client.

This relationship means that Perkins owed Giga Watt a fiduciary duty when it held and disbursed the GW ICO proceeds. The premature releases added to Giga Watt's exposure under section 12 of the U.S. Securities Act of 1933 by reducing its ability to pay the strict liability remedy of rescission and restitution. It damaged Giga Watt in other ways, including closing the door to the capital markets; the improper escrow releases would have become apparent in any due diligence process. As stated above, approximately $75 million in claims have been filed against Giga Watt. Moreover, all it would have taken to verify the propriety of the escrow release would have been to contact Ryan Oster, the landlord at the Moses Lake facility, for power summaries from the Grant County Public Utility District. Instead, Ness asked no questions and released money on bare request and no due diligence.

On the very day of the first premature release, Cabou of Perkins told the USSS that Perkins represented Giga Watt. Perkins was advising Giga Watt through August and September when two more premature releases were made. This is in addition to the general and reasonable belief that Perkins was Giga Watt's point of reference for "all legal matters."

On August 4, 2022, you sent us documents that we had already reviewed from the Lighthouse Documents. They consisted of correspondence between Giga Watt and Sandoval. This production was very selective omitting any mention of the correspondence with Cabou, which shows that Giga Watt reasonably believed that Ness and Perkins were their lawyers and Perkins accepted and performed that role, as represented to the USSS.

As an attorney for Giga Watt, Perkins can be compelled under 11 U.S.C. § 542(e) to turn over to the Trustee all recorded information that Perkins holds related to Giga Watt's property or financial affairs. We should have received this information more than a year ago when we asked for it.

On January 7, 2022, in the jury demand appeal, the U.S. District Court for the Eastern District of Washington ("District Court") called Perkins to task for making "several misrepresentations to the Court." District Court's Order Denying Motions and Appeals ("District Court Order"), Case No. 2-21-cv-00159-SAB, ECF No. 21 at 11:1-3. The District Court stated:

> *While parties are permitted to present nonfrivolous arguments for extending, modifying, or reversing existing law or establishing new law,* ***Perkins Coie et al. have not made any such request in a forthright manner and instead resorted to mischaracterizing clear and binding caselaw***.

District Court Order, ECF No. 21 at 12:2-5 (emphasis added). Perkins has not been forthright with the Trustee about its representation with Giga Watt. The District Court added:

> *Therefore, though the Court declines to order sanctions on this occasion, the Court **sternly** warns Perkins Coie et al. to tread carefully in the future when deciding whether to pursue an appeal of a bankruptcy court order. Factual and legal arguments to the court should always* ***be consistent, accurate, and truthful.***

District Court Order, ECF No. 21 at 13:1-4 (emphasis in original). Perkins' production to date has not been consistent, accurate or truthful regarding its representation of Giga Watt.

This letter is without prejudice to any and all rights held by the Trustee. The Trustee and I would like to arrange a telephone conference with you to discuss these matters and our next steps. Please let us know when you would be available.

Very truly yours,

*Pamela M. Egan*

Pamela M. Egan


cc:    Mark D. Waldron, Esq., *Chapter 7 Trustee*
       John Munding, Esq., *Counsel for Perkins Coie LLP and Lowell Ness*
       Elon Berk, Esq., *Counsel for Andrey Kuzenny*
       Donald Boyd, Esq., *Counsel for Andrey Kuzenny*
       Timothy Blood, Esq., *Counsel for Jun Dam and proposed WTT Token Class*
       Dennis McGlothlin, Esq., *Counsel for Jun Dam and proposed WTT Token Class*
       Jason Piskel, Esq., *Counsel for David M. Carlson*

