# EXHIBIT 1

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 07, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PERKINS COIE, LLP, a Washington limited liability partnership; and LOWELL NESS, individual and California resident; GIGA WATT PTE., LTD., a Singapore corporation; and ANDREY KUZENNY, a citizen of the Russian Federation, | No. 2:21-CV-00159-SAB |
| Appellants, | **ORDER DENYING MOTIONS AND APPEALS** |
| v. | |
| MARK D. WALDRON, as Chapter 7 Trustee, | |
| Appellee. | |

Before the Court are (1) Appellants Perkins Coie, LLP, Lowell Ness, Giga Watt PTE., Ltd., and Andrey Kuzenny's ("Perkins Coie *et al.*") Motion for Leave to Appeal the Bankruptcy Court's Order Granting Motion to Strike Jury Demand; (2) Perkins Coie *et al.*'s appeal of two of the Bankruptcy Court's orders—the Order Granting Motion to Strike Jury Demand and the Order Denying Motion to Compel Arbitration and Stay; (3) Trustee Mark D. Waldron's ("Trustee Waldron") Motion to Dismiss Appellants' Appeal for Lack of Jurisdiction, ECF No. 13; and (4) Trustee Waldron's Motion for Sanctions for Frivolous Appeal, ECF No. 16.

ORDER DENYING MOTIONS AND APPEALS # 1

Having considered the briefing, applicable caselaw, and the certified record, the Court (1) denies appeal of the Bankruptcy Court's Order Granting Motion to Strike Jury Demand; (2) affirms the Bankruptcy Court's Order Denying Motion to Compel Arbitration and Stay; (3) dismisses Trustee Waldron's Motion to Dismiss as moot; and (4) denies Trustee Waldron's Motion for Sanctions.

## Background

The following facts are drawn from U.S. Bankruptcy Judge Frederick P. Corbit's (1) Order Granting Motion to Strike Jury Demand and (2) Order Denying Perkins' and Ness' Motion to Compel Arbitration and Stay. BK. No. 20-80031-FPC, Docs. 49, 51.

In March 2017, Debtor Giga Watt and Giga Watt PTE., Ltd. ("Giga Watt Singapore") launched the Giga Watt Project. The Giga Watt Project was a partnership to build and run a large-scale cryptocurrency mining operation. Specifically, Debtor Giga Watt agreed to build and manage cryptocurrency mining facilities, whereas Giga Watt Singapore agreed to sell shares and interests in these facilities pursuant to an Initial Coin Offering ("ICO") starting on August 7, 2017. Investors who bought a "WTT Token" through the ICO could install mining machines in Debtor Giga Watt's facilities in Grant County and Douglas County in Washington State—and because these facilities had access to cheap power rates, the investors could mine cryptocurrency more profitably.

Debtor Giga Watt and Giga Watt Singapore (collectively, the "Giga Watt entities") published a White Paper to help market the Giga Watt Project to potential purchasers. However, the White Paper specifically disclaimed that it was not a contract, Instead, in order to buy a WTT Token, each purchaser had to sign a Token Purchase Agreement, which indicated that it was an agreement with Giga Watt Singapore. Once the purchaser signed the Agreement and bought the WTT Token, Giga Watt Singapore gave the sale proceeds to Perkins Coie, through its partner Lowell Ness, to hold in escrow. At the end of the ICO, Perkins Coie had

received over $22 million in token sale proceeds, which it placed in an Interest on Lawyers Trust Account ("IOLTA").

The parties disagree over the terms by which Perkins Coie was meant to hold the token sale proceeds. Trustee Waldron alleges that Perkins Coie agreed to hold the funds from the ICO in escrow until Giga Watt met certain construction milestones at the facilities. However, both parties agree that a traditional escrow document detailing the terms of the escrow agreement does not exist. But regardless, after the close of the ICO, Perkins Coie made refunds to various token holders and then made (1) four disbursements to Giga Watt Singapore that totaled $10.8 million and (2) four disbursements to Debtor Giga Watt that totaled a little over $10.8 million. By February 22, 2018, there were no funds remaining in the escrow account.

However, in 2018, the value of most cryptocurrencies crashed. Additionally, because the cryptocurrency mining facilities were straining the local utilities, the Douglas County Public Utility District reneged on their power service agreement with Debtor Giga Watt. Thus, Giga Watt filed for Chapter 11 bankruptcy on November 19, 2018. Mark D. Waldron was appointed as the Chapter 11 Trustee. On September 30, 2020, the Bankruptcy Court for the Eastern District of Washington converted the case to a Chapter 7 bankruptcy and reappointed Trustee Waldron as the Chapter 7 Trustee.

### Procedural History

On November 18, 2020, Trustee Waldron filed an Adversary Proceeding against Defendants Perkins Coie *et al.* in the U.S. Bankruptcy Court for the Eastern District of Washington. BK. No. 20-80031-FPC. In the Adversary Proceeding, Trustee Waldron alleged that Defendants breached their fiduciary duty and aided and abetted the breach by improperly distributing $10.8 million in funds that were meant to held in escrow. On November 19, 2020, Trustee Waldron filed his Amended Complaint for the Adversary Proceeding. BK Doc. 6.

