# Exhibit 2 (Part 1 of 3)

No. 22-35104

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re: GIGA WATT, INC., a Washington corporation,

*Debtor.*

MARK D. WALDRON, Chapter 7 Trustee,

*Appellee,*

v.

PERKINS COIE LLP, a Washington limited liability partnership, and
LOWELL NESS, individual and California resident,

*Appellants*, and

GIGAWATT PTE., LTD., a Singapore corporation, and ANDREY
KUZENNY, a citizen of the Russian Federation,

*Defendants.*

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
No. 2:21-cv-00159-SAB; Honorable Stanley A. Bastian

## TRUSTEE'S MOTION FOR REMAND OR, IN THE ALTERNATIVE, TO DISMISS AS MOOT

Pamela M. Egan
WSBA No. 54736
Potomac Law Group PLLC
1905 7th Avenue, W.
Seattle, Washington 98119
415-297-0132
Email: pegan@potomaclaw.com

Mark D. Waldron, the Chapter 7 Trustee ("Trustee") in the bankruptcy case of Giga Watt, Inc. ("Giga Watt"), Case No. 18-03197-FPC, pending in the United States Bankruptcy Court for the Eastern District of Washington ("Bankruptcy Court") and the appellee herein, hereby respectfully moves ("Motion") for an Order (1) remanding this case to the United States Bankruptcy Court for the Eastern District of Washington ("Bankruptcy Court") for further consideration in light of new evidence, or (2) in the alternative, dismissing the above-captioned appeal as moot. This Motion is supported by the Declaration of Pamela M. Egan ("Egan Decl.") and the Request for Judicial Notice ("RJN"), filed herewith. Pursuant to Federal Rule of Appellate Procedure 27(a)(2)(B)(iii), a copy of the *Order Denying Motions and Appeals* ("District Court Order") from the U.S. District Court for the Eastern District of Washington, which is the subject of this appeal, is attached hereto as **Exhibit A**. A copy of the underlying *Order Denying Perkins' and Ness' Motion to Compel Arbitration and Stay* ("Bankruptcy Court Order") from the Bankruptcy Court, is attached hereto as **Exhibit B**.

## POSITION OF OPPOSING COUNSEL PURSUANT TO CIRCUIT ADVISORY COMMITTEE NOTE TO RULE 27-1, PARAGRAPH 5

The parties discussed possible resolution of the issues raised in this Motion without being able to resolve them. The position of Perkins Coie LLP and Lowell Ness (collectively, "Perkins") is that this appeal should move forward without consideration of the new evidence.

1

## I.    INTRODUCTION

The Ninth Circuit requires a party to bring to the Court's attention new

evidence that may raise a question of mootness.

> It is the duty of counsel to bring to the federal tribunal's
> attention, "without delay," facts that may raise a question of
> mootness. *See Board of License Comm'rs of Tiverton v.*
> *Pastore*, 469 U.S. 238, 240, 105 S.Ct. 685, 686, 83 L.Ed.2d 618
> (1985) (*per curiam*). Nor is a change in circumstances bearing
> on the vitality of a case a matter opposing counsel may
> withhold from a federal court based on counsels' agreement
> that the case should proceed to judgment and not be treated as
> moot. *See United States v. Alaska S.S. Co.*, 253 U.S. 113, 116,
> 40 S.Ct. 448, 448–449, 64 L.Ed. 808 (1920); R. Stern, E.
> Gressman, S. Shapiro, & K. Geller, Supreme Court Practice
> 721–722 (7th ed.1993).

*Arizonans for Official English v. Arizona*, 117 S.Ct. 1055, 1069, 520 U.S. 43, 68

(1997). This Motion complies with this obligation.

In late July 2022, the Trustee obtained approximately 240 gigabytes of

information ("Lighthouse Documents") regarding Giga Watt. Lighthouse and

Lexbe, e-discovery service providers, reduced 1 terabyte of new information to this

smaller size.

The Lighthouse Documents show that Giga Watt Pte. Ltd. ("GW Sg.")

fraudulently transferred $22.3 million in WTT Token sales proceeds and that GW

Sg. was not Giga Watt's partner. The stated partnership was a ruse. The

Lighthouse Documents further show that Perkins represented GigaWatt as Giga

Watt's attorney.

2

Exhibit 2, Page 3 of 59

This new evidence creates a paradigmatic shift in the facts underlying this appeal. Whether Giga Watt should be compelled to arbitrate its claims against Perkins for Perkins' role in enabling GW Sg. to misappropriate $22.3 million is a very different question now in light of the Lighthouse Documents. As described more fully below, the Lighthouse Documents show that the WTT Token sales agreements containing the arbitration clause on which Perkins relies were tortious devices, not agreements to which Giga Watt assented. They were the means by which GW Sg. fraudulently transferred to itself the WTT Token sales proceeds.

In addition, the Lighthouse Documents show that Perkins represented Giga Watt as its attorney. On the day of the first premature release from the escrow, in the amount of $5.4 million, Perkins told the United States Secret Service that it represented Giga Watt. Perkins continued to advise Giga Watt while making two more premature releases for an aggregate amount of $7.5 million. The Lighthouse Documents clarify that Giga Watt reasonably believed that Perkins was its attorney at all times material to the Complaint.

Whether the Court remands the case or dismisses it as moot, Perkins will have an opportunity to relitigate the arbitration issue, if it chooses, because the Bankruptcy Court and District Court Orders underlying this appeal were without prejudice pending further discovery. **Exhibit A**, District Court Order, ECF No. 21 at 21:8-10; **Exhibit B**, Bankruptcy Court Order, ECF No. 51, p. 6, ¶ 13, 2nd

3

Exhibit 2, Page 4 of 59

sentence. That discovery has occurred and it materially changes the landscape of this appeal.

## II.    BACKGROUND

On November 19, 2018, Andrey Kuzenny ("Kuzenny"), a Russian national who has since run away, filed in the Bankruptcy Court a voluntary petition for relief under title 11 of the United States Code. RJN No. 1; Egan Decl. at 3-4, ¶ 19. In January 2019, in opposition to a motion by the Official Committee of Unsecured Creditors to appoint a trustee, RJN No. 2, Kuzenny told the Bankruptcy Court that "the Russian team" ran Giga Watt and that the Russian team would not cooperate with any trustee. RJN Nos. 2 and 2.A; Egan Decl. at 3, ¶ 17.

After the Trustee was appointed, Kuzenny temporarily provided the Trustee with partial access to Debtor's electronic books and records. Egan Decl. at 3, ¶ 18. Shortly after providing this partial access, Kuzenny alleged that money had been stolen from customers' cryptocurrency accounts and he blamed the Trustee for having failed to secure these accounts. However, the Trustee never controlled and never had access to these accounts. Egan Decl. at 3, ¶ 18.

In April 2019, the Trustee commenced an adversary proceeding against Giga Watt's Chief Executive Officer, David Carlson, to avoid a transfer of one of the Debtor's facilities that he had caused Giga Watt to make to himself. The dispute

was resolved when Carlson released his claim to the facilities and paid other consideration. RJN Nos. 3 and 3.A.

In short, Giga Watt's management refused to cooperate. No one from Giga Watt's former management provided access to the Debtor's books and records. Egan Decl. at 4, ¶ 20.

In addition, Kuzenny caused Giga Watt to fraudulently transfer to himself all of Giga Watt's post-petition revenues before the Trustee was appointed, leaving the estate with $952.84 in the Debtor's bank account, RJN No. 4, and an unpaid electricity bill in the amount of $169,500.19. RNJ No. 4A; Egan Decl. at 3, ¶ 16. Because Kuzenny had not paid the electric bill, operations were at a standstill when the Trustee was appointed. RJN No. 4A. The foregoing further hampered the Trustee's investigation. Egan Decl. at 3, ¶ 16.

In 2019, the Trustee asked Perkins, through counsel, if Perkins had represented Giga Watt. Perkins replied in the negative. Egan Decl. at 4, ¶ 21. In subsequent communications between counsel, Perkins denied without qualification that it had represented Giga Watt. *Id.* These representations were false, as set forth below.

