Pamela M. Egan, WSBA No. 54736
POTOMAC LAW GROUP PLLC
1905 7th Ave. W.
Seattle, WA 98119
Telephone: (415) 297-0132
Email: pegan@potomaclaw.com
  *Attorneys for Mark D. Waldron, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>           Debtor. | Case No. 18-03197 FPC 11<br><br>The Honorable Frederick P. Corbit<br><br>Chapter 7 |
| MARK D. WALDRON, as Chapter 7 Trustee,<br><br>           Plaintiff,<br>    vs.<br><br>PERKINS COIE LLP, a Washington limited liability partnership, LOWELL NESS, individual and California resident, GIGA WATT PTE., LTD., a Singapore corporation, and ANDREY KUZENNY, individual and Russian citizen,<br><br>           Defendants,<br><br>        - and -<br><br>THE GIGA WATT PROJECT, a partnership,<br><br>           Nominal Defendant. | Adv. Case No. 20-80031<br><br>**TRUSTEE'S REPLY TO PERKINS' AND NESS' OPPOSITION TO TRUSTEE'S MOTION TO STRIKE CROMWELL AFFIDAVIT** |

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL DECLARATION

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................1

II.  ARGUMENT ......................................................................................3

   A.   The Rule Against Argument in Affidavits Is Not Limited to Summary
        Judgments..................................................................................3

   B.   The Cromwell Affidavit Is Argumentative. ..............................................4

   C.   Professional Rule 1.6 Did Not Prevent Perkins From Complying With
        the Trustee's Turnover Request. ...................................................... 10

        1.  Perkins Represented Giga Watt. .................................................. 10

        2.  Perkins' Produced Documents Selectively. ..................................... 11

   D.   Professional Rule 1.6 Did Not Prevent Perkins From Complying With
        Civil Rule 26. ........................................................................ 13

   E.   Perkins' Claims of Confidentiality Stopped Applying in June 2022..... 14

   F.   The Trustee Has Overcome a Pattern of Obstructionism in This Case. 15

   G.   The Trustee Has Diligently Investigated the Debtor's Affairs. ............. 16

III. CONCLUSION ................................................................................ 18

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL
AFFIDAVIT                                                    Page | i

# TABLE OF AUTHORITIES

## CASES

*Baxter v. Palmigiano*,
    425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)..........................................8

*Keating v. Off. of Thrift Supervision*,
    45 F.3d 322 (9th Cir. 1995) ............................................................................8

*Lexington Ins. Co. v. Swanson*,
    240 F.R.D. 662 (W.D. Wash. 2007) ...............................................................3

*Reed Constr., Inc. v. James River Ins. Co.*,
    C11-960 MJP, 2012 WL 13024803 (W.D. Wash. Apr. 6, 2012).....................14

*Rubin v. Kirkland Chrysler-Jeep, Inc.*,
    C05-0052C, 2005 WL 8172700 (W.D. Wash. Oct. 7, 2005)...........................3

## STATUTES

11 U.S.C. § 510........................................................................................................15

11 U.S.C. § 542(e) .............................................................................................14, 15

## OTHER AUTHORITIES

Black's Law Dictionary (10th ed. 2014)..................................................................3

## RULES

F.R.E. 801 .................................................................................................................7

Fed.R.Bankr.P. 7026 ...............................................................................................13

Fed.R.Civ.P. 26...................................................................................................13, 14

Professional Rule 1.6 ...............................................................................................10

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL
AFFIDAVIT                                                    Page | ii

Mark D. Waldron, in his capacity as the duly appointed Chapter 7 Trustee, by and through his attorneys, the Potomac Law Group PLLC, hereby submits his reply ("Reply") to Perkins' and Ness' Opposition ("Opposition") to the *Trustee's Motion to Strike Affidavit of Ralph E. Cromwell, Jr. Regarding Trustee's Motion to Amend Complaint,* dated October 24, 2022, ECF No. 124 ("Motion"). Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Motion. This Reply is supported by the *Declaration of Pamela M. Egan* ("Egan Decl.") and the *Trustee's Request for Judicial Notice* ("RJN") filed herewith.

