EXHIBIT 2-1

20-80031-FPC    Doc 128-3    Filed 11/10/22    Entered 11/10/22 16:19:55    Pg 1 of 10

| | |
|---|---|
| **From:** | "Seigle, Stephanie (Perkins Coie)" <SSeigle@perkinscoie.com> |
| **Sent:** | Thu, 28 Sep 2017 17:21:08 +0000 |
| **To:** | "Timur Usmanov" <tu@giga-watt.com> |
| **Cc:** | "Zeev Kirsh" <zeev@cryptonomos.com>; "Dave Carlson" <dave@giga-watt.com>; "Sinden Harum" <sinden@giga-watt.com>; "ek@cryptonomos.com" <ek@cryptonomos.com>; "Leonid Markin" <lm@cryptonomos.com>; "Andrey Kuzenny" <ak@giga-watt.com>; "Sandoval, Martha D. (Perkins Coie)" <MSandoval@perkinscoie.com> |
| **Subject:** | RE: Intro |

Hi Timur,

Martha and I just wanted to follow up with you on the items necessary to proceed with the corporate cleanup actions. Specifically the highlighted items below.

We noticed that GW Management, LLC, Giga Pod 1-100, LLC, and Mine Building, LLC have not been formed with the WA Secretary of State. Are you able to send us a current org chart?

Thanks,
Stephanie

**Stephanie Seigle** | **Perkins Coie LLP**
PARALEGAL
206.359.3833

---

**From:** Sandoval, Martha D. (SEA)
**Sent:** Wednesday, September 13, 2017 7:29 AM
**To:** Timur Usmanov
**Cc:** Zeev Kirsh; Dave Carlson; Sinden Harum; ek@cryptonomos.com; Leonid Markin; Andrey Kuzenny; Seigle, Stephanie (SEA)
**Subject:** Re: Intro

Timur,
See below.

Sent from my iPhone

On Sep 12, 2017, at 1:14 PM, Timur Usmanov <tu@giga-watt.com> wrote:

> Hi Martha,
>
> Please find my comments below.
>
> On Tue, Sep 12, 2017 at 9:43 AM, Sandoval, Martha D. (Perkins Coie) <MSandoval@perkinscoie.com> wrote:
> Apologies, I thought I had copied my secretary on the email re the conference call, so assumed that she was handling the scheduling. Here's where things stand:

Exhibit 2-1, Page 1 of 9

Lighthouse 0453325

- Articles of Incorporation

  o To ensure that we have a complete set of GigaWatt, Inc.'s articles, we are ordering a set of all documents filed with the Washington Secretary of State's office. Please advise of a timeline

PC: we should be receiving today to put us in a position to draft the amended and restated articles this week. However, we will need the other cleanup items done before we can amend and restate (for one reason, because the proper directors and shareholders need to approve).

  - We need to know the starting point in order to amend and restate

  o Currently 10,000 common shares are authorized

    - Does the company have a capitalization table that sets out the number of shares outstanding and who owns these shares? There have been changes lately in the cap table. I'll check and get back with an update.

    - IF an equity incentive program were to be established, how many shares would be set aside for this? It is common to start with 10% of all authorized shares (if VC funding is anticipated, this percentage could be higher). We could do a 100-for-1 stock split and make a 10% provision (authorized but unissued) in case the company decides to implement an incentive program some time in future.

PC: thanks; we will take this approach

    - There would be a 2-step process for increasing the number of authorized shares: (a) determine the number of authorized shares desired and (b) conduct a stock split so current shareholders' equity holdings remain constant

  o Bylaws and other Incorporation Steps

    - You passed along an action by the incorporator dated 12/16/16. In this action, the incorporator:

      - adopted the bylaws;

      - stated that the company would have 1 director; and

      - appointed Nikolay Evdokimov as the sole director

Exhibit 2-1, Page 2 of 9

Lighthouse 0453326

- Of these 3 acts taken by the incorporator, the incorporator only has statutory authority to adopt the bylaws and set the number of directors.