Enclosure: Referenced Exhibits

# INDEX TO LETTER TO RALPH CROMWELL FROM PAMELA EGAN DATED AUGUST 8, 2017

| Exhibit Reference | Beg. Bates Stamp No. | Description of 1st Page |
|---|---|---|
| Exhibit 1 | LIGHTHOUSE 0098273 | 3.9.17 Email DC to RT & JF |
| Exhibit 1-A | DCX_ 001110 | SEC Notice of Termination |
| Exhibit 2 | LIGHTHOUSE 0157642 | 6.15.17 Email KG to MS |
| Exhibit 3 | LIGHTHOUSE 337879 | 8.7.17 Email MS to SH & DC |
| Exhibit 4 | LIGHTHOUSE 0337991 | 8.7.17 Email LN to TU & JJC |
| Exhibit 5 | LIGHTHOUSE 0338115 | 8.7.17 Email TU to JJC & LN |
| Exhibit 6 | LIGHTHOUSE 0338814 | 8.7.17 Email JJC to LN & TU |
| Exhibit 7 | LIGHTHOUSE 0363964 | 8.17.17 Email TU to JJC |
| Exhibit 8 | LIGHTHOUSE 0365554 | 8.17.17 Email TU to LM, EK & AK |
| Exhibit 9 | LIGHTHOUSE 0365627, 365632 | 8.17.17 Email JJC to TU & LN |
| Exhibit 9-A | LIGHTHOUSE 0365632 | Grand Jury Subpoena |
| Exhibit 10 | LIGHTHOUSE 0366076 | 8.17.17 Email TU to JJC & LN |

EXHIBIT INDEX – Page 1

*In re Giga Watt, Inc.*, Case No. 18-03197-FPC
U.S. Bankruptcy Court, E.D. of Wash.

Exhibit C, Page 24 of 26

# INDEX TO LETTER TO RALPH CROMWELL FROM PAMELA EGAN
## DATED AUGUST 8, 2017

| Exhibit Reference | Beg. Bates Stamp No. | Description of 1st Page |
|---|---|---|
| Exhibit 11 | LIGHTHOUSE 0366096 | 8.17.17 Email JJC to TU & LN |
| Exhibit 12 | LIGHTHOUSE 0375500 | 8.22.17 Email TU to JJC |
| Exhibit 13 | LIGHTHOUSE 0390036 | 8.29.17 Email JJC to TU & LN |
| Exhibit 14 | LIGHTHOUSE 0394836 | 8.31.17 Email JJC to TU & LN |
| Exhibit 15 | LIGHTHOUSE 0401398 | 9.4.17 Email AO to JJC, TU & LN |
| Exhibit 16 | LIGHTHOUSE 0398483 | 9.1.17 Email AO to TU, JCC & LN |
| Exhibit 17 | LIGHTHOUSE 0401369 | 9.4.17 Email JCC to TU, AO & LN |
| Exhibit 18 | LIGHTHOUSE 0401401-0401403 | Info for GJS |
| Exhibit 19 | LIGHTHOUSE 0402342 | 9.5.17 Email TU to AO, JJC & LN |
| Exhibit 20 | LIGHTHOUSE 0402396 | 9.5.17 Email JJC to TU, AO, LN & GN |
| Exhibit 21 | LIGHTHOUSE 0402900 | 9.5.17 Email TU to ZK & DC |
| Exhibit 22 | LIGHTHOUSE 0403095 | 9.5.17 Email ZK to TU & DC |

EXHIBIT INDEX – Page 2          *In re Giga Watt, Inc.*, Case No. 18-03197-FPC
U.S. Bankruptcy Court, E.D. of Wash.

Exhibit C, Page 25 of 26

20-80031-FPC     Doc 121-3     Filed 10/24/22     Entered 10/24/22 22:01:03     Pg 26 of 27

**INDEX TO LETTER TO RALPH CROMWELL FROM PAMELA EGAN
DATED AUGUST 8, 2017**

| Exhibit Reference | Beg. Bates Stamp No. | Description of 1st Page |
|---|---|---|
| Exhibit 23 | LIGHTHOUSE 0403874, 404173, and 0404174 | 9.6.17 Email DC to ZK & TU |
| Exhibit 24 | LIGHTHOUSE 0436466 | 9.22.17 Email ZK to DC |
| Exhibit 25 | LIGHTHOUSE 0436495 | 9.22.17 Email DC to ZK |
| Exhibit 26 | LIGHTHOUSE 0446420 | 9.26.17 Email ZK to TU & DC |
| Exhibit 27 | LIGHTHOUSE 0453817 | 9.28.17 Email ZK to DC & SH |

EXHIBIT INDEX – Page 3                *In re Giga Watt, Inc.*, Case No. 18-03197-FPC
                                       U.S. Bankruptcy Court, E.D. of Wash.
                                       Exhibit C, Page 26 of 26

20-80031-FPC    Doc 121-3    Filed 10/24/22    Entered 10/24/22 22:01:03    Pg 27 of 27