On December 31, 2020, Defendants filed their Motion to Withdraw the Reference in Bankruptcy Court. BK Doc. 17. On January 14, 2021, Trustee Waldron filed his objection to the Motion to Withdraw. BK Doc. 29. The parties then agreed to brief three issues before transmitting the Motion to Withdraw to this Court:[1] (1) whether Defendants had the right to a jury trial; (2) whether the Adversary Proceeding was core or non-core; and (3) whether arbitration was warranted. On February 5, 2021, Trustee Waldron filed his Motion to Strike Defendants' Jury Demand and a Motion for a Determination that Proceeding is Core. BK Docs. 36, 38. On February 26, 2021, Defendants filed a Motion to Compel Arbitration and Stay. BK Doc. 40.

On April 22, 2021, U.S. Bankruptcy Judge Frederick P. Corbit issued three orders. First, Judge Corbit issued an Order Granting Motion to Strike Jury Demand ("Order Striking Jury Demand"), finding that Defendants were not entitled to a jury trial under the Seventh Amendment because Trustee Waldron's breach of fiduciary claims were equitable, not legal. BK Doc. 49. Second, Judge Corbit issued an Order Determining that Proceeding is Non-Core, finding that Trustee Waldron's Adversary Proceeding was not a core bankruptcy proceeding because the claims did not depend on bankruptcy law for their existence. BK Doc. 50. Finally, Judge Corbit issued an Order Denying Perkins' and Ness' Motion to Compel Arbitration and Stay ("Order Denying Arbitration and Stay"), finding that

---

[1] Perkins Coie *et al.* filed the Motion for Order Granting Withdrawal of the District Court's Reference Pursuant to 28 U.S.C. § 157 in this Court on April 27, 2021. *Waldron v. Perkins Coie LLP et al.*, No. 2:21-CV-00148-SAB, ECF No. 1. In their motion, Perkins Coie *et al.* requested that the Court withdraw the reference of Trustee Waldron's Adversary Proceeding against them from Bankruptcy Court. *Id.* This Court denied the Motion to Withdraw on June 22, 2021, and re-referenced the Adversary Proceeding back to Judge Corbit. ECF No. 4.

**ORDER DENYING MOTIONS AND APPEALS** # 4

there was no evidence of contract or agreement to arbitrate to which Defendants were a party. BK Doc. 51.

On May 6, 2021, Perkins Coie *et al.* filed their Motion for Leave to Appeal in the Bankruptcy Court. BK Doc. 62. On May 7, 2021, Perkins Coie *et al.* also filed a Notice of Appeal in this Court. ECF No. 1. Perkins Coie *et al.*'s Motion for Leave to Appeal only addressed Judge Corbit's Order Striking Jury Demand, BK Doc. 62, whereas their Notice of Appeal referenced both the Order Striking Jury Demand and Order Denying Arbitration and Stay, ECF No. 1.

On August 16, 2021, Trustee Waldron filed a Motion to Dismiss Appeal for Lack of Jurisdiction, seeking to dismiss Perkins Coie *et al.*'s appeal of the Order Striking Jury Demand. ECF No. 13.

On September 23, 2021, Trustee Waldron filed a Motion for Sanctions for Frivolous Appeal Pursuant to Fed. R. Bank. P. 8030, regarding Perkins Coie *et al.*'s appeal of the Order Striking Jury Demand. ECF No. 16.

On November 30, 2021, the parties completed their appellate briefing for both orders being appealed: (1) the Order Striking Jury Demand and (2) the Order Denying Arbitration and Stay. ECF Nos. 12, 15, 18.

### Discussion

The pending appeals and motions before the Court raise three different issues. First, the Court must decide whether Perkins Coie *et al.* can proceed on their appeal of the Bankruptcy Court's Order Striking Jury Demand. Second, the Court must decide (1) if Perkins Coie *et al. can* proceed with their appeal of the Order Striking Jury Demand, whether to affirm or reverse the Bankruptcy Court's order; or (2) if Perkins Coie *et al. cannot* proceed with their appeal, whether Trustee Waldron's motion for sanctions should be granted. Third, the Court must decide whether to affirm or reverse the Bankruptcy Court's Order Denying Arbitration and Stay. The Court will address each of these issues in turn.

//

**ORDER DENYING MOTIONS AND APPEALS** # 5

1.  **Can Perkins Coie *et al.* proceed on their appeal of the Bankruptcy Court's Order Striking Jury Demand?**

Perkins Coie *et al.* have two avenues through which they can proceed with their appeal. First, the Court could find that the Bankruptcy Court's Order Striking Jury Demand was a final order and thus appealable as of right pursuant to 28 U.S.C. § 158(a)(1). Alternatively, the Court could grant Perkins Coie *et al.* leave to file an interlocutory appeal pursuant to 28 U.S.C. § 158(a)(3). For the reasons stated below, the Court finds that the Order Striking Jury Demand is neither a final order nor appropriate for interlocutory appeal and thus dismisses the appeal.

a.  The Order Striking Jury Demand is not a final order

A federal district court has jurisdiction to hear appeals of final orders from core bankruptcy proceedings. 28 U.S.C. § 158(a)(1). The district court reviews bankruptcy appeals under traditional appellate standards. *Stern v. Marshall*, 564 U.S. 462, 474–75 (2011). The district court shall not set aside the bankruptcy court's findings of fact unless they are clearly erroneous. *Id.* at 487; *see also* Fed. R. Bankr. P. 8013. In reviewing decisions of the bankruptcy court, the district court can affirm or reverse on any basis supported by the record, even if different from that relied on by the bankruptcy court. *See In re Frontier Properties, Inc.*, 979 F.2d 1358, 1364 (9th Cir. 1992).