The Trustee's main source of information before he sued Perkins was email correspondence between Giga Watt and Wilson Sonsini Goodrich & Rosati ("Wilson Sonsini"), which had represented Giga Watt, GW Sg., and Cryptonomos

5

Pte. Ltd. ("Cryptonomos") in an investigation by the United States Securities and

Exchange Commission ("SEC") of Giga Watt's Initial Coin Offering ("GW ICO").

The Trustee also had access to approximately twelve (12) banker boxes of mostly

invoices. Egan Decl. at 4, ¶ 22.

The Wilson Sonsini emails showed that Perkins had improperly released

$22.3 million in WTT Token sales proceeds from its IOLTA trust account. Egan

Decl. at 4, ¶ 23. The WTT Tokens were, along with certain computers known as

miners, the "products" that Giga Watt, GW Sg., and Cryptonomos marketed and

sold in the GW ICO. *Id*. On November 19, 2020, the Trustee filed his complaint

("Complaint") against Perkins. 3-ER-364-385. The deadline to complete fact

discovery in the adversary proceeding against Perkins ("Adversary Proceeding")

was August 31, 2022. RJN No. 5.

In Spring 2022, the Trustee discovered that an e-discovery service provider,

Lighthouse, had imaged Giga Watt's emails and other documents for use in the

SEC investigation and was holding one terabyte of information about Giga Watt.

Working closely with Perkins, the Trustee obtained permission in May 2022 to pay

Lighthouse and an e-discovery service provider, Lexbe, to process and produce this

information. Egan Decl. at 5, ¶ 24; RJN No. 6. Perkins agreed to share part of the

expense for accessing the documents from Lighthouse. Perkins did not condition

its agreement to share expenses with the proviso that the Trustee could only use the

6

Lighthouse Documents if they helped Perkins. In light of the volume of the Lighthouse Documents, the parties agreed to suspend the deadlines in the Adversary Proceeding. Egan Decl. at 5, ¶ 25.

Lighthouse and Lexbe finished producing and processing the information in late July 2022. Egan Decl. at 5, ¶ 26. Upon review, it became apparent that Perkins' involvement with Giga Watt was different than Perkins had represented. Egan Decl. at 6, ¶ 27. After an initial round of discussions, Perkins made a supplemental discovery production showing correspondence between Perkins and Giga Watt in which Martha Sandoval, a Perkins partner, stated that she was not familiar with Giga Watt and that Perkins had not been involved in incorporating Giga Watt. Egan Decl. at 6, ¶ 28. This supplemental discovery packet omitted other correspondence in the Lighthouse Documents, including correspondence from Perkins' partner, Jean-Jacques Cabou, to the United States Secret Service ("USSS") telling the USSS that Perkins represented Giga Watt. Egan Decl. at 6, ¶ 28. *See* New Evidence Index, attached hereto as **Exhibit D** at, D33-D34, D56. [1] Cabou made this representation on the day that Perkins made the first

---

[1] **Exhibit D** includes an index matching the new evidence to the allegations in the proposed First Amended Complaint. It also includes copies of the new evidence as indexed.

7

Exhibit 2, Page 8 of 59

premature release of WTT Token sales proceeds from its IOLTA trust account in the amount of $5.4 million. Perkins does not dispute the timing or amount of the payments from the IOLTA trust account.

During further discussions with Perkins, Perkins stated that it would not object to an amended complaint based on the Lighthouse Documents. Perkins asked to see the amended complaint before it would agree to a new case schedule. However, it stated that it did not need to see the amended complaint before consenting to the amendment. Egan Decl. at 6, ¶ 29. Through counsel, the Trustee and Perkins informed the Bankruptcy Court of this arrangement at a status conference. RJN No. 7; Egan Decl. at 6, ¶ 29.

On September 8, 2022, the Trustee filed an amended complaint without a motion. RJN No. 8. The timing of this filing was dictated by certain discussions held pursuant to mediation discussions, which are in their infancy. Egan Decl. at 7, ¶ 31. After reading the amended complaint, Perkins stated that it would not consent to the filing of the amended complaint, because the amended complaint could potentially moot this appeal. Egan Decl. at 7, ¶ 32.

Meanwhile, the Trustee's review of the Lighthouse Documents continued and led to a fuller understanding of the enormous amount of new information contained in the Lighthouse Documents. Egan Decl. at 7, ¶ 33. It became clear that "the Russian team" had fleeced Giga Watt of both the WTT Token sales proceeds

Exhibit 2, Page 9 of 59

and of its operating revenues. *See* New Evidence Index, **Exhibit D**, D2 – D25, D37 – D49, D69 -D70, D74 – D88, D91 – D99. The WTT Token sales agreements were not entered into within the scope of any partnership with Giga Watt, as previously understood. They were instead a tortious device used to convert the WTT Token sales proceeds.

On September 25, 2022, this Court notified the parties that this appeal is currently scheduled for oral argument but that the panel may decide to submit the case on the briefs instead.

On September 26, 2022, the Trustee withdrew the amended complaint that he had filed on September 6, 2022, RJN No. 9, and filed a motion to amend the complaint, RJN No. 10, and supporting memorandum, RJN No. 10.A. The proposed First Amended Complaint, which includes the Trustee's latest understanding of the new evidence, is attached hereto as **Exhibit C**. The allegations in the proposed First Amended Complaint are incorporated herein by reference as if set forth fully herein. Attached as **Exhibit D** is an index correlating allegations in the proposed First Amended Complaint with a sampling of the new evidence.

On October 5, 2022, an Order was filed in the Adversary Proceeding setting a mediation for December 16, 2022. RJN No. 11.

## III.   ARGUMENT

### A.   Remand

Courts of appeal have the power to remand when necessary to ensure a complete record. In a nonbinding decision, this Court remanded the case of Rodriguez Vasquez for further consideration in light of information that was added to the record by this Court after motions practice. After finding that the new information could alter the Court's legal analysis, it held:

> Given this unique situation, we vacate the district court's order denying the TRO and remand for further proceedings. We instruct the district court to consider the new evidence presented in this appeal and any other evidence that may come to light since we first expanded the record. . . .

*Rodriguez Vasquez v. Wolf*, 830 Fed. Appx. 556, 557–58 (9th Cir. 2020). *See also Luke v. Family Care and Urgent Medical Clinics*, 246 Fed. Appx. 421, 424, 2007 WL 2461850, at *3 (9th Cir. 2007) (vacating district court order and remanding because it was not clear whether district court had considered supplemental evidence) (nonbinding). *See also Howell v. Superintendent Albion SCI*, 978 F.3d 54, 55 (3rd Cir. 2020) (in a habeas corpus proceeding, remanding "for an evidentiary hearing on [appellant's] new evidence, so that a more complete record can be developed."). *Cf. In re Kekauoha-Alisa*, 674 F.3d 1083, 1093 (9th Cir. 2012) (noting that "a necessary factual finding [was] absent" and remanding to bankruptcy court so that it could "make the proper requisite findings of fact").

10

Without the benefit of the Lighthouse Documents, the Trustee took at face value the White Paper's statements that Giga Watt and GW Sg. were partners. He believed Perkins' statements that it had not represented Giga Watt. The Lighthouse Documents allowed the Trustee to scratch the surface of these representations. They reveal a materially different case than the one shown by the current record. As a result, they alter the analysis in this case.

For example, this Court's decision in *Mundi* has newfound relevance. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009). *Mundi* holds that when a plaintiff's claims stand on their own without reliance on an arbitration agreement, then equitable estoppel does not apply. The attorney-client relationship supports just such a stand-alone claim against Perkins.

*Mundi* cites a Second Circuit case which also has newfound relevance: *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2nd Cir. 2008). In *Sokol Holdings*, the plaintiff alleged that the defendant had subverted the plaintiff's rights under an agreement which contained an arbitration clause. The defendant alleged that the claims against them had to be arbitrated. The Court called this argument a "mockery" and held that the plaintiff had not agreed to arbitrate the defendant's tortious conduct. *Id.* at 362. The same is true here. Giga Watt did not agree to arbitrate either GW Sg.'s or Perkins' tortious conduct.