## I.    INTRODUCTION

The Cromwell Affidavit tries to explain Mr. Cromwell's legal conclusion that Perkins had not represented Giga Watt – overlooking Perkins' statement to the United States Secret Service, "our firm represents Giga Watt," on the day that Perkins released $5.4 million to Andrey Kuzenny from the GW ICO escrow. Mr. Cromwell is entitled to his legal opinion. However, Perkins' fiduciary duty to Giga Watt raises a legal issue for this Court, not Mr. Cromwell, to decide in a public judicial proceeding, not in Mr. Cromwell's office.

The Opposition claims that the divestment rule precludes further discussion of the issue because it is jurisdictional. However, the divestment rule is not jurisdictional. It is a rule of comity, informed by numerous considerations, as set forth in the Trustee's prior filings and not repeated here.

20-80031-FPC    Doc 128    Filed 11/10/22    Entered 11/10/22 16:19:55    Pg 4 of 21

1    Apart from claiming that if the Trustee's counsel had been sharper, he
2    would not have been able to trick her, Mr. Cromwell describes his opinion that
3    ethical rules required him to cloak the evidence. However, he produced some
4    evidence with a protective order. And he produced other evidence without a
5    protective order. In each case, he only produced evidence that supported Perkins'
6    narrative and he withheld evidence that contradicted Perkins' narrative.

7    Even while opening the kimono about his thinking, which he asks this
8    Court not to question, he omits mention of material evidence showing that:

9        1. Perkins was advising Giga Watt as it disbursed from the GW ICO
10          escrow to Andrey Kuzenny $7.5 million over the course of August and
11          September 2017 in three separate payments;

12       2. Messrs. Kuzenny and Usmanov were lying to GW Sg.'s bank about:

13          a.  their inexplicable deposit of $1.95 million into the Perkins'
14              IOLTA trust account, calling it an "inter-company transfer";

15          b.  their withdrawal of $5.4 million on the day that Perkins told the
16              U.S. government that it represented Giga Watt; and

17          c.  their withdrawal of an additional $3.3 million in November 2017
18              out of step with Giga Watt's construction and in addition to the
19              $7.5 million disbursed in August and September 2017.

20   He omits mention of how after GW Sg.'s bank terminated GW Sg.'s
21   privileges over legitimate concerns about GW Sg.'s moving of money in and out

22   TRUSTEE'S REPLY TO PERKINS'
23   AND NESS' OPPOSITION TO TRUSTEE'S
     MOTION TO STRIKE CROMWELL
24   AFFIDAVIT                                          Page | 2

25

of the Perkins IOLTA trust account, Mr. Usmanov began using Giga Watt's various bank accounts "to land the money." He omits mention of how "the Russian team" (Mr. Kuzenny's term) used Giga Watt to take money and leave the debt.

In short, the Affidavit is a one-sided legal brief which should be stricken.

## II. ARGUMENT

### A. The Rule Against Argument in Affidavits Is Not Limited to Summary Judgments.

An affidavit is "[a] voluntary declaration of facts." Black's Law Dictionary (10th ed. 2014). It is not a supplemental briefing mechanism. *See e.g., Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 672 (W.D. Wash. 2007) ("The parties are advised that the Court will not consider legal arguments made in a declaration."). *Lexington* considered a discovery motion. *See Rubin v. Kirkland Chrysler-Jeep, Inc.*, C05-0052C, 2005 WL 8172700 (W.D. Wash. Oct. 7, 2005):

> The Court further notes that there is no proper place in a declaration for the extensive legal argument present in Defendant's declaration. As a general rule, declarations should conform to the requirements of Rule 56(e) and 28 U.S.C. § 1746. If Defendant wished the Court to consider the legal arguments in its declaration, the appropriate place for those arguments would have been in its motion to compel.

*Id.* at *2, n. 1. These authorities show that arguments in affidavits are not appropriate in any proceeding, not simply summary judgment proceedings.

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL
AFFIDAVIT                                                    Page | 3

**B.    The Cromwell Affidavit Is Argumentative.**

The Opposition states that the Cromwell Affidavit only asserts facts. However, those facts are selective, incomplete and argumentative. For example, Mr. Cromwell does not mention Mr. Usmanov's email to Perkins, which states in pertinent part, "Hi Lowell, My name is Tim. I'm the CFO of ***Giga Watt, Inc.*** Katrina [Grant][1] referred to you as a main contact person who I could speak with ***on all our legal matters***." **Exhibit 1**. (Emphasis added.)