  - Inconsistent with the 12/16/16 incorporator action, in the 1/1/2017 Minutes of the Special Meeting of the Board of Directors, Adam West is identified as (and acted as) the sole director. In this meeting, the following officers were appointed:

    - CEO: David M. Carlson

    - President: Nikolay Evdokimov

    - CFO: Leonid Markin

    - Secretary: Adam West

o Steps to be taken are: Well noted regarding the 4 below items related to Client.

- **Client**: Provide the identity (identities) of the company's board of directors

- **Client:** Provide the identity of the company's officer [are those listed above correct?; are there other officers?]

- **Client:** Provide capitalization table (or breakdown of share ownership)

- **Client**: Provide input on desired number of authorized shares (post stock split)

- **Perkins:** Prepare a shareholder action in which the director(s) are appointed (and other incorporator actions)

- **Perkins:** Prepare the organizational actions to be approved by a company's board of directors

- **Perkins**: Order governing documents from WA Secretary of State's Office and amend and restate articles of incorporation

I would like to introduce all of you to Stephanie Seigle. Stephanie is the corporate paralegal on the GigaWatt team. Stephanie will be working closely with us to clean up (and establish) the corporate records. I believe the desire is for Perkins to maintain the corporate minute; please correct me if my understanding is incorrect.

Exhibit 2-1, Page 3 of 9

Lighthouse 0453327

On the last two points:

I do not know who would have the authority to communicate with the Singapore authorities to obtain company records. Most likely, it would be the incorporator or anyone listed as an officer of the entity. If no documentation can be found on GigaWatt Pte. Ltd., we can do some research ourselves to determine what options might be available for gathering this information. We'll have someone from our team reach out to the registered agent.

Please let me know (a) who would be on the call to discuss the anticipated merger with HashPlex, Inc.; (b) days and times (this week and next) that would work on your end for a call to discuss; and (c) anticipated timing of this transaction (so I can begin arranging for staffing needs). The merger is not going to happen as the company doesn't deem it beneficial.


Martha


**Martha Sandoval** | **Perkins Coie LLP**
PARTNER
PHONE: 206.359.6244
FAX: 206.359.7244
MSandoval@perkinscoie.com

**From:** Timur Usmanov [mailto:tu@giga-watt.com]
**Sent:** Monday, September 11, 2017 10:35 AM
**To:** Sandoval, Martha D. (SEA); Zeev Kirsh
**Cc:** Dave Carlson; Sinden Harum; ek@cryptonomos.com; Leonid Markin; Andrey Kuzenny
**Subject:** Re: Intro

Hi Martha,

I haven't heard back from you since we agreed to set up a call. I hope this message finds you well.

Please let me know where we are in the process of amending the company's Articles of Incorporation.

On Wed, Aug 23, 2017 at 11:02 AM, Timur Usmanov <tu@giga-watt.com> wrote:
Hi Martha,

Please find my comments below

Based on the incorporation documents provided for Giga Watt, Inc., the company was incorporated using the on-line application, which includes the very basic elements needed under the statute (neither a certificate of incorporation or existence would have been issued if the filing was faulty). Since the basic articles were filed, this means that the statutory defaults apply. These defaults do not conform with best (WA) corporate practices. For example, two

Exhibit 2-1, Page 4 of 9

Lighthouse 0453328

statutory defaults that apply are (1) directors are elected by cumulative voting and (2) a shareholder has preemptive rights.

==I recommend that we amend and restate to reflect best practice AND also to increase the number of authorized shares. If the company expects to issue options or other equity incentives, we'll definitely need to increase the number of shares.

Totally agree with your point that we need to amend and restate the articles and increase the number of shares. Even if the company doesn't decide to implement any stock option plans, it doesn't hurt to have a larger authorized stock in case of a future equity financing.

I did not do an eyeball review of the corporate bylaws, but suspect that these also don't follow best corporate practices for a Washington corporation.

The copy of the bylaws provided are unsigned. Do you know if these were adopted and then signed by the corporate secretary? Generally, at the time of incorporation, there would be a shareholder action to appoint directors and then a directors resolution/consent to appoint officers, adopt the bylaws and take other organizational actions.