Multiple courts have held that a bankruptcy court's order denying or striking a party's jury demand in an adversary proceeding does not constitute a final order under § 158(a)(1). *Robert L. Dawson Farms, LLC v. Meherrin Agric. & Chem. Co.*, No. 4:20-CV-29-FL, 2020 WL 1485673, at *2 (E.D.N.C. Mar. 23, 2020) ("An order striking a jury demand is interlocutory. Thus, leave of court is required to immediately appeal the bankruptcy court's order.") (internal citation omitted); *In re Beale*, 410 B.R. 613, 616 (N.D. Ill. 2009) ("The Bankruptcy Court's order striking the jury demands is an interlocutory order."); *In re Bowers-Siemon Chemicals Co.*, 123 B.R. 821, 823 (N.D. Ill. 1991) ("Even under the most liberal

definition of finality, this court cannot conclude that an order which grants (or denies) a jury trial, standing alone, is final.") (citations omitted); *In re Stiles*, 29 B.R. 389, 390 (M.D. Tenn. 1982) ("It is firmly established that denial of a jury demand is a nonappealable interlocutory order.") (citation omitted); *In re Belmonte*, 551 B.R. 723, 726 (Bankr. E.D.N.Y. 2016) (finding that the Bankruptcy Court's decision to grant the Trustee's motion to strike Defendants' jury demand "is interlocutory, not final"); *In re Popkin & Stern*, 105 F.3d 1248, 1250 (8th Cir. 1997) ("The bankruptcy court order denying Lurie's demand for a jury trial is not a final order."); *In re Hooker Invs., Inc.*, 937 F.2d 833, 837 (2d Cir. 1991) (reasoning that an order determining a litigant's right to a jury is not "immediately appealable as a final order because it merely prescribes the method of fact-finding to be applied to the underlying dispute; it obviously does not dispose of the dispute"); *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 920 F.2d 1127, 1132–33 (3d Cir. 1990) (finding that the bankruptcy court's order rejecting a party's right to a jury trial "simply raises a question of forum selection" and thus was not final); *cf. City of Morgantown, W. Va. v. Royal Ins. Co.*, 337 U.S. 254, 256 (1949) (the Supreme Court holding, in a non-bankruptcy context, that a trial court's order denying jury trial is not a final order).

Perkins Coie *et al.* argue that the Order Striking Jury Demand is a final order because the test for determining "finality" is different in the bankruptcy context than it is in the ordinary civil context. ECF No. 14 at 5. Specifically, although they acknowledge that the Supreme Court has held that an order striking a jury demand in a civil case is a non-final order, Perkins Coie *et al.* argue that the Ninth Circuit has adopted a more "pragmatic or flexible approach" to determining the finality of bankruptcy orders for the purpose of appeal. *Id.* at 5–6.

The Court finds that the Order Striking Jury Demand is a non-final order. As cited above, there is abundant caselaw finding that a bankruptcy court's order denying a jury trial is not a final order that is appealable as of right. Second,

**ORDER DENYING MOTIONS AND APPEALS** # 7

Perkins Coie *et al.*'s argument about the more lenient finality rule mischaracterizes the law. It is true that, under Ninth Circuit caselaw, appellate courts use a more flexible and pragmatic approach to determine the finality of orders issued in bankruptcy proceedings. *In re Perl*, 811 F.3d 1120, 1125 (9th Cir. 2016); *see also In re SK Foods, L.P.*, 676 F.3d 798, 801–02 (9th Cir. 2012). However, this more lenient finality approach does *not* apply to orders issued in adversary proceedings brought in bankruptcy court. *In re Liu*, 611 B.R. 864, 877 (B.A.P. 9th Cir. 2020) ("[T]here is no special bankruptcy finality rule applicable in adversary proceedings.") (citing *Belli v. Temkin (In re Belli)*, 268 B.R. 851, 855 (9th Cir. BAP 2001)); *see also In re Allen-Vrablik*, No. BR 10-1100-TWD, 2012 WL 681654, at *1 (W.D. Wash. Feb. 27, 2012).

Here, the Order Striking Jury Demand was issued in the adversary proceeding that Trustee Waldron brought against Perkins Coie *et al.*, BK. No. 20-80031-FPC, as opposed to the main bankruptcy proceeding involving Debtor Giga Watt, BK No. 18-3197-FPC. Thus, because ordinary finality rules apply, the Bankruptcy Court's Order Striking Jury Demand was not a final order.[2] *City of Morgantown*, 337 U.S. at 256.