11

In *Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d 748 (S.D.N.Y. 2019), certain lawyers settled a lawsuit that the lawyers had brought on behalf of their clients against their clients' employer. The settlement agreement contained an arbitration clause. Later, the client-employees learned that the lawyers had conspired with the employer to reduce the settlement amount. When the client-employees sued the lawyers, the lawyers moved to compel arbitration under the settlement agreement. The Court found that there was no unfairness in allowing the employees to argue that, while they had agreed to arbitrate claims with their employers, that agreement did not extend to an agreement to arbitrate their claims against their lawyers for having colluded with the employers. The settlement agreements were instruments of tortious behavior. They were the means by which the lawyers had cheated their clients. Under those circumstances, equity did not compel arbitration.

In this case, the WTT Token sales agreements were the means by which GW Sg. cheated Giga Watt. GW Sg.'s agreement to arbitrate claims with their defrauded WTT Token sales purchasers does not morph into an agreement by Giga Watt to arbitrate claims against Perkins for having helped GW Sg. to cheat Giga Watt.

Accordingly, the Trustee requests that the Court remand this appeal for further consideration in light of the new evidence.

12

## B.   Mootness

This Court has held that, "'[t]he test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot.'" *Service Employees Intern. Union v. National Union of Healthcare Workers*, 598 F.3d 1061, 1068 (9th Cir. 2010) (*quoting Garcia v. Lawn,* 805 F.2d 1400, 1402 (9th Cir.1986).

An order to compel arbitration, would not result in arbitration, which is Perkins requested relief, because the Trustee is no longer suing Perkins on the same claims. Perkins had an attorney-client relationship with Giga Watt which creates its own set of rights and obligations that stand alone from the WTT Token sales agreements. Furthermore, GW Sg. did not enter into the WTT Token sales agreements as Giga Watt's partner. GW Sg. used the WTT Token sales agreements to deprive Giga Watt of the WTT Token sales proceeds.

Accordingly, this appeal is moot.

## IV.   RESERVATION OF RIGHTS

By pointing out the new arguments that are relevant under the new evidence, the Trustee does not intend to waive and instead reserves all prior arguments. The new evidence included with **Exhibit D** of this Motion is representative and not complete. There is additional evidence supporting the Trustee's case.

13

## V.  CONCLUSION

Wherefore, the Trustee respectfully requests that the Court enter an Order:

1.  Vacating the District Court and Bankruptcy Court orders and

remanding for further consideration; or, in the alternative,

2.  Dismissing this appeal as moot; and

3.  Granting such other and further relief as the Court deems proper and

just.

DATED this 12th day of October 2022.

POTOMAC LAW GROUP PLLC

By:  *s/ Pamela M. Egan*

Pamela M. Egan (WSBA No. 54736)
*Attorneys for Mark D. Waldron,*
*Trustee, and Appellee*

14

Exhibit 2, Page 15 of 59

## CERTIFICATE OF COMPLIANCE WITH FRAP 27(d)(2)(A)

This Motion complies with the type-volume limitations of the Federal Rules of Appellate Procedure and the Rules of the United States Court of Appeals for the Ninth Circuit. According to the word-processing system used to type this Motion, this Motion contains 3,022 words, excluding the cover sheet, signature block, and this Certificate.

DATED this 12th day of October 2022.

POTOMAC LAW GROUP PLLC

By: ___*s/ Pamela M. Egan*___

Pamela M. Egan (WSBA No. 54736)
*Attorneys for Mark D. Waldron,*
*Trustee, and Appellee*

15

[Exhibits A through C of the Remand Motion are intentionally omitted]

# EXHIBIT D

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| 16 | On March 13, 2017, Carlson wrote to Taves and Field that there would be a delay in payment of the purchase price of the sale to Giga Watt, writing, "Investor feedback on the token is very positive, ***but continue to wait for Perkins Coie*** to finish their opinion letter so that we can launch the PR campaign[.]" (Emphasis added.) | Lighthouse 0098273 | D-1 |
| 22 | Carlson did not want to register the GW ICO with the SEC, which he referred to as "the eye of SECron" in an allusion to the embodiment of evil in The Lord of the Rings. | Lighthouse 0098273 | D-1 |
| 23 | He reasonably believed that Perkins was advising Giga Watt, through its engagement by Cryptonomos. At one point, he referred to their legal work as an effort to "productize" the WTT Token, by which he meant it would not be considered a security subject to the registration and other requirements of U.S. securities laws. | Lighthouse 0098273 | D-1 |
| 43 | . . . . Andrey Kuzenny authored emails pretending to be Pashentsev . . . . | Lighthouse 00939244, Lighthouse 0093721 | D-2 – D-3 |

1

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | Usmanov ghostwrote at least some of [Mikhaylyuta's] letters. | Lighthouse 05611452 - Lighthouse 05611453 | D-4 – D-5 |
| | GW Sg. had no shareholders agreement. | Lighthouse 0436495, Lighthouse 0436531 | D-6 – D-7 |
| | After December 2017, GW Sg. had no stable, reliable banking relationship anywhere. | Lighthouse 0616663 + Translation | D-8 – D-9 |
| 48 | Just as the GW ICO started, Andrey Kuzenny, Leonid Markin, and Eduard Khaptakhaev installed Usmanov at Giga Watt as its Chief Financial Officer ("CFO"). | Lighthouse 0783513, Lighthouse 0317472 | D-10 – D-11 |
| | From May 2017 until November or December 2017 when Giga Watt began paying his salary, Usmanov received his compensation in the form of wire transfers to his bank account in Latvia and cash payments. Kuzenny and Cryptonomos made these payments. He has not reported them to the United States Internal Revenue Service. | Email without Bastes Stamp + Lighthouse 0319832 | D-12 – D-14 |

2

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| 56 | On July 27, 2017, Carlson met with a corporate attorney at Perkins, Martha Sandoval ("Sandoval"), seeking advice regarding Giga Watt and its relationship with GW Sg. . . . . | Lighthouse 0960100, Lighthouse 0300998 – Lighthouse 0300999, Lighthouse 0784997 – Lighthouse 0784999 | D-15 – D-20 |
| 57 | In preparation for that meeting, Michael Olmstead ("Olmstead"), Giga Watt's accountant, wrote to Sandoval that they needed advice regarding the treatment of Giga Watt's revenues "both internally and for tax purposes." | Lighthouse 0300998 | D-16 |
| 58 | This meeting upset Usmanov. He wrote multiple drafts of a letter to Carlson for Leonid Markin's signature. | Lighthouse 0303891; Lighthouse 0303984 – Lighthouse 0303985 | D-21 – D-23 |
| | On July 28, 2017, Leonid Markin, sent an email to Carlson telling him to accept Usmanov's authority and "change [his] attitude." | Lighthouse 0317472 | D-24 |
| | After this point, Usmanov took over the relationship with Perkins. | Lighthouse 0331053 | D-25 |

3

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| 64 | That same day, August 7, 2017, Sandoval wrote to Olmstead, Giga Watt's sole in-house accountant, that Perkins had not worked on Giga Watt's incorporation, and that before the July 2017 meeting, she had not been familiar with Giga Watt. It was not listed in Perkins' database as a client. | Lighthouse 0337879 | D-26 |
| 65 | The same day, August 7, 2017, Usmanov sent an email to Ness with the subject line, "need your advice." The body of the email stated: Hi Lowell [Ness], My name is Tim, I'm the CFO at Giga Watt, Inc. ***Katrina referred to you as a main contact person who I could speak with on all our legal matters***. Several days ago we received an email supposedly sent by the U.S. Secret Service, asking us to share some sensitive information. Please find below a copy of this email. (Emphasis added.) | Lighthouse 0337991 – Lighthouse 0337992 | D-27 – D-28 |

4

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | Ness promptly directed Usmanov to Jean-Jacques Cabou ("Cabou"), Ness' partner, who responded:<br><br>I share your skepticism but it also bears some indicia of legitimacy to me. I'd be happy to return the call if you'd like; otherwise there's no harm in returning the call and saying you are trying to confirm the legitimacy of the request before consulting with counsel about providing any information. Don't give anything up yet; see what the guy says [END] | Lighthouse 0338115 | D-29 |
| 66 | Usmanov responded:<br><br>Agree with you. Would be great if you gave them a call on our behalf. Your voice will sound more persuasive. At least you will find the right questions to ask. | Lighthouse 0338115 | D-29 |
| 68 | That same day, August 8, 2017, at 8:19 a.m., Ronan McGee of the USSS wrote to Ness:<br><br>Good morning Lowell,<br><br>The U.S. Secret Service has an ongoing investigation in which a suspect's phone received a confirmation code | Lighthouse 0338814 | D-30 |