Similarly, the Affidavit does not mention Perkins' email to the United States Secret Service stating, "our firm represents Giga Watt." **Exhibit 2**, p.1. It does not mention that this same day, Perkins released $5.4 million from the escrow. Verified Complaint, ECF No. 11, ¶ 24 (alleging amount and timing of releases from Perkins' IOLTA trust account); Answer and Affirmative Defenses of Perkins Coie and Lowell Ness to Amended[2] Verified Complaint ("Perkins' Answer"), ECF No. 28, ¶ 24 (admitting the amount and timing of the releases).

Mr. Cromwell's Affidavit does not mention how Perkins continued to advise Giga Watt through August and September 2017 as it made additional payments out of step with construction. *See* Cromwell Affidavit, ECF No. 120-1, Exhibit 13 (emails showing Perkins advising Giga Watt through August 2017).

---

[1] Katrina Grant is also known as Katrina Arden and Ekatarina Kovalyeva.

[2] The Verified Complaint was not amended. The Trustee had only amended the redaction of the Verified Complaint.

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL
AFFIDAVIT                                                    Page | 4

*See also* **Exhibit 2-1**, attached hereto (emails showing Perkins advising Giga Watt through September 2017). In August and September 2017, Perkins released a total of $7.5 million. Verified Complaint, ECF No. 11, ¶ 24 (listing the escrow releases by date and amount); Perkins' Answer, ECF No. 28, ¶ 24 (admitting the escrow releases by date and amount).

Mr. Cromwell incorrectly avers that "Grant had previously retained Perkins to advise Cryptonomos regarding structuring and conducting a sale of digital tokens *by GW Singapore*." Cromwell Affidavit, ECF No. 120-1 at 7:10-11 (emphasis added). However, the Cryptonomos-Perkins retention letter does not mention GW Sg. Cromwell Affidavit, ECF No. 120-1, Exhibit 18. Further, the White Paper described GW Sg. as the seller of miners – not the seller of WTT Tokens. *See* White Paper attached to the *Trustee's Motion to Amend Complaint* ("Motion to Amend"), Exhibit 2, ECF 115-2 at 59, first paragraph (referring to GW Sg. as "sell[ing] mining equipment to customers worldwide"); *id.*, third paragraph ("Giga Watt's standard turnkey solution includes purchase and delivery of mining equipment through its Partner. . . ."); *id.* at 59, n. 3 ("The sales and delivery of equipment is offered through the Partner's sales module on Giga Watt's website."); *id.* at 67, second full paragraph, second sentence, ("When token holders buy miners from the Partner through Giga Watt's website. . . ."). In the White Paper, "Partner" meant GW Sg. *Id.* at 59, first paragraph.

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL
AFFIDAVIT                                                    Page | 5

1    Perkins knew the terms of the White Paper because Cryptonomos had

2    retained Perkins to provide "final document review with respect to digital

3    currency style token sales." Cromwell Affidavit, Exhibit 18 (second full

4    paragraph, last sentence).

5    The Affidavit reprises the line that Giga Watt "got the money." However,

6    Mr. Cromwell omits a number of relevant points on that issue. For example, the

7    Affidavit does not discuss the evidence that (1) all monies paid to Giga Watt were

8    in the form of loans; (2) Giga Watt did not receive any revenue from the facilities

9    that it built; (3) Ms. Grant and Mr. Kuzenny told the United States Securities and

10   Exchange Commission ("SEC") that GW Sg. had commingled escrow funds with

11   its other funds before transferring funds to Giga Watt; and (4) the transfers from

12   GW Sg. to Giga Watt do not correlate by either time or amount with the transfers

13   from Perkins to GW Sg., all as previously presented to the Court and not repeated

14   here.

15   Similarly, Mr. Cromwell's Affidavit does not address the evidence that GW

16   Sg. received sufficient funds from Circle Internet Finance to cover all payments to

17   Giga Watt without touching escrow funds. It also omits that transfers to Giga Watt

18   from Perkins were only made after GW Sg. had lost its banking privileges and

19   needed a place "to land the money." **Exhibit 3**; **Exhibit 4**.