==Are executed copies of these documents available? If none of these exist in the company's record books, then we'll start from scratch.

I haven't seen executed copies either of the bylaws, but I've got a copy of some sort of a board resolution regarding the adoption of the company's bylaws and some other actions. Please take a look at the attached minutes. Kindly advise if those can be considered valid from legal perspective.

As for the Singapore entity, we would not have the authority to request this information from the registered agent unless and until we are introduced to the agent as company's counsel and the agent is authorized to send information to us.

==who at Giga Watt can make this introduction and authorization?

I'll try to find that out later on. Meanwhile, let's focus on our U.S. entities.

I have not heard of GW One LLC or about an anticipated merger with Hashplex, so definitely agree that I need to get up to speed on what's happening with the organization. Dates and times that I am currently available for a call follow (all are pacific):

- Thursday, August 24:
  - 8-9am or anytime between 12:30pm-6:30pm - what about 12:30? Will your assistant share the dial-in?

Thank you

On Tue, Aug 22, 2017 at 7:03 PM, Sandoval, Martha D. (Perkins Coie) <MSandoval@perkinscoie.com> wrote:

All,

Exhibit 2-1, Page 5 of 9

Lighthouse 0453329

Based on the incorporation documents provided for Giga Watt, Inc., the company was incorporated using the on-line application, which includes the very basic elements needed under the statute (neither a certificate of incorporation or existence would have been issued if the filing was faulty). Since the basic articles were filed, this means that the statutory defaults apply. These defaults do not conform with best (WA) corporate practices. For example, two statutory defaults that apply are (1) directors are elected by cumulative voting and (2) a shareholder has preemptive rights.

==I recommend that we amend and restate to reflect best practice AND also to increase the number of authorized shares. If the company expects to issue options or other equity incentives, we'll definitely need to increase the number of shares.

I did not do an eyeball review of the corporate bylaws, but suspect that these also don't follow best corporate practices for a Washington corporation.

The copy of the bylaws provided are unsigned. Do you know if these were adopted and then signed by the corporate secretary? Generally, at the time of incorporation, there would be a shareholder action to appoint directors and then a directors resolution/consent to appoint officers, adopt the bylaws and take other organizational actions.

==Are executed copies of these documents available? If none of these exist in the company's record books, then we'll start from scratch.

As for the Singapore entity, we would not have the authority to request this information from the registered agent unless and until we are introduced to the agent as company's counsel and the agent is authorized to send information to us.

==who at Giga Watt can make this introduction and authorization?

I have not heard of GW One LLC or about an anticipated merger with Hashplex, so definitely agree that I need to get up to speed on what's happening with the organization. Dates and times that I am currently available for a call follow (all are pacific):

- Thursday, August 24:
  - 8-9am or anytime between 12:30pm-6:30pm

- Friday, August 25:
  - Anytime between 8am-11:30am or 2:00-3:00pm

- Monday, August 28:
  - Anytime between 9am-6:00pm

- Tuesday, August 29:
  - Anytime between 8am-10am or 2:00-6:00pm

- Wednesday, August 30:
  - Anytime between 8:30am-3:00pm

Exhibit 2-1, Page 6 of 9

Lighthouse 0453330

- Thursday, August 31:

    o Anytime between 8am-11:00am or 1:00pm-4:00pm

- Friday, September 1:

    o Anytime between 8am-10:00am or 12:00pm-4:00pm


Martha

**Martha Sandoval | Perkins Coie LLP**
PARTNER
PHONE: 206.359.6244
FAX: 206.359.7244
MSandoval@perkinscoie.com

**From:** Timur Usmanov [mailto:tu@giga-watt.com]
**Sent:** Wednesday, August 09, 2017 2:35 PM
**To:** Dave Carlson
**Cc:** Sandoval, Martha D. (SEA); Sinden Harum; ek@cryptonomos.com; Leonid Markin; Andrey Kuzenny
**Subject:** Re: Intro

Dear all,

I totally agree with Dave. We would need to ask Perkins Coie to audit our structure and provide advice and assistance.