//

---

[2] Perkins Coie *et al.*'s repeated citations to *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020), are also to no avail. As the Court will further discuss in the sanctions portion of this order, *Ritzen* involved the appeal of an order denying relief from bankruptcy's automatic stay. *Id.* at 588. Moreover, the order at issue in *Ritzen* was issued in the main bankruptcy proceeding, not an adversary proceeding, which was relevant to the Supreme Court's finality analysis. *See id.* at 587 ("[T]he usual judicial unit for analyzing finality in ordinary civil litigation is the case, [but] in bankruptcy[,] it is [often] the proceeding.") (internal citation and quotation omitted).

**ORDER DENYING MOTIONS AND APPEALS** # 8

b. <u>The Order Striking Jury Demand is not appropriate for interlocutory appeal</u>

A federal district court has discretion over whether to hear interlocutory appeals of non-final orders from core bankruptcy proceedings. 28 U.S.C. § 158(a)(3). § 158(a)(3) does not provide any standard or guidance for when an interlocutory appeal should be granted. Thus, many district courts apply the same standard used to determine whether to grant an interlocutory appeal in a civil action, namely that (1) the interlocutory order involves a controlling issue of law on which there is a substantial ground for different opinions and (2) an immediate appeal of the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *see, e.g.*, *In re Beale*, 410 B.R. 613, 616 (N.D. Ill. 2009).

The Court finds that the Order Striking Jury Demand is not appropriate for interlocutory appeal. The parties agree and stipulate that the question of whether Perkins Coie *et al.* have the right to a jury trial is a controlling question of law. *See* ECF No. 3 ("The Trustee does not dispute that the Order Striking Jury Demand turns on a controlling issue of law.").

However, the Court finds that an immediate appeal of the Order Striking Jury Demand would not materially advance the termination of the litigation. Given the complicated nature of the Giga Watt bankruptcy, which encompasses several different proceedings that are still ongoing in both this Court and the Bankruptcy Court, the Court finds that all of the Giga Watt litigation—the above-captioned matter included—would be more streamlined and efficient if it remained in Bankruptcy Court. Thus, the Court denies Perkins Coie *et al.* leave to file an interlocutory appeal of the Order Striking Jury Demand and therefore dismisses the appeal.

//
//

**ORDER DENYING MOTIONS AND APPEALS** # 9

**2. Given that Perkins Coie *et al.* cannot proceed on their appeal of the Order to Strike Jury Demand, are sanctions for frivolous appeal warranted?**

If a district court determines that an appeal is frivolous, it may—after a separately filed motion from one of the parties—award just damages and single or double costs to the appellee. Fed. R. Bankr. P. 8020(a). An appeal is frivolous if "the results are obvious, or the arguments of error are wholly without merit." *George v. City of Morro Bay (In re George)*, 322 F.3d 586, 588 (9th Cir. 2003).

The Court denies Trustee Waldron's motion for sanctions. Trustee Waldron argues that sanctions for frivolous appeal are warranted based on Perkins Coie *et al.*'s arguments that the Order Striking Jury Demand was final and therefore appealable as of right. However, Perkins Coie *et al.* also sought leave to appeal the Order Striking Jury Demand as an interlocutory appeal. The Ninth Circuit has stated that, if a party is unsure about whether a bankruptcy court's order is final, the party should file both a notice of appeal and a motion for leave to appeal. *In re City of Desert Hot Springs*, 339 F.3d 782, 787 (9th Cir. 2003). This is the procedure Perkins Coie *et al.* followed here—and, because their arguments in support of interlocutory appeal are non-frivolous, the Court denies Trustee Waldron's motion for sanctions.

However, the Court warns Perkins Coie *et al.* that their arguments in support of the Order Striking Jury Demand being a final order are <u>dangerously</u> close to being sanctionable. Perkins Coie *et al.* relied on two primary arguments to advocate for their position: that (1) bankruptcy courts apply a more flexible standard when it comes to determining the finality of orders; and (2) the reasoning in *Ritzen, Group Inc. v Jackson Masonry, LLC*, _U.S._, 140 S. Ct. 582 (2020) weighs in favor of the Order Striking Jury Demand constituting a final order.

**ORDER DENYING MOTIONS AND APPEALS # 10**

In presenting their first argument, Perkins Coie *et al.* made several misrepresentations to the Court. For example, in their response brief to Trustee Waldron's Motion to Dismiss Appeal, Perkins Coie *et al.* made this assertion: "Under this rubric, to determine what constitutes a 'final' order for purposes of appeal from the decision of a bankruptcy court, the Ninth Circuit has adopted a 'pragmatic or flexible approach.' *In re Liu*, 611 B.R. 864, 870 (BAP 9th Cir. 2020)." ECF No. 14 at 5.