5

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | from Cryptonomos. We believe the confirmation code to be related to the mining operations of the Cryptonomos / Giga Watt venture. We are interested in obtaining any and all information Cryptonomos / Giga Watt maintains on file for this specific phone number, particularly any bitcoin addresses. <br><br> We have attempted to contacted [sic] Cryptonomos directly multiple times, but they have thus far failed to respond to our inquiries. ***Our understanding is that you are the legal representative of Giga Watt***. <br><br> As a result, could you please provide the appropriate Grand Jury subpoena contact information (e.g. physical address to include on the subpoena, email to which subpoena can be served, etc) for Cryptonomos / Giga Watt so that we may subpoena the information in question? <br><br> (Emphasis added.) (Punctuation in the original.) | | |

6

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| 69 | Less than an hour later, on August 8, 2017, Cabou responded:<br><br>Ronan and Team,<br><br>It was a pleasure to speak with Ronan briefly just now regarding this email that was directed to my partner, Lowell Ness, who is also copied here. As I explained to Ronan, *our firm represents Giga Watt* and I can accept service of a subpoena by email on its behalf. Please just send that to me.<br><br>We understand that the USSS and state authorities have reason to believe Giga Watt may hold certain records relevant to your investigation. Once we get the subpoena, we will work with the client to determine what if any responsive records we have and to produce them to you in a timely and convenient way.<br><br>Please let me know if you have any questions.<br><br>We look forward to working with you.<br><br>(Emphasis added.). | Lighthouse 036553 – Lighthouse 036559<br><br>Pin cite: Lighthouse 0365558 | D-56<br><br>[pagination intentionally out of order] |

7

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| 70 | Cabou forwarded the email to Ness and Usmanov adding the following:<br><br>Lowell and Tim,<br><br>I spoke just now with Ronan McGee, an intelligence analyst for the USSS. He confirmed this was a legit request and will be sending a subpoena from the US District Court in Kentucky for the records they want. I have asked that the subpoena be directed to me, as you can see below. McGee confirmed that GW is just a holder of information here, not a target or subject of the investigation.<br><br>So the play here is for us to be cooperative as long as possible, see what they want, and then get it to them if we have it. One thing I'd like to do is to review whatever agreement(s) or terms we would have with the individual in question to ensure that we have no self-imposed obligation to notify them of the subpoena.<br><br>Obviously[,] I'd be happy to talk about any of this at your convenience. | Lighthouse 0363964 – Lighthouse 0363969<br><br><br><br>Pin cite: Lighthouse 0363966 – Lighthouse 0363967 | D-31 – D-36<br><br><br><br>D-33 – D-34 |

8

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| 71 | Thus, on the day that Perkins made the first premature escrow release, Perkins represented Giga Watt "on all legal matters," | Lighthouse 0337991 – Lighthouse 0337992 | D-27 |
| | confirmed to the USSS that Perkins represented Giga Watt, | Lighthouse 0365558 | D-56 |
| | and provided legal advice to Giga Watt. | Lighthouse 0363966 – Lighthouse 0363967 | D-33 |
| 73 | That same day, August 9, 2017, Kuzenny wrote to Al Mafia, "***Our lawyers*** are in a panic at your letter that you addressed. Honestly. You know how they relate to the word mafia here in America (( Let me better send you dox from them." (Emphasis added.) (Punctuation and parentheses in original.) | Lighthouse 0343738 + Translation | D-37 – D-38 |
| 74 | On August 9, 2017, Carlson followed up with Sandoval regarding their July meeting, referring to the issues they discussed as the "project orientation checkup." In this email he wrote that Perkins should scrutinize Giga Watt and GW Sg.'s relationship, analyze whether it makes sense, and familiarize itself with Giga Watt's business. Addressing | Lighthouse 0338758 | D-39 |

9

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | Sandoval and Khaptakhaev, he wrote:<br><br>Thanks for the clarity[,] Martha.<br><br>Ed - we met with Perkins week before last and did a project orientation checkup with Martha. I wasn't clear what Perkins had been involved with versus the guidance given by Katrina [Grant].<br><br>Its clear that at this point that the corp[.] structure (Giga.sg and Giga.us) and their relationship were [sic] defined by Katrina with perhaps some input by Perkins, but not at their specific direction.<br><br>I think we need to determine if we are comfortable with our current arrangement, or do we want Perkins to dig into how we are doing business and what the entity structure consists of. Further, we may need Perkins to evaluate whether the legal protection and tax/revenue strategies implied by this corp structure are effective and achieve our goals.<br><br>We've built a lot of business | | |

10

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | based on the structure Katrina defined, and perhaps you guys are familiar and comfortable with it - I'm asking you for your feedback on whether to engage Perkins to audit our structure and build us a robust plan going forward. At this point I think its [sic] fair to say that Perkins knows *very little* about our business, with the exception of the two entities and a proposed third entity (Hosting).<br><br>Your thoughts? Thanks! Dave | | |
| 75 | Carlson copied Markin, Kuzenny, and Usmanov on the foregoing email. | Lighthouse 0338758 | D-39 |
| 76 | On August 9, 2017, Usmanov wrote to Sandoval:<br><br>I totally agree with Dave. We would need to ask Perkins Coie to audit our structure and provide advice and assistance.<br><br>Martha didn't mention GW One LLC as a company that is also under our umbrella. Apparently, we would have to set up a call and talk through the entire group and bring Martha up to speed on our M&A plans. We definitely need a legal advice on the upcoming merger with | Lighthouse 0344286 | D-40 |

11

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | Hashplex as there are few things I'm not clear about.<br><br>As for the constitutional dox requested by Martha - please find attached some of the documents on Giga Watt, Inc that I've got as of today. As you can see the Articles of Incorp doesn't contain articles per se, but only a title page.<br><br>In view of the above, I suggest that Perkins Coie also reach out to Washington Secretary of State to check with them whether or not the initial filing was complete. Same goes for our Singapore entities. Someone would probably need to request the full batch of documents via the registered agent.<br><br>As far as SHA [Shareholder Agreement] is concerned - I believe this is still being drafted and discussed amongst the shareholders. | | |
| 77 | On or about August 11, 2017, Kuzenny received unwelcome news. GW Sg.'s bank, the Overseas Chinese Banking Corporation ("OCBC") asked him to explain the $1.95 million that GW Sg. had deposited into the Perkins IOLTA Trust | Lighthouse 0444397 – Lighthouse 044398<br><br>Pin cite 0444398 | D-41 – D-42 |

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | Account and about which Perkins had asked no questions. . . . | | |
| 78 | On or about the same day, OCBC also asked Kuzenny to explain the $5.4 million that Perkins had transferred to GW Sg. from the Perkins IOLTA trust account. . . . | Lighthouse 0436197 – Lighthouse 0436198 Pin cite 0444398 | D-43 – D-44 |
| 79 | Unable to tell the truth without risking losing the account, Kuzenny and Usmanov dissembled, stating falsely that the $1.95 million transfer was akin to an "inter-company transfer" between GW Sg. and Perkins, | Lighthouse 0436192 + Translation | D-43 – D44 |
| | and that the $5.4 million transfer was for "completed construction." | Lighthouse 0436196 + Translation | D-45 – D-46 |
| | They also said that the funds were for a "pre-sale," although this was unsubstantiated and irrelevant. | Lighthouse 0444397 – Lighthouse 0444399 Pin cite: Lighthouse 0444398 | D-47 – D-49 |

13

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| 80 | On August 14, 2017, Usmanov followed up with Cabou regarding the grand jury subpoena. He included a message that the USSS had sent to Nikolay Evdokimov on August 7, 2017. . . . | Lighthouse 0363964 | D-50 |
| 81 | In the foregoing email, dated August 14, 2017, Usmanov asked Cabou:<br><br>Could you provide some more information of what you are discussing with them? Would you also share that subpoena with us, please? Any steps from our end required? | Lighthouse 0365553-Lighthouse 0365559<br><br>Pin cite: Lighthouse 0365554 | D-52 |
| 82 | Cabou responded:<br><br>Tim, Thanks for your note. To be clear, I have an open line of communication with the USSS but I have NOT shared or discussed any substance at all with them. I have simply said we want to assist and will accept service of a subpoena to me by email.<br><br>They have confirmed they are still obtaining the subpoena and will be in further touch.<br><br>Nothing to do for now at all. Best J | Lighthouse 0365553 | D-51 |