20

21

22
     TRUSTEE'S REPLY TO PERKINS'
23   AND NESS' OPPOSITION TO TRUSTEE'S
     MOTION TO STRIKE CROMWELL
24   AFFIDAVIT                                          Page | 6

25

The Affidavit recites inadmissible hearsay within hearsay regarding what Mr. Usmanov states he was told about the source of funds received by Giga Watt from GW Sg. Cromwell Affidavit, ECF No. 120-1 at 16:1-4; F.R.E. 801.

Mr. Cromwell does not mention that:

1. Mr. Usmanov arranged for Mr. Kuzenny to receive a $180,000 annual salary from Giga Watt without having to perform "any actual duties," solely so that Mr. Kuzenny could obtain a genius visa from the U.S. government under false pretenses. **Exhibit 5**; **Exhibit 6**.

2. Mr. Usmanov told the Russian team that the Giga Watt's employees were "stupid" and that he sought to impose order upon those "stupid" employees by eradicating any room for creativity "like in the army." **Exhibit 7.**

3. Mr. Usmanov received income in the form of cash payments and wire transfers to his Latvian bank account that he did not report on his U.S. tax return. **Exhibit 8.**

Mr. Cromwell does not mention that Cryptonomos – not Giga Watt – collected and controlled Giga Watt's revenues, **Exhibit 9**, and that Giga Watt served as a cash cow for Messrs. Kuzenny, Markin, and Khaptakhaev, who have since fled. Mr. Kuzenny has also invoked his privilege against self-incrimination afforded by the Fifth Amendment to the United States Constitution thus permitting the adverse inference that he prematurely pulled funds from Perkins'

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL
AFFIDAVIT                                    Page | 7

IOLTA trust account. *Answer of Defendant Andrey Kuzenny to Complaint for Damages*, ECF No. 21, ¶ 3 at 2:3-8.[3] *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325–26 (9th Cir. 1995) ("[I]t is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding.") (citing *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976)).

Mr. Cromwell does not mention that Messrs. Kuzenny and Usmanov had failed to explain to GW Sg.'s bank why GW Sg. had deposited $1.95 million into Perkins' IOLTA trust account when the White Paper stated that Cryptonomos, not GW Sg., would collect the WTT Token sale proceeds. Motion to Amend, ECF No. 115-2 at 70 (2nd full paragraph). Mr. Cromwell does not mention that although GW Sg.'s bank had questions about this transfer, Perkins did not.

Mr. Cromwell does not disclose that Messrs. Kuzenny and Usmanov falsely told GW Sg.'s bank that the $1.95 million deposit into Perkins' IOLTA trust account was an "inter-company transfer." *See* Trustee's Reply to Perkins' and Ness' Opposition to Motion to Amend Complaint ("Reply re Motion to Amend"), Exhibit B, ECF No. 121-2, p. 12 (last paragraph), p. 13 (first line). He does not consider the implications of a group of foreigners treating Perkins' IOLTA trust account as its own bank account.

---

[3] This pleading is not included in the RJN because it is part of this adversary proceeding.

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL
AFFIDAVIT                                            Page | 8

Mr. Cromwell does not mention Messrs. Kuzenny and Usmanov's failure to explain to GW Sg.'s bank why it had received $5.4 million from Perkins' IOLTA trust account on August 8, 2017 (only days after they had deposited $1.95 million into that account). Mr. Cromwell does not mention that Perkins released $5.4 million to GW Sg. on the same day that it told the United States Secret Service that it represented Giga Watt.

Mr. Cromwell does not mention Messrs. Kuzenny and Usmanov's misrepresentation to GW Sg.'s bank that the $5.4 million had been released "for completed construction," when, in fact, no new cryptocurrency capacity had been completed. Reply re Motion to Amend, Exhibit B, ECF 121-2 at 13 (first full paragraph).

Further, Mr. Cromwell does not mention the emails in which David Carlson described Perkins as Giga Watt's lawyer, Reply re Motion to Amend, Exhibit C, ECF No. 121-3 at 3 (first paragraph after heading, Outline of Facts).

In summary, the Cromwell Affidavit only recites facts that serve Perkins' narrative. It omits facts that provide important context. It is argumentative. Therefore, the Trustee requests that it be stricken.