Martha didn't mention GW One LLC as a company that is also under our umbrella. Apparently, we would have to set up a call and talk through the entire group and bring Martha up to speed on our M&A plans. We definitely need a legal advice on the upcoming merger with Hashplex as there are few things I'm not clear about.

As for the constitutional dox requested by Martha - please find attached some of the documents on Giga Watt, Inc that I've got as of today. As you can see the Articles of Incorp doesn't contain articles per se, but only a title page.

In view of the above, I suggest that Perkins Coie also reach out to Washington Secretary of State to check with them whether or not the initial filing was complete. Same goes for our Singapore entities. Someone would probably need to request the full batch of documents via the registered agent.

As far as SHA is concerned  - I believe this is still being drafted and discussed amongst the shareholders.

Thank you

Exhibit 2-1, Page 7 of 9

Lighthouse 0453331

On Tue, Aug 8, 2017 at 9:13 AM, Dave Carlson <dave@giga-watt.com> wrote:
Thanks for the clarity Martha.

Ed - we met with Perkins week before last and did a project orientation checkup with Martha. I wasn't clear what Perkins had been involved with versus the guidance given by Katrina.

Its clear that at this point that the corp structure (Giga.sg and Giga.us) and their relationship were defined by Katrina with perhaps some input by Perkins, but not at their specific direction.

I think we need to determine if we are comfortable with our current arrangement, or do we want Perkins to dig into how we are doing business and what the entity structure consists of. Further, we may need Perkins to evaluate whether the legal protection and tax/revenue strategies implied by this corp structure are effective and achieve our goals.

We've built a lot of business based on the structure Katrina defined, and perhaps you guys are familiar and comfortable with it - I'm asking you for your feedback on whether to engage Perkins to audit our structure and build us a robust plan going forward. At this point I think its fair to say that Perkins knows *very little* about our business, with the exception of the two entities and a proposed third entity (Hosting).

Your thoughts?

Thanks!
Dave


On Mon, Aug 7, 2017 at 2:46 PM, Sandoval, Martha D. (Perkins Coie) <MSandoval@perkinscoie.com> wrote:
Sinden and Dave,

It was a pleasure meeting the two of you the week before last. I followed up with my colleagues who have worked on Giga Watt / Cryptonomos matters prior to my involvement and can confirm that we were not involved in the incorporation of Giga Watt, Inc. or Pte. Ltd nor in organizational structure conversations/decisions. As I mentioned in our meeting, our involvement began with questions regarding separation of liability between the entities.

If the desire is for Perkins to take on the role of corporate counsel for the affiliated entities, we will need to have the charter documents for the entities, this includes:

- Giga Watt Pte. Ltd:

    o Articles of incorporation (or the Singapore equivalent)

- o Bylaws (or the Singapore equivalent)

- o Shareholders Agreement

- o Capitalization table

- Giga Watt, Inc.

    - o Articles of incorporation

    - o Bylaws

    - o Shareholders Agreement

- Giga Watt Hosting, LLC

    - o Executed LLC Agreement (we drafted this agreement, but I don't know if it was signed)

In addition, if the agreement between GW Inc and GW Hosting and the form of hosting services agreement have been drafted, please provide those as well. We can certainly comment on these; however, I am primarily asking so we have in our records in case questions come up in the future.

Cheers,

Martha

**Martha Sandoval** | **Perkins Coie LLP**
PARTNER
PHONE: 206.359.6244
FAX: 206.359.7244
MSandoval@perkinscoie.com

**From:** Sinden Harum [mailto:sinden@giga-watt.com]
**Sent:** Thursday, June 29, 2017 3:30 PM
**To:** katrina
**Cc:** Sandoval, Martha D. (SEA); Dave Carlson
**Subject:** Re: Intro

Hello All,

We are still trying to arrange for an in person meeting. We have no availability up to the July 4th holiday then Dave leaves for London until 7/19. We may need to schedule toward the end of July but will know more later today.

Best,

Exhibit 2-1, Page 9 of 9

Lighthouse 0453333