However, there are three things wrong with this assertion. First, Perkins Coie *et al.* characterize the BAP as "the Ninth Circuit" and cite *In re Liu* in a way that suggests that it is binding on this Court. But, in a different brief, they explicitly state "opinions of the Bankruptcy Appellate Panel are not binding on this Court." ECF No. 17 at 9. Perkins Coie *et al.* cannot, in one brief, cite a BAP decision and characterize it as binding when the decision is favorable to them, while, in another brief, state that BAP decisions are not binding when the decision is unfavorable.

Second, *In re Liu* does not even support Perkins Coie *et al.*'s substantive position. While *In re Liu* states that bankruptcy courts apply a more "pragmatic and flexible approach," 611 B.R. at 870, the BAP also specifically states "[t]here is no special bankruptcy finality rule applicable in adversary proceedings," which is the rule applicable to this case. *Id.* at 877.

Third, the Ninth Circuit has already rejected arguments similar to the one Perkins Coie *et al.* present, holding that non-final orders issued in adversary proceedings in bankruptcy court are inappropriate for interlocutory appeal. *See, e.g.*, *In re Chatha*, No. 2:19-CV-02341 WBS, 2020 WL 1082783, at *3 (E.D. Cal. Mar. 6, 2020) (the district court's order denying leave for interlocutory appeal of a non-final order issued in a bankruptcy adversary proceeding), *affirmed by Chatha v. Whatley*, No. 20-15519, 2021 WL 4301511 at *1 (9th Cir. July 16, 2021) ("[W]e conclude that the questions raised in this appeal are so insubstantial as not to require further argument. We summarily affirm the district court's judgment

**ORDER DENYING MOTIONS AND APPEALS** # 11

dismissing the appeal from the bankruptcy court for lack of a final order.") (internal citations omitted). While parties are permitted to present nonfrivolous arguments for extending, modifying, or reversing existing law or establishing new law, Perkins Coie *et al.* have not made any such request in a forthright manner and instead resorted to mischaracterizing clear and binding caselaw. Fed. R. Civ P. 11(b)(2). Thus, the Court concludes that Perkins Coie *et al.*'s first argument in support of the Order Striking Jury Demand being a final order is borderline frivolous.

Perkins Coie *et al.*'s second argument relies on trying to apply *Ritzen* to the present case, even though *Ritzen* involved a different kind of order. However, in trying to extend *Ritzen*'s reasoning, Perkins Coie *et al.* are still relying on the false premise that the flexible finality approach is applicable. Specifically, the Supreme Court in *Ritzen* held that a bankruptcy court's order denying a creditor's motion for relief from the automatic stay constitutes a final order that is immediately appealable as of right. *Ritzen*, 140 S. Ct. at 582. But in reaching this holding, the Supreme Court specifically noted that "[a] bankruptcy court's order ruling on a stay-relief motion disposes of a procedural unit anterior to, and separate from, claim-resolution proceedings . . . . **Resolution of stay-relief motions does not occur as part of the adversary claims-adjudication process**." *Id.* at 589 (emphasis added). Thus, Perkins Coie *et al.*'s attempt to rely on *Ritzen* to argue that the Order Striking Jury Demand is a final order when *Ritzen*'s analysis *distinguished* the order denying relief from automatic stay from orders issued in adversary proceedings is also borderline frivolous.[3]

_____

[3] In Perkins Coie *et al.*'s response brief to Trustee Waldron's motion for sanctions, they offer one more argument to try and defend their position that their "basis for asserting appeal as of right is meritorious"—specifically, that the Ninth Circuit "exhaustively *discussed and applied* the flexible finality" standard to an adversary

Therefore, though the Court declines to order sanctions on this occasion, the Court **sternly** warns Perkins Coie *et al.* to tread carefully in the future when deciding whether to pursue an appeal of a bankruptcy court order. Factual and legal arguments to the court should always be consistent, accurate, and truthful.

### 3. Did the Bankruptcy Court err in its Order Denying Motion to Compel Arbitration and Stay?

The final issue the Court has to decide is whether to affirm or reverse the Bankruptcy Court's Order Denying Arbitration and Stay. Both parties agree that this Court has jurisdiction to hear the appeal. ECF No. 12 at 1; ECF No. 15 at 1.

<u>Legal Standard</u>

Under the Federal Arbitration Act ("FAA"), a party can file an interlocutory appeal of an order denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(B). The appellate court reviews the denial of a motion to compel arbitration *de novo*.

proceeding. ECF No. 17 at 8 (citing *In re Gugliuzza*, 852 F.3d 884 (9th Cir. 2017)). But *In re Gugliuzza* is inapposite. For one, *In re Gugliuzza* involved the Ninth Circuit determining whether a *district court*'s appellate decision reversing in part a bankruptcy court's order was final, whereas here, Perkins Coie *et al.* are instead trying to appeal a *bankruptcy court*'s pretrial order. Moreover, though the bankruptcy court's order that was appealed in *In re Gugliuzza* was issued in an adversary proceeding, that order was indisputably a final order (an order granting summary judgment and entering judgment in favor of one of the parties). *Id.* at 888–89. Finally, the Ninth Circuit ultimately concluded that it did *not* have appellate jurisdiction in *In re Gugliuzza* because the district court's order remanding the case back to the bankruptcy court "did not end the discrete proceeding before it, namely the FTC's adversary action" and because the Ninth Circuit's "intrusion into this matter would fragment the adversary proceeding between the FTC and Gugliuzza." *Id.* at 898.