14

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| 84 | On August 17, 2017, Cabou forwarded the grand jury subpoena to Usmanov with Ness copied, "Attached is the subpoena I just received. We need to have a call to discuss next steps. When can you and/or your team have that call with me." | Lighthouse 0365627 with attached redacted subpoena which does not have a Bates Stamp No. | D-58 – D-65 |
| 85 | Usmanov responded, "I'm ready to talk whenever you are." | Lighthouse 0366076 | D-66 |
| | Shortly thereafter, Cabou wrote to Usmanov with a copy to Ness: Tim, Good to speak with you just now. As we discussed, you and your team will conduct a diligent search for all records responsive to the subpoena and will get any such records to me for review. Once that's done, we will work with you to complete the waiver and declaration forms and we will get those to the USSS for you. Look forward to hearing from you[.] | Lighthouse 0366096 | D-67 |
| 86 | On August 18, 2017, Usmanov described to Perkins the steps that the Romanian suspect had taken on Cryptonomos' website. | Lighthouse 0375500 | D-68 |

15

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| 88 | On August 22, 2017, Usmanov wrote to Cabou again, "Hi J, Here is the name that this guy used when creating a profile on the website. Popescu Bogdan Stefan[.]" | Lighthouse 0375500 | D-68 |
| 89 | On August 22, 2017, Sandoval wrote to Usmanov that Giga Watt lacked signed bylaws and that she needed more information regarding "the Singapore entity." Usmanov responded, "I'll try to find that out later on [re the Singapore entity]. Meanwhile, *let's focus on our U.S. entities*." (Emphasis added.) He thus drew attention away from the Singapore paper façade. | Lighthouse 0377506 – Lighthouse 0377507<br><br>Pin cite: Lighthouse 0377507 | D-69 – D-70 |
| 90 | Over the next few days, Cabou nagged, cajoled, and guided Usmanov through the steps necessary to comply with the USSS subpoena. For example, on September 4, 2017, Cabou wrote to Usmanov and Giga Watt's Chief Operating Officer, Anton Orlov ("Orlov"), with a copy to Ness:<br><br>Guys,<br><br>This is urgent and frustrating. I have gotten no response to the below.<br><br>Our deadline to provide | Lighthouse 0401369 | D-71 |

16

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | documents is September 7. I MUST, WITHOUT EXCEPTION, have all documents to be produced by tomorrow. So far, I have only one file to produce. That clearly isn't enough, as explained below.<br><br>I also need the waiver and certification attached completed and returned to me tomorrow. We are under court order here. We cannot miss this deadline. Please let me know what is happening. [Caps in original.] | | |
| 92 | On September 5, 2017, Usmanov asked Cabou to confirm that what he and Orlov had cobbled together "is enough." Cabou responded, "Yes. Thank you. I will look forward to getting the waiver and certification." | Lighthouse 0402396 | D-72 |
| 93 | On September 5, 2017, Usmanov wrote to Carlson regarding the USSS subpoena, "You, as the CEO, just need ot [sic] sign the waiver and the certification." | Lighthouse 0402900 | D-73 |

17

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | That same day, September 5, 2017, Zeev Kirsh ("Kirsh"), a New York-licensed lawyer who advised Giga Watt, Gw. Sg., and Cryptonomos, wrote to Usmanov with a copy to Carlson regarding the waiver and certification for the grand jury subpoena responses, "i filled out the form stuff on pages 5 and 7. Dave, all you need ot [sic] do isput [sic] down 2 signatures one at the bottom of each page. This needs to be sent out within 2 days by Perkins." | Lighthouse 0403095 | D-74 |
| | Carlson signed the waiver and certification as the CEO of Giga Watt. | Lighthouse 0404173 - Lighthouse 0404180<br><br>Pin cite: Lighthouse 0404178 – Lighthouse 0404180 | D-75 – D-82 |
| 94 | On September 5, 2017, Olmstead, the sole accountant at Giga Watt, learned that Giga Watt no longer had control of or even access to Giga Watt's cryptocurrency revenue wallets. A wall had been erected between Giga Watt and its revenues. | Lighthouse 0407114 | D-83 |

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
|  | Cryptonomos controlled Giga Watt's revenues from this point forward. According to Usmanov's emails, Olesia Egozina, the Chief Product Officer of Cryptonomos, controlled information regarding the wallet. Although Giga Watt reported approximately $1 million in revenue in its 2017 federal tax return, that number was provided to Usmanov by Cryptonomos and by his own admission, Usmanov did not verify the number. | Lighthouse 0641375 | D-84 |
| 95 | On September 12, 2017, Sandoval wrote to Usmanov regarding Giga Watt's formation documents:<br><br>o Bylaws and other Incorporation Steps<br><br>☐ You passed along an action by the incorporator dated 12/16/16.<br><br>In this action, the incorporator:<br><br>• adopted the bylaws;<br><br>• stated that the company would have 1 director; and<br><br>• appointed Nikolay Evdokimov as the sole director • | Lighthouse 413433 – Lighthouse 413435<br><br>Pin cite: Lighthouse 413434 – Lighthouse 413535 | D-85 – D-87<br><br>D-86 – D-87 |

19

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | Of these 3 acts taken by the incorporator, the incorporator only has statutory authority to adopt the bylaws and set the number of directors.<br><br>☐ Inconsistent with the 12/16/16 incorporator action, in the 1/1/2017 Minutes of the Special Meeting of the Board of Directors, Adam West is identified as (and acted as) the sole director.<br><br>In this meeting, the following officers were appointed:<br><br> • CEO: David M. Carlson<br><br> • President: Nikolay Evdokimov<br><br> • CFO: Leonid Markin<br><br> • Secretary: Adam West<br><br>o Steps to be taken are<br><br> • Client: Provide the identity (identities) of the company's board of directors<br><br> • Client: Provide the identity of the company's officer (are those listed above, correct?; are there other officers?) | | |

20

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | • Client: Provide capitalization table (or breakdown of share ownership) | | |
| | • Client: Provide input on desired number of authorized shares (post stock split) | | |
| | • Perkins: Prepare a shareholder action in which the director(s) are appointed (and other incorporator actions) | | |
| | • Perkins: Prepare the organizational actions to be approved by a company's board of directors | | |
| | • Perkins: Order governing documents from WA Secretary of State's Office and amend and restate articles of incorporation | | |
| 97 | On a similar topic, on September 22, 2017, Kirsh wrote to Carlson, "you are very right, we have serious problems in gW inc, gw singapore and even in Cryptonomos. all these companies need shareholder agreements." (Punctuation and typographical errors in original.) | Lighthouse 0436495 | D-88 |
| 98 | Carlson wrote back to Kirsh: Not surprising honestly. | Lighthouse 0436495 | D-88 |

21

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | In any case I don't see why we can't execute a shareholders agreement to at least nail it down legally. It's a lot to ask for us to continue operating as if it is in place, when technically it's never been executed.<br><br>We can amend later if needs be...<br><br>Cheers, and thanks for the copy of the bylaws. I'll get them to the PUD.<br><br>There were never signed bylaws and they never nailed down the shareholders agreement. | | |
| 100 | On September 26, 2017, Cabou continued to advise Giga Watt with respect to the grand jury subpoena, "This has been taken care of. Please do not contact USSS further. They will let us know if they have questions." | Lighthouse 0446420 - Lighthouse 0446421 | D-89 – D90 |
| 101 | On October 6, 2017, Usmanov wrote to Sandoval:<br><br>Sorry for the delay. Our colleagues has [sic] been traaveling [sic] a lot lately, so it was hard to get all together.<br><br>Regarding GW Management, LLC, Giga Pod 1-100, LLC, | Lighthouse 0472220 | D-91 |