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL
AFFIDAVIT                                                          Page | 9

## C. Professional Rule 1.6 Did Not Prevent Perkins From Complying With the Trustee's Turnover Request.

### 1. *Perkins Represented Giga Watt.*

The Opposition presents the Affidavit as Mr. Cromwell's effort to explain how Professional Rule 1.6 prevented him from disclosing documents to the Trustee. However, the Lighthouse Documents show that Perkins represented Giga Watt. Professional Rule 1.6 does not prevent a lawyer from turning over correspondence in which the lawyer provides legal advice to the debtor. Perkins should have turned over these emails to the Trustee. Instead, Perkins' narrowly responded to the Turnover Request on June 20, 2019:

> We did not represent that entity [Giga Watt] in connection with any coin or token offering or sale, or in connection with any transfer of assets preceding the bankruptcy filing as alleged in the Trustee's adversary proceeding.

Reply re Motion to Amend, Exhibit A, ECF No. 121-1 at 6.[4] This did not respond to the Turnover Request, which asked for all documents relating to the Debtor. When the Trustee followed up, Mr. Cromwell broadened the response, stating without qualification that Perkins had not represented Giga Watt and did not have

---

[4] By "Trustee's adversary proceeding" Perkins is referring to the adversary that the Trustee commenced against David Carlson on April 22, 2019, Adv. Proc. No. 19-80012.

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL
AFFIDAVIT                                                      Page | 10

any documents that it could produce to the Trustee. He also stated, "Giga Watt was a stranger." Egan Decl. at ¶ 15. In his Affidavit, Mr. Cromwell reiterates his broad statement, ". . . I understood Perkins' internal records did not reflect it having represented the debtor. . . ." Cromwell Affidavit, ECF No. 120-1 at 13:17-18.

This is not true. Perkins told the United States Secret Service, "our firm represents Giga Watt." **Exhibit 2**. The word "represents" does not have one meaning when it serves Perkins' purpose and another when it does not. In any event, the significance of this statement is for this Court to decide, not Mr. Cromwell.

Perkins also advised Giga Watt regarding its corporate governance documents. **Exhibit 2-1**. *See also* Cromwell Affidavit, ECF No. 120-1, Exhibit 19.

Perkins' misrepresentations and omissions matter. If the Trustee had received the emails showing how Perkins represented and advised Giga Watt, he would have drafted a different complaint. Further, Mr. Cromwell should not be heard on the Trustee's and counsel's investigation in this case after trying to unilaterally decide legal issues that this Court – not he – should decide.

    2.   *Perkins' Produced Documents Selectively.*

Perkins' conduct contradicts the Opposition's argument that Professional Rule 1.6 compelled Perkins to withhold from the Trustee emails between Giga

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL
AFFIDAVIT                           Page | 11

Watt and Perkins in which Perkins provided legal advice to Giga Watt. In October 2022, Perkins produced to the Trustee the documents attached to Mr. Cromwell's Affidavit as Exhibit 17 and 20. Egan Decl. at ¶ 25. These documents were not part of the Lighthouse Documents and, therefore, were not otherwise available to the Trustee. *Id.* Exhibit 17 includes an email from Katrina Grant to Lowell Ness asking Perkins to review a "proposed structure for Giga Watt, Inc., a Washington corporation." Exhibit 20, also not part of the Lighthouse Documents, showed Perkins' attorneys discussing Zeev Kirsh's dissatisfaction with Perkins. Zeev Kirsh was another attorney. Cromwell Affidavit, ECF No. 120-1 at 8:22-23. If Perkins could produce these documents in October 2022 without a protective order, then it could have produced them in April 2019 with or without a protective order in response to the Trustee's April 9, 2019 Turnover Request.

Further, in 2020, Perkins produced documents relating to the GW ICO escrow pursuant to a series of stipulations and orders. *See* RJN Nos. 1-4. Since Perkins turned over some documents, subject to protections, it could have turned over the emails between Giga Watt and Perkins with those same protections. Perkins chose not to disclose the emails that show Perkins representing and advising Giga Watt while Mr. Kuzenny used the Perkins IOLTA trust account as GW Sg.'s bank account.