**ORDER DENYING MOTIONS AND APPEALS # 13**

*Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 824 (9th Cir. 2019). In reviewing decisions of the bankruptcy court, the district court can affirm or reverse on any basis supported by the record, even if different from that relied on by the bankruptcy court. *See In re Frontier Properties, Inc.*, 979 F.2d at 1364.

The FAA provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Thus, the court is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *See* 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); *see also Republic of Nicaragua v. Standard Fruit Co.,* 937 F.2d 469, 47778 (9th Cir. 1991). If the court finds both these elements satisfied, then the FAA requires the court to enforce the arbitration agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

<u>Discussion</u>

Perkins Coie *et al.* argue that the Bankruptcy Court erred in the following ways: by (1) finding that Perkins Coie could not enforce the arbitration provision in the WTT Token Purchase Agreements because Perkins Coie was not a party to these agreements; (2) finding that the escrow agreement was a separate unwritten contract that did not include any arbitration provisions; and (3) entering findings on disputed fact issues without first permitting limited discovery. ECF No. 12.

Trustee Waldron in response argues that (1) Perkins Coie *et al.* have not produced evidence of an enforceable arbitration agreement; (2) the arbitration provision contained in the Token Purchase Agreement is an unenforceable infinite arbitration clause; (3) contrary to Perkins Coie *et al.*'s assertion, equitable estoppel does not allow Perkins Coie to enforce the arbitration provision as a non-signatory; and (4) the Bankruptcy Court had discretion to deny the arbitration demand when arbitration conflicts with fundamental bankruptcy policy. ECF No. 15.

**ORDER DENYING MOTIONS AND APPEALS # 14** Exhibit 1, Page 14 of 22

In reply, Perkins Coie *et al.* argue (1) the Token Purchase Agreement includes a written agreement to arbitrate—and if there were questions regarding the existence of such an agreement, the proper remedy would have been for the Bankruptcy Court to allow limited discovery on the issue of arbitrability; (2) the arbitration provision in the Token Purchase Agreement is not an unenforceable infinite arbitration clause; (3) under the doctrines of estoppel and agency, Perkins Coie could enforce the Token Purchase Agreement; and (4) because this matter is non-core, the Bankruptcy Court did not have discretion to deny arbitration. ECF No. 18.

1. <u>Whether the Bankruptcy Court erred in finding that Perkins Coie could not enforce the arbitration provision in the Token Purchase Agreements</u>

Whether the parties agreed to arbitrate a particular dispute is one for judicial determination. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). When deciding whether an arbitration agreement was formed, courts apply ordinary principles of contract formation. *Id.* A court may order arbitration of a particular dispute only when the court is satisfied that the parties agreed to arbitrate that dispute. *Id.* at 297.

Here, in the Order Denying Arbitration and Stay, Judge Corbit found that Perkins Coie *et al.* relied on two documents to show that an applicable binding arbitration provision existed: (1) a WTT Token Purchase Agreement dated June 1, 2017, signed by Scott Glasscock (purchaser of the WTT Tokens) and Michael Savuskan (CEO of Giga Watt Singapore) (the "Glasscock TPA"); and (2) a Token Purchase Agreement attached to a May 17, 2017 email sent by Katrina Grant to Lowell Ness, a partner at Perkins Coie (the "Email TPA"). The exact arbitration language is contained in the Glasscock TPA:

(a) **Binding Arbitration**. Except for any disputes, claims, suits, actions, causes of action, demands or proceedings (collectively, "Disputes") in which either Party seeks to bring an individual action in small claims tribunals or seeks injunctive relief or other equitable relief for the alleged unlawful use of intellectual property, including, without limitation, copyrights, trademarks, trade names, logos, trade secrets or patents, Purchase[r] and the Company (i) waive Purchaser's and the Company's respective rights to have any and all Disputes arising from or related to this Agreement resolved in a court and (ii) waive Purchaser's and the Company's respective rights to a jury trial. Instead, Purchaser and the Company will arbitrate Disputes through binding arbitration (which is the referral of a Dispute to one or more persons charged with reviewing the Dispute and making a final and binding determination to resolve it instead of having the Dispute decided by a judge or jury in court).

…

(d) **Process**.  Any Dispute shall be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre ("SIAC") in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("SIAC Rules") for the time being in force, which rules are deemed incorporated by reference in this clause. The seat of the arbitration shall be Singapore. The Tribunal shall consist of three (3) arbitrator(s). The language of the arbitration shall be English.

BK No. 20-80031, Doc. 43-1 at 7–8.