22

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | and Mine Building, LLC - actually<br><br>I've never heard these entities were duly established. Let me ask you where you heard of them .<br><br>Anyways, like I mentioned earlier in our previous correspondences, ***let's focus first on Giga Watt, Inc. as this is our main operating vehicle***.<br><br>(Emphasis added). | | |
| 102 | . . . . The OCBC asked GW Sg. to explain this payment [\$3.3 million]. Usmanov and Kuzenny used the exact same language as before stating that the funds were proceeds from the GW ICO "pre-sale," a statement that was both unsubstantiated and irrelevant. OCBC was asking about the source of these funds. . . . | Lighthouse 0515050 – Lighthouse 0515052 | D-92 – D94 |
| 103 | On December 4, 2017, GW Sg. lost its OCBC banking privileges. | Lighthouse 0526200 – Lighthouse 0526201 | D-95 – D-96 |
| 104 | On December 5, 2017, Usmanov wrote to AA1 Solutions, "Most probably we will have to release some funds from escrow later this week. So we'd definitely need a USD [U.S. dollar | Lighthouse 0546368 | D-97 |

23

INDEX TO REPRESENTATIVE SAMPLING OF NEW EVIDENCE
*Mark D. Waldron v. Perkins Coie LLP, et al.*, No. 22-35104

| FIRST AMENDED COMPLAINT PARAGRAPH | FIRST AMENDED COMPLAINT ALLEGATION | BATES No. | Page No. |
|---|---|---|---|
| | denominated] account to land the money." (Emphasis added.) | | |
| 107 | On December 18, 2017, Usmanov drafted what would become the text of an email request to Perkins, ostensibly from Mikhaylyuta, to release $2 million from the escrow to Giga Watt. [Translation in boxes.] | Lighthouse 0561452 | D-98 |
| 109 | On December 22, 2017, Usmanov ghost wrote another escrow release request to Perkins, this time requesting that $4.5 million be sent to Giga Watt. | Lighthouse 0567262 | D-99 |

"

24

| | |
|---|---|
| **From:** | "Dave Carlson" <dave@giga-watt.com> |
| **Sent:** | Mon, 13 Mar 2017 16:11:41 +0000 |
| **To:** | "Rob Taves" <taves.rob@gmail.com> |
| **Subject:** | Re: Delayed payments for MBP acquisition |

Thanks, I'll keep you informed of our progress...

We've signed a deal with the PUD for 30MW, and another deal with the Port for 8 acres to build the pod farm. Investor feedback on the token is very positive, but we continue to wait for Perkins Coie to finish their opinion letter so that we can launch the PR campaign.

Deal with BitFury is also 99% done. They are getting a big piece of equity for very little cash, but just about everything else we need such as equipment supply, co-branding, engineering support for our pool, marketing & sales support for our token, etc.

Should get interesting real soon!

Oh, and we are finally pursuing the operator-partner(franchise) program, so check your power price!

Cheers
Dave

On Fri, Mar 10, 2017 at 11:20 PM, Rob Taves <taves.rob@gmail.com> wrote:
  Here's the signed doc.

  Cheers,
  Rob

  On Fri, Mar 10, 2017 at 1:51 PM, Dave Carlson <dave@giga-watt.com> wrote:
  Sorry buddy, here's the doc


  ---------- Forwarded message ----------
  From: **Dave Carlson** <dave@giga-watt.com>
  Date: Thu, Mar 9, 2017 at 5:33 PM
  Subject: Delayed payments for MBP acquisition
  To: rob.taves@gmail.com, "field. jeffreya" <field.jeffreya@gmail.com>


  Guys, we've had some delays getting the token launched, mainly due to the legal process required to allow us to sell our tokens to non accredited investors in the US and Europe. In order to avoid the Great Eye of SECron, we have to productize the offer, and this has taken time.

  Buyer proposes to delay payments but I asked for a peg of the btc price at the payment date as if they did pay on time in BTC.

**Exhibit D**

Lighthouse 0098273

| From: | "ak@giga-watt.com" <ak@giga-watt.com> |
|---|---|
| Sent: | Mon, 27 Feb 2017 19:09:26 +0000 |
| To: | "webform@paypal.com.sg" <webform@paypal.com.sg> |
| Subject: | Re: Questions About PayPal Fees VV44REXSG (KMM242755085V22217L0KM) |
| :ppNA | |

Dear Sirs,
How can I make my account eligible for mass payment?
What is the fees for mass payment?

Best regards,
Sergey

От 27 февраля 2017 г. в 20:04:19, webform@paypal.com.sg (webform@paypal.com.sg) написал:

Dear Pashentsev Sergey,

Thanks for contacting us. Based on the categories you've selected, the following FAQs may assist you faster than we can.

If these FAQs don't answer your question, please reply to this email with as much information as possible to help us assist you better.

**A) What fees does PayPal charge and how do I view these fees?**
**B) Why do you charge a verification fee when I link and confirm my card?**
**C) Are there any fees to top up my PayPal account?**

Don't worry. These links won't redirect you to another webpage.

Yours sincerely,
PayPal

**A. What fees does PayPal charge and how do I view these fees?**

Our fees are the same for all accounts – Personal, Premier, and Business. We charge fees only when you receive payments for the sale of goods or services.

Transaction fees can range from 2.9% to 3.9% + $0.50 SGD. If you receive a payment for goods or services from outside your country, you're charged an additional 0.5% cross-border fee.

There is no fee when you pay for a purchase or when you use your PayPal balance to make a payment for goods or services.

To learn more about PayPal fees, simply click **Fees** at the bottom of any PayPal page. You can also click **Legal** at the bottom of any PayPal page to view a list of all our fees.

To view the fees that was applied to any of your transactions, log in to your PayPal account and click **Activity** near the top of the page. Find and click on the transaction you want to check.

**Exhibit D**

| | |
|---|---|
| **From:** | "service@paypal.com.sg" <service@paypal.com.sg> |
| **Sent:** | Mon, 27 Feb 2017 16:56:33 +0000 |
| **To:** | "Pashentsev Sergey" <ak@giga-watt.com> |
| **Subject:** | You received $30.00 SGD from Alexandr Komissarov |

Hello Gigawatt Pte. Ltd

# Alexandr Komissarov sent you $30.00 SGD.

## Transaction Details

Transaction
ID: 0EH72516DW712364D

28 February 2017

Payment amount received

$30.00 SGD

Fee                    $1.82 SGD

Exhibit D

D - 3

| | |
|---|---|
| **From:** | "Timur Usmanov" <tu@giga-watt.com> |
| **Sent:** | Mon, 18 Dec 2017 22:07:56 +0000 |
| **To:** | "Andrey Kuzenny" <ak@giga-watt.com> |
| **Subject:** | Re: letter to Perkins |

добавил

Dear Sir or Madam,

This is to inform you that according to our construction schedule we have put into
operation new power facilities for a total of 5 GW. Therefore we kindly ask you to
release $2,000,000 (two million US dollars) from the escrow account in favor of
Giga Watt, Inc.

Please arrange a wire transfer of immediately available funds as per the below
instructions:

**Beneficiary Bank Information**

NUMERICA CREDIT UNION
14610 EAST SPRAGUE AVENUE
SPOKANE VALLEY, WA 99216
UNITED STATES

Account No: 10087259200100
ROUTING NUMBER: 325182690

**Beneficiary Information**
GIGA WATT, INC
1 CAMPBELL PKWY
EAST WENATCHEE
WA 98802

**Please add a memo as follows: On behalf of Giga Watt PTE. LTD**

Thank you.

On Mon, Dec 18, 2017 at 1:19 PM, Andrey Kuzenny <ak@giga-watt.com> wrote:
Ты не написал про референс, что указать?

Best Regards,
Andrey Kuzenny

18 дек. 2017 г., 12:57 -0800, Timur Usmanov , писал:

Exhibit D

D - 4

Lighthouse 0561452

Dear Sir or Madam,

This is to inform you that according to our construction schedule we have put into operation new power facilities for a total of 5 GW. Therefore we kindly ask you to release $2,000,000 (two million US dollars) from the escrow account in favor of Giga Watt, Inc.