1  **D.      Professional Rule 1.6 Did Not Prevent Perkins From Complying With**
2  **Civil Rule 26.**

3        Rule 26 of the Federal Rules of Civil Procedure, applicable to this

4  adversary proceeding pursuant to Rule 7026 of the Federal Rules of Bankruptcy

5  Procedure, requires a party to produce – without request – all evidence which it

6  "may use to support its claims or defenses, unless the use would be solely for

7  impeachment." Fed.R.Civ.P. 26(a)(1)(A)(ii); Fed.R.Bankr.P. 7026.

8        The evidence outlined by Mr. Cromwell in his Affidavit is being used to

9  support Perkins' defense that it did not owe a fiduciary duty to Giga Watt. It

10  should have been disclosed to the Trustee.

11       Perkins has also denied that GW and GW Sg. were partners. *See Answer*

12  *and Affirmative Defense of Perkins Coie and Lowell Ness to Amended Verified*

13  *Complaint*, ECF No. 28, at ¶ 10, p. 3, line 11. Mr. Cromwell has attached to his

14  Affidavit an email from Katrina Grant asking Perkins to help define the

15  relationship between GW Sg. and Giga Watt. Cromwell Affidavit, Exhibit 17.

16  Further, the Lighthouse Documents include emails between Perkins and Giga

17  Watt regarding the undefined nature of the relationship between GW Sg. and Giga

18  Watt. Reply re Motion to Amend, Exhibit C, ECF No. 121-3 at 6 (first full

19  paragraph); *id*. at 10 (last paragraph); *id*. at 11 (first indented quotation). These

20  documents informed Perkins' denial of a partnership between Giga Watt and GW

21  Sg. Therefore, they should have been produced pursuant to

22
23  TRUSTEE'S REPLY TO PERKINS'
    AND NESS' OPPOSITION TO TRUSTEE'S
    MOTION TO STRIKE CROMWELL
24  AFFIDAVIT                                    Page | 13

25

Fed.R.Civ.P. 26. *See Reed Constr., Inc. v. James River Ins. Co.*, C11-960 MJP, 2012 WL 13024803, at *1 (W.D. Wash. Apr. 6, 2012) ("The importance of the lay-down discovery rules cannot be over-emphasized."). This obligation is in addition to the separate turnover obligation pursuant to section 542(e) of the Bankruptcy Code. 11 U.S.C. § 542(e).

**E.     Perkins' Claims of Confidentiality Stopped Applying in June 2022.**

In June 2022, the District Court denied Jun Dam's motion to file his appellate brief under seal. RJN No. 5. Mr. Dam then filed on the public docket the unredacted version of the Trustee's Verified Complaint. RJN No. 6. At that point, June 2022, Perkins could no longer claim that Professional Rule 1.6 prevented it from producing emails between Perkins and Giga Watt. Confidentiality was waived by Mr. Dam's filing of the unredacted complaint which extensively discussed Perkins' communications regarding the GW ICO escrow. This is true notwithstanding the various orders entered by this Court. RJN Nos. 1-4. *See* F.R.E. 502(d), Advisory Committee Note, Subdivision (d) ("[S]ubdivision (d) does not allow the federal court to enter an order determining the waiver effects *of a separate disclosure of the same information in other proceedings, state or federal*.") (emphasis added). Nonetheless, Perkins continued the ruse that it could not produce documents.

**F.  The Trustee Has Overcome a Pattern of Obstructionism in This Case.**

The broad turnover requirements of the Bankruptcy Code exist precisely because a trustee does not know the facts and is not charged with knowledge of the facts. 11 U.S.C. § 542(e). Perkins should have turned over to the Trustee all its email correspondence with Giga Watt and all the evidence that is now openly, albeit selectively, discussed in the Cromwell Affidavit.

Throughout this case, the Trustee has had to overcome dissembling and false accusations. Andrey Kuzenny provided partial access to the Debtor's records and then accused the undersigned of stealing or losing money. RJN No. 7.

David Carlson, Giga Watt's Chief Executive Officer, falsely asserted that he owned the TNT Facility after Giga Watt transferred it to him three days before the petition date. When the Trustee realized that Giga Watt – not he – owned the TNT Facility, Mr. Carlson accused the Trustee of undue delay. RJN No. 8.