Judge Corbit found that, though this language in the Glasscock TPA provided for arbitration of all disputes in Singapore, the Token Purchase Agreement only applied to the Purchaser of the tokens and the Company, Giga Watt Singapore. Because Perkins Coie was not a party to the Token Purchase Agreement, Judge Corbit concluded that Perkins Coie could not enforce the arbitration provision contained therein. Judge Corbit also found that—unless Perkins Coie could produce evidence of an escrow agreement between it and Giga

**ORDER DENYING MOTIONS AND APPEALS # 16**

Watt Singapore, showing that they agreed to arbitrate any disputes arising from their escrow arrangement—Perkins Coie could not provide evidence of an applicable, binding arbitration clause. BK Doc. 51 at 3–7.

Perkins Coie *et al.* argue that Judge Corbit's conclusion was in error because Perkins Coie *is* permitted to enforce the arbitration provision contained in the Glasscock TPA, even though Perkins Coie is not a party or a signatory to the Token Purchase Agreement. Specifically, Perkins Coie *et al.* argue that a non-party can nonetheless enforce an agreement by relying on applicable theories of contract law, such as assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel. ECF No. 12 at 24–25. Here, Perkins Coie *et al.* rely primarily on an equitable estoppel theory, which applies "when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing non-signatory defendants for claims based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants." *Id.* at 20 (citing *David Terry Invs., LLC-PRC v. Headwaters Dev. Grp. Ltd. Liab. Co.*, 13 Wash. App. 2d 159, 171 (2020)) (internal citation omitted). Perkins Coie *et al.* argue that equitable estoppel applies because (1) Trustee Waldron's claims against Perkins Coie for escrow mismanagement is "inherently inseparable" from the Token Purchase Agreements; and (2) the escrow arrangement was merely a sub-component of the primary transaction between the Purchaser the Company, and thus, Perkins Coie was merely acting as an agent to facilitate the token purchase. *Id.* at 20–21.

The Court affirms the Bankruptcy Court's conclusion that Perkins Coie cannot enforce the arbitration provision in the Glasscock TPA. The Court finds that allowing Perkins Coie *et al.* to rely on equitable estoppel would stretch the intent of the arbitration provision beyond its intended meaning. Based on the text of the contract, it seems that the arbitration provision in the Token Purchase Agreement was intended to cover any disputes between **the purchaser** and **Giga Watt**

**ORDER DENYING MOTIONS AND APPEALS # 17**

**Singapore** arising from or related to the purchase of the tokens. Meanwhile, Giga Watt Singapore's escrow agreement with Perkins Coie pertains to an entirely different transaction (the escrow arrangement) and involves a different set of parties (Giga Watt Singapore and Perkins Coie). Moreover, just because the escrow arrangement was the facilitating mechanism for the purchase of the tokens does not mean that the purchase contract for the tokens was meant to cover the escrow arrangement—in fact, none of the terms in the Glasscock TPA would even be relevant to the terms of the escrow arrangement. Thus, the Court finds that equitable estoppel does not apply and therefore affirms the Bankruptcy Court's conclusion that Perkins Coie, as a non-party, cannot enforce the arbitration provision in the Glasscock TPA.

      2.  <u>Whether the Bankruptcy Court erred in finding there was no arbitration provision between Perkins Coie and Giga Watt Singapore</u>

In the Order Denying Arbitration and Stay, Judge Corbit also found that Perkins Coie could not produce any evidence of an agreement between itself and Giga Watt Singapore that contained (1) the terms of the escrow arrangement; or (2) an applicable arbitration provision for disputes arising from the escrow arrangement. Specifically, Judge Corbit stated:

> The evidence presented for the purposes of this Motion does not definitively establish the terms of the escrow agreement between Perkins and Giga Watt Singapore. If Perkins could produce a written escrow agreement with Giga Watt Singapore that contained an arbitration clause, the Court's conclusion might change. But as it stands, the evidence relied upon by Perkins consists of agreements that it was not a party to; instead, the agreements Perkins relies on are between Giga Watt Singapore and WTT Token purchasers. In short, no escrow agreement between Perkins and Giga Watt Singapore that contains an arbitration clause has been produced.

BK No. 20-80031, Doc. 51 at 6–7.

**ORDER DENYING MOTIONS AND APPEALS # 18**

Perkins Coie *et al.* also argue that this conclusion was in error. Specifically, they argue that (1) the Token Purchase Agreements contain an integration clause, which means that there cannot be another separate stand-alone agreement regarding the escrow arrangement; and (2) as argued above, any escrow arrangement would be inextricably inseparable from the arbitration provision in the Token Purchase Agreements. ECF No. 12 at 22–23.

The Court affirms the Bankruptcy Court's conclusion that Perkins Coie has not produced evidence of an arbitration provision outside of the one contained in the Glassock TPA. First, the fact that the Token Purchase Agreement has an integration clause would not preclude a separate stand-alone agreement between Perkins Coie and Giga Watt Singapore regarding the escrow arrangement, given that these agreements would cover different parties and transactions. Second, as stated above, Perkins Coie *et al.* cannot make a viable estoppel argument based on the Token Purchase Agreement. Thus, though there are many documents that make mention of an escrow agreement between Perkins Coie and Giga Watt Singapore,[4] there is no actual evidence of such an agreement or that the agreement contained an arbitration provision. Therefore, the Court affirms the Bankruptcy Court's conclusion that Perkins Coie has not produced evidence of a binding arbitration provision relating to the escrow arrangement, separate from the arbitration provision in the Token Purchase Agreements.