Please arrange a wire transfer of immediately available funds as per the below instructions:

**Beneficiary Bank Information**

NUMERICA CREDIT UNION
14610 EAST SPRAGUE AVENUE
SPOKANE VALLEY, WA 99216
UNITED STATES

Account No: 10087259200100
ROUTING NUMBER: 325182690

**Beneficiary Information**
GIGA WATT, INC
1 CAMPBELL PKWY
EAST WENATCHEE
WA 98802

Thank you.
--

Best,

Tim Usmanov

--
Best,

Tim Usmanov

Exhibit D

**From:**      "Dave Carlson" <dave@giga-watt.com>
**Sent:**      Fri, 22 Sep 2017 17:02:16 +0000
**To:**        "Zeev Kirsh" <zeev@cryptonomos.com>
**Subject:**   Re: shareholder agreement

Not surprising honestly.
In any case I don't see why we can't execute a shareholders agreement to at least nail it down legally.  It's a lot to ask for us to continue operating as if it is in place, when technically it's never been executed.
We can amend later if needs be...

Cheers, and thanks for the copy of the bylaws.  I'll get them to the PUD.

Dave

On Sep 22, 2017 9:58 AM, "Zeev Kirsh" <zeev@cryptonomos.com> wrote:
you are very right, we have serious problems in gW inc, gw singapore and even in cryptonomos. all these companies need shareholder agreements.

here is the information i have that may be of use to you right now. but yes, there are bigger things we must do later, in particular penn down an official shareholder agreement and change the bylaws. frankly, the company has hired perkins coie and I don't like them because they have an entitled attitude and do subpar work for clients that aren't overpaying them constantly with a promise of becoming a facebook style client.

they emailed about the bylaws and have done nothign since. also, their emails were not particularly helpful and there was a lot of verbiage meant to waste time. typical of large law firms billing by the hour. i worked in them for years.....
zeev

**Exhibit D**

**From:** "Zeev Kirsh" <zeev@cryptonomos.com>
**Sent:** Fri, 22 Sep 2017 17:08:01 +0000
**To:** "Dave Carlson" <dave@giga-watt.com>
**Subject:** Re: shareholder agreement

we will have a executive level committee meeting of everyone by conference call so everyone ,
even evdokimov , everyone gets to have input. i think thats extremely important to do at some
point relatively soon. i'lll try to organize that but it won't be tooo easy.
zeev

On Fri, Sep 22, 2017 at 10:02 AM, Dave Carlson <dave@giga-watt.com> wrote:
Not surprising honestly.
In any case I don't see why we can't execute a shareholders agreement to at least nail it down
legally. It's a lot to ask for us to continue operating as if it is in place, when technically it's
never been executed.
We can amend later if needs be...

Cheers, and thanks for the copy of the bylaws. I'll get them to the PUD.

Dave

On Sep 22, 2017 9:58 AM, "Zeev Kirsh" <zeev@cryptonomos.com> wrote:
you are very right, we have serious problems in gW inc, gw singapore and even in
cryptonomos. all these companies need shareholder agreements.

here is the information i have that may be of use to you right now. but yes, there are bigger
things we must do later, in particular penn down an official shareholder agreement and
change the bylaws. frankly, the company has hired perkins coie and I don't like them
because they have an entitled attitude and do subpar work for clients that aren't overpaying
them constantly with a promise of becoming a facebook style client.

they emailed about the bylaws and have done nothign since. also, their emails were not
particularly helpful and there was a lot of verbiage meant to waste time. typical of large law
firms billing by the hour. i worked in them for years.....
zeev

**Exhibit D**

**From:** "Timur Usmanov" <tu@giga-watt.com>
**Sent:** Tue, 23 Jan 2018 09:25:24 +0000
**To:** "Angela Junkina" <angela@aa1solutions.com>; "Ekaterina Murko" <kate@aa1solutions.com>
**Cc:** "Andrey Kuzenny" <ak@giga-watt.com>
**Subject:** various

Анжела, добрый день.

Так и не получил от вас engagement letter на оговорённый скоуп работ.

Также хотел уточнить, есть ли новости от Чешского банка. Что-то Eurostandard Bank не совсем, мягко говоря, отвечает нашим требованиям - i) отсутствует поддержка на англ языке, ii) долго тянут с зачислением средств на счёт, iii) до сих пор не понятно, как можно сделать wire transfer онлайн.
Предлагают отправлять платёжное поручение по email. Немного диковато такое слышать в 21-м веке.

Как ранее обсуждали, вышлите, пожалуйста, мне по email полный пакет уставных апостилированных док-ов с переводом на англ язык.
Я так понимаю, что в пакет должны входить и cert of good standing и cert. of incumbency.

Спасибо.

--
Best,

Tim Usmanov

Exhibit D

TRANSLATION OF D4A

Angela, good afternoon.

I have not received an engagement letter from you for the agreed scope of work.

I also wanted to clarify if there is any news from the Czech Bank. Something[,] Eurostandard Bank does not quite, to put it mildly, meet our requirements - i) there is no support in English, ii) it takes a long time to transfer funds to the account, iii) it is still not clear how you can make a wire transfer online.
They offer to send a payment order by email. It's a bit wild to hear this in the 21st century.

As discussed earlier, please send me by email a complete package of statutory apostilled docs with a translation into English.
I understand that the package should include both a cert of good standing and a cert. of incumbency.

Thanks.

--
Best,

Tim Usmanov

Exhibit D

| | |
|---|---|
| **From:** | "Drew" <drew@giga-watt.com> |
| **Sent:** | Thu, 3 May 2018 01:12:36 +0000 |
| **To:** | "Timur Usmanov" <tu@giga-watt.com> |
| **Cc:** | "2011olympus@gmail.com" <2011olympus@gmail.com> |
| **Subject:** | Re: Tim Usmanov |

Greetings Mr. Moon,

I look forward to meeting with you and discussing more about Giga-Watt and your plans moving forward. I have availability between 10:30-12:00pm tomorrow.

Does this work for you?

On Wed, May 2, 2018 at 5:37 PM, Timur Usmanov <tu@giga-watt.com> wrote:
Mr. Moon,

Please meet our VIP account manager Drew.
Drew is up to speed on our current sales strategy and will gladly talk to you provide some more details.

Please feel free to discuss what time works best for you to meet up tomorrow.


Thank you



Best,

Tim Usmanov


--
**Drew Behrens**
Account Manager, Giga Watt, Inc.
drew@giga-watt.com | www.giga-watt.com | 1 Campbell Parkway, East Wenatchee WA 98802

NOTICE: This electronic mail message and any files transmitted with it are intended exclusively for the individual or entity to which it is addressed. The message, together with any attachment, may contain confidential and/or privileged information. Any unauthorized review, use, printing, saving, copying, disclosure or distribution is strictly prohibited. If you have received this message in error, please immediately advise the sender by reply email and delete all copies.

**Exhibit D**

| From: | "Leonid Markin" <lm@cryptonomos.com> |
|---|---|
| Sent: | Fri, 28 Jul 2017 22:35:43 +0000 |
| To: | "Dave Carlson" <dave@giga-watt.com> |
| Cc: | "Andrey Kuzenny" <ak@giga-watt.com> |
| Subject: | Re: follow up |

Hi Dave,

I saw the exchange of emails between you and Tim. Don't take it too literally.
Looks like Tim just returned the favour after you expressly wrote that you'd expected him to move to his next project, meaning you didn't consider him to be our permanent CFO. Having read your email he just had to reciprocate. So I think you guys were both overhasty.

Dave, I want to make it clear. You are our CEO, and Tim is our CFO.
I'm sure that Tim is doing everything in the best interest of the company. Among other things, this is up to CFO to decide how to run financial affairs. Finally, it was the shareholders who put him in charge of clearing up the financials, and I don't really understand why you don't want to collaborate. Neither do I understand why Mike and Sinden remain silent and don't respond to Tim's emails. Guys, you didn't even email him back on his request to provide the precise time and location for the meeting with Perkins Coie. I'm really upset about that. Tim should have been there.
Dave, I hope that you reconsider your attitude and talk to Mike and Sinden and whoever else you think might be useful and supportive with regard to disclosing and providing the requested information/documentation.

Regards

2017-07-25 20:49 GMT-07:00 Dave Carlson <dave@giga-watt.com>:
> "Maybe the guys will convene an extraordinary meeting to appoint CFO and CEO."

> This was a wierd thing to say - can you guys give me a comment on what Tim is referring to?

> Thanks

> On Tue, Jul 25, 2017 at 3:39 PM, Timur Usmanov <tu@giga-watt.com> wrote:
> If this is an actual CPA, we sure can have an outsourced one.

>> As far as the company's financial affairs are concerned, let's leave it up to Andrey and Leo to decide who is going to handle that. Maybe the guys will convene an extraordinary meeting to appoint CFO and CEO.

>> On Tue, Jul 25, 2017 at 12:50 PM, Dave Carlson <dave@giga-watt.com> wrote:
>> Beth was helping us as a local service provider when we were a very small business. Her role was always meant to transition to a dedicated CPA, once we could afford it. Obviously that time is now.

Exhibit D

**Pamela M. Egan**

| | |
|---|---|
| **From:** | Timur Usmanov <tim.usmanoff@gmail.com> |
| **Sent:** | Monday, March 14, 2022 10:08 AM |
| **To:** | Pamela M. Egan |
| **Cc:** | Ralph Cromwell; Elon Berk |
| **Subject:** | Re: GW/PC |

⚠ **EXTERNAL**

Dear Pamela,

Thank you for your explanation. I did receive compensation from Andrew Kuzenny and Cryptonomos, but those payments would not be reflected in my bank records. As I said in the deposition, I received a salary from GigaWatt, Inc and occasionally received some cash from Kuzenny. All my bank records would show are direct deposits from GigaWatt, Inc (Wenatchee), occasional cash deposits (with no reference to Cryptonomos or Kuzenny) and other unrelated transactions.

If it's evidence of who paid my salary you're looking for, I'm happy to turn over my W-2 from GigaWatt, Inc (Wenatchee). Adrey Kuzenny and Cryptonomos did not send me an information return at the end of the year. My bank records and tax returns (aside from the GigaWatt, Ic W-2) don't contain the information you are looking for. And I'm hesitant to disclose that information for privacy and confidentiality reasons; I do not want my personal records to end up in the public realm.

Best,

Tim

On Wed, Mar 9, 2022 at 9:13 AM Pamela M. Egan <pegan@potomaclaw.com> wrote:
> Dear Mr. Usmanov,
>
> Thank you for your response.
>
> Your bank records for the period May 2017 through September 2018 are relevant to the Debtor's financial affairs. Section 542(e) of title 11 of the United States Code requires any person holding recorded information relating to the debtor's financial affairs to turn over those records to the Trustee.
>
> You were the Chief Financial Officer ("CFO") for the Debtor. You received compensation from Cryptonomos Pte. Ltd., Andrey Kuzenny and Giga Watt, Inc. How much and by whom the Debtor's CFO was paid is relevant to the Debtor's financial affairs.
>
> In addition to the turnover power, the Trustee has subpoena power. Here, the Trustee and Perkins each have the power to subpoena documents that are relevant to the issues in the litigation between them. Perkins Coie LLP has asserted that Giga Watt, Inc., GigaWatt Pte. Ltd., and Cryptonomos Pte. Ltd. were separate entities with separate roles in the GW ICO. Its involvement, it asserts, is limited to GigaWatt Pte. Ltd. and Cryptonomos Pte. Ltd. Evidence that Cryptonomos Pte. Ltd and Andrey Kuzenny paid all or part of your salary would tend to undermine this argument.

**Exhibit D**

In addition to your bank statements for the period May 2017 through September 2018, please also provide your federal U.S tax returns for the years 2017 and 2018, which would further confirm the source of your salary. If you wish, the Trustee can agree to terms of confidentiality as necessary and appropriate to protect your privacy.

The Trustee's investigation is ongoing. The Trustee may make further requests for information in the future.

Pam Egan

Get Outlook for iOS

**From:** Timur Usmanov <tim.usmanoff@gmail.com>
**Sent:** Tuesday, March 8, 2022 2:16:10 PM
**To:** Pamela M. Egan <pegan@potomaclaw.com>
**Cc:** Ralph Cromwell <rcromwell@byrneskeller.com>; Elon Berk <eberk@crimlawla.com>
**Subject:** Re: GW/PC

🔺 **EXTERNAL**

Dear Pamela,

As I already mentioned in one of my previous email, I don't have any of Giga Watt's bank records.

Best,

On Mar 8, 2022, at 11:19, Pamela M. Egan <pegan@potomaclaw.com> wrote:

Dear Mr. Usmanov,

Please produce all your bank records for the period May 2017 through September 2018. You may do so voluntarily, or I can subpoena them. If you wish to receive a subpoena, you can be served in person or by email.
Please tell me how you wish to proceed.

Pamela Egan

Pamela M. Egan | Partner | Potomac Law Group, PLLC
Tel: (415) 297-0132 | Fax: (202) 318-7707
pegan@potomaclaw.com | www.potomaclaw.com

<Picture (Device Independent Bitmap) 1.jpg>

*This e-mail and any attachments may contain information that is private, confidential, and/or privileged. If you are not the intended recipient, please notify us immediately and destroy all copies of this message and any attachments.*

**Exhibit D**

**From:**      "Timur Usmanov" <tu@giga-watt.com>
**Sent:**      Mon, 31 Jul 2017 21:55:47 +0000
**To:**        "Andrey Kuzenny" <ak@giga-watt.com>
**Subject:**   Re: Tim's bank details

Gagarina str., 38 -130,
Reutov 143966,
Russia

On Mon, Jul 31, 2017 at 2:50 PM, Timur Usmanov <tu@giga-watt.com> wrote:
Timur Usmanov

LV98MULT1010634780010

SWIFT: MULTLV2X

AS Meridian Trade Bank
57 Elizabetes Str., Riga, Latvia, LV-1772

Best,

Tim Usmanov

--
Best,

Tim Usmanov

**Exhibit D**

D - 14

```
Source:  Calendar Entry
Subject: Giga Watt, Inc. - Meeting
Attendees:
Start Date: 7/26/2017 9:00:00 PM(UTC+0)
End Date: 7/27/2017 12:00:00 AM(UTC+0)

Giga Watt Inc. Team meeting at Perkins Coie Seattle Office

ADDRESS:
1201 Third Avenue
Suite 4900
Seattle, WA 98101

Upon arrival, please check in with our Reception Desk on the 49th Floor
and be prepared with photo I.D.
```

---

```
NOTICE: This communication may contain privileged or other confidential
information. If you have received it in error, please advise the sender by
reply email and immediately delete the message and any attachments without
copying or disclosing the contents. Thank you.
```

Exhibit D

D - 15

| | |
|---|---|
| **From:** | "Mike Olmstead" <mike@giga-watt.com> |
| **Sent:** | Tue, 25 Jul 2017 18:40:12 +0000 |
| **To:** | "Sandoval, Martha D. (Perkins Coie)" <MSandoval@perkinscoie.com> |
| **Cc:** | "Sinden Harum" <Sinden@giga-watt.com> |
| **Subject:** | Re: Meeting 7/26 |

Hi Martha,

We just wanted to make sure we addressed the following items at this week's meeting.

Giga Watt, Hosting LLC - Company structure, employees, revenue & taxes.

Giga Watt, Inc - Hosting revenue; what is the best method of reporting (internally & for tax purposes)? Corporate structure?

CPA - Able to refer one that specializes in cryptocurrency & project management accounting?

Policies, procedures etc - relating to the new LLC.

Thank you,

Mike


On Fri, Jul 21, 2017 at 12:07 PM, Sandoval, Martha D. (Perkins Coie)
<MSandoval@perkinscoie.com> wrote:
> Mark,
> I am researching referrals and will get back to you once I have a few to pass on.
> Martha
>
> Sent from my iPhone
>
> On Jul 20, 2017, at 4:54 PM, Mike Olmstead <mike@giga-watt.com> wrote:
>
>
>> Hi Martha,
>> One item we need to discuss, is if you can recommend a WA state CPA that
>> specializes in Cryptocurrency. We would also like to audit our books from
>> inception (Jan 1, 2017) to ensure we have accurate financials & assist in
>> implementing accounting policy & procedures.
>> Can you please let us know if you might have someone in mind & if possible,
>> have them contact us? We need to get this going as soon as possible.
>> Please let me know if you have any questions.
>> Thank you in advance.
>> Mike
>> --
>> Mike Olmstead - Accountant
>> Giga Watt, Inc

**Exhibit D**

Lighthouse 0300998

mike@giga-watt.com
509-860-8224

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

--
Mike Olmstead - Accountant
Giga Watt, Inc
mike@giga-watt.com
509-860-8224

Exhibit D