Mr. Dam sued the Trustee outright because the Trustee had the temerity to state that the WTT Token holders and miner owners did not own the Debtor's assets and that their claims were subject to mandatory subordination pursuant to section 510(b) of the Bankruptcy Code. 11 U.S.C. § 510(b). The Court dismissed Mr. Dam's action for failing to state a claim. RJN No. 9.

Perkins now falls within this dubious camp. It told the Trustee falsely that it had not represented Giga Watt. It concealed from the Trustee emails showing that on the very day of the first premature escrow release, it told the United States

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL
AFFIDAVIT                                                    Page | 15

Secret Service, "our firm represents Giga Watt." **Exhibit 2**. Mr. Cromwell parsed Perkins' turnover and disclosure obligations based on whether disclosure helped or hurt Perkins. He treated his legal opinions as determinative, encroaching on this Court's role as the decision maker.

His Affidavit is an argument explaining the correctness of his legal conclusion. Therefore, it should be stricken.

**G. The Trustee Has Diligently Investigated the Debtor's Affairs.**

Mr. Cromwell's Affidavit shows the Trustee's diligence. The exhibits show how seven months before the Discovery Cut-Off, the Trustee contacted Lighthouse regarding the technical and financial aspects of identifying and restoring the imaged data. Cromwell Affidavit, ECF No.120-1 at 3:21-26, 4:1-13; *id.,* Exhibit 9, p. 4 (showing the initial estimate using Lexbe in April 2022); *id.,* Exhibit 19 at 17 (showing that Lighthouse held 1.2 terabytes of raw data). In May 2022, the Trustee obtained this Court's Order authorizing the Trustee to pay for the retrieval and storage of the Lighthouse Documents. RJN No. 10. After extraction by Lighthouse and processing by LexBe, some of the Lighthouse Documents became available in the first half of July. All of the Lighthouse Documents became available in the second half of July. LexBe was able to reduce the size of the data from 1.2 terabytes to 240 gigabytes. Egan Declaration at ¶ 23. As the Lighthouse Documents became available, the Trustee immediately began reviewing them and sharing his findings with Perkins, all before the Discovery

TRUSTEE'S REPLY TO PERKINS'
AND NESS' OPPOSITION TO TRUSTEE'S
MOTION TO STRIKE CROMWELL
AFFIDAVIT                                                    Page | 16

1  Cut-Off of August 31, 2022. The Trustee allowed Perkins to review the

2  Lighthouse Documents immediately. Egan Decl. at ¶¶ 17-24.

3      Moreover, the Trustee did not ignorantly file its complaint against Perkins,

4  as Mr. Cromwell implies in his Affidavit. The Trustee had acquired sufficient

5  information to state a claim against Perkins for prematurely releasing $22.3

6  million from its IOLTA trust account.

7      Finally, the Trustee does not have fewer discovery rights than other

8  plaintiffs. All plaintiffs get to learn more about their cases through discovery. The

9  Trustee is no exception and in fact this point is stronger in the context of a trustee

10 who, unlike other plaintiffs, was not personally involved in the underlying

11 conduct. Further, during the discovery process, the Trustee timely uncovered

12 documents showing an attorney-client relationship between Perkins and Giga

13 Watt and also showing the relationship between Giga Watt and GW Sg. – all of

14 which Perkins knew and should have produced earlier.

15

16      *This Reply continues on the following page.*]

17

18

19

20

21

22
   TRUSTEE'S REPLY TO PERKINS'
23 AND NESS' OPPOSITION TO TRUSTEE'S
   MOTION TO STRIKE CROMWELL
24 AFFIDAVIT                                    Page | 17

25

1

### III.    CONCLUSION

2      Wherefore, the Plaintiff respectfully requests that the Court grant the

3   Motion, strike the arguments set forth in the Cromwell Affidavit and grant such

4   other and further relief as the Court deems equitable and just.

5   Dated: November 10, 2022               POTOMAC LAW GROUP PLLC

6
                                  By:      s/ Pamela M. Egan
7                                          Pamela M. Egan (WSBA No. 54736)
                                           *Attorneys for Mark D. Waldron, Chapter 7*
8                                          *Trustee, Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22   TRUSTEE'S REPLY TO PERKINS'
23   AND NESS' OPPOSITION TO TRUSTEE'S
     MOTION TO STRIKE CROMWELL
24   AFFIDAVIT                                              Page | 18

25