//

//

_____

[4] Judge Corbit listed these documents in his Order: (1) the White Paper; (2) the Email TPA from Katrina Arden (counsel of the Giga Watt Project) discussing the draft token purchase agreement; (3) the Glasscock TPA; and (4) certain discovery documents turned over to the Securities and Exchange Commission. BK Doc. 51 at 4–5.

**ORDER DENYING MOTIONS AND APPEALS # 19**

3.    <u>Whether the Bankruptcy Court erred in denying the motion to compel</u>
<u>arbitration without first allowing discovery on the issue of arbitrability</u>

Finally, Perkins Coie *et al.* argue that the Bankruptcy Court erred in denying the motion to compel arbitration without first allowing limited discovery on the issue of arbitrability. Because Judge Corbit's Order Denying Arbitration left open the possibility that, if Perkins Coie could produce a written escrow agreement, this might change the Bankruptcy Court's analysis, Perkins Coie *et al.* argue that Judge Corbit should have allowed discovery on whether a written escrow agreement with an arbitration provision existed. ECF No. 12 at 24.

However, Perkins Coie *et al.*'s cited cases do not support the proposition that a court is *obligated* to permit discovery on the issue of arbitrability. In fact, both of Perkins Coie *et al.*'s cited cases involve situations where it was not seriously contested whether the parties to the case were the parties to the arbitration provision and thus had some intent to arbitrate their disputes. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) ("The record here leaves little doubt that the dispute is subject to arbitration, and Ortho does not seriously challenge this point."); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991) (noting that the dispute was regarding whether the particular claim was covered under the arbitration provision, not whether the parties agreed to arbitrate any of their claims). Moreover, though a court can schedule an evidentiary hearing or order limited discovery on the issue of arbitrability, a court does not have to do so if it determines that discovery would be unlikely to yield new evidence. *See Voll v. HCL Techs. Ltd.*, No. 18-CV-04943-LHK, 2019 WL 144863, at *4–5 (N.D. Cal. Jan. 9, 2019); *see also Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1018 (9th Cir. 2016) (internal quotations omitted) (finding that the presumption in favor of arbitrability may not apply if there is a dispute regarding the existence of an arbitration agreement).

**ORDER DENYING MOTIONS AND APPEALS** # 20

Here, the Court finds that the Bankruptcy Court did not err in denying the motion to compel arbitration without first ordering discovery. Given that (1) Trustee Waldron's adversary proceeding against Perkins Coie *et al.* has been going on since November 2020; (2) the Giga Watt bankruptcy case has been going on since 2018; and (3) the issue of the existence of an arbitration provision has been actively litigated by the parties, it was reasonable for Judge Corbit to conclude that ordering additional discovery on the issue of arbitrability would be unlikely to yield new evidence. Moreover, if Perkins Coie *et al.* are able to produce an arbitration provision later on in the proceedings, they can bring another motion to compel arbitration in the Bankruptcy Court at that time.

Thus, the Court affirms the Bankruptcy Court's Order Denying Arbitration and Stay.[5]

### Conclusion

First, the Court denies Perkins Coie *et al.*'s appeal of the Bankruptcy Court's Order Striking Jury Demand. Perkins Coie *et al.* have failed to demonstrate that the Order Striking Jury Demand is a final order or that it is appropriate for interlocutory appeal. Second, while it is a close call, the Court denies Trustee Waldron's Motion for Sanctions. Third, the Court affirms the Bankruptcy Court's Order Denying Arbitration and Stay. Finally, the Court dismisses Trustee Waldron's Motion to Dismiss as moot.

//

//

//

---

[5] Because there are sufficient grounds to affirm the Bankruptcy Court's Order Denying Arbitration and Stay, the Court does not find it necessary to address Trustee Waldron's argument that the Bankruptcy Court had discretion to deny the motion to compel arbitration.

**ORDER DENYING MOTIONS AND APPEALS ~ # 21** Exhibit 1, Page 21 of 22

Accordingly, **IT IS HEREBY ORDERED**:

1.    Perkins Coie *et al.*'s Motion for Leave to Appeal the Bankruptcy Court's Order Granting Motion to Strike Jury Demand is **DENIED**.

2.    The appeal of the Bankruptcy Court's Order Granting Motion to Strike Jury Demand is **DISMISSED**.

3.    The Bankruptcy Court's Order Denying Motion to Compel Arbitration and Stay is **AFFIRMED**.

4.    Trustee Waldron's Motion to Dismiss Appellants' Appeal for Lack of Jurisdiction, ECF No. 13, is **DISMISSED as moot**.

5.    Trustee Waldron's Motion for Sanctions for Frivolous Appeal, ECF No. 16, is **DENIED**.

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to file this Order, provide copies to the parties and the Clerk of the Bankruptcy Court, and **close** the file.

**DATED** this 7th day of January 2022.



_Stanley A. Bastian_
Stanley A. Bastian
Chief United States